**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION AT SANTA ANA**

**HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

**CERTIFIED TRANSCRIPT**

| | |
|---|---|
| INLAND EMPIRE WATERKEEPER, a project of Orange County Coastkeeper, and ORANGE COUNTY COASTKEEPER, a California Non-profit Corporation, <br><br> PLAINTIFFS, <br><br> vs. <br><br> CORONA CLAY CO., a California Corporation, <br><br> DEFENDANT. | ) ) ) ) ) ) ) ) ) SACV NO. 18-00333-DOC ) ) ) ) ) ) |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SANTA ANA, CALIFORNIA

WEDNESDAY, JUNE 28, 2019

4:44 P.M.

**DEBORAH D. PARKER, CSR 10342**
**OFFICIAL COURT REPORTER**
**UNITED STATES DISTRICT COURT**
**411 WEST FOURTH STREET**
**SUITE 1-053**
**SANTA ANA, CALIFORNIA 92701**
**(657) 229-4305**
**transcripts@ddparker.com**

APPEARANCES OF COUNSEL:

FOR THE PLAINTIFFS, INLAND EMPIRE WATERKEEPER, A
PROJECT OF ORANGE COUNTY COASTKEEPER, AND ORANGE
COUNTY COASTKEEPER, A CALIFORNIA NON-PROFIT
CORPORATION:

COLIN A. KELLY
ORANGE COUNTY COASTKEEPER
3151 AIRWAY AVENUE
SUITE F-110
COSTA MESA, CALIFORNIA 92626
(714) 850-1965
colin@coastkeeper.org

SARAH J. SPINUZZI
ORANGE COUNTY COASTKEEPER
3151 AIRWAY AVENUE
SUITE F-110
COSTA MESA, CALIFORNIA 92626
(714) 850-1965
sarah@coastkeeper.org

FOR THE DEFENDANT, CORONA CLAY CO., A CALIFORNIA
CORPORATION:

BILAL ESSAYLI
PACHECO AND NEACH, PC
3 PARK PLAZA
SUITE 120
IRVINE, CALIFORNIA 92614
(714) 462-1700
bessayli@pncounsel.com

BRIAN NEACH
PACHECO AND NEACH, PC
3 PARK PLAZA
SUITE 120
IRVINE, CALIFORNIA 92614
(714) 462-1700
bneach@pncounsel.com

**SANTA ANA, CALIFORNIA; WEDNESDAY, JUNE 28, 2019; 4:44 P.M.**

-oOo-

THE COURT:  Folks, come on up.  You're the more complicated case today, and it's going to take a little bit of time to sort out some of the issues that you have.

So this is going to be Inland Empire Waterkeeper versus Corona Clay Company.

And, Counsel, on behalf of the plaintiffs, would you make your appearances.

MS. SPINUZZI:  Good afternoon, Your Honor.

Sarah Spinuzzi, on behalf of Plaintiff Inland Empire Waterkeeper.

THE COURT:  Pleasure seeing you.

MS. SPINUZZI:  Thank you.

MR. KELLY:  Colin Kelly, on behalf of Inland Empire Waterkeeper.

MR. NEACH:  Good afternoon, Your Honor.

Brian Neach for Corona Clay Company.

THE COURT:  Nice seeing you.

MR. ESSAYLI:  And good afternoon.

Bilal Essayli, on behalf of Defendant Corona Clay.

THE COURT:  All right.  This case concerns Plaintiff Inland Empire Waterkeeper and Orange County Coastkeeper's --

And who's with the Coastkeeper's?

4

(*No audible response.*)

THE COURT:  Okay.

-- allegations that Defendant Corona Clay Company's facility has committed numerous violations of the Clean Water Act.

On June 10th, 2019, I granted in part and denied in part plaintiffs' motion for partial summary judgment as to liability, granting in part the motion as to plaintiffs' first claim for violations of effluent limitations and plaintiffs' fifth claim for violations of the General Plan.

The jury trial matter is set for July 9th.  I'm going to have to move that, and I'm telling you now, okay?  But we'll talk about that date in a moment.

I can move it a little or a lot, so I'll make it convenient with you.  This is something that I was going to put on July 23rd, because frankly we have to double-set.  Because carrying this number of cases, we don't know who settles.  So we may get a settlement from the folks you just saw here at the last moment.

The motions *in limine* are as follows:

Plaintiffs filed a proposed final pretrial conference order on June 17, 2019, and this indicates that the parties have not reached agreement on issues of fact that are admitted and require no proof at trial. Plaintiffs' position is that the Court has made findings of

fact in a summary judgment order and some facts underlying the summary judgment motion were undisputed, while defendant's position it that plaintiffs hold the burden of proof at trial and thus required to independently establish each element of each cause of action submitted to the jury.

Plaintiffs have lodged 13 motions *in limine*. Defendant has lodged three motions *in limine*.

