Jennifer F. Novak, SBN 183882
novak@jfnovaklaw.com
LAW OFFICE OF JENNIFER F. NOVAK
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
Telephone:   (310) 693-0775
Facsimile:    (310) 957-2624

Colin Kelly, SBN 266956
Sarah Spinuzzi, SBN 305658
colin@coastkeeper.org
sarah@coastkeeper.org
ORANGE COUNTY COASTKEEPER
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626
Telephone:   (714) 850-1965
Facsimile:    (714) 850-1592

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INLAND EMPIRE WATERKEEPER, a project of Orange County Coastkeeper, and ORANGE COUNTY COASTKEEPER, a California non-profit corporation; <br><br> Plaintiffs, <br><br> v. <br><br> CORONA CLAY CO., a California Corporation; <br><br> Defendant. | Case No.: 8:18-cv-00333 DOC (DFM) <br><br> Hon. David O. Carter <br><br> **PLAINTIFFS' TRIAL BRIEF** <br><br> (Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq.) <br><br> Trial Date:  October 21, 2019 <br> Time: 1:30 p.m. <br> Location:  Courtroom 9D <br> Action Filed: April 20, 2018 |

PLAINTIFFS' TRIAL BRIEF                           1                  Case No. 8:18-cv-00333 DOC (DFM)

**TO THE HONORABLE COURT AND TO ALL PARTIES AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiffs Inland Empire Waterkeeper and Orange County Coastkeeper ("Waterkeeper") hereby submit this trial brief in advance of trial set to commence on October 21, 2019, at the above captioned court.

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................6

II.  ISSUES REMAINING FOR TRIAL ...................................................6

A.   Jury Issues. ......................................................................................6

B.   Issues for the Court to Determine....................................................7

III.   CALCULATING THE NUMBER OF CLEAN WATER ACT VIOLATIONS FOR WHICH DEFENDANT IS LIABLE. ..........................................8

A. Failure to Implement an Adequate SWPPP is a Daily Violation for Purposes of Calculating Civil Penalties. ...................................................8

B.   Violations of this Permit's BMP Requirements Should Be Assessed Per Day the Facility Failed to Implement BMPs that Comply with Section V of the Permit.........9

C.   At Trial, Waterkeeper Will Present Evidence to Prove Dozens of Additional Violations of the Permit's Monitoring Requirements, Reporting Requirements, and Discharge Prohibitions. .............................................................................12

   1.   Monitoring Requirements. ........................................................12

   2.   Reporting Requirements. ..........................................................12

   3.   Discharge Prohibitions. ............................................................13

IV.   REMEDY SOUGHT BY WATERKEEPER: ASSESSMENT OF CIVIL PENALTIES AND INJUNCTIVE RELIEF. ..........................................13

A.   The Court has the Sole Discretion for Determining the Appropriate Remedy ..13

B.   The Court Should Assess Civil Penalties Based on the Maximum Amount Allowed and Adjust Downwards After Consideration of Statutory Factors.............14

   1.  Factors the Court May Consider When Assessing Civil Penalties. ..................15
      a.   Seriousness of the Violation(s)...............................................15
      b.   Economic Benefit Resulting from the Violation .........................................16
      c.   History of Violations .................................................................17
      d.   Good-Faith Efforts to Comply................................................17
      e.   Economic Impact of the Penalty on the Violator ......................................18
      f.   Other Matters as Justice May Require.......................................18

   2.   The Court Should Assess a Civil Penalty of $3,700,000, but no Less than $230,000..................................................................................19

C.   Waterkeeper's Proposed Injunctive Relief.....................................19

V.   CONCLUSION ..................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL SATUTES**

33 U.S.C. §1319..............................................................................8, 9, 11, 15, 16

33 U.S.C.A. § 1319 ....................................................................................14, 15

**FEDERAL CASES**

*Biological Diversity v. Marina Point Dev. Assocs.*, 434 F. Supp. 2d 789

    (C.D. Cal. 2006)...........................................................................................15

*Borden Ranch P'ship v. United States Army Corps of Eng'rs*,

    261 F.3d 810 (9th Cir. 2001).............................................................8, 10, 11

*Borden Ranch P'ship v. U.S. Army Corps of Eng'rs*, No. CIV. S97–0858

    GEBJFM, 1999 WL 1797329, at *14 n.12 (E.D. Cal. Nov. 8, 1999).............15

*Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*

    *791 F.2d 304, 314 (4th Cir. 1986)* ................................................................10

*Ctr. for Biological Diversity v. Marina Point Dev. Assocs.*, 434 F. Supp. 2d 789

    (C.D. Cal. 2006)...........................................................................................15

*Haw.'s Thousand Friends v. City & Cty. of Honolulu*, 821 F. Supp. 1368

    (D. Haw. 1993).............................................................................................15

*In re B.J. Carney Indus., Inc.*, CWA Appeal No. 96-2,

    7 E.A.D. 171, 232 n.82 (EAB 1997)..............................................................18

*In re Bituma-Stor, Inc.*, Docket No. EPCRA-7-99-0045

    (ALJ Gunning Jan. 22, 2001).......................................................................18

*In re Britton Constr.*, Docket No. CWA-III-096,

    1999 WL 362870, at *22 n.21 (EAB Mar. 30, 1999) ....................................18

*In re Chempace Corp.*, Docket No. 5-IFFRA-96-017,

    2000 WL 696821, at *10 (EAB May 18, 2000)..............................................18

*Kelly v. U.S. E.P.A.*, 203 F.3d 519......................................................................14

*Kleinman v. City of Austin*, 310 F. Supp. 3d 770 (W.D. Tex. 2018) ....................16

*Leslie Salt Co. v. United States,* 55 F.3d 1388 (9th Cir. 1995)..............................15

*Natural Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985 (9th Cir. 2000) ........8

*Piney Run Pres. Ass'n v. County Comm'rs of Carroll Cty., Md.*,
     82 F. Supp. 2d 464 (D. Md. 2000) ...................................................................17

*Pub. Interest Research Grp. of N.J., Inc. v. Powell Duffryn*
     Terminals *Inc.*, 913 F.2d 64 (3d Cir. 1990) ..................................................16

*Puget Soundkeeper Alliance v. Rainier Petroleum Corp.*,
     138 F. Supp. 3d 1170 (W.D. Wash. 2015)........................................................8

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*,
     73 F.3d 546 (5th Cir. 1996)...........................................................................17

*Tull v. U.S.*, 481 U.S. 412 (1987)........................................................................14

*United States v. Allegheny Ludlum Corp.*,
     187 F. Supp. 2d 426 (W.D. Penn. 2002) .............................................15, 16, 17

*United States v. Allegheny Ludlum Corp.*,
     366 F.3d 164 (3d Cir. 2004).........................................................................15

*United States v. Mun. Auth. of Union Twp.*,
     929 F. Supp. 80 (M.D. Pa. 1996) ...................................................................16

*United States v. Roll Coater, Inc.*, 21
     Envtl. L. Rep. 21073 (S.D. Ind. 1991) ............................................................17

*United States v. Smithfield Foods, Inc.*,
     191 F.3d 516, 529 (4th Cir. 1999)............................................................17, 18

*United States v. Smithfield Foods, Inc.*,
     972 F. Supp. 338 (E.D. Va. 1997)..................................................................16

**FEDERAL REGULATIONS**

40 C.F.R. § 19.4 ...............................................................................................9, 11

## PLAINTIFFS' TRIAL BRIEF

### I.   INTRODUCTION

Plaintiffs Inland Empire Waterkeeper and Orange County Coastkeeper (collectively "Waterkeeper" or "Plaintiffs") filed a citizen suit against Corona Clay ("Defendant") for violations of the Clean Water Act ("the Act" or "CWA") due to Defendant's clay manufacturing facility ("Facility") generating and discharging pollutants in violation of California's permit requirements under the National Pollutant Discharge Elimination System ("NPDES").  This Trial Brief outlines (a) the issues remaining for trial, (b) which limited issues should be decided by a jury as opposed to those solely within the Court's authority, and (c) the remedies Waterkeeper seeks.

### II.   ISSUES REMAINING FOR TRIAL

The Court issued an order granting partial summary judgment in Plaintiffs' favor on several key issues and causes of action ("Order").  First, the Court determined that Plaintiffs have standing to bring this suit. Dkt. 55 at 12:2-3.  Second, the Court determined that the Facility is required to comply with the terms of California's General Permit for Storm Water Discharges Associated with Industrial Activities[1] ("Permit" or "General Permit"). Dkt. 55 at 15:19-25.  In addition, the Court ruled in favor of Plaintiffs on their first cause of action, finding that Defendant violated the Permit's effluent limitations by failing to implement appropriate Best Management Practices ("BMPs"). Dkt. 55 at 16:1-2.  The Court also ruled in Plaintiffs' favor on cause of action five, finding that Defendant violated the Permit by failing to comply with its Storm Water Pollution Prevention Plan ("SWPPP") requirements.

A. Jury Issues.

To the extent that Defendant has demanded that a jury determine questions of liability, Waterkeeper will insist that the jury receive instruction as to the Permit's

---

[1] Order NPDES No. CAS-00001, Order 2014-0057-DWQ and Fact Sheet.

PLAINTIFFS' TRIAL BRIEF                   6          Case No. 8:18-cv-00333 DOC (DFM)

requirements and that the Permit's terms are not up for interpretation or debate. The Permit is a quasi-judicial document adopted by the State Water Resources Control Board ("State Board") and whose terms have already been resolved and set through a judicial challenge.

With this in mind, the questions of fact that remain ripe for a jury to decide include:

1.      Whether Defendant violated the Permit's discharge prohibitions, and the number of violations for the purpose of calculating civil penalties;

2.      Whether Defendant violated the Permit's monitoring requirements, and how many violations occurred for the purpose of calculating civil penalties; and

3.      Whether Defendant violated the Permit's reporting requirements, and how many violations occurred for the purpose of calculating civil penalties.

B. Issues for the Court to Determine.

Plaintiffs submit that the following additional issues need to be decided by the Court, but are questions of law, based on the facts already established on summary judgment, or are within the sole discretion of the Court:

1.      The number of violations for which Defendant is liable for violating Section V of the Permit, which requires Defendant to implement BMPs that comply with the Best Available Technology/Best Conventional Technology ("BAT/BCT") standard for the purpose of calculating civil penalties;

2.      The number of violations for which Defendant is liable for failure to meet the SWPPP requirements of Section X of the Permit for the purpose of calculating civil penalties; and,

3.      The assessment of civil penalties and imposition of injunctive relief for established violations of the Clean Water Act.

/ / /

/ / /

/ / /

## III.   CALCULATING THE NUMBER OF CLEAN WATER ACT VIOLATIONS FOR WHICH DEFENDANT IS LIABLE.

The Clean Water Act allows penalties to be assessed for each day of a violation for any Permit condition. 33 U.S.C. §1319(d); *see Puget Soundkeeper Alliance v. Rainier Petroleum Corp.,* 138 F. Supp. 3d 1170, 1181 (W.D. Wash. 2015). Violations of Permit conditions that are not defined by any particular discharge, singular failure to comply, or a *numeric* violation are routinely treated as daily violations by the Ninth Circuit. *See Puget Soundkeeper Alliance v. Rainier Petroleum Corp.,* 138 F. Supp. 3d at 1182; *Natural Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 1001 (9th Cir. 2000); *Borden Ranch P'ship v. United States Army Corps of Eng'rs*, 261 F.3d 810, 817–18 (9th Cir. 2001).  Therefore, SWPPP violations and violations of the Permit's BMP requirements should be assessed per day, per violation for each day the violation continues. *Borden Ranch P'ship v. United States Army Corps of Eng'rs*, 261 F.3d at 817-18 (9th Cir. 2001), *aff'd,* 537 U.S. 99 (2002).

A. Failure to Implement an Adequate SWPPP is a Daily Violation for Purposes of Calculating Civil Penalties.

On summary judgment, this Court found that Defendant failed to develop and implement an adequate SWPPP. *See* Dkt. 55 at 19:12-13.  Developing and implementing an adequate SWPPP requires a discharger to implement daily procedures that minimize the exposure of pollutants to storm water and ensure overall compliance with the Permit.  Failure to develop and, more importantly, implement adequate procedures, is a daily failure to prevent and reduce the exposure of pollutants to storm water.  Therefore, penalties for failing to develop and implement an adequate SWPPP should be calculated daily, starting from the first day in which Defendant's facility operated without an adequate SWPPP.  *Natural Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d at 1001 (9th Cir. 2000).

PLAINTIFFS' TRIAL BRIEF            8            Case No. 8:18-cv-00333 DOC (DFM)

In its Order, the Court did not definitively state the number of SWPPP violations it found; however, the Court did determine that after the California Regional Water Quality Control Board, Santa Ana Region ("Regional Board") alerted Defendant that its BMPs were ineffective in 2015 and 2016, Defendant still proposed the same BMPs in its 2017 SWPPP. Dkt. 55 at 18:12-19.  It can be deduced that the Court determined that the SWPPP has been inadequate at least since the SWPPP was revised on September 4, 2017, if not earlier. Dkt. 28-2 at 001. Defendant recently submitted a revised SWPPP to SMARTS, dated June 30, 2019.[2] Looking at the SWPPP in the light most favorable to Defendant and assuming that it is now adequate, Defendant is still liable for 664 daily violations (between September 4, 2017 – June 30, 2019) of the Permit's SWPPP requirements.

Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Clean Water Act subjects the violator to a penalty of up to $53,833 per day per violation for violations that occurred on or after November 2, 2015, where penalties are assessed on or after February 6, 2019. The maximum penalty that the Court can assess for Defendant's SWPPP violations is $35,745,112 (664 x $53,833).

B. Violations of this Permit's BMP Requirements Should Be Assessed Per Day the Facility Failed to Implement BMPs that Comply with Section V of the Permit.

In addition to finding that Defendant failed to develop and implement an adequate SWPPP, this Court further found that Defendant failed to comply with the technology-based effluent limitations of the Permit by failing to implement Best

---

[2] Defendant submitted a revised SWPPP to SMARTS database on July 9, 2019. Plaintiff has no way of verifying whether the new SWPPP provisions are being implemented, but will assume, *arguendo*, that they are for purposes of calculating penalties.
https://smarts.waterboards.ca.gov/smarts/faces/PublicDataAccess/PublicNoiSearchResults.xhtml

Management Practices ("BMPs") in violation of Permit Section V, but refrained from determining the number of violations for which Defendant is liable under this cause of action.  In its Moving Papers, Waterkeeper initially argued that violations of the Permit's BMP requirements are discharge violations, subject to a per-discharge penalty calculation; however, upon further research and analysis, failure to comply with the Permit's BMP requirements should be treated as daily violations.

Instead of setting Numeric Effluent Limitations where dischargers are in violation of the Permit each time their storm water pollution concentrations reach a certain number, this Permit requires discharges to implement BMPs.  BMPs can be non-structural such that the discharger is responsible for daily sweeping routines, cleaning up spills, and general maintenance. BMPs can also be structural, such that the discharger builds a retention basin, installs advanced treatment BMPs, and maintains those structural BMPs on a daily basis.  Both structural and non-structural BMPs require constant maintenance and upkeep by facility staff to ensure that they are functioning as designed.  BMPs are not only implemented on days where discharges occur, but rather on each day the facility operates.

While there is no case law directly on point, the Court in *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.* held that "where a violation is defined in terms of a time period longer than a day, the maximum penalty assessable for that violation should be defined in terms of the number of days in that time period." 791 F.2d 304, 314 (4th Cir. 1986), *vacated on other grounds*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987); *see also U.S. EPA v. City of Green Forest, Ark.* (8th Cir. 1990) 921 F.2d 1394, 1407.  In this instance, failure to implement appropriate BMPs occurred over a period longer than a day and were not limited to days when the facility discharged storm water.  As noted in *Borden Ranch P'ship v. United States Army Corps of Eng'rs*, the "statute imposes a maximum penalty per day for each violation," and does not say "per day in which a party pollutes." 261 F.3d at 817–18 (9th Cir. 2001).  The court further stated that "the focus is clearly on *each* violation";

courts have "consistently rejected attempts to limit civil penalties to the number of days in which violations occur"; and that a contrary rule would encourage polluters to "stack" their violations. *Ibid.* Therefore, failure to implement BMPs that achieve technology-based effluent limitations is not a failure that only occurs on rainy days. On the contrary, failure to implement BMPs is a daily failure, and therefore should be calculated on a daily basis.

On summary judgment, this Court found that Defendant failed to implement appropriate BMPs on numerous occasions "over the past several years" in violation of the Permit. Dkt. 55 at 15:3-4. The Court cited in its Order, as evidence of its finding, that in 2015, fiber rolls and gravel bag check dams were noted as BMPs in the SWPPP but were not implemented. Dkt. 55 at 15:5-8. Further, in 2016, Defendant proposed installation of a cattle crossing and infiltration basin but did not implement them. Dkt. 55 at 15:9-10. In 2017, Defendant failed to implement erosion control BMPs, infiltration basins, and a cattle crossing. Dkt. 55 at 15:11-13. Meanwhile, Defendant's own storm water sample results from 2019 continue to show consistently high levels of total suspended solids and other pollutants, evidencing continued failure to implement BMPs as recently as February 21, 2019. Dkt. 33-6 at 004. Therefore, violations have been occurring since at least March 2, 2015, when the Regional Board inspected Defendant's facility and found that the erosion controls were insufficient and/or not implemented at all. Dkt. 31-3 at 001. There is no evidence on the record that Defendant has implemented BMPs that achieve the Permit's technology-based BMP requirements as of the date of the filing of this brief. Therefore, Defendant has been in daily violation of the Permit's BMP requirements for 1,688 days (March 2, 2015 – October 15, 2019).

Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Clean Water Act subjects the violator to a penalty of up to $37,500 for violations occurring between December 6, 2013 and November 2, 2015,

and up to $53,833 per day per violation for violations that occurred after November 2, 2015, where penalties are assessed on or after February 6, 2019. Therefore, for violations occurring between March 2, 2015 and November 2, 2015 (245 days), the Court may assess up to $9,187,500 (245 x $37,500) in civil penalties.  For violations occurring between November 2, 2015 and October 15, 2019, the Court may assess up to $77,681,019 (1,433 days x $53,833) in civil penalties, for a total of $86,868,519 in maximum civil penalties for violations of the Permit's BMP requirements.

C. At Trial, Waterkeeper Will Present Evidence to Prove Dozens of Additional Violations of the Permit's Monitoring Requirements, Reporting Requirements, and Discharge Prohibitions.

In addition to the violations for which Defendant has already been found liable, Waterkeeper will prove additional violations at trial.

1. Monitoring Requirements.

Section XI of the Permit requires dischargers to conduct monthly visual observations, storm water sampling event visual observations, sample storm water at least four times per reporting year, and sample storm water for particular pollutants. At trial, Waterkeeper will rely upon Defendant's own sampling reports, consultants, and records from the State Board to present evidence to the jury proving that Defendant failed to comply with these basic requirements.  For example, Waterkeeper will present evidence through Defendant's own expert witness and Defendant's own laboratory reports that show Defendant's failure to test its storm water for required pollutants such as oil and grease and iron.  There is no contrary evidence.  Waterkeeper will further elicit testimony from Defendant's employees that they did not conduct both monthly and sampling event visual observations as required by the Permit, nor document these observations, nor retain records of such documentation.  Liability for these violations and the number of violations are questions of fact Waterkeeper will prove at trial.

2. Reporting Requirements.

The Permit has a variety of reporting requirements that Defendant has violated, including the requirement to report all storm water samples to the State Board within 30 days of receipt from the lab. Permit Section X.B.11.  The Permit also requires dischargers to submit documents related to Exceedance Response Actions. Permit Section XII.  Further, the Permit requires dischargers to self-report any failures to meet particular permit conditions in annual reports.  Permit Section XVI.  Waterkeeper will present evidence based on the testimony of Defendant's employees, Defendant's laboratory reports, and the custodian of records for the State Board that Defendant failed to meet these requirements.

> 3.   Discharge Prohibitions.

Section III of the Permit contains strict discharge prohibitions for which Defendant is liable. Specifically, it prohibits "discharges that violate any discharge prohibitions contained in applicable [Basin Plans]." Permit Section III.D.  The Basin Plan for the Santa Ana River Watershed region contains two applicable discharge prohibitions for Defendant's storm water: (1) for coloration, and (2) suspended and total settable solids.  At trial, Waterkeeper will present evidence through photographs, testimony from state regulators, and Waterkeeper's expert that Defendant's discharges of storm water contain high concentrations of total suspended solids from the fine, red clay particulate matter associated with Defendant's industrial activities. Waterkeeper will prove that, on multiple occasions, Defendant's discharges violated the Basin Plan's prohibitions by adversely affecting the beneficial uses of Temescal Creek.

## IV.   REMEDY SOUGHT BY WATERKEEPER: ASSESSMENT OF CIVIL PENALTIES AND INJUNCTIVE RELIEF.

### A. The Court has the Sole Discretion for Determining the Appropriate Remedy.

The Defendant is entitled to a jury trial only at the liability phase, but not at the remedy phase. *See Tull v. U.S.*, 481 U.S. 412, 427 (1987).  In *Tull*, the Supreme Court

found that while the Seventh Amendment guarantees the right to a jury trial for liability, neither that amendment, nor the language of the Clean Water Act, guarantees a right to a jury trial for remedies. 481 U.S. at 427.  Indeed, as the Court noted in *Tull*, legislative history of the Act shows "that Congress intended that trial judges perform the highly discretionary calculations necessary to award civil penalties after liability is found." *Id*. at 425 citing (123 Cong. Rec. 39190-39191 (1977) (remarks of Sen. Muskie citing letter from EPA Assistant Administrators of Enforcement of Dec. 14, 1977) ("[P]enalties assessed by judges should be sufficiently higher than penalties to which the Agency would have agreed in settlement to encourage violators to settle.").

Violations of the Clean Water Act are held to a strict liability standard - distinct from the multi-factor test that determines civil penalty assessment. *Kelly v. U.S. E.P.A*., 203 F.3d 519, 522 (explaining the Clean Water Act is governed by strict liability); 33 U.S.C.A. § 1319(d) (factors include, "the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require.")  Given the sole discretion of the Court to assess penalties, evidence regarding penalty factors should be heard outside the presence of the jury to the extent that it is practical and efficient.  Waterkeeper seeks guidance from the Court on the most appropriate way to present evidence that pertains only to penalty factors but is not relevant to proving liability.

      B. <u>The Court Should Assess Civil Penalties Based on the Maximum Amount Allowed and Adjust Downwards After Consideration of Statutory Factors.</u>

Where violations of the Clean Water Act are found, the assessment of civil penalties is mandatory. *Leslie Salt Co. v. United States,* 55 F.3d 1388, 1397 (9th Cir. 1995).  Perhaps because of their mandatory nature, the Court has wide latitude with

---

respect to the amount of penalties assessed.  The Court may adjust the civil penalty imposed by considering factors listed above. 33 U.S.C.A. § 1319(d).

Courts may employ a top-down approach to calculating civil penalties, where the Court begins with the maximum penalty and reduces the penalty based on the factors described above; or, Courts may employ a bottom-up approach starting at the minimum penalty and adjusting upwards. *United States v. Allegheny Ludlum Corp.*, 366 F.3d 164, 178 n.6 (3d Cir. 2004).  In the Ninth Circuit, courts have typically employed the top-down approach. *Ctr. for Biological Diversity v. Marina Point Dev. Assocs.*, 434 F. Supp. 2d 789, 799 (C.D. Cal. 2006) (employing top-down approach because it offers "a more reliable and less speculative method of calculating the penalty"); *Borden Ranch P'ship v. U.S. Army Corps of Eng'rs*, No. CIV. S97–0858 GEBJFM, 1999 WL 1797329, at *14 n.12 (E.D. Cal. Nov. 8, 1999) (employing top-down approach because bottom-up approach would involve a relatively high amount of uncertainty in that case), *rev'd in part on other grounds*, 261 F.3d 810 (9th Cir. 2001); *Haw.'s Thousand Friends v. City & Cty. of Honolulu*, 821 F. Supp. 1368, 1394–95 (D. Haw. 1993) (employing top-down approach and suggesting, but not definitively stating, that this is the only approach that courts use).  This Court should follow Ninth Circuit precedent and similarly employ the top-down approach, starting with the maximum amount of civil penalties and adjusting downwards after considering mitigating factors allowed under the statute.

### 1.  Factors the Court May Consider When Assessing Civil Penalties.

The Clean Water Act demands that when determining the amount of a civil penalty, the Court shall consider the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require. *See* 33 U.S.C. § 1319(d) (2018).

#### a.    *Seriousness of the Violation(s)*

The first factor considers the environmental harm caused by the violation(s). *Kleinman v. City of Austin*, 310 F. Supp. 3d 770, 782 (W.D. Tex. 2018) (noting that the seriousness of the violation refers to the negative environmental impact that the actions have).  A plaintiff does not need to make a particularized showing of harm; the overall risk of the pollutants is sufficient. *Pub. Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 79 (3d Cir. 1990); *see also United States v. Allegheny Ludlum Corp.*, 187 F. Supp. 2d 426, 432 (W.D. Pa. 2002) (concluding that the *potential* harm to the environment is enough to support a large penalty, and that plaintiff need not show *actual* environmental harm), *vacated in part*, 366 F.3d 164 (3d Cir. 2004).  Waterkeeper is prepared to show at trial that discharges of high levels of metals and sediment from Corona Clay to downstream receiving waters pose serious environmental harm.  Similarly, Defendant's violations of Clean Water Act monitoring and reporting requirements undermine the integrity of the regulatory regime and are also serious harms as they prevent both the Defendant and regulatory oversight agencies from understanding the true potential impact of the facility to water quality, and implementing appropriate pollution controls.

### b. Economic Benefit Resulting from the Violation

The second factor considers the economic benefit of noncompliance and courts typically look to the avoided and/or delayed costs of compliance. *See, e.g.*, *United States v. Smithfield Foods, Inc.*, 972 F. Supp. 338, 349 (E.D. Va. 1997); *United States v. Mun. Auth. of Union Twp.*, 929 F. Supp. 800, 806 (M.D. Pa. 1996) (looking to defendant's potential loss of revenue if it had complied with CWA to calculate economic benefit).  Economic benefits to the violator may be difficult to prove with precision, so reasonable approximations of the economic benefit will suffice. *United States v. Smithfield Foods, Inc.*, 191 F.3d 516, 529 (4th Cir. 1999); *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 576 (5th Cir. 1996). Defendant, at best delayed, and at worst altogether avoided developing and implementing an adequate SWPPP, implementing, maintaining, and inspecting storm

water controls and BMPs, adequately reporting, or implementing an offsite infiltration basin promised for five years.  We expect Defendant's expert to testify at trial, as he did in deposition, that the approximate cost of the offsite infiltration basin is $100,000.  The economic benefit to Defendant of noncompliance in avoided BMP capital costs and maintenance continues to accrue.

### c.    *History of Violations*

Current violations may be considered as part of a defendant's history of violations. *See, e.g.*, *Piney Run Pres. Ass'n v. County Comm'rs of Carroll Cty., Md.,* 82 F. Supp. 2d 464, 471 (D. Md. 2000) (considering present violations).  Here, based upon the testimony of Defendant's own consultants, and using Defendant's own laboratory reports, Waterkeeper will demonstrate that Defendant's violations not only continued past the filing of this action, but continue to this day.  Moreover, Defendant's history of violations also include numerous warnings and Notices of Violations issued by the state oversight agency, the California Regional Water Quality Control Board, Santa Ana Region. *See United States v. Roll Coater, Inc*., 21 Envtl. L. Rep. 21073, 21076 (S.D. Ind. 1991) (declining to mitigate defendant's penalty under top-down approach based on history of violations because defendant had violated the CWA in the past, even though these violations had not been adjudicated); *see also United States v. Allegheny Ludlum Corp*., 187 F. Supp. 2d 426, 433 (W.D. Penn. 2002) (stressing that the Clean Water Act requires the court to consider "any history of violations" in adjusting the penalty), *vacated in part*, 366 F.3d 164 (3d Cir. 2004).

### d.    *Good-Faith Efforts to Comply*

Courts will evaluate evidence to determine whether a defendant took any actions to reduce the number of violations or attempted to lessen the impact of the discharge to the environment. *United States v. Smithfield Foods, Inc.,* 191 F.3d 516, 531 (4th Cir. 1999).  We expect Defendant to testify that they made good faith efforts to comply.  Further, we expect Defendant's expert to testify, as he did in deposition,

that Defendant's onsite infiltration basin was not designed nor was it constructed to comply with Permit requirements. While Defendant may have engaged in some new efforts to meet some Permit requirements while litigating this matter, its efforts have been sporadic, modest and ineffective. And as noted above, where Defendant has tested at all, even its most recent sampling reports show continued exceedances of water quality standards.

### e. Economic Impact of the Penalty on the Violator

In deciding whether to reduce a penalty because of the penalty's economic impact on the defendant, the burden is on the complainant to show that the defendant has a general ability to pay the penalty, and the burden then shifts to the defendant to show that the specific penalty exceeds its ability to pay. *In re Chempace Corp.*, Docket No. 5-IFFRA-96-017, 2000 WL 696821, at *10 (EAB May 18, 2000). The plaintiff then has an opportunity to rebut this showing. *Id.* Even so, it is not enough for a defendant to argue that it will suffer economic harm; courts have even found that a possible or *actual* bankruptcy is not necessarily a reason to avoid penalty. *See In re Britton Constr.*, Docket No. CWA-III-096, 1999 WL 362870, at *22 n.21 (EAB Mar. 30, 1999); *see also In re Bituma-Stor, Inc.*, Docket No. EPCRA-7-99-0045 (ALJ Gunning Jan. 22, 2001). In assessing a polluter's ability to pay, Waterkeeper is prepared to make a showing that Defendant has a general ability to pay, while Defendant has raised no showing of an inability to pay.

### f. Other Matters as Justice May Require

Adjustment under this factor may be warranted only if the evidence of the defendant's good deeds is clear and unequivocal, and the circumstances are such that a reasonable person would easily agree that not giving some form of credit would be a manifest injustice. *In re* B.*J. Carney Indus., Inc.*, CWA Appeal No. 96-2, 7 E.A.D. 171, 232 n.82 (EAB 1997). Waterkeeper does not believe Defendant's actions, after years of non-compliance, may be considered "good deeds" nor that it would be an

injustice to impose penalties to encourage compliance and deter future non-compliance.

        2.  <u>The Court Should Assess a Civil Penalty of $3,700,000, but no Less than $230,000.</u>

In this case, Waterkeeper urges the Court to adopt the Ninth Circuit's typical top-down approach to calculate the civil penalties under the Clean Water Act. The top-down approach requires a court to start with the maximum statutory penalty and apply the adjustment factors, making sure to disgorge any economic benefit from noncompliance.  Based in part on the calculations made above, and relevant case law, Waterkeeper recommends a Clean Water Act penalty of $3,700,000.  The minimum penalty that should be assessed, which is the disgorgement of any economic benefit, should be at least $230,000.

      C.  <u>Waterkeeper's Proposed Injunctive Relief.</u>

The most important aspect of this matter, from Waterkeeper's perspective, is the imposition of injunctive relief to prevent further environmental harm caused by Defendant's indifference to the requirements of the Permit and the Clean Water Act. Waterkeeper is already entitled to this injunctive relief by virtue of establishing BMP violations at summary judgment as discussed above.  Waterkeeper recommends that this Court order Defendant to implement structural storm water BMPs sufficient to retain the 85th percentile, 24-hour storm event, including a factor of safety, from areas subject to the Storm Water Permit no later than July 1, 2020. All retention basins should be designed and certified by a California licensed professional engineer and comply with the terms of Section X.H.6 of the Permit.

Additionally, Waterkeeper recommends that the Court order Defendant to hire a Qualified Industrial Storm water Practitioner ("QISP") to prepare, and submit a Level 2 ERA Action Plan and Technical Report as required by Section XII of the Permit no later than January 1, 2020.  Finally, Waterkeeper recommends that the Court order Defendant to comply with the SWPPP, sampling, and monitoring and

reporting requirements found in the Storm Water Permit no later than January 1, 2020.

## V.    **CONCLUSION**

The remaining issues to be decided by a jury in this matter are limited to: (1) establishing violations of the Permit's discharge prohibitions; (2) establishing violations of the Permit's monitoring requirements; and (3) establishing violations of the Permit's reporting requirements. The issues for the Court to decide include: (1) determining the number of daily violations for which Defendant is liable for BMP violations and SWPPP violations; (2) determining the amount of civil penalties to be paid by the Defendant for established violations; and (3) the appropriate injunctive relief.  Therefore, we request guidance from the Court as to whether it believes bifurcation of the penalty phase is appropriate, or whether the parties should structure their evidence and argument so as to minimize confusion by the jury as to why certain evidence is being presented.

Dated:        October 15, 2019              Respectfully submitted,
                                            LAW OFFICE OF JENNIFER F. NOVAK


                                            Jennifer F. Novak  /s/
                                            Jennifer F. Novak
                                            Attorney for Plaintiffs Inland Empire
                                            Waterkeeper and Orange County
                                            Coastkeeper

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

Colin Kelly (Bar No. 266956)
Email: colin@coastkeeper.org
Sarah Spinuzzi (Bar No. 305658)
Email: sarah@coastkeeper.org
ORANGE COUNTY COASTKEEPER
INLAND EMPIRE WATERKEEPER
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626
Telephone: (714) 850-1965
*Counsel for Plaintiffs*

Rod Pacheco
Brian Neach
rpacheco@pncounsel.com
bneach@pncounsel.com
PACHECO & NEACH P.C.
3 Park Plaza, Suite 120
Irvine, CA 92614

*Counsel for Defendant*

DATED this 15th day of October, 2019.

/s/ Suzanne Willoughby
Suzanne Willoughby
Law Office of Jennifer F. Novak

PLAINTIFFS' TRIAL BRIEF                    21          Case No. 8:18-cv-00333 DOC (DFM)