Rod Pacheco (SBN 112432)
Brian Neach (SBN 242801)
Pacheco & Neach, P.C.
3 Park Plaza, Suite 120
Irvine, CA  92614
Tel.: 714-462-1700
Fax: 714-462-1785
rpacheco@pncounsel.com
bneach@pncounsel.com

*Attorneys for Corona Clay Co.,*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INLAND EMPIRE WATERKEEPER, et al. | Case No. 8:18-cv-00333-DOC (DFMx) |
| Plaintiff(s), | Hon. David O. Carter<br>Courtroom 9D |
| v. | **CORONA CLAY COMPANY'S NOTICE OF APPEAL AND REPRESENTATION STATEMENT** |
| CORONA CLAY CO., | |
| Defendant, | |

**NOTICE OF APPEAL**

Pursuant to Federal Rules of Appellate Procedure 3(a)(1) and 4(a), Defendant Corona Clay Company, a California corporation, hereby appeals to the United States Court of Appeals for the Ninth Circuit from the following Judgment and Orders of the United States District Central Court for the Central District of California: 1) Exhibit A: Final Judgment (Doc. #191 – April 6, 2020); 2) Exhibit B: Order Granting In Part and Denying In Part Plaintiffs' Motion for Partial Summary Judgment as to Liability (Doc. #55 – June 10, 2020); 3) Exhibit C: Order Denying Defendant's Motion for Relief from Judgment (Doc. #200 – June 22, 2020).

Pursuant to Ninth Circuit Rule 3-2(b), a Representation Statement is attached to this notice.

RESPECTFULLY SUBMITTED,

DATED: June 29, 2020                **PACHECO & NEACH, P.C.**

/s/ Brian Neach
Rod Pacheco
Brian Neach

**REPRESENTATION STATEMENT**

Pursuant to Ninth Circuit Rule 3-2(b), Defendant states that the parties are represented by counsel whose names, addresses, and telephone numbers appear below:

Defendant CORONA CLAY CO. is represented by:

Rod Pacheco (SBN 112432)
Brian Neach (SBN 242801)
Pacheco & Neach, P.C.
3 Park Plaza, Suite 120
Irvine, CA  92614
Tel.: 714-462-1700
Fax: 714-462-1785
rpacheco@pncounsel.com
bneach@pncounsel.com


Plaintiffs INLAND EMPIRE WATERKEEPER and ORANGE COUNTY COASTKEEPER.
are represented by:


Christopher Sproul (Cal. Bar No. 126398)
Brian Orion (Cal. Bar No. 239460)
Stuart Wilcox (Cal. Bar No. 327726)
Email: csproul@enviroadvocates.com
borion@enviroadvocates.com
wilcox@enviroadvocates.com
Environmental Advocates
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695


Colin Kelly (Cal. Bar No. 266956)
Email: colin@coastkeeper.org
ORANGE COUNTY COASTKEEPER
3151 Airway Avenue, Suite F-110
Costa Mesa, CA 92626

Phone: (714) 850-1965

# EXHIBIT A

EXHIBIT A

**JS-6**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

|  |  |
|---|---|
| **INLAND EMPIRE WATERKEEPER et al.,** | **Case No. 8:18-cv-00333-DOC-DFM** |
| Plaintiffs, | |
| v. | **FINAL JUDGMENT** |
| **CORONA CLAY COMPANY,** | |
| Defendant. | |

In their First Amended Complaint, Plaintiffs Inland Empire Waterkeeper and Orange County Coastkeeper ("Plaintiffs") brought seven causes of action against Defendant Corona Clay Company ("Defendant"), for violations of the 2015 General Industrial Storm Water Permit (the "Permit").

On June 10, 2019, the Court entered an order granting partial summary judgment on Plaintiffs' First and Fifth Causes of Action.

By stipulation of the parties, Plaintiffs' Third and Fourth Causes of Action were dismissed with prejudice before trial.

The remaining claims—Plaintiffs' Second, Sixth, and Seventh Causes of Action—were tried before a jury from October 21 through October 25, 2019. On October 25, 2019, the jury rendered a verdict in favor of Defendant on the Second, Sixth, and Seventh Causes of Action.

**IT IS THEREFORE ORDERED** that judgment is entered in Plaintiffs' favor on the First and Fifth Causes of Action. Accordingly, the Court orders that:

(1) Defendant is liable for 664 daily violations (September 4, 2017 through June 30, 2019) of the Storm Water Pollution Prevention Plan, that is, section X.C.1, subsections b and c, of the Permit;

(2) Defendant is liable for 1688 daily violations (March 2, 2015 through October 15, 2019) of the Permit's Section V limitations on technology-based effluents;

(3) Defendant shall implement structural storm water Best Management Practices sufficient to retain the 85th percentile, 24-hour storm event, including a factor of safety, from areas subject to the Storm Water Permit no later than December 1, 2020. All retention basins should be designed and certified by a California licensed professional engineer, and comply with the requirements of section X.H.6 of the Permit;

(4) Defendant shall update and amend its Storm Water Pollution Prevention Plan to comply with section X.C.1, subsections b and c, of the Permit, no later than July 1, 2020; and

(5) Defendant shall pay civil penalties for violations of the Clean Water Act in the sum of $3,700,000 by July 1, 2020.

**IT IS FURTHER ORDERED** that Plaintiffs' Third and Fourth Causes of Action are dismissed with prejudice.

**IT IS FURTHER ORDERED** that judgment is entered in favor of Defendant on the Second, Sixth, and Seventh Causes of Action.

**IT IS FURTHER ORDERED** that Plaintiffs are the prevailing party as to the First and Fifth Causes of Action, and that Defendant is the prevailing party as to the Second, Sixth, and Seventh Causes of Action. As each party has prevailed on some claims and not others, the parties shall bear their own fees and costs in this matter.


**IT IS SO ORDERED AND ENTERED. JUDGMENT IS DEEMED ENTERED AS OF THE DATE BELOW.**


DATED: April 6, 2020

_David O. Carter_

_____

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

# EXHIBIT B

EXHIBIT B

1
2
3
4
5
6
7
8
**UNITED STATES DISTRICT COURT**
9
**CENTRAL DISTRICT OF CALIFORNIA**
10
**SOUTHERN DIVISION**
11
12
13
14
**INLAND EMPIRE WATERKEEPER and ORANGE COUNTY COASTKEEPER,**
15
    **Plaintiffs,**
16
17
    **vs.**
18
19
**CORONA CLAY CO,**
    **Defendant.**
20
21
22

**Case No.: SA CV 18-0333-DOC (DFMx)**

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY [23]**

23
24
25
26
27
28

Before the Court is Plaintiffs Inland Empire Waterkeeper ("Waterkeeper") and Orange County Coastkeeper's ("Coastkeeper") (collectively, "Plaintiffs") Motion for Partial Summary Judgment as to Liability ("Motion")[1] against Defendant Corona Clay Co. ("Corona Clay" or "Defendant"). Oral arguments were held in this matter on June 3, 2019. After considering the papers and hearing the arguments raised by the parties, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' Motion.

# I. BACKGROUND

This case arises out of Plaintiffs' allegations that Defendant is in violation of the Clean Water Act due to Defendant's clay manufacturing facility ("Facility") generating and discharging pollutants in violation of California's permit requirements under the National Pollutant Discharge Elimination System ("NPDES").

## A. Legal Background

The Clear Water Act ("CWA" or "the Act") prohibits the discharge of any pollutant into "navigable waters" unless the discharge complies with the applicable provisions of the CWA. *Natural Resources Defense Council, Inc. v. County of L.A.*, 725 F.3d 1195, 1198 (9th Cir. 2013) (citing 33 U.S.C. § 1311(a)). Under the Act, a "pollutant" can include rock, sand, wrecked or discarded equipment, cellar dirt and industrial, municipal, and agricultural waste discharged into water. 33 U.S.C. § 1362(6). Under 33 U.S.C. § 1342, an entity or facility must obtain coverage under a National Pollutant Discharge Elimination System ("NPDES") permit in order to lawfully discharge a pollutant into navigable waters. *See* 33 U.S.C. § 1342; *Natural Resources Defense Council*, 725 F.3d at 1198. The CWA allows for citizen suits against entities in violation of "an effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a)(1). The CWA "imposes strict liability for NPDES violations." *Santa Monica Baykeeper v. Kramer Metals, Inc. (Kramer)*, 619 F. Supp. 2d 914, 919 (C.D. Cal. 2009).

The Environmental Protection Agency ("EPA") has authorized the state of California to issue the applicable NPDES permit. 40 C.F.R. §§ 122.26(e)(1), 122.21. In California, a facility

---

[1] Plaintiffs do no seek summary judgment on their third cause of action or fourth cause of action, and thus the Court does not discuss the merits of these claims at the present time.

that discharges storm water associated with industrial activities must obtain coverage under the state's 2015 General Industrial Storm Water Permit ("General Permit"), which is an NPDES permit. 40 C.F.R. §§ 122.26(e)(1), 122.21; Plaintiff's Request for Judicial Notice ("Pl. RJN") (Dkt. 27), Ex. A. at 3. In the Santa Ana River watershed, the state Regional Water Quality Control Board, Santa Ana Region regulates coverage of facilities under the General Permit. *Natural Resources Defense Council*, 725 F.3d at 1198; Cal. Wat. Code § 13200(e).

The requirements of the General Permit include compliance with effluent limitations, receiving water limitations, implementation of a Storm Water Pollution Prevention Plan ("SWPPP"), and the development of a monitoring and reporting program. *Santa Monica Baykeeper v. Intern'l Metals Ekco, Ltd.*, 619 F. Supp. 2d 936, 940 (C.D. Cal. 2009). The General Permit requires implementation of Best Available Technology Economically Achievable ("BAT") for toxic pollutants, and of Best Conventional Pollutant Control Technology ("BCT") for other pollutants. 33 U.S.C. §§ 1311(b)(2)(A), 1311(b)(2)(E); *see also* Pl. RJN, Ex. A. at 3. The General Permit also requires the permitted facilities to implement Best Management Practices ("BMPs") to comply with effluent limitations and meet applicable water quality standards.[2] Pl. RJN., Ex. A. at 5. In addition, the General Permit requires a discharging facility (often referred to as a "discharger") to implement a SWPPP when industrial activities begin. *Id.* at 17. Finally, the General Permit requires the permitted facilities to comply with a monitoring and reporting program. *Id.* at 26–28.

**B. Factual Background[3]**

Plaintiff Inland Empire Waterkeeper ("Waterkeeper") is a program of Plaintiff Orange County Coastkeeper ("Coastkeeper"), an environmental nonprofit organization. First Amended Complaint ("FAC") (Dkt. 12) ¶¶ 1–2. Plaintiffs have approximately more than 6,000 members who live and/or recreate in and around the Santa Ana River watershed. *Id.* ¶ 3.

---

[2] 40 C.F.R. § 122.44(k)(4) "requires the use of BMPs to control or abate the discharge of pollutants when numeric effluent limitations ("NELs") are infeasible." Pl. RJN, Ex. A. at 48.

[3] Unless indicated otherwise, to the extent any of these facts are disputed, the Court concludes they are not material to the disposition of the Motion. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on the disputed evidence.

Defendant Corona Clay Company ("Corona Clay") owns a clay recycling plant located at 10600 Dawson Canyon Road, Temescal Valley, CA 92883 ("Facility"). Declaration of Jennifer F. Novak ("Novak Decl.") (Dkt. 28), Ex. 1 at 1. Defendant's Facility crushes clay tile and used brick to create a substance that can be used for a variety of purposes. Plaintiff's Statement of Facts ("SUF") (Dkt. 23-1) ¶ 3; Defendant's Statement of Genuine Dispute ("SGD") (Dkt. 37-1) ¶ 3. Defendant also provides raw materials to contractors specializing in in the installation of baseball fields and running tracks. *Id.* ¶ 3. Defendant's Facility operates on approximately 20 acres of land in Corona, California, and consists of 20.3 acres exposed to storm water. Novak Decl., Ex. 1 at 1.

As indicated in its annual SWPPPs, Defendant accepts approximately 20,000 tons of materials annually to crush and screen into an industrial substance. Mot. at 5–6. *See, e.g.,* Novak Decl., Ex. 2 at 9; Ex. 19 at 7. Stormwater from the Facility runs into the Temescal Wash, a creek that deposits into the Santa Ana River. Novak Decl., Ex. 1 at 1, Ex. 2 at 4. Plaintiffs allege that the stormwater becomes polluted with sediment from the Facility, and eventually discharges into the Santa Ana River, continuing on into the Pacific Ocean. Mot. at 6.

Beginning in 2014, Defendant obtained coverage under the General Permit to discharge storm water from the California State Water Resources Control Board, Santa Ana Region ("Regional Board"). SUF 11–13; Novak Decl., Ex. 33. In 2015, 2016, and 2017, the Regional Board issued Notices of Violation to Defendant, pursuant to the General Permit for discharges of storm water associated with industrial activities. SUF 51. *See* Novak Decl., Ex. 13, 15, 16. The Regional Board found that Corona Clay was in violation of General Permit, and noted several specific issues with the Facility and the discharge of storm water. *Id.* Plaintiffs also allege that their independent investigation has confirmed the Regional Board's observations. Mot. at 6.

**C. Procedural History**

On December 13, 2017, Plaintiffs issued a 60-day notice to Corona Clay, informing Defendant of its violations of applicable state and federal law and of Plaintiff's intention to file suit, as required under 33 U.S.C. § 1365 (Dkt. 2-1). On February 27, 2018, Plaintiff filed the

Complaint in the instant action (Dkt. 2). On April 20, 2018, Plaintiffs filed the First Amended Complaint ("FAC") (Dkt. 12). In the FAC, Plaintiffs bring the following seven causes of action:

(1) Violation of Section 301(a) of the Clean Water Act by Discharging Contaminated Storm Water in Violation of the Storm Water Permit's Effluent Limitations, under 33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f);

(2) Violation of the Clean Water Act by Discharging Polluted Storm Water in Violation of the Storm Water Permit's Discharge Prohibitions, under 33 U.S.C. §§ 1311(a), 1342, 1362(a), and 1365(f);

(3) Defendant's Discharges of Contaminated Storm Water in Violation of Storm Water Permit Receiving Water Limitations and the Clean Water Act, under 33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f);

(4) Defendant's Discharges of Non-Storm Water in violation of the Storm Water Permit and the Clean Water Act, under 33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f);

(5) Defendant's Failure to Adequately Develop, Implement, and/or Revise a Storm Water Pollution Prevention Plan in Violation of the Storm Water Permit and the Clean Water Act, under 33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f);

(6) Defendant's Failure to Adequately Develop, Implement, and/or Revise a Monitoring and Reporting Plan in Violation of the Storm Water Permit and the Clean Water Act, under 33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f); and

(7) Defendant's Failure to Report as Required by the Storm Water Permit in Violation of the Storm Water Permit and the Clean Water Act, under 33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f). FAC at 35–44. Plaintiffs seek declaratory and injunctive relief, civil penalties, and attorney's fees and costs.

*See generally* FAC.

On May 6, 2019, Plaintiffs filed the instant Motion for Partial Summary Judgment as to Liability ("Motion") (Dkt. 23), seeking judgment in their favor on claims 1, 2, 5, 6, and 7 of the

FAC. Defendant opposed the Motion on May 13, 2019 ("Opposition") (Dkt. 37). Plaintiff replied on May 20, 2019 ("Reply") (Dkt. 40).

## II. LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible, evidence identifying the basis for the dispute. *See id.* The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there

1  must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty*

2  *Lobby*, 477 U.S. at 252.

3  **III. REQUESTS FOR JUDICIAL NOTICE**

4      Plaintiffs request that the Court take judicial notice of the following documents:

5      A.  National Pollutant Discharge Elimination System ("NPDES") General Permit for

6          Storm Water Discharges Associated with Industrial Activities, Order NPDES No.

7          CAS-00001, Order 2014-0057-DWQ and Fact Sheet (excerpted pages);

8      B.  Water Quality Control Plan ("Basin Plan") for the Santa Ana River Basin, adopted

9          by the California Regional Water Quality Control Board, Santa Ana Region,

10         Resolution 94-1 (excerpted pages);

11     C.  National Pollutant Discharge Elimination System ("NPDES") General Permit No.

12         CAS00001 (General Permit) Waste Discharge Requirements for Discharges of

13         Stormwater Associated with Industrial Activities Excluding Construction Activities,

14         Order 97-03-DWQ (excerpted pages);

15     D.  United States Environmental Protection Agency, Industrial Stormwater Fact Sheet,

16         Sector E: Glass, Clay, Cement, Concrete, and Gypsum Product Manufacturing

17         Facilities;

18     E.  United States Environmental Protection Agency Industrial Storm Water Monitoring

19         and Sampling Guide, Final Draft, March 2009;

20     F.  January 2014 through March 2019 Records of Climatological Observations for

21         Corona, California from the United States Department of Commerce National

22         Oceanic & Atmospheric Administration National Environmental Satellite Data, and

23         Information Service; and

24     G.  Additional Excerpted pages from the National Pollutant Discharge Elimination

25         System ("NPDES") General Permit for Storm Water Discharges Associated with

26         Industrial Activities, Order NPDES No. CAS-00001, Order 2014-0057-DWQ and

27         Fact Sheet.

28 Pl. RJN (Dkt. 27); Pl. Suppl. RJN (Dkt. 45).

Additionally, Defendant requests that the Court take judicial notice of the following document:

A. Attachment C – Glossary to National Pollutant Discharge Elimination System ("NPDES") General Permit for Storm Water Discharges Associated with Industrial Activities (General Permit").

Def. RJN (Dkt. 37-7, 37-8).

Judicial notice is a court's recognition of the existence of a fact without the necessity of formal proof. *See Castillo–Villagra v. I.N.S.*, 972 F.2d 1017, 1026 (9th Cir. 1992). Under Federal Rule of Evidence 201, a court may take judicial notice of court filings and other matters of public record. *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that a court may take judicial notice of "undisputed matters of public record"); *see also Reyn's Pasta Bella, LLC v. Visa USA*, Inc., 442 F.3d 741, 746, n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings). A court can also appropriately take judicial notice of copies of "records and reports of administrative bodies," *U.S. v. Richie*, 342 F.3d 903, 908 (9th Cir. 2003), as well as legislative history. *Anderson v. Holder*, 673 F.3d 1089, 1094, n.1 (9th Cir. 2012). The Court does not, however, take judicial notice of reasonably disputed facts contained within the judicially-noticed documents. *See Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001).

As the aforementioned documents fall into the categories of judicial notice, the Court takes judicial notice of the documents as requested by Plaintiffs and by Defendant.

**IV. DISCUSSION**

Plaintiffs argue they are entitled to summary judgment on their first, second, fifth, sixth, and seventh claims, yet Defendant maintains that Plaintiffs do not have the requisite standing to bring their claims. The Court will first discuss standing as a threshold matter, and will then turn to the merits of Plaintiffs' Motion.

**A. Standing**

Plaintiffs argue they have representational standing to bring the instant action on behalf of their members. Mot. at 7–11. Defendant argues that Plaintiffs lack standing because the three

declarations on behalf of Plaintiffs' members do not establish an injury-in-fact or an injury fairly traceable to Defendant's conduct. Opp'n at 3–10.

To satisfy Article III's standing requirements, a Plaintiff must show that (1) it has suffered an injury in fact; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) the injury can be redressed by the court. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). An organization has standing to sue on behalf of its members when (1) its members would have standing to sue in their own right; (2) the interests at stake are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Laidlaw*, 528 U.S. at 181 (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)).

Defendant does not appear to dispute, and the Court finds, that Plaintiffs have satisfied the second and third elements of organizational standing: Plaintiffs' interests in seeking to prevent pollution from entering Temescal Creek are germane to the organizations' purpose, and the participation of individual members is not required to bring the instant action for injunctive, declaratory, and monetary relief. *See* SUF ¶ 16–17 (Waterkeeper is a program of Coastkeeper; Waterkeeper's mission is to enhance and protect the quality of the waterways within the Upper Santa Ana River Watershed).

Instead, the standing dispute hinges on whether any of Plaintiff's members would have standing to sue in their own right. *See Ecological Rights Found. V. Pac. Gas & Elec. Co.*, No. 15-15424, 2017 WL 4974746, at *6 (9th Cir. Nov. 2, 2017). Specifically, Corona Clay maintains that the three declarations from Waterkeeper's members do not establish an injury in fact, and that an injury is not fairly traceable to any conduct of Defendant. Opp'n at 3–10.

"[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened by the challenged activity." *Laidlaw*, 528 U.S. at 183 (2000) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)). "The 'injury in fact' requirement in environmental

cases is satisfied if an individual adequately shows that she has an aesthetic or recreational interest in a particular place, or animal, or plant species and that that interest is impaired by a defendant's conduct." *Ecological Rights Foundation v. PG & E Elecs. Co.*, 874 F.3d 1083, 1093 (9th Cir. 2017) (quoting *Ecological Rights Foundation v. Pacific Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000)). To meet the injury in fact threshold under *Laidlaw*, it is enough for an individual to show "a connection to the area of concern sufficient to made credible the contention that the person's future life will be less enjoyable—that he or she really has or will suffer in his or her degree of aesthetic or recreational satisfaction—if the area in question remains or becomes environmentally degraded." *Pacific Lumber*, 230 F.3d at 1149.

Here, Plaintiffs have submitted declarations from their members to demonstrate injury in fact that is fairly traceable to Defendant's conduct. Plaintiffs submitted declarations from three members: Megan Brousseau (Associate Director of Waterkeeper, 2012–present) (Dkt. 23-3), Heather Williams (member of Waterkeeper) (Dkt. 23-5), and Lee Reeder (former Associate Director of Waterkeeper, current member) (Dkt. 26). All three members describe a longstanding connection with Temescal Creek, and frequent use of the body of water for recreational purposes. *See* Williams Decl. ¶¶ 15–20; Brousseau Decl. ¶¶ 22–25; Reeder Decl. ¶¶ 20–25. The members state that they enjoy use of the Temescal Creek, that they have noticed a decrease in the "water quality condition of the creek due to [] pollutants," and that the pollution in the Creek "significantly harms [their] enjoyment of [] recreational activities in and around the creek." Reeder Decl. ¶¶ 24–28; *see also* Williams Decl. ¶¶ 15, 20, 23, 24; Brousseau Decl. ¶¶ 23, 25, 29, 30. Accordingly, Plaintiffs have shown that the three members "use the area" and that the "aesthetic and recreational values of the area [is or] will be lessened by the challenged activity," thus demonstrating injury in fact. *Laidlaw*, 528 U.S. at 183.

Turning to an injury fairly traceable to a defendant's conduct, "the causal connection put forward for standing purposes cannot be too speculative, or rely on conjecture about the behavior of other parties, but need not be so airtight at this stage of the litigation as to demonstrate that the plaintiffs would succeed on the merits." *Pacific Lumber*, 230 F.3d at 1152. "The issue in the causation inquiry is whether the alleged injury can be traced to the

defendant's challenged conduct, rather than to that of some other actor not before the court."[4] *Id.* The plaintiff need not show actual environmental harm to body of water in question in order to satisfy the fairly traceable inquiry for a Clean Water Act lawsuit, as doing would "confuse[] the jurisdictional injury (does the court have power under Article III to hear the case?) with the merits injury (did the defendant violate the law?)." *Pacific Lumber*, 230 F.3d at 1151. Thus, where a plaintiff has demonstrated that members derive less enjoyment from recreation due to a defendant's pollution, this is sufficient to satisfy the causation element of standing. *See, e.g., California Sportfishing Protection Alliance v. River City Waste Recyclers, LLC*, 205 F. Supp. 3d 1128, 1147 (E.D. Cal. 2016) (finding that a plaintiff demonstrated harm fairly traceable to defendant's conduct where plaintiff derived less enjoyment from recreation in the body of water due to defendant's pollution, and plaintiff declared that they believed defendant's "discharged pollutants in its storm water flows and contributed to the contamination of fish and waters downstream").

Here, Plaintiffs' members declare that pollution from Defendant's Facility has discharged pollution into the Creek, affecting the water quality of the habitat. *See, e.g.*, Brousseau Decl. ¶¶ 27–29 (stating that Defendant's facility discharged clay into the Creek and that this has caused decreased quality of habitat in the Temescal Creek). Plaintiffs need not scientifically prove that no other facility has contributed to pollution of the habitat for *standing* purposes; instead, it is enough to show that members' enjoyment of the environment "is lessened" due to Defendant's "alleged violations of various provisions of the Clean Water Act." *Pacific Lumber*, 230 F.3d at 1152. Plaintiffs specifically state that pollution from Defendant's Facility has resulted in a decrease in the quality of the Temescal Creek habitat, and in turn has harmed their enjoyment of Temescal Creek. *See* Reeder Decl. ¶¶ 28–29; Brousseau Decl. ¶ 29. Accordingly, Plaintiffs have shown injury in fact that is fairly traceable to Defendant's conduct. Defendant's conduct as argued by Plaintiffs—discharge of pollution from the Facility that has

---

[4] To the extent Defendant argues Plaintiffs cannot demonstrate that Defendant Facility solely or particularly contributed to the pollution of Temescal Creek, the Court notes that it need not decide whether other actors have also polluted the Creek; instead, it is sufficient for standing purposes to argue that Defendant's violations of the Clean Water Act have degraded the environment of the Creek.

degraded the habitat of Temescal Creek—can be redressed by the injunctive and declaratory relief sought in the FAC. Plaintiffs thus have demonstrated injury in fact that is fairly traceable to Defendants, as well as redressability, sufficient for standing.

## B. First Claim for Failure to Meet Technology-Based Effluent Limitations

Plaintiffs bring their first cause of action for violations of the CWA by discharging contaminated storm water in violation of the General Permit's effluent limitations. FAC at 35. Specifically, Plaintiffs allege that Defendant failed to develop and/or implement Best Management Practices ("BMPs") that achieve reductions in pollutant discharge associated with industrial activities at the Facility (which are attainable via Best Available Technology Economically Achievable ("BAT") and Best Conventional Pollutant Control Technology ("BCT"), in violation of both the General Permit and the CWA. FAC ¶¶ 246–48. Plaintiffs allege that the discharges of storm water from the Facility contain levels of pollutants that do not achieve compliance with BAT/BCT standards every time stormwater discharges from the Facility. FAC ¶ 247.

### 1. The Parties' Arguments

Plaintiffs argue they are entitled to summary judgment on their first claim because the General Permit requires dischargers to implement BMPS that achieve BAT or BCT standards, and a Facility's exceedances of benchmarks for stormwater sampling evidences a failure to properly implement BMPS to meet the BAT and BCT. Mot. at 12. First, Plaintiffs note that the General Permit limits Defendant's effluents of Total Suspended Solids ("TSS") to 100 mg/L and iron to 1.0 mg/L. Pl. RJN, Ex. A at 32. Defendant's Facility has had repeated violations of Numeric Action Levels ("NALs") of Total Suspended Solids ("TSS") and iron above those levels. Novak Decl., Ex. 7 at 3; Novak Decl., Ex. 12 at 4; Novak Decl., Ex. 27 at 4. Plaintiffs argue these sampling results show that Defendant was required to engage in more effective and rigorous rounds of BMP implementation, but displayed "malignant indifference" to the requirements of the General Permit. Mot. at 13. Second, Plaintiffs argue that Defendant proposed a minimal course of BMPs in its SWPPP when first enrolling under the General Permit, and continued to reaffirm the same minimal BMPs each year since, despite Regional

Board staff's repeated warnings that Defendant's BMPs were missing, ineffective, or inadequate. Mot. at 13–14.

Plaintiff argues that Defendant's repeated exceedances of Numeric Action Levels, coupled with its refusal to implement effective and more robust BMPs, demonstrates Defendant's failure to meet the BCT standard every time the Facility experienced a rain event large enough to create discharge. Mot. at 14. Accordingly, Plaintiffs argue Defendant was in violation of the General Permit's effluent limitations every time it rained and there was a discharge from the Facility. Mot. at 14–15.

Defendant argues substantial fact questions remain because Plaintiffs do not present evidence of discharges from the Facility actually reaching Temescal Creek. Opp'n at 11–13. Defendant also note that one Regional Board inspector observed a silt basin installed by Defendant prevented discharge entirely when he visited during a heavy rain. Opp'n at 12.

### 2. Violations of Effluent Limitations under the CWA

"A permittee violates the CWA when it discharges pollutants in excess of the levels specified in the [NPDES] permit, or where the permittee otherwise violates the permit's terms." *Natural Resources Defense Council*, 725 F.3d at 1204.  A facility's permit to comply with the CWA "will govern storm water discharges." *Santa Monica Baykeeper v. Int'l Metals Ekco, Ltd.*, 619 F. Supp. 2d 936, 943 (C.D. Cal. 2009). One court has noted that, when a water sampling result exceeds the benchmark value, this exceedance indicates modifications to the SWPPP may be necessary, but the result does not in and of itself constitute a violation of a permit. *Ekco*, 619 F. Supp. 2d at 944. On the other hand, courts in this district have held "[a] monitoring report that shows a water sample with pollutant discharges in excess of permit limits is conclusive evidence of a violation." *Inland Empire Waterkeeper v. Uniweb, Inc.*, 2008 WL 6098645, at * 9 (C.D. Cal. Aug. 6, 2008) (citing *Sierra Club v. Union Oil Co.*, 813 F.2d 1480, 1491 (9th Cir. 1987), *vacated on other grounds*, 485 U.S. 931 (1988), *reinstated with minor amendment*, 853 F.2d. 667 (9th Cir. 1988)). *See also San Francisco Baykeeper v. West Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 755 (N.D. Cal. 2011).

### 3. Plaintiff's NALs, BMPs, and Effluent Limitations

As the General Permit states:

"[t]he NALs are not intended to serve as technology-based or water quality-based numeric effluent limitations. The NALs are not derived directly from either BAT/BCT requirements or receiving water objectives. NAL exceedances defined in this General Permit are not, in and of themselves, violations of this General Permit."

Pl. RJN, Ex. A. at 10. Indeed, Plaintiff concedes that exceedances, standing alone, do not constitute a violation of effluent limitations, *see* Mot. at 13, but Plaintiff maintains that Defendant's exceedances coupled with its failure to implement more robust BMPs demonstrate such a violation.

Under the General Permit, dischargers must implement minimum BMPs and applicable advanced BMPs, and must "implement BMPs when necessary, in order to support attainment of water quality standards." Pl. RJN, Ex. A at 5. BMPs are utilized by the General Permit in place of numeric effluent limitations, presumably because numeric effluent limitations are infeasible. *See* RJN, Ex. A at 48 (stating that the applicable federal code requires use of BMPs when numerical effluent limitations are infeasible).[5] Accordingly, Plaintiffs would not be able to prove a violation of effluent limitations by pointing to a specific numerical violation, and must instead demonstrate that Defendant does not meet BMPs. And as Plaintiffs indicate, Regional Board staff have found that Defendant has not met minimal BMPs or implemented necessary BMPs in several instances. *See* Novak Decl., Ex. 15 at 2, Ex. 16 at 1–4.

Though some cases regarding effluent limitations have found violations, or not, based on specific exceedances of effluent limitations,[6] specific exceedances of limitations are not available or practicable in the instant case, as the California General Permit uses BMPs rather than specific effluent limitations. *See generally* Pl. RJN, Ex. A. Accordingly, instead, the Court relies on NAL exceedances in combination with violations of the BMPs as indicated in the

---

[5] The Court emphasizes again that this use of BMPs instead of NELs, as allowed for in the General Permit, is in compliance with the Clean Water Act. *See* 40 C.F.R. § 122.44(k)(4).

[6] *See San Francisco Baykeeper*, 791 F. Supp. 2d at 755; *Inland Empire Waterkeeper*, 2008 WL 6098645, at *4.

General Permit,[7] which the EPA delegated to state authorities to implement. *See* Pl. RJN, Ex. A at 48–49; 40 C.F.R. §§ 122.26(e)(1), 122.21. Moreover, BMPs are explicitly authorized by the CWA when specific numeric effluent limitations are not available.[8] Here, Defendant failed to meet BMPs, thus violating the General Permit, on numerous occasions in the past several years. Novak Decl., Ex. 15 at 1–2 (in 2015, the SWPPP stated that fiber rolls and gravel bag check dams were to be implemented but neither were implemented at the Facility; additionally, structural BMPS were required given the nature of materials handled at the Facility, but such structural BMPs were neither identified in the SWPPP nor implemented at the site); Novak Decl., Ex. 15 at 2 (in 2016, two BMPs noted in the SWPPP were a cattle crossing and an infiltration basin, but neither BMP was observed at the facility); Novack. Dec., Ex. 16 at 1–2 (in 2017, Defendant failed to implement erosion control BMPs despite erosion occurring in several areas of industrial activity; the SWPPP included an infiltration basin and a cattle crossing but neither BMP was observed during inspection). The Court consequently finds that the exceedances of NALs by Defendant's Facility and Defendant's continual failure to meet or implement required BMPs constitutes a violation of the General Permit and, by extension, a violation of the CWA.

Defendant argues that Plaintiffs cannot conclusively demonstrate a violation of the General Permit and the CWA because Plaintiffs have not shown that discharges from Defendant's Facility have actually reached Temescal Creek. Opp'n at 12. To the contrary, Plaintiffs need not show that discharges have reached the body of water in question; under the CWA, a discharging facility's violation of BMPs can be determinative of whether that facility has violated its state permit and the CWA. 40 C.F.R. § 122.44(k)(4)(BMPs controls the discharge of pollutants when authorized under the CWA). As California's current General Permit utilizes BMPs, these practices are determinative of whether Defendant's Facility has committed violations of the CWA's effluent limitations.

---

[7] The CWA authorizes BMPs to control or abate the discharge of pollutants when "numeric effluent limitations are infeasible." 40 C.F.R. § 122.44(k)(4).

[8] The General permit states that "the State Water Board expects that this [earlier referenced] information and assessment process will provide information necessary to determine the feasibility of numeric effluent limitations for industrial dischargers in the next reissuance of this General Permit." Pl. RJN, Ex. A. at 10.

The Court therefore GRANTS IN PART Plaintiffs' Motion as to their first cause of action, as the Court finds Defendant violated the CWA's effluent limitations. Additionally, Plaintiff appears to seek the Court's judgement that Defendant's facility has discharged storm water 108 times during a five-year period and Defendant has been in violation of the General Permit's effluent limitations each time. Mot. at 15. Plaintiffs hinge their argument on the notion that the facility discharges every time it rains .14 inches, and it has rained that amount 108 times in five years. Yet Plaintiffs cannot conclusively demonstrate 108 violations solely based on their finding that there was a discharge from Defendant's Facility during one instance of .14 inches of rain. Accordingly, the Court DENIES IN PART Plaintiffs' Motion as to claim one to the extent Plaintiffs seek judgment that Defendant has committed 108 distinct effluent limitation violations.

### C. Second Claim for Violation of General Permit's Discharge Prohibitions

Plaintiffs bring the second cause of action for violation of the CWA via violation of the General Permit's discharge prohibitions, alleging that Defendant's Facility has discharged prohibited storm water discharges that result in coloration of receiving waters and contain suspended solids in violation of the Basin Plan. FAC ¶ 256.

### 1. The Parties' Arguments

Plaintiffs note the Basin Plan prohibits discharges that "result in coloration of the receiving waters" and "suspended or settleable solids" in untenable amounts. Mot. at 16. Plaintiffs then argue they are entitled to summary judgment on their second claim because Defendant's discharges of polluted storm water are colored deep red and brown, and that the facility's storm water samples indicate suspended solids in Defendant's runoff exceed applicable benchmarks. Mot. at 16–17. Defendant again argues that Plaintiffs present no evidence of discharge actually reaching Temescal Creek, and thus that Plaintiffs cannot succeed on their Motion. Opp'n at 12.

### 2. Violation of the General Permit's Discharge Prohibitions

Under the General Permit, discharges "that violate any discharge prohibitions contained in applicable. . . (Basin Plans). . . are prohibited." Pl. RJN, Ex. A at 13-1. The Basin Plan for

the Santa Ana River Basin ("Basin Plan") is the applicable plan. Pl. RJN, Ex. B. Under the Basin Plan, waste discharges "shall not result in coloration of the receiving waters" and "shall not contain floating materials, including solids," which cause "a nuisance or adversely affect beneficial uses." *Id.* at 15.

The Court finds there are genuine issues of material fact as to Plaintiffs' discharge prohibition violation claim under the Basin Plan. Plaintiffs cite Regional Board staff's Notices of Violation, arguing the Regional Board confirms that the storm water from Defendant's facility starkly contrasts with surrounding runoff. *See* Novak Decl., Ex. 13, 15–16. However, in contrast to the Regional Board's statements that Defendant has failed to adequately implement BMPs—as noted above, with respect to Plaintiffs' first claim—Plaintiffs fail to point to any finding by the Regional Board that Defendant is in violation of the Basin Plan. Moreover, the Basin Plan is quite attenuated from the CWA; discharges prohibited by the Basin Plan are prohibited by the General Permit, and the General Permit governs the CWA obligations of industrial facilities including Defendant's Facility.

Accordingly, the Court finds that a general dispute of material facts remains as to this claim, and DENIES Plaintiffs' Motion as to their second cause of action.

**D. Fifth Claim for Failure to Adequately Develop, Implement and Revise SWPPPs**

Plaintiffs bring the fifth cause of action for violation of the CWA via Defendant's failure to adequately develop, implement, and/or revise its SWPPP. FAC ¶¶ 279–83. Plaintiffs argue they are entitled to summary judgment on the SWPPP claim because Defendant fails to meet the requirements of a SWPPP under the General Permit. Mot. at 18–19. Defendant argues it was repeatedly updated its report in compliance with the General Permit. Opp'n at 14.

Under the General Permit, dischargers "shall develop and implement a site-specific SWPPP for each industrial facility covered by this General Permit." Pl. RJN, Ex. A. at 17. A SWPPP must contain, among other elements, a site map and an annual comprehensive facility compliant evaluation (an annual evaluation). *Id.* Additionally, dischargers must revise their SWPPP whenever necessary, and certify and submit their SWPPP within 30 days whenever the SWPPP contains significant revisions. *Id.* In terms of performance standards, a SWPPP must

also: (a) identify and evaluate all sources of pollutants that may affect the quality of industrial storm water discharges; (b) identify and describe the minimum BMPs and any advanced BMPs "implemented [by the facility] to reduce or prevent pollutants in industrial storm water discharges;" and (c) describe conditions or circumstances that may require future revisions to the SWPPP. *Id.* at 18.

Here, Plaintiffs show that Defendant is not in compliance with some aspects of the General Plan. Specifically, Plaintiffs show there is an absence of material fact that Defendant's SWPPPs do not comply with the performance standards outlined in Section X.C.1 of the General Plan. Pl. RJN, Ex. A at 18. Subsection B of the performance standards requires that Defendant identify and describe the minimum BMPs and any advanced BMPs "implemented [by the facility] to reduce or prevent pollutants in industrial storm water discharges;" these BMPs "shall be selected to achieve compliance with [the] General Permit." *Id.* In direct contrast, after the Regional Board alerted Defendant through Notices of Violation that its BMPs were not effective to control the discharge of clay materials and that the check dams used by Defendant were not sufficient to reduce fine particles in runoff (and thus Defendant's BMPs were not compliance with the General Permit), Defendant re-proposed the same BMPs in its 2017 SWPPP revision as in its previous SWPPPs. *See* Novak Decl., Ex. 13 (Notice of Violation); Novak Decl., Ex. 16 (Notice of Violation); Novak Decl., Ex. 2 at 12 (2017 SWPPP revision). Specifically, the Regional Board notified Defendant that its SWPPP failure to implement required BMPs regarding erosion controls, as required by the General Permit Section X.H.1.e., in 2016, yet in 2017 Defendant had still failed to implement erosion control BMPs, thus evidencing a failure to develop and/or implement required BMPs in its SWPPP. *Compare* Novak Decl., Ex. 15 at 1–2 (failure to implement erosion control BMPs as required in each SWPPP under the General Permit), *with* Novak Decl., Ex. 16 at 1–2 (repeated failure to implement erosion control BMPs). *See also* Novak Decl., Ex. 13 at 1 (Defendant on notice in 2015 that its SWPPP failed to develop and implement erosion control BMPs).

Defendant is similarly in violation of Subsection (c) of the performance standards, which requires a SWPPP to describe conditions or circumstances that may require future

revisions to the SWPPP. Pl. RJN, Ex. A at 18. As indicated above, Defendant was on notice that its BMPs did not result in meeting NALs.[9] However, Defendant did not indicate any new BMPs to come into compliance with NALs, or acknowledge the need for future revisions due to its NAL exceedances. Novak Decl., Ex. 2 at 12 (Defendant's SWPPP), Ex. 15, Ex. 24, Ex. 25.[10] Additionally, Defendant did not develop further BMPs with respect to erosion control, despite being on notice that its erosion control measures were insufficient. *See* Novak Decl., Ex. 2 at 12; Novak Decl., Ex. 13 at 1; Novak Decl., Ex. 15 at 1–2; Novak Decl., Ex. 16 at 1–2. Accordingly, the Court finds that Defendant is in violation of at least some requirements of the SWPPP, which in turn constitutes a violation of the General Permit. *See, e.g., Kramer*, 619 F. Supp. 2d at 932 (finding that revisions to the SWPPP were necessary under the General Permit and thus the defendant was in violation of the General Permit).

The Court thus GRANTS IN PART Plaintiffs' Motion as to their fifth cause of action, finding Defendant in violation of Section X.C.1, subsections b and c of the General Permit.

### E. Sixth Cause of Action for Failure to Adequately Implement Monitoring Plan

Plaintiffs bring their sixth cause of action for failure to adequately develop, implement, and/or revise a monitoring and reporting plan in violation of the General Permit and, in turn, the CWA. FAC ¶¶ 290–300. Plaintiffs contend there is no dispute of material fact that Defendant violated the General Permit's monitoring requirements. Mot. at 20–22. Plaintiffs argue, specifically, that Defendant has violated the monitoring requirements by failing to: (1) train team members responsible for monitoring, including its foreman Jose Arana; (2) conduct all monthly dry-weather visual observations; (3) conduct sampling event visual observations; (4) analyze storm water samples for iron and oil and grease ("O&G"); and (5) collect at least four samples from qualifying storm events each reporting year. *Id.* Defendant contends that its foreman, Jose Arana, is not responsible for the SWPPP, and that factual issues remain regarding compliance with storm water sampling. Opp'n at 14–15.

---

[9] *See* Section IV.B of this Order.
[10] *See also* Exhibits evidencing that Defendant's Facility has had repeated violations of Numeric Action Levels ("NALs") of Total Suspended Solids ("TSS") and iron above those levels. Novak Decl., Ex. 7 at 3; Novak Decl., Ex. 12 at 4; Novak Decl., Ex. 27 at 4.

The General Permit requires dischargers such as Defendant to engage in monitoring. Pl. RJN, Ex. A at 26–28. The monitoring requirements include identification of team members assigned to conduct monitoring requirements, monthly visual observations, sampling event visual observations, collection of four samples from qualifying storm events each year, and analysis of all collective samples for TSS and O & G. *Id.* The General Permit also requires that the discharger ensure all team members implementing the various compliance activities are property trained to implement requirements of the General Permit, including monitoring activities. *Id.* at 24–25.

The Court finds that Plaintiffs are not entitled in judgment on their sixth claim. Plaintiffs are not entitled to judgment regarding violation of the General permit's training requirements; while Plaintiffs provide evidence that Arana was not training to perform observations under the SWPPP, Defendant notes that Craig Deleo, rather than Mr. Arana, is responsible for the monitoring requirements of the General Plan. *See* Pl. RJN, Ex. 2 at 5 (list Deleo as responsible for monitoring). A factual dispute thus remains as to Defendant's compliance with the General Permit's training requirements.

Similarly, Plaintiffs are not entitled to judgment on a violation of the General Permit's monitoring requirements based on a failure to conduct visual observations, conduct sampling event visual observations, analyze samples for iron and O&G, or to collect at least four samples from qualifying storm events each year. Plaintiffs cite their request for production of monthly inspections, and on that basis state that Defendant has failed to conduct monthly visual inspections as well as to sample and visually observe at least four qualifying storm events per year. Mot. at 21. However, a request for production from Plaintiffs does not conclusively demonstrate that Defendant failed to conduct monthly visual inspections, and as Defendant notes, the reporting requirements of Defendant during qualifying storm events and for sampling are disputed. *See* Hacunda Decl., Ex. 1 at 6–9. Accordingly, a dispute of material fact remains as to Defendant's compliance with the monitoring requirements of observation, sampling, analyzing sampling, and collection.

Accordingly, the Court finds that a general dispute of material facts remains as to this claim, and DENIES Plaintiffs' Motion as to their sixth cause of action.

### F. Seventh Cause of Action for Failure to Report

Finally, Plaintiffs bring their seventh cause of action for failure to report in violation of the General Permit and thus the CWA. FAC ¶¶ 301–11. Plaintiffs argue they are entitled to judgment for failure to report because, had Defendant reported the required information, it would be public available electronically through the State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System ("SMARTS"). Mot. at 23–25. However, the instances of qualifying storm events ("QSEs"), and thus the number of required instances of sampling and reporting, is disputed by Defendant. *See* Opp'n at 14–15 (citing SGD at 149–51). Moreover, Plaintiff's failure to report claim appears dependent on its argument that Defendant failed to adequately monitor and sample. *See* Mot. at 23 (stating that Defendant failed to collect requisite storm water samples and thus failed to report results). Given that the Court denied Plaintiffs' Motion as to the monitoring claim, and viewing the facts in the light most favorable to the non-moving party, the Court declines to find an absence of genuine issues of material fact as to Defendant's reporting or lack thereof.

Accordingly, at this stage, the Court DENIES Plaintiffs' Motion as to their seventh cause of action.

## IV. DISPOSITION

The Court GRANTS IN PART and DENIES IN PART Plaintiffs' Motion for Partial Summary Judgment. The Court therefore GRANTS IN PART Plaintiffs' Motion as to the first cause of action to the extent that the Court finds Defendant violates the effluent limitations. The Court DENIES Plaintiffs' Motion as to the second cause of action. The Court GRANTS IN PART Plaintiffs' Motion as to the fifth cause of action, finding Defendant in violation of Section X.C.1, subsections b and c of the General Plan. The Court DENIES Plaintiffs' Motion as to the sixth cause of action. The Court DENIES Plaintiffs' Motion as to the seventh cause of action.

_David O. Carter_

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

DATED:  June 10, 2019

# EXHIBIT C

**EXHIBIT C**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 18-00333-DOC-DFM                    Date:  June 22, 2020

Title: INLAND EMPIRE WATERKEEPER ET AL. v. CORONA CLAY CO.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

__Kelly Davis__                                  __Not Present__
Courtroom Clerk                                  Court Reporter

ATTORNEYS PRESENT FOR                  ATTORNEYS PRESENT FOR
PLAINTIFF:                                        DEFENDANT:
None Present                                      None Present

**PROCEEDINGS (IN CHAMBERS):   ORDER DENYING DEFENDANT'S**
**MOTION FOR RELIEF FROM**
**JUDGMENT [194]**

Before the Court is Defendant Corona Clay Company's ("Defendant") Motion for Relief from Judgment ("Motion") (Dkt. 194), brought under Federal Rules of Civil Procedure 59(e) and 60(b). The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78; C.D. Cal. R. 7-15. Having reviewed the moving papers, the Court DENIES Defendant's Motion.

As Plaintiffs note in their Opposition (Dkt. 196), Plaintiffs have appealed the Court's Final Judgment (Dkt. 191) to the Ninth Circuit. Opp'n at 1. Defendant, meanwhile, challenges that same Final Judgment in the instant Motion. Therefore, in the interests of judicial economy, the Court finds that Defendant should present its objections to the Final Judgment during the appeal to the Ninth Circuit. The Court finds no reason to undertake a duplicative review of the Final Judgment, and will defer to the Ninth Circuit to conduct an efficient review of all parties' challenges to the Final Judgment.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 18-00333-DOC-DFM                                     Date: June 22, 2020

                                                                                          Page 2

      Defendant's Motion is accordingly DENIED. The Court hereby STAYS any execution of the Final Judgment pending review by the Ninth Circuit (to the extent not already stayed by Plaintiffs' appeal).


      The Clerk shall serve this minute order on the parties.


MINUTES FORM 11                                              Initials of Deputy Clerk: kd

CIVIL-GEN

# CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2020, I filed the foregoing on this Court's electronic CMF filing system, which will deliver the foregoing via email to the following:

ORANGE COUNTY COASTKEEPER
INLAND EMPIRE WATERKEEPER
Colin Kelly (Bar No. 266956)
Email: colin@coastkeeper.org
Sarah Spinuzzi (Bar No. 305658)
Email: sarah@coastkeeper.org
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626
Telephone: (714) 850-1965

Jennifer F. Novak
Law Office of Jennifer F. Novak
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
(310) 693-0775 office
(626) 487-9762 cell
novak@jfnovaklaw.com

Christopher Sproul (Cal. Bar No. 126398)
Brian Orion (Cal. Bar No. 239460)
Stuart Wilcox (Cal. Bar No. 327726)
Email: csproul@enviroadvocates.com
borion@enviroadvocates.com
wilcox@enviroadvocates.com
Environmental Advocates
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695

DATED this 29th day of June 2020.

/s/ Brian Neach
Brian Neach
Attorneys for Corona Clay Co.