So beginning, as follows:

Remember, a summary judgment motion is a gatekeeper function.  Unless I've got a stipulation, that is not an automatic carryover as a finding of fact by the Court.  So, frankly, if you prevail on that issue, you can't be forced into a stipulation, et cetera, and if there's not findings -- an agreement as to what the facts are.

So, unfortunately, while I may have gone through summary judgment purposes, they're not depositive for trial purposes.  The same thing with a 12(b)(6).  When we write a 12(b)(6) motion, that's a *Twombley* standard, et cetera. That doesn't go through summary judgment so you may say, *Write us a completely different opinion on summary judgment.* So although I find that for summary judgment purposes, I'm not necessarily forcing you, nor should you rely on those findings by the Court for summary judgment for trial purposes.

So the first motion is to preclude defendant from

introducing evidence or advancing any arguments at trial that related to the impossibility defense; in other words, to preclude the argument that the compliance with NPDES --

Why don't we just call that what?

MS. SPINUZZI:  N-P-D-E-S permits.

THE COURT:  Yeah -- no, but I mean "NPDS."

MS. SPINUZZI:  Oh, no.  We call them "N-P-D-E-S" permits.

THE COURT:  Yeah.  See, I have to pronounce each one of those, right?

MS. SPINUZZI:  On the East Coast, I believe they call it NIP-DEES [phonetic].

THE COURT:  Okay.

-- NPDES permit, which is California's 2015 General Industrial Storm Water Permit is impossible.

And plaintiffs seek to preclude this argument under Federal Rule of Evidence 401 on the basis that it would necessitate admission of irrelevant evidence and under Rule 403, on the basis that it would cause confusion of the issues, mislead the jury, cause undue delay and waste time.

Defendant argues and it appears that they do not oppose the motion *in limine* to the extent the motion is limited to barring defendant from asserting an affirmative defense of impossibility.  However, you have argued that excluding evidence relating to the impossibility defense is

overly broad; evidence of its efforts to comply with the Clean Water Act is relevant to determinations of whether it, in fact, violated the Act.

So I believe that -- tentatively, I'm prepared to grant in part and deny in part. I'm prepared to grant to the extent that defendant is barred from asserting the possibility [sic] defense, because the Clean Water Act imposes strict liability for violations. I'm inclined to deny in that defendant may introduce evidence of its efforts to comply with the Clean Water Act.

Now, I want to hear brief argument on that matter and your disagreement with that.

Plaintiff.

MS. SPINUZZI:  Your Honor, your tentative sounds fair.

MR. NEACH:  That aligns with what I think it should be, Your Honor.

THE COURT:  All right.  Let's move to the second one and see if I can get you out of here before midnight, okay?

It's plaintiffs' motion to preclude the argument that defendant made good faith attempts to comply with the plaintiff [sic].

Plaintiffs have argued that good faith attempts are not a defense where liability is strict and thus are

irrelevant.  Even if the evidence is relevant, plaintiff argues that the probative value is substantially outweighed by the danger of confusion.

Defendants have argued that this motion *in limine* would have the Court bar all evidence of defendant trying to comply with the storm water permit.  It's important from your standpoint to exclude the evidence -- rather, it is improper to exclude the evidence.  You've argued that defendant -- you're seeking to admit that it took action to comply with the permit.

I'd like to hear argument from the parties on this motion.  My initial thought -- and it's only a thought.  It's not a finding -- is that I would deny this motion.  As I've stated, there is strict liability for Clean Water Act violations, so if plaintiff demonstrates that defendant did not comply with the storm water permit, defendant will be liable.  But evidence of efforts to comply can be relevant to whether defendant did in fact comply.

So let me hear your -- let me begin with the plaintiff for a moment.

MS. SPINUZZI:  Yes, Your Honor.

Our primary concern is not that the defendant is going to explain how they did comply with the Storm Water Permit, but rather that they're going to explain that they made various efforts; that they tried but failed, but

they're a small business that's doing their best, and we believe --

THE COURT:  You're going to make that argument in your final argument, anyway?

You're going to hear it.  It's going to come slipping in, unfortunately.

MS. SPINUZZI:  Well, Your Honor, I do think this raises a separate issue, which is that under the Clean Water Act, only issues of liability are proper for the jury and evidence of whether or not a defendant tried in good faith to comply is appropriate only as with respect to the penalties phase.  And, you know, we've had the benefit of sitting and hearing similar arguments of bifurcation just before.  And so, I think I know generally what your position is; but if I may distinguish this particular matter from the former one that we just heard, we're not seeking damages as in the last case.  And civil penalties under *Tull* are within the sound discretion of the Court.

And if the trial is not bifurcated, then the jury will have to be repeatedly instructed that, you know, these separate issues of whether or not the defendant tried in good faith to comply is not relevant to their findings of liability.

MR. NEACH:  Your Honor, it's --

THE COURT:  You can have a seat.  Don't worry.

*Deborah D. Parker, U.S. Court Reporter*

MR. NEACH:  Oh, okay.  Thanks, Your Honor.

It's too broad.  The way this motion is phrased, it's too broad.  I mean, a motion *in limine* has got to focus on specific evidence.  And the way it's -- it's being set forth is it's going to capture everything.  I mean, they built a big basin.  And our argument is that it captures all the water -- substantially, all the water; that this doesn't create an issue.  We don't have to say it's good faith.  But our point is, they did that to comply with the Act and that's -- therefore, they're not liable.

And, of course, they do it in good faith.  But I mean, if they're just trying to say *Good faith isn't a defense to strict liability,* then that's fine.  I just don't understand what evidence they're trying to exclude.  Because, of course, we're going to say, *Here's all the things we did to comply.*

THE COURT:  It depends at the most fearful that you'll argue that you're a small company that tried and tried.  It's the little tug that could.  And that's their only concern.

The rest of the ruling I don't think meets with much of a concern on their part.  It's that sympathic issue.  I think that you're entitled to put into evidence of your efforts.  I think it's relevant to show that -- to whether you did in fact comply.  I do have some problems with the

argument that you're a little tiny company and -- you know, the sympathy factor.  And there's where I may cut you off, so I'll see what you do.  But if I have to do that in front of the jury, it's damaging.

Okay.

MR. NEACH:  Understood, Your Honor.

THE COURT:  So I'm going to deny the motion at this time.  But with a fair warning that if that's going to be the guise of it and they make an objection, it may be sustained or in the middle of argument, if that's the argument, it may be -- I'm not saying it is yet.  I have to hear it, but I agree.  It's too broad right now at the present time.  It would preclude you, I think, from showing these efforts.

The third is to preclude the defendant from challenging the terms of the general permit.  Plaintiffs argued that the defendant cannot assert a defense based on a challenge of the permit terms because defendant failed to take the appropriate steps required to engage in such a challenge.

Defendant could have engaged in litigation to challenge the state permit terms, challenged the permit administratively, or applied for an individual NPDES permit.

Defendant argues this motion *in limine* -- excuse me -- is vague and overly broad.

I'm going to listen to your arguments, but I think we're going to end up with me granting this motion.

Defendant was required to exhaust its administrative remedies before it could challenge the permit in this court, in my opinion.

So let me turn to you on the defense. Make your record, et cetera.

MR. NEACH: That's fine, Your Honor.

Again, I just think as requested or as they're moving for that it's broader than what they're just saying. But if it is just that they're saying you can't -- if the Court's order is, *You can't challenge what the permit says,* we're not going to make that argument. That's fine, if that's the limit of the order, but it's lack of understanding, specifically, what evidence they're going after that I have a hard time with.

THE COURT: All right. The fourth is to exclude testimony from rebuttal expert, Paul Hacunda, that lacks factual support or has been mooted by the Court's ruling on the summary judgment motion.

Defendants now argue, or plaintiffs argue -- I'm sorry -- that Hacunda's testimony is now moot. His testimony about how or whether discharges from defendant facility reached Temescal Creek is inadmissible now that the Court has ruled in plaintiffs' favor on its first cause of

action with regard to defendant's effluent violations under the Clear and Water Act -- I'm sorry, the Clear Water Act. Plaintiffs also argue that Hacunda's opinions lack factual support and do not meet the reliability standard under *Daubert*.

In the reply, defendants argue that Hacunda's testimony remains relevant, because plaintiffs are still seeking to prove their second cause of action, alleging that defendant violated the Clean Water Act by discharging prohibited storm water resulting in the coloration of the receiving waters and Hacunda's opinion remains relevant to this issue. Defendant has also stated and argued that Hacunda's statements comply with *Daubert*, because his statements are based either on his personal knowledge or sufficient reliable facts.

I would like to hear argument from the parties on this. I'm inclined, but not ruling yet, to deny this motion, as Mr. Hacunda's testimony is relevant to plaintiffs' second cause of action, alleging discharge of prohibited storm water by defendant.

So, Counsel, I don't care who starts.

MS. SPINUZZI: Yes, Your Honor.

The goal of this motion *in limine* -- and I think this can be broken down into two categories and one of them goes to something you said earlier.

So the first category is whether or not issues have been mooted on summary judgment.  And to the extent that this Court has already found the defendant violated --

*(Court Reporter requests clarification for the record.)*

MS. SPINUZZI:  -- effluent limitations --

THE COURT:  E-F-F-L-U-E-N-T.

MS. SPINUZZI:  -- and had a deficient SWPPP -- that's S-W-P-P-P -- that their expert not be allowed to testify that they were not violating effluent limitations and that their SWPPP was sufficient to --

THE COURT:  I'm sorry.

MS. SPINUZZI:  Sorry, Your Honor.  I have the second --

THE COURT:  No, I apologize to you.  Please.

MS. SPINUZZI:  The second part of this motion *in limine* pertains to whether or not Mr. Hacunda's testimony has sufficient scientific basis.  Something that he said in his expert report is that the defendant's facility does not discharge to Temescal or he's never seen it discharge to Temescal Creek, but he further testified that he's never been there when it's raining.

And so we have some serious concerns about -- about those aspects of his testimony as well.

THE COURT:  Counsel.

15

MR. ESSAYLI:  Your Honor, two points:  On the mootness, the issue the Court ruled on in the summary judgment motion is a complete different standard and different elements from that which are being considered by the jury here.  They have to prove -- we listed the elements there under the Ninth Circuit standard.  They got to prove that there was a discharge of a pollutant from a point source that reached the waters.

And our point here, Your Honor, is while the Court ruled for the purposes of summary judgment that it did not have to consider whether or not the water reached any of the navigable waters of the United States, it's a different standard for this cause of action.  That has not been resolved.  The Court has not ruled on that, and it's completely relevant and appropriate for the jury to hear evidence on that point.

Secondly, Your Honor, as far as the reliability, I have a real problem with the way in which this motion was written and the way that they've represented the statements of Mr. Hacunda.  They're frankly not accurate.  And if you read the statements that they cite in his deposition, they aren't [sic] even say what defense counsel is arguing in there.  His statements about whether or not the water reached are based on scientific facts.  He says based on the soil and the rain data, he concluded that the water would

have never reached --

(Court Reporter requests clarification for the record.)

MR. ESSAYLI:  Sorry.

THE COURT:  -- reached the creek.

MR. ESSAYLI:  -- Temescal Creek.

And so, you know, whether or not he was ever out there during a rain event, he never proffered that.  He never put that in the declaration, and I'm not sure where this is coming from.  So I'd submit on the Court's tentative.

Thank you, Your Honor.

THE COURT:  Thank you very much.

I deny this motion.  Hacunda's testimony is relevant to plaintiffs' second cause of action alleging discharge of prohibited storm water.

The fifth is to exclude opinions by defendant's rebuttal expert that are outside the scope of rebuttal opinion and plaintiffs have argued that Hacunda as a rebuttal expert to respond to opinions offered by -- defendant has designated Hacunda as a rebuttal expert to respond to opinions offered by plaintiffs' expert, Horner -- or Dr. Horner, but Hacunda's rebuttal report does more than respond to Horner's expert opinions, and in doing so, Hacunda's testimony is rendered inadmissible.

Defense argued that this is -- that it has never labeled it expert as a rebuttal expert and thus all of Hacunda's testimony is admissible.

I'm inclined to deny this motion. It appears to me that defendant intended to have Hacunda to be a full defense expert and, therefore, his relevant expert testimony is admissible.

Here's the problem for you. I want you to check my record and see whether or not rebuttal witnesses have ever testified. You won't find it. So put him on. And that's it.

MS. SPINUZZI: Your Honor --

THE COURT: No, listen to me very carefully now. Very carefully. There won't be rebuttal. It will have to be earthshaking, and I'll see each question written down. Your expert gets on the stand. And that's it.

MR. ESSAYLI: Yes, sir.

THE COURT: Now, I cut you off, because you cut me off, so let me politely turn to you.

What else did you have to say?

MS. SPINUZZI: Your Honor, I just wanted to apprise the Court of the deadlines in this matter. And the expert deadline was on April 10th.

THE COURT: Oh, we can solve that very easily. We can depose him this weekend. You'll be prepared.

MR. ESSAYLI:  They deposed our expert already, Your Honor.

THE COURT:  If you got a problem, there's no problem for me at all.

MS. SPINUZZI:  The problem is not that we didn't get to depose their expert.  The problem is that we didn't have an opportunity to submit a rebuttal report prior to the discovery cutoff.

THE COURT:  Okay.  Do you want a rebuttal report?  Fine.

MS. SPINUZZI:  When would that be due, Your Honor?

THE COURT:  What's comfortable for you?

MS. SPINUZZI:  I would have to check with my expert.  He was planning on preparing for trial next week, so --

THE COURT:  It's fine.  We'll have time.  You won't be precluded.

MS. SPINUZZI:  Can we prepare a rebuttal report?  If the trial is being moved by the end --

THE COURT:  I've got to move that trial off the date.

MS. SPINUZZI:  Yeah.

THE COURT:  Okay.  So we'll talk about the date in a while and then you'll tell me what's convenient.  We'll work together.

19

MS. SPINUZZI:  Okay.  But we do have your -- the Court's permission to file a rebuttal report?

THE COURT:  Yes.

MS. SPINUZZI:  Thank you.

THE COURT:  Absolutely.  The next is to exclude argument, plaintiffs' motion to -- in fact, by the way, I'm going to have you out of here in a little while, okay? -- is to exclude argument that defendant's violations under the Clean Water Act are moot.

And the plaintiffs have argued in their papers that defendant operates under the general permit and cannot demonstrate that its past failures to comply with the permit requirements are not likely to recur.  Accordingly, defendant's liability has not been mooted and any suggestion that there are ongoing violations and/or their liability is not moot should be excluded.

And in reply, defendant is arguing this motion *in limine* is improper in asking the Court to decide factual issues and rule on liability.  Further, mootness is relevant in Clean Water Act cases, and you've argued that plaintiffs are only entitled to bring an action based on continuing and ongoing violation, not just wholly past violations.

I'm going to hear brief argument on this matter, but I'm inclined to tentatively deny this motion as premature.  It requires the Court to make a ruling on

20

liability, and I'm more concerned about that.

Counsel.

MS. SPINUZZI:  Your Honor, I think the primary concern is whether or not we are going to be re-litigating Causes of Action 1 and 5.  And to the extent that we are bringing every cause of action to trial, then I would agree with your tentative.  To the extent that Causes of Action 1 and 5 have been established, then this only -- this motion only applies to those causes of action.

THE COURT:  Okay.  Counsel.

MR. NEACH:  Well, from what I saw of the pretrial conference order, they're not doing anything with Cause of Action 1 in the case.  But that doesn't mean mootness doesn't apply to Cause of Action 2, or 3, or 4, or 6 -- I believe are the ones that are still outstanding, or maybe 7. I might be confused on the specific number.

But the point is that they're fact issues that go to mootness and that it is premature to decide that when there's going to be a full record based on fact witnesses, documents and the like.

THE COURT:  Thank you.

It's denied.  It's premature.

7.  To exclude argument that defendant's sampling was not from qualified storm events.

Plaintiffs are arguing to the Court that they

*Deborah D. Parker, U.S. Court Reporter*

believe defendant will attempt to argue that the sampling and reporting requirements from qualifying storm events does not apply to defendant because discharge from the facility might not reach Temescal Creek, and this argument would be highly likely to mislead the jury.

And in the reply, you've argued on behalf of the defendant that plaintiffs' second cause of action requires proof that the facility discharges prohibited storm water discharges in violation of the permit.

So, accordingly, it is relevant from your perspective whether defendant took storm water samples following a qualified storm event or not and what those storm water samples indicated.

So, once again, I would like to hear some brief argument, but I think, once again, I'm inclined to tentatively deny this motion, because I believe it's overly broad.

Counsel.

MS. SPINUZZI:  Your Honor, I think that there is some confusion on what a "qualified storm event" is and when it matters.  For cause of action 2, we would agree with defendant that it does require that the discharge from defendant's facility actually reaches Temescal Creek.  For the purposes of sampling on the other hand, which goes to Causes of Action 6 and 7, a discharger is required to sample

any time rainwater leaves their facility and it wasn't preceded within 48 hours by another storm.  If they collect a storm water sample at all and have it analyzed, they are required under the permit to submit those sample results to the state website called SMARTS, and those sample results go into all of their calculations of whether or not certain other terms of the permit are triggered.  And their consultant has further made arguments that a qualified storm event is a storm event of a particular size which that's not what the permit says.  A "qualified storm event" is just any time your facility discharges, and it doesn't need to discharge to the creek.  It just has to leave your property. And that's just what the terms of the permit say.

THE COURT:  Counsel.

MR. NEACH:  Your Honor, this sounds a lot like the same arguments they made on summary judgment.  It sounds like cross-examination.

THE COURT:  It's denied as overly broad, Counsel.

8.  This is a plaintiffs' motion to preclude evidence of consent decrees or other settlements entered into in other cases brought by plaintiffs.

You've argued that the introduction of evidence regarding Plaintiff Waterkeeper's prior Clean Water Act litigation so that defendant can then argue plaintiffs are vexatious litigants would be prejudicial because this action

was filed in good faith with the expectation of prevailing.

And defendants have argued that the motion would improperly exclude evidence tending to disprove plaintiffs' standing.  And defendants have argued to the Court that plaintiffs have filed dozens of lawsuits in this District and evidence of the prior lawsuit is relevant for the defendant to show that plaintiffs' primary purpose, as carried out by its executive director, is making money rather than maintaining water quality, and thus the organization does not have standing to bring this lawsuit.

Counsel, I don't think I need to hear argument on this.  I'm granting this motion.  This evidence is not relevant, and I previously determined that plaintiffs have standing in the order regarding summary judgment.

The ninth motion is to preclude introduction of improper character evidence regarding Plaintiff Waterkeeper's Executive Director, Garry Brown.

And the plaintiffs argue that defendant is seeking to assert a defense that water quality is not germane to Waterkeeper's purpose and thus Waterkeeper does not have standing to bring the instant action.  Plaintiffs are arguing in the papers that testimony from Mr. Brown is irrelevant, because he lacks personal knowledge of the issues relevant to the litigation and a newspaper article about Brown should be precluded, because it's irrelevant

hearsay and was not produced in discovery.

And in reply, the plaintiffs' Executive Director Garry Brown's previous arrest and the article regarding his mismanagement of his previous role with the Boy Scouts, is relevant to demonstrate that the primary purpose of the plaintiffs' organization is making money for Mr. Brown, and thus plaintiffs do not have standing because they cannot show that the goal of preserving water quality is germane to the organization's purpose.

I'm granting this motion.  This evidence is not relevant, and I previously have determined that plaintiffs have standing in the order regarding summary judgment.

The tenth motion is to preclude defendant from attempting to impeach its own storm water samples.  And plaintiffs have argued that the defendant should not be able to attempt to impeach its own water samples because the Ninth Circuit has held that self-monitoring reports are conclusive evidence of an exceedance of a permit limitation, and a defendant may not escape liability under a permit due to its own alleged error in sampling.

There is no opposition from the defendant; is that correct?

MR. NEACH:  Your Honor, it's not an argument we're going to make.

THE COURT:  Okay.

MR. NEACH:  The only thing I just want to point out --

THE COURT:  Let's move on.  I'm granting this.

MR. NEACH:  Okay.

THE COURT:  Defendant cannot argue to impeach its own storm water sampling, as defendant is responsible for the accurate storm water sampling under the Clean Water Act and the applicable permit.

The eleventh motion is to preclude defendant from arguing that it relied on the Regional Board to tell it how to comply with its NPDES permit, as a defense in noncompliance.

Plaintiffs note that a Regional Board staff member investigated the facility and made recommendations to assist the facility in its compliance but did not make any determination that the facility was in compliance; in fact, on multiple occasions, the Regional Board staff informed plaintiff -- strike that.

-- informed the defendant that it was in violation of a permit.

There's no opposition from the defendant.

I'd like to hear the argument from the parties, if it's applicable.

And defendant, are you opposing this motion?

MR. NEACH:  Not at the jury trial phase,

Your Honor.

THE COURT:  Okay.  It's granted.

The twelfth motion is to preclude defendant from calling opposing counsel, Sarah Spinuzzi, as a witness, based on the attorney-client privilege.

And defendant is seeking to call or may seek to call Ms. Spinuzzi as a fact witness, because she had direct contact with Michael Roth of the state water board, and the violations noted by Mr. Roth is the information that plaintiffs relied upon in developing their complaint.  Thus, the argument is defendant should be able to question Ms. Spinuzzi about her discussions with Mr. Roth, as those discussions were not privileged.

I think I would like to hear argument about the parties -- or from the parties particularly regarding the relevance of Ms. Spinuzzi's potential testimony.

MR. NEACH:  Your Honor, there were a few e-mails from Ms. Spinuzzi back and forth with Mr. Roth, right in the 2017 period, which is the time period after Corona Clay developed the big basin that we talked about, the silk basin, and before that they filed their lawsuit.  And Mr. Roth really didn't have any memory of those discussions, wasn't able to talk about what happened during those discussions.  We think that they're relevant to the -- the credibility of this lawsuit that seems to have ignored this

basin that was built and has a lot to do with how this organization is run.

THE COURT:  Counsel.

MS. SPINUZZI:  Your Honor, my e-mails to Mr. Roth related to a request for public records which is essentially pretrial discovery.  And Mr. Roth is on our witness list, and we are required by law to notify the regulators prior to initiating a Clean Water Act lawsuit, and I was merely complying with my obligations under the law to engage in pretrial discovery and to notify the regulators of our intent to file suit.

Furthermore, Your Honor, I would note that in their opposition, they cite to some deposition testimony and they allude to various arguments that they intend to make which is that, you know, it's an attorney run organization.

THE COURT:  I'm going to preclude the defendant from calling you as opposing counsel, Ms. Spinuzzi --

MS. SPINUZZI:  Thank you, Your Honor.

THE COURT:  -- based on the attorney-client privilege.

13.  To preclude defendant from seeking testimony of witnesses with no knowledge of facts relevant to issues of proof or defenses.  And the plaintiffs note that the Executive Director, Garry Brown and Ellen Brown -- Mr. Brown's wife -- had been named in defendant's witness

list, but neither individual has any personal knowledge of any matter that is of consequence in this action.

And the defendant is arguing that they believe both witnesses have highly pertinent information regarding standing.

So I'd like to hear from the parties, but I'm inclined, initially, to grant this motion, unless defendant seeks to call Mr. Brown to testify on an issue relevant to the causes of action in the instant case.

I think I previously mentioned I have already determined plaintiffs have standing.

So, Counsel.

MR. NEACH:  Your Honor, on all of those motions *in limine* -- I guess it's 8, 9, 12 and 13 -- we cited in our opposition, but under the *Lujan* case, L-U-J-A-N, 504 U.S. 555, they have to prove standing at each stage of litigation.  It's not -- it's something very clear that -- sorry, I'm finding the specific page.  It's at page 561.

They're not mere pleading requirements but rather an indispensable part of the plaintiff's case.  Each element must be supported in the same way as any other matter on which the plaintiff utters the burden of proof; in other words, what the manner and degree of evidence required at the successive stages of the litigation.

So I think the Court's ruling on summary judgment

certainly impacts what it found:  Cause of Action 1, Cause of Action 5.  But that doesn't give them a free pass at trial on the remaining causes of action.  As a matter of fact, the witnesses they put up for standing, we didn't depose them.  We should be able to get a chance to cross-examine them to get to the veracity of the statements they made in their declaration.  I don't think standing is a done issue.

THE COURT:  Counsel.

MS. SPINUZZI:  Your Honor, the *Lujan* case does not make a finding one way or the other as to what defense counsel argues.  Rather, that in order to pursue a Clean Water Act case, the plaintiff must meet the Constitutional minimum requirement.  But I think that defendant's real argument is that they think that we need to establish standing in some higher level for the separate causes of action.  But in a Clean Water Act case, once you've established the Constitutional minimum requirements, a plaintiff is allowed to pursue both procedural and substantive issues of any permit that it's seeking to enforce, and so -- and with regards to the issue of whether or not they had an opportunity to depose our standing witnesses, our standing witnesses were timely disclosed far prior to discovery and they had every opportunity.  And had they ever made a request to take those depositions, we would

have happily obliged.

THE COURT:  I'm going to grant this motion, unless the defendant seeks to call Mr. Brown to testify on an issue relevant to the causes of action in this matter.  I previously mentioned I've already determined plaintiffs have standing.

Concerning defendant's motion *in limine*, your first motion to exclude untimely disclosed witnesses:

Defendant seeks to exclude Thomas Hashemi and Karla Gutierrez because they were added to Plaintiffs' Amended Witness List.  Defendants have also noted that the plaintiff has generically listed a custodian of record to be called from the California Regional Water Quality Control Board for Reference Laboratories but has not identified those specific witnesses.

Plaintiffs have argued these witnesses are crucial to the case and should not be a surprise to the defendant.  Plaintiffs stated Mr. Hashemi works for the laboratory defendant chose to analyze their storm water samples and thus plaintiff needs to call him.  Plaintiffs indicate that they will not in fact call Ms. Gutierrez.  As for a custodian of record, plaintiffs added this individual to its witness list in response to defendant's recent arguments seeking to impeach their own storm water sample reports.

I'm going to deny this motion.  Plaintiffs may

call the witnesses provided defendant has an opportunity to depose them.  So it's going to be a deposition beforehand, if you'll like, and we'll work out those dates when we decide a trial date.

MS. SPINUZZI:  Thank you, Your Honor.

THE COURT:  Now, the second motion is to exclude an inspection conducted by Michael Roth, on December 16th, 2016, marked as Exhibit 15.

Defendant have argued to the Court that this evidence is irrelevant because it predates significant mitigation measures enacted by defendant to prevent future runoff and it predates the filing of this lawsuit in 2018.

In the reply, plaintiffs have argued that the inspections and photographs by Mr. Roth provided evidence of site conditions before Corona Clay engaged in post-litigation remedial actions at its facility, which is highly relevant evidence.

I'm denying this motion.  The inspection in December 2016 is relevant to demonstrate baseline and ongoing conditions at defendant's facility.

MR. ESSAYLI:  Your Honor, can we be heard briefly on that for the record?

THE COURT:  Sure.

MR. ESSAYLI:  Thank you, Your Honor.

The primary case --

32

THE COURT:  I got the papers, and I don't know you need much more of a record, so you got about one minute.

MR. ESSAYLI:  I appreciate that.  Thank you, Your Honor.

Our primary reliance on this is the Ninth Circuit authority that we've cited, the *National Resource Defense Council* case, in which the defendants have to prove that there's active violations on the date the complaint was filed.  So our concern here is the prejudice to defense and the confusion to the jury.  If they're hearing about the condition of the property before the complaint is filed, they may confuse that as evidence that defendants are engaged in an ongoing violation.

THE COURT:  Your motion is denied.

Thank you, Counsel.

The third is to exclude reference to a disciplinary order issued in November 2014, which placed Mr. Hacunda, defendant's expert witness, on probation for two years.  And defendant argues that the disciplinary order did not make any findings as to Mr. Hacunda's competence or qualifications to testify as an expert on the subject matter at issue in this case, and thus its probative value is substantially outweighed by its prejudicial effect.

Plaintiff is now arguing -- or has argued to the Court that the prior disciplinary action should be

*Deborah D. Parker, U.S. Court Reporter*

33

admissible to impeach Mr. Hacunda's credibility as an expert in this case.

What was the subject of the disciplinary order?

MR. KELLY:  The subject of the disciplinary order was negligence and failure to comply with the law, in regards to placement of water valves for housing development.  The failure to comply with the law was a law --

THE COURT:  Do I have that disciplinary order in my record?  I didn't see it.  I apologize.

MR. ESSAYLI:  We attached it to our motion, Your Honor.

I believe it's Exhibit A to Docket 79.

THE COURT:  Thank you.  I'll look again.

So why was he disciplined?

MR. KELLY:  He was disciplined for the failure to put on a map what are, essentially, backflow devices at a housing development of approximately 200 homes.  There were eight --

THE COURT:  Why he failed to do this?  Did he lie about this?  Fabricate?

MR. KELLY:  He did not place on the map the location of houses that needed to have this --

THE COURT:  I understand that.  That's not my -- and I'm sorry I'm inarticulate.

*Deborah D. Parker, U.S. Court Reporter*

Okay.  He didn't place that on the map.

MR. KELLY:  Right.

THE COURT:  Intentionally?

MR. KELLY:  Negligently.

THE COURT:  Okay.  And how does that go to his character for truthfulness or veracity?

MR. KELLY:  The enforcement action by the California Board of Professional Engineers was going on at the same time he was retained by Corona Clay Co. for the development of their BMP improvements in 2014, 2015, when they first got permit applications.  He has continued to be their engineer and expert.

THE COURT:  Thank you very much.

Counsel, your argument.

MR. ESSAYLI:  Your Honor, I think the Court hit the issue on the head.  There's nothing here to impeach his credibility.  There was a negligence finding.  It was a slap on the wrist.  They didn't impose any sanctions other than putting him on probation.  He's had an unblemished record, and I think --

THE COURT:  I'm granting this motion.

MR. ESSAYLI:  Thank you, Your Honor.

THE COURT:  All right.  Now, the matter is currently set for July 9th, and I know that that catches you by surprise, but you've got some other cases that are older

35

in front of you.

So I don't want to inconvenience you, but I've got to minimally move it to July 23rd.  And I'm a little afraid to do that, because you've got a case sitting right here.

So I'm thinking this:  I'm thinking I should vacate the July 9th date and invite you back July 23rd.  And I think that that way you can check with all your folks, and I really don't care if we try it in July later on or August, but I've asked the courtesy of going back and forth between the two of you.  I don't care if we try it September or October, frankly.

So if we come up with a new case [sic] -- this case has some complexity to it, and you've got a lot of experts here.  It's not like my dog case, okay?  Those experts are going to be jet-propelled on the stand, but you've got some experts that really matter here and they're important to you, and I want to pay that respect on this matter.  The other case -- I'm just kidding you, but I'm not -- the expert is about the dog -- so --

But here you got a far different matter.  I want to be, really, you know, very careful about this.

So can we meet and confer on July 23rd?  Can we vacate the date of July 9th?  Can we come up with a new date with a conference back and forth between the two you as a courtesy and then I'll get you out of here, I promise you.

Let me call you the first matter on that day, because I've got you on the last matter today.

MS. SPINUZZI:  So, Your Honor, I just want to clarify:  July 23rd, you're calling us back for a conference, or for trial?

THE COURT:  What did I just say?  I thought I was really articulate.

MS. SPINUZZI:  I'm sorry.

THE COURT:  Yeah, there we go.

Now I see what I'm doing.  My head is spinning with all your *in limine* motions.

MR. NEACH:  To be fair to Ms. Spinuzzi, I was going to ask the same question.

THE COURT:  Oh, well, let me humbly apologize to both of you.  I wasn't clear.  If you ganged up on me, I did something wrong.

This is a status conference.  We're going to set the trial date after we meet on July 23rd.  And what I'm trying do is get the cost down by calling your witnesses off now.  And I can work with you.  If you tell me it's October, fine; if you tell me it's September, fine.  I'm just asking you to place that call after you check with your experts, okay?

MR. NEACH:  That's fine, Your Honor.

THE COURT:  Okay?

MS. SPINUZZI:  Your Honor, if I may.  I don't know if -- sorry.  I guess I should stop talking while you're trying to articulate something, but I was going to ask for some points of clarification and perhaps guidance from the Court that might --

THE COURT:  We're not doing that now.  Just tell me the area you're concerned about, and we're going to put everything we've done in writing for you.

MS. SPINUZZI:  Okay.  For purposes of the trial, will we be relitigating the issues of standing, Cause of Action 1 and Cause of Action 5?

THE COURT:  No, I don't believe so.

MS. SPINUZZI:  Thank you.

MR. ESSAYLI:  Your Honor, I think the main disconnect here is:  They have a completely different understanding of what they think they have to prove at trial versus what we believe they have to prove at trial.  And the pretrial order will allude to that.  They had all kinds of elements listed, so I think that's part of the disconnect here is they feel they've already accomplished --

THE COURT:  Let me bid you good night.  We're going to have another conference on July 23rd.

MS. SPINUZZI:  Thank you.

THE COURT:  Okay.

MS. SPINUZZI:  Thank you, Your Honor.

38

MR. NEACH:  Thank you, Your Honor.

THE COURT:  Good night.

MR. NEACH:  Your Honor, was that 3-D printout of the horse, where you joking about giving those out?

*(At 5:27 p.m., proceedings were adjourned.)*


-oOo-

*Deborah D. Parker, U.S. Court Reporter*

39

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  August 18, 2019


_____/s/DEBORAH D. PARKER____
DEBORAH D. PARKER, OFFICIAL REPORTER

*Deborah D. Parker, U.S. Court Reporter*