Jennifer F. Novak (SBN 183882)
novak@jfnovaklaw.com
LAW OFFICE OF JENNIFER F. NOVAK
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
Telephone:    (310) 693-0775
Facsimile:    (310) 627-0172

Sarah Spinuzzi (SBN 305658)
sarah@coastkeeper.org
Armita A. Ariano (SBN 314434)
armita@coastkeeper.org
ORANGE COUNTY COASTKEEPER
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626
Telephone:    (714) 850-1965
Facsimile:    (714) 850-1592

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INLAND EMPIRE WATERKEEPER, a project of Orange County Coastkeeper, and ORANGE COUNTY COASTKEEPER, a California non-profit corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>CORONA CLAY CO., a California corporation,<br><br>        Defendant. | Case No.: 8:18-cv-00333 DOC (DFM)<br><br>Hon. David O. Carter<br><br>**PLAINTIFFS' NOTICE OF MOTION AND JOINT STIPULATION REGARDING MOTION TO COMPEL**<br><br>**[DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE DOUGLAS F. MCCORMICK]**<br><br>Motion Hearing Date: July 5, 2022<br>Motion Hearing Time: 10:00 a.m.<br>Discovery Cutoff: June 30, 2022<br>Pretrial Conference: September 6, 2022<br>Trial: September 20, 2022 |

JOINT STIP TO COMPEL DISCOVERY          i          Case No. 8:18-cv-00333 DOC (DFM)

TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 5, 2022, or as soon thereafter as the matter may be heard before the Honorable Douglas F. McCormick of the above-entitled court, located at 411 W. Fourth St., Santa Ana, California 92701, Courtroom 6B, Plaintiffs Inland Empire Waterkeeper and Orange County Coastkeeper ("Plaintiffs") will and hereby move this Court for an order compelling Defendant to produce documents responsive to discovery requests and to provide amended responses to requests for admissions. Plaintiffs also move for an order that Defendants pay to Plaintiffs their reasonable expenses, including attorneys' fees, incurred in connection with this proceeding.

On May 4, 2022, and May 27, 2022, counsel met to engage in a meet and confer on the substance of the underlying discovery dispute, pursuant to Local Rule 37-1.

This Motion is made on the grounds that said documents are relevant to the subject matter of the underlying action, do not relate to privileged matters, and the refusal to produce such documents is without justification. This Motion is further made on the grounds that Defendants' purported admissions reformulated Plaintiffs' requests and, thus, failed to respond to the substance of Plaintiffs' initial, actual requests in violation of Federal Rules of Civil Procedure ("FRCP") Rule 36. *See* FRCP 36(4) (requiring denying parties to "fairly respond to the substance of the matter" and allowing qualification only "when good faith requires").  This Motion is based upon this Notice of Motion, the following Joint Stipulation Regarding Motion to Compel Production of Documents and Amended Responses to Reqeusts for Admissions, and attached exhibits, the Declaration of Jennifer Novak in Support of Joint Stipulation Regarding Motion to Compel Production of Documents and Amended Responses to Requests for Admissions, and attached exhibits, the

Declaration of Brian Neach, and attached exhibits, the Declaration of Craig Deleo, the Court's file in this matter, and upon any other such argument or evidence as the Court may consider for hearing on this Motion.

Dated:        June 14, 2022                    Respectfully submitted,


                                               /s/ Sarah J. Spinuzzi

                                               Sarah J. Spinuzzi
                                               Attorney for Plaintiffs Inland Empire
                                               Waterkeeper and Orange County
                                               Coastkeeper

**INDEX**

I.      **INTRODUCTORY STATEMENTS** …………………………………...1

A.      **Plaintiffs' Statement**………………………………………………..1

B.      **Defendant's Statement** ……………………………………………....1

II.     **ISSUES IN DISPUTE AND CONTENTIONS OF THE PARTIES**…….2

A.      **Plaintiffs' Statement**………………………………………………..2

1.      Requests For Admissions, Set Three………………………………..2

2.      Request For Production of Financial Documents…………………...8

a)      *Documents Sought are Relevant to Plaintiffs' Claims*……………….......22

b)      *Improper Attorney Work-Product and Attorney-Client*

        *Privilege Objections*…………………………………………………24

B.      **Defendant's Statements**………………………………………..29

1.      Requests for Admission…………………………………………29

2.      Requests for Production No. 3……………………………………..31

3.      Requests for Production No. 4……………………………………..32

III. **INTRODUCTORY STATEMENTS**

    A.    **Plaintiffs' Statement**

This is a citizen suit alleging claims under the Clean Water Act ("CWA"), 33 U.S.C. §§ 1257, *et seq.* The central allegation in this case is that Defendant Corona Clay Company ("Corona Clay" or "Defendant") owns and operates a clay manufacturing facility located at 10600 Dawson Canyon Road, Corona, California 92883 (the "Facility") that is discharging pollutants into waterways in violation of the CWA. As stated in the First Amended Complaint, filed April 20, 2018 (ECF #12), Inland Empire Waterkeeper and Orange County Coastkeeper (collectively, "Plaintiffs") seek civil penalties and injunctive relief for Defendant's CWA violations.

Plaintiffs bring the present motion to compel Defendant to provide amended responses to Plaintiffs' Requests for Admissions, Set Three ("RFA 3") and to compel the further production of documents responsive to Plaintiffs' Request for Production, Set Three ("RFPD 3") and Plaintiffs' Request for Production, Set Four ("RFPD 4"), which seek information relevant to the claims and remedies sought for Defendant's Clean Water Act violations.

    B.    **Defendant's Statement**

Plaintiffs' motion is an unnecessary waste of this Court's time. With respect to Requests for Admissions, counsel for Plaintiffs participated in a meet and confer call with counsel for Defendant on May 27, 2022. Primary counsel in the case for Defendant, Brian Neach, was in trial in Orange County, but made his colleague available for the call on May 27, 2022. (Neach Decl. ¶ 2.) Mr. Neach began another trial in Riverside County Superior Court on June 3, 2022, but nonetheless has served supplemental responses to three of the RFAs in question that should resolve the issue. As to the others, Plaintiffs are improperly seeking this Court to essentially require an admission, which is simply not proper under FRCP 37.

With regard to Requests for Production Set No. 3, Plaintiffs' beef appears to be that some kind of log of the production was not provided. The cases relied upon by Plaintiffs, however, are simply not applicable to the facts here, which involves a production of about 900 pages of documents. Far from the type of "data dump" or "document dump" that took place in the cases relied upon by Plaintiffs. Moreover, Plaintiffs' position is patently hypocritical, as their own responses to Defendants' RFPs did not include the kind of "log" that they now claim is mandatory. (Neach Decl. ¶ 3; Ex. 1.) In any event, Defendant produced the documents as they are kept in the ordinary course, which satisfies the requirements of Federal Rule of Civil Procedure 34(b)(2)(E)(i).

With regard to RFP Set No. 4, which primarily relates to "financial" documents, Defendant has now produced its tax returns for the years 2016-2020, which covers the period of November 1, 2016 through October 31, 2021. (Neach Decl. ¶ 4.) It was only a mistaken oversight by counsel for Plaintiff that delayed the production of these materials from May 31, 2022, to June 13, 2022. (*Id.*)

Defendant Corona Clay Company is a small company with approximately 11 employees and with less than $1 million in revenue in the tax year 2020. Far from obfuscating discovery, Corona Clay has attempted to cooperate with Plaintiffs in a manner commensurate with the needs of this case. Plaintiffs' motion should be denied.

## IV. ISSUES IN DISPUTE AND CONTENTIONS OF THE PARTIES

### A. Plaintiffs' Statement

Plaintiffs seek to compel amended responses to (i) Plaintiffs' Requests for Admissions, Set Three; (ii) amended responses and further responsive documents to Plaintiffs' Requests for Production of Documents, Set Four; and (iii), amended responses to Plaintiffs' Request for Production of Documents, Set Three.

#### 1. *Requests For Admissions, Set Three*

On February 18, 2022, Plaintiffs served on Defendant Requests For

Admissions, Set Three, pursuant to FRCP Rule 34. Novak Decl. ¶ 2; Exhibit A. On March 23, 2022, Defendant served responses to Plaintiffs' Requests for Admissions, Set Three. Novak Decl. ¶ 5; Exhibit D. Defendant's responses unreasonably recast and/or otherwise inaccurately qualified Plaintiffs' requests as follows:

**REQUEST FOR ADMISSION NO. 69:** Admit that YOU have not filed for No Exposure Certification coverage as defined in Section XVII of the 2015 PERMIT.

RESPONSE TO REQUEST FOR ADMISSION NO. 69:

Responding Party objects to this request on the ground that it seeks information that is not relevant to the claims or defense of any party in this action. Responding Party objects further to this request on the ground that it is not clear whether the "2015 PERMIT" is the applicable law, as opposed to the amended permit that Responding Party understands is still in draft form. Subject to the foregoing objections, Responding Party states as follows: Admitted that Responding Party has not filed a request for "No Exposure Certification," which is separate and apart from the question of whether Responding Party has ever discharged polluted stormwater to any Water of the United States.

**REQUEST FOR ADMISSION NO. 73:** Admit that YOU have not revised YOUR SWPPP since July 2019.

RESPONSE TO REQUEST FOR ADMISSION NO. 73:

Responding Party objects to this request on the ground that it seeks information that is not relevant to the claims or defense of any party in this action. Subject to the foregoing objections, Responding Party states as follows: Admitted that no events or material changes have occurred that require any revision to the SWPPP filed by Responding Party in July 2019.

**REQUEST FOR ADMISSION NO. 74:** Admit that YOU have not submitted a SWPPP to the STATE BOARD since July 2019.

RESPONSE TO REQUEST FOR ADMISSION NO. 74:

Responding Party objects to this request on the ground that it seeks information that is not relevant to the claims or defense of any party in this action.

Subject to the foregoing objections, Responding Party states as follows:

Admitted that no events or material changes have occurred that require any revision to the SWPPP filed by Responding Party in July 2019.

In its responses to these RFAs, Defendant failed to respond to the questions posed. Instead, Defendant responded by reformulating Plaintiffs' requests and, thus, failed to respond to the substance of Plaintiffs' initial, actual requests in violation of FRCP 36. *See* FRCP 36(4) (requiring denying parties to "fairly respond to the substance of the matter" and allowing qualification only "when good faith requires"). Defendant's recasting of Plaintiffs' request and improper qualification responds to an entirely new request made up by Defendant and not presented by Plaintiffs. While Plaintiffs recognize that FRCP 36 allows an answer to be qualified if "good faith requires," Defendant's attempt to evade Plaintiffs' questions and justify its response with factual inaccuracies is not what "good faith requires." Further, even when good faith actually requires qualified answers, such answers "must specify the part admitted and qualify or deny the rest," which Defendant did not do. Fed. R. Civ. P. 36(a)(4) (emphasis added).

Plaintiffs urge the Court to order admissions or denials to the requests Plaintiffs actually made, without factual justifications, recastings, or qualifications not made in good faith.

Defendant's responses to RFAs No. 71, 72, and 90 show that it has failed to make a reasonable effort to obtain sufficient information to admit or deny responses. Plaintiffs requested, in relvant part, the following admissions, and Defendant provided the following responses:

**REQUEST FOR ADMISSION NO. 71:** Admit that YOU have designated Discharge Point 1 in YOUR 2019 SWPPP as a location where the FACILITY discharges storm water.

RESPONSE TO REQUEST FOR ADMISSION NO. 71:

Responding Party objects to this Request on the ground that the term "discharges storm water" is vague, ambiguous and overbroad and seeks information that is not relevant to any claims or defenses and is not reasonably calculated to lead to discovery of admissible evidence. Subject to the foregoing objections, Responding Party states as follows: Denied.

**REQUEST FOR ADMISSION NO. 72:** Admit that YOU have designated Discharge Point 2 in YOUR 2019 SWPPP as a location where the FACILITY discharges storm water.

RESPONSE TO REQUEST FOR ADMISSION NO. 72:

Responding Party objects to this Request on the ground that the term "discharges storm water" is vague, ambiguous and overbroad and seeks information that is not relevant to any claims or defenses and is not reasonably calculated to lead to discovery of admissible evidence. Subject to the foregoing objections, Responding Party states as follows: Denied.

REQUEST FOR ADMISSION NO. 90: Admit that the distance between Discharge Point 1 as described in YOUR 2019 SWPPP and Temescal Creek is less than one-quarter of a mile.

RESPONSE TO REQUEST FOR ADMISSION NO. 90:

Responding Party states as follows: Denied.

The purpose of Rule 36(a) is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial. *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981). "Rule 36 requires the responding party to make a reasonable inquiry, a reasonable effort, to secure information that is readily obtainable from persons and documents within the responding party's relative control and to state fully those efforts. Such reasonable inquiry includes an investigation and inquiry of employees, agents, and others, 'who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response.' The inquiry may require venturing beyond the parties to the litigation and include, under certain limited circumstances, non-parties   The operative words then are 'reasonable' and 'due diligence'" *A. Farber & Partners, Inc. v. Garber*, 237 F.R.D. 250, 254 (C.D. Cal. 2006) (quoting *Henry v. Champlain Enter., Inc.*, 212 F.R.D. 73, 78 (N.D.N.Y.2003) (internal citations omitted)); *Asea, supra*, 669 F.2d at 1246-47.

Here, Defendant has made blanket denials to Requests that appear to directly contradict its SWPPP, the testimony of its expert witness, and matters that were previously subject to judicial notice.  Defendant offers no explanation for how it can deny those Requests or what new information it relies upon to do so.

Request 71 seeks affirmation that Defendant has designated "Discharge

Point 1" in its SWPPP as a location where it discharges storm water from its facility. Defendant denied this Request, without providing an explanation for its denial. The response appears to contradict Defendant's sampling reports (entered as exhibits at trial), its SWPPP, its SWPPP map, and testimony from its witnesses Jose Arana and Paul Hacunda.

Similarly, Request 72 seeks affirmation that Defendant has designated "Discharge Point 2" in its SWPPP as a location where it discharges storm water from its facility. Defendant denied this Request, without providing an explanation for its denial. The response appears to contradict Defendant's sampling reports (entered as exhibits at trial), its SWPPP, its SWPPP map, and testimony from its witnesses Jose Arana and Paul Hacunda.

Request 90 seeks affirmation that the distance between Discharge Point 1 and Temescal Creek is less than one-quarter mile. Defendant denied this Request, without providing an explanation for its denial. The response appears to contradict testimony from Paul Hacunda and arguments made by counsel at trial. Given that the purpose of RFAs is to narrow issues for trial, Defendant needlessly keeps this fact in issue with its denial. We ask Defendant to make a reasonable inquiry into this Request and believe that a failure to do so before issuing this denial is improper.

Plaintiffs sent a meet and confer letter to Defendant on May 4, 2022, to discuss Defendant's responses to the requests in Request for Admissions, Set Three. Novak Decl. ¶ 8; Exhibit G. On May 27, 2022, Plaintiffs met and conferred with Defendant. Novak Decl. ¶ 9. Counsel for Defendant stated an understanding of Plaintiffs' position, and offered to pass the information along to the attorneys handling this matter. *Id*. To date, Defendant has not amended its initial responses to Plaintiffs' Request for Admissions, Set Three. *Id*.

2.     *Request For Production of Financial Documents*

On March 17, 2022, pursuant to FRCP Rule 34, Plaintiffs served RFPD 4 on Defendant. Novak Decl. ¶ 4; Exhibit C. Plaintiffs requested the following:

**REQUEST FOR PRODUCTION NO. 1:** All DOCUMENTS EVIDENCING YOUR statement at page 73 of YOUR Principal and Responding Brief of Corona Clay Company, filed October 14, 2020 with the Ninth Circuit Court of Appeals, in Cross-Appeal 20-55678 that YOU had retained Cynthia Gabaldon to analyze YOUR SWPPP management.

**REQUEST FOR PRODUCTION NO. 2:** All DOCUMENTS EVIDENCING YOUR statement at page 74 of YOUR Principal and Responding Brief of Corona Clay Company, filed October 14, 2020 with the Ninth Circuit Court of Appeals, in Cross-Appeal 20-55678 that YOU have "expended over $315,000 for consultants, attorneys, surveyors, lab testing companies, and other vendors for the sole purpose of addressing compliance" with YOUR STORMWATER PERMIT.

**REQUEST FOR PRODUCTION NO. 3:** All DOCUMENTS EVIDENCING YOUR statement at pages 74-75 of YOUR Principal and Responding Brief of Corona Clay Company, filed October 14, 2020 with the Ninth Circuit Court of Appeals, in Cross-Appeal 20-55678 that YOU have "implemented numerous BMPs over the years, including settlement basins, grading of the property to divert stormwater to those basins[.]"

**REQUEST FOR PRODUCTION NO. 4:** All DOCUMENTS EVIDENCING YOUR statement at pages 74-75 of YOUR Principal and Responding Brief of Corona Clay Company, filed October 14, 2020 with the Ninth Circuit Court of Appeals, in Cross-Appeal 20-55420/20-55678 that YOU have "implemented numerous BMPs over the years, including ...

conducting inspections[.]"

**REQUEST FOR PRODUCTION NO. 5:** All DOCUMENTS EVIDENCING YOUR statement at pages 74-75 of YOUR Principal and Responding Brief of Corona Clay Company, filed October 14, 2020 with the Ninth Circuit Court of Appeals, in Cross-Appeal 20-55420/20-55678 that YOU have "implemented numerous BMPs over the years, including ... removing a large inventory stockpile[.]"

**REQUEST FOR PRODUCTION NO. 6:** All DOCUMENTS EVIDENCING YOUR statement at pages 74-75 of YOUR Principal and Responding Brief of Corona Clay Company, filed October 14, 2020 with the Ninth Circuit Court of Appeals, in Cross-Appeal 20-55420/20-55678 that YOU have "implemented numerous BMPs over the years, including ... several other BMPs (such as small settlement ponds and catch basins)[.]"

**REQUEST FOR PRODUCTION NO. 7:** All DOCUMENTS EVIDENCING YOUR statement at page 75 of YOUR Principal and Responding Brief of Corona Clay Company, filed October 14, 2020 with the Ninth Circuit Court of Appeals, in Cross-Appeal 20-55420/20-55678 that YOU had annual revenues in fiscal 2018 of $2,225,978.

**REQUEST FOR PRODUCTION NO. 8:** All DOCUMENTS EVIDENCING YOUR statement at page 75 of YOUR Principal and Responding Brief of Corona Clay Company, filed October 14, 2020 with the Ninth Circuit Court of Appeals, in Cross-Appeal 20-55420/20-55678 that YOU had annual revenues in fiscal 2019 of $1,962,427.

**REQUEST FOR PRODUCTION NO. 9:** All DOCUMENTS EVIDENCING YOUR statement at page 75 of YOUR Principal and Responding Brief of Corona Clay Company, filed October 14, 2020 with the Ninth Circuit Court of Appeals, in Cross-Appeal 20-55420/20-55678 that YOU projected $500,000 in losses during the 2020 fiscal year.

**REQUEST FOR PRODUCTION NO. 10:** All DOCUMENTS EVIDENCING YOUR statement at page 75 of YOUR Principal and Responding Brief of Corona Clay Company, filed October 14, 2020 with the Ninth Circuit Court of Appeals, in Cross-Appeal 20-55420/20-55678 that YOU "had less than $1,000,000 in current assets."

**REQUEST FOR PRODUCTION NO. 11:** All DOCUMENTS EVIDENCING any government financial relief received by YOU, such as the Payroll Protection Plan or Employee Retention Tax Credits, since 2019.

**REQUEST FOR PRODUCTION NO. 12:** ALL DOCUMENTS EVIDENCING ANY effort by YOU to capture and retain STORMWATER at the PROPERTY since December 29, 2012, including but not limited to plans, surveys, studies, maps, photographs, videos, reports, consultant proposals, work orders, and invoices.

**REQUEST FOR PRODUCTION NO. 13:** ALL DOCUMENTS EVIDENCING ANY costs paid to respond to issues of ENVIRONMENTAL compliance at the PROPERTY, including but not limited to, fees and costs paid to consultants, fees and costs incurred in litigation that is not related to the instant matter, and fees and costs incurred in response to administrative orders or enforcement actions since December 29, 2012.

**REQUEST FOR PRODUCTION NO. 14:** ALL FINANCIAL DOCUMENTS EVIDENCING POLLUTION PREVENTION pertaining to the PROPERTY by YOU, from December 29, 2012, to the present, including but not limited to expenditures on best management practices and consultants.

**REQUEST FOR PRODUCTION NO. 15:** ALL FINANCIAL DOCUMENTS RELATED TO YOUR STORMWATER PERMIT

compliance, from December 29, 2012, to the present.

**REQUEST FOR PRODUCTION NO. 16:** ALL DOCUMENTS EVIDENCING YOUR ownership.

**REQUEST FOR PRODUCTION NO. 17:** ALL DOCUMENTS EVIDENCING annual or quarterly financial, managerial, or other accounting summaries of YOUR assets, liabilities, and shareholder equity, including but not limited to YOUR BALANCE SHEETS covering the period from December 29, 2012 to the present.

**REQUEST FOR PRODUCTION NO. 18:** ALL DOCUMENTS EVIDENCING annual or quarterly financial, managerial, or other accounting summaries of YOUR operating revenues and expenses, non-operating revenues, expenses, and costs, irregular items, disclosures, and earnings including but not limited to YOUR PROFIT AND LOSS STATEMENTS covering the period from December 29, 2012, to the present.

**REQUEST FOR PRODUCTION NO. 19:** ALL DOCUMENTS EVIDENCING annual or quarterly financial, managerial, or other accounting summary of YOUR cash flows, including but not limited to YOUR STATEMENTS OF CASH FLOWS, during the period from December 29, 2012, to the present.

**REQUEST FOR PRODUCTION NO. 20:** ALL DOCUMENTS EVIDENCING annual or quarterly financial, managerial, or other accounting summary of YOUR changes in ownership interests including but not limited to STATEMENTS OF SHAREHOLDER EQUITY, during the period from December 29, 2012, to the present.

**REQUEST FOR PRODUCTION NO. 21:** ALL of YOUR FINANCIAL STATEMENTS covering the period from December 29, 2012, to the present.

**REQUEST FOR PRODUCTION NO. 22:** ALL DOCUMENTS EVIDENCING ANY pro forma, forecasted, projected or otherwise forward-looking FINANCIAL STATEMENT(S) of YOURS prepared between December 29, 2012, and the present.

**REQUEST FOR PRODUCTION NO. 24:** ALL Income Tax Returns YOU have submitted to the State of California covering the period of December 29, 2012, to the present.

**REQUEST FOR PRODUCTION NO. 25:** ALL Income Tax Returns YOU have submitted to the United States Internal Revenue Service covering the period of December 29, 2012, to the present.

**REQUEST FOR PRODUCTION NO. 26:** ALL DOCUMENTS EVIDENCING property, capital, or operating leases between YOU and another party, whether YOU are the lessee or lessor, INCLUDING any amendments thereto, valid as of or entered into since December 29, 2012, through the present.

**REQUEST FOR PRODUCTION NO. 27:** ALL DOCUMENTS EVIDENCING ANY encumbrance of the PROPERTY, including but not limited to those RELATED TO environmental compliance, mortgages, unrecorded easements, encroachments, and liens.

**REQUEST FOR PRODUCTION NO. 28:** ALL DOCUMENTS RELATED TO each debt secured YOUR REAL PROPERTY EVIDENCING any outstanding balances, including the outstanding principal balance, owed by YOU as of the close of the most recent fiscal year.

**REQUEST FOR PRODUCTION NO. 29:** ALL DOCUMENTS EVIDENCING the extent of operations occurring at the PROPERTY during days when precipitation occurred, including but not limited to

materials consumption or production, capital equipment operational records, and operational expenses such payment to staff, from December 29, 2012 to the present.

**REQUEST FOR PRODUCTION NO. 30:** ALL DOCUMENTS RELATED TO and INCLUDING a "Purchase and Sale Agreement and Escrow Instructions" dated on or about May 16, by and between YOU and Proficiency Capital LLC, a Delaware limited liability company, INCLUDING any amendments thereto or assignments thereof.

**REQUEST FOR PRODUCTION NO. 31:** ALL DOCUMENTS EVIDENCING ANY REAL PROPERTY purchase and sale agreement between YOU and other parties, other than that between YOU and Proficiency Capital LLC dated as of May 16, 2019, from December 13, 2017 to the present, INCLUDING any amendments thereto or assignments thereof in each instance.

**REQUEST FOR PRODUCTION NO. 32:** ALL DOCUMENTS EVIDENCING ANY REAL PROPERTY TRANSACTIONS evaluated or executed by YOU, from December 13, 2017 to the present, excluding documents that would be responsive to Requests 30 and 31 above.

**REQUEST FOR PRODUCTION NO. 34:** ANY DOCUMENTS EVIDENCING a person's, entity's, or organization's ownership or financial interest in YOU from December 29, 2012, to the present.

**REQUEST FOR PRODUCTION NO. 35:** ALL DOCUMENTS RELATED TO land surveys of the PROPERTY occurring between December 29, 2012, and the present.

**REQUEST FOR PRODUCTION NO. 36:** ALL DOCUMENTS RELATED TO land surveys of YOUR REAL PROPERTY with Assessor Parcel Number 283-190-024 between December 29, 2012, and the present.

**REQUEST FOR PRODUCTION NO. 37:** ALL DOCUMENTS RELATED TO land surveys of YOUR REAL PROPERTY with Assessor Parcel Number 283-190-025 between December 29, 2012 and the present.

**REQUEST FOR PRODUCTION NO. 38:** ALL DOCUMENTS RELATED TO land surveys of YOUR REAL PROPERTY with Assessor Parcel Number 283-190-026 between December 29, 2012 and the present.

On April 18, 2022, Defendant served its objections and responses to RFPD 4. Novak Decl. ¶ 7; Exhibit F.

Defendant objected to Plaintiffs' Requests 1-6 as follows:

Responding Party objects to this request on the ground that the defined term "YOUR" would purport to require Responding Party to produce documents that are not within its possession, custody or control. Responding Party objects further to this request on the ground that it seeks documents that are not relevant to the claims or defenses of any party and is not proportional to the needs of the case. Responding Party objects further to this request on the ground that it would require production of documents that are protected from disclosure by the attorney-client privilege and attorney work-product doctrine.

Defendant objected to Requests 7-10 as follows:

Responding Party objects to this request on the ground that the defined term "YOUR" would purport to require Responding Party to produce documents that are not within its possession, custody or control. Responding Party objects further to this request on the ground that it seeks documents that are

not relevant to the claims or defenses of any party and is not proportional to the needs of the case. Responding Party objects further to this request on the ground that it calls for production of documents protected by financial privacy provisions under Federal and state law. Responding Party objects further to this request on the ground that it would require production of documents that are protected from disclosure by the attorney-client privilege and attorney work-product doctrine.

Defendant objected to Request 12 as follows:

Responding Party objects to this request on the ground that the defined term "YOU" would purport to require Responding Party to produce documents that are not within its possession, custody or control. Responding Party objects further to this request on the ground that it seeks documents that are not relevant to the claims or defenses of any party and is not proportional to the needs of the case, including with respect to the time period this request purports to seek documents. Responding Party objects further to this request on the ground that it would require production of documents that are protected from disclosure by the attorney-client privilege and attorney work-product doctrine.

Defendant objected to Request 13 as follows:

Responding Party objects to this request on the ground that its incorporation of the defined term "ENVIRONMENTAL" renders it vague, ambiguous, and patently overbroad. Responding Party objects further to this request on the ground that it seeks documents that are not relevant to the claims or defenses of any party and is not proportional to the needs of the case, including with respect to the time period this request purports to seek documents. Responding Party objects further to this request on the ground that it would

require production of documents that are protected from disclosure by the attorney-client privilege and attorney work-product doctrine.

Defendant objected to <u>Request 14</u> as follows:

Responding Party objects to this request on the ground that the defined term "YOU" would purport to require Responding Party to produce documents that are not within its possession, custody or control. Responding Party objects to this request on the ground that its incorporation of the defined term "FINANCIAL" renders it vague, ambiguous, and patently overbroad. Responding Party objects further to this request on the ground that it seeks documents that are not relevant to the claims or defenses of any party and is not proportional to the needs of the case, including with respect to the time period this request purports to seek documents. Responding Party objects further to this request on the ground that it would require production of documents that are protected from disclosure by the attorney-client privilege and attorney work-product doctrine.

Defendant objected to <u>Request 15</u> as follows:

Responding Party objects to this request on the ground that the defined term "YOUR" would purport to require Responding Party to produce documents that are not within its possession, custody or control. Responding Party objects to this request on the ground that its incorporation of the defined term "FINANCIAL" renders it vague, ambiguous, and patently overbroad. Responding Party objects further to this request on the ground that it seeks documents that are not relevant to the claims or defenses of any party and is not proportional to the needs of the case, including with respect to the time period this request purports to seek documents. Responding Party objects further to this request on the ground that the time period for which it seeks

documents is overbroad. Responding Party objects further to this request on the ground that it would require production of documents that are protected from disclosure by the attorney-client privilege and attorney work-product doctrine.

Defendant objected to <u>Request 16</u> as follows:

Responding Party objects to this request on the ground that it seeks documents that are not relevant to the claims or defenses of any party and is not proportional to the needs of the case. Responding Party objects further to this request on the ground that the time period for which it seeks documents is vague. Responding Party objects further to this request on the ground that it would require production of documents that are protected from disclosure by the attorney-client privilege and attorney work-product doctrine.

Defendant objected to <u>Requests 17-22</u> as follows:

Responding Party objects to this request on the ground that the defined term "YOUR" would purport to require Responding Party to produce documents that are not within its possession, custody or control. Responding Party objects further to this request on the ground that it seeks documents that are not relevant to the claims or defenses of any party and is not proportional to the needs of the case, including with respect to the time period this request purports to seek documents. Responding Party objects further to this request on the ground that it calls for production of documents protected by financial privacy provisions under Federal and state law. Responding Party objects further to this request on the ground that it would require production of documents that are protected from disclosure by the attorney client privilege and attorney work-product doctrine.

Defendant objected to Requests 24-25 as follows:

Responding Party objects to this request on the ground that the defined term "YOU" would purport to require Responding Party to produce documents that are not within its possession, custody or control. Responding Party objects further to this request on the ground that it seeks documents that are not relevant to the claims or defenses of any party and is not proportional to the needs of the case, including with respect to the time period this request purports to seek documents. Responding Party objects further to this request on the ground that it calls for production of documents protected by financial privacy provisions under Federal and state law.

Defendant objected to Request 26 as follows:

Responding Party objects to this request on the ground that the defined term "YOU" would purport to require Responding Party to produce documents that are not within its possession, custody or control. Responding Party objects further to this request on the ground that it seeks documents that are not relevant to the claims or defenses of any party and is not proportional to the needs of the case, including with respect to the time period this request purports to seek documents. Responding Party objects further to this request on the ground that it calls for production of documents protected by financial privacy provisions under Federal and state law. Responding Party objects further to this request on the ground that it would require production of documents that are protected from disclosure by the attorney client privilege and attorney work-product doctrine.

Defendant objected to <u>Requests 27-28</u> as follows:

Responding Party objects to this request on the ground that it seeks documents that are not relevant to the claims or defenses of any party and is not proportional to the needs of the case. Responding Party objects further to this request on the ground that it calls for production of documents protected by financial privacy provisions under Federal and state law. Responding Party objects further to this request on the ground that it would require production of documents that are protected from disclosure by the attorney-client privilege and attorney work-product doctrine.

Defendant objected to <u>Request 29</u> as follows:

Responding Party objects to this request on the ground that the defined term "YOU" would purport to require Responding Party to produce documents that are not within its possession, custody or control. Responding Party objects further to this request on the ground that it seeks documents that are not relevant to the claims or defenses of any party and is not proportional to the needs of the case, including with respect to the time period this request purports to seek documents. Responding Party objects further to this request on the ground that it calls for production of documents protected by financial privacy provisions under Federal and state law, including the financial privacy rights of Responding Party's employees. Responding Party objects further to this request on the ground that it would require production of documents that are protected from disclosure by the attorney-client privilege and attorney work-product doctrine.

Defendant objected to <u>Requests 11</u> and <u>30-32</u> as follows:

Responding Party objects to this request on the ground that the defined term "YOU" would purport to require Responding Party to produce documents that

are not within its possession, custody or control. Responding Party objects further to this request on the ground that it seeks documents that are not relevant to the claims or defenses of any party and is not proportional to the needs of the case. Responding Party objects further to this request on the ground that it calls for production of documents protected by financial privacy provisions under Federal and state law. Responding Party objects further to this request on the ground  that it would require production of documents that are protected from disclosure by the attorney-client privilege and attorney work-product doctrine.

Defendant objected to <u>Request 34</u> as follows:

Responding Party objects further to this request on the ground that it seeks documents that are not relevant to the claims or defenses of any party and is not proportional to the needs of the case, including with respect to the overly-broad time period referenced in the request. Responding Party objects further to this request on the ground that it calls for production of documents protected by financial privacy provisions under Federal and state law. Responding Party objects further to this request on the ground that it would require production of documents that are protected from disclosure by the attorney-client privilege and attorney work-product doctrine.

Defendant objected to <u>Requests 35-38</u> as follows:

Responding Party objects further to this request on the ground that it seeks documents that are not relevant to the claims or defenses of any party and is not proportional to the needs of the case, including with respect to the overly-broad time period referenced in the request. Responding Party objects further to this request on the ground that it would require production of documents

that are protected from disclosure by the attorney-client privilege and attorney work-product doctrine.

Plaintiffs' requests for Defendant's financial documents seek information relevant to injunctive and civil penalty remedies for Plaintiffs' claims. On April 28, 2022, in accordance with Local Rule 37-1, Plaintiffs requested a conference with Defendants. Novak Decl. ¶10; Exhibit I.  On May 4, 2022, the parties' counsel met and conferred regarding the production of documents and Defendant's improper objections to Plaintiffs' discovery request. Novak Decl. ¶11. Plaintiffs agreed to enter into a stipulated protective order to safeguard Defendant's information and documents and offered to narrow the years for which Plaintiffs sought information. *Id.* Plaintiffs further agreed that if certain responsive documents provided the information Plaintiffs sought regarding Defendant's financial position and expenditures, Plaintiffs would be willing to accept them as fully responsive, rather than require "all" documents on a given subject. *Id.*  Counsel for Defendant agreed to provide Plaintiffs with the requested documents, to the extent not previously provided in discovery phase for the trial in 2019. *Id.* Counsel for Defendant also agreed that, to the extent the documents previously provided to Plaintiffs in the discovery phase of trial in 2019 is responsive to the requests in Request for Production of Documents, Set Four, counsel would provide Plaintiffs with a list of Bates numbers and the corresponding request in RFPD 4. *Id.* On May 5, 2022, the parties entered into a stipulation for a protective order, and filed it with the Court on May 9, 2022. Novak Decl. ¶12. The Court issued its protective order on May 11, 2022. Novak Decl. ¶13. Exhibit J.

On May 12, 2022 and on May 18, 2022, Plaintiffs followed up with Defendant for the requested documents because Plaintiffs still had not received anything from Defendant. Novak Decl. ¶14-15. On May 20, 2022, Defendant provided Plaintiffs with a tax return for the tax year 2019. Novak Decl. ¶16. The

email accompanying the documents stated: "Additional documents will be produced once received from our client's outside accountant." *Id.* On May 27, 2022, Plaintiffs followed up again with Defendant for the documents requested in RFPD 4; counsel for Defendant advised that his office should be able to produce the remaining financial documents by "Tuesday" (May 31, 2022) but that he could not say for certain. Novak Decl. ¶17. On May 31, 2022, Plaintiffs followed up again with Defendant for the documents requested in RFPD 4. Novak Decl. ¶18. To date, Plaintiffs have not received any other documents or response to Plaintiffs' requests for RFPD 4. Novak Decl. ¶19.

             a.    Documents Sought are Relevant to Plaintiffs' Claims

Because the information sought is clearly relevant within the meaning of FRCP Rule 26(b)(1), good cause exists to compel production of these documents. *See, e.g.*, *Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 1001 (9th Cir. 2000) (discussing the civil penalty factors). The First Amended Complaint (ECF #12) asserts that Defendant is in violation of CWA sections 301(a), 33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f). Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and Ninth Circuit case law require the imposition of civil penalties upon determination of CWA violations. *See* 33 U.S.C. § 1319(d); *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1397 (9th Cir. 1995). The CWA mandates:

> In determining the amount of a civil penalty the court shall consider the seriousness of the violation or violations, ***the economic benefit (if any) resulting from the violation***, any history of such violations, any good-faith efforts to comply with the applicable requirements, ***the economic impact of the penalty on the violator***, and such other matters as justice may require.

33 U.S.C. § 1319(d) (emphasis added). CWA civil penalties are designed to deter dischargers from accepting pollution penalties as the cost of doing business. *See, e.g., Tull v. United States*, 481 U.S. 412, 422 (1987); *see also Hawaii's Thousand Friends v. City & Cty. of Honolulu*, 821 F. Supp. 1368, 1394 (D. Haw. 1993) ("To

achieve the goal of deterrence, a penalty must be high enough so that the discharger cannot 'write it off' as an acceptable environmental trade-off for doing business"). Courts, therefore, evaluate defendants' financial documents to determine the penalty value necessary to accomplish this deterrent effect. *See, e.g. Idaho Conservation League v. Atlanta Gold Corp.*, 879 F. Supp. 2d 1148, 1170 (D. Idaho 2012) (examining defendant's financial documents, including tax returns, in assessing CWA penalties); *United States v. Mun. Auth. Of Union Twp.*, 929 F. Supp. 800, 805-06 (M.D. Pa. 1996), aff'd, 150 F.3d 259 (3d Cir. 1998) (examining defendant's assets to assess CWA penalties). The documents sought in RFPD 4 enable Plaintiffs to determine the economic benefit Defendant derived from not expending funds for compliance and to determine possible injunctive relief, *e.g.* to determine whether Defendant can afford to implement specific measures and practices. *See, e.g., Baykeeper*, 2009 U.S. Dist. LEXIS 69130 at *9; *See also, Texas Oil & Gas Ass'n v. EPA*, 161 F.3d 923, 936 (5th Cir. 1998) (court may consider whether controls are "economically achievable").

Financial documents are relevant to the CWA civil penalty factors and courts have granted CWA plaintiffs' motions to compel their production. *See, e.g., Waste Action Project v. Draper Valley Holdings*, LLC, No. C12-1870RSL, 2014 U.S. Dist. LEXIS 189098 at *2-4 (W.D. Wash. Jan. 23, 2014); *Friends of Maha'Ulepu, Inc. v. Hawai'i Dairy Farms, LLC*, No. 15-00205 LEK-KJM, 2016 U.S. Dist. LEXIS 191725 at *10 (D. Haw. Sept. 2, 2016); *Cal. Sportfishing Prot. All. V. Chico Scrap Metal, Inc.*, No. 2:10-CV-1207-GEB-AC, 2014 U.S. Dist. LEXIS 144173 at *14 (E.D. Cal. Oct. 9, 2014); *Santa Monica Baykeeper v. Kramer Metals, Inc.*, No. CV 07-3849 DDP (FMOx), 2009 U.S. Dist. LEXIS 69130, at *7-8 (C.D. Cal. Feb. 27, 2009) (granting CWA motion to compel production because "defendant's net worth and financial status are relevant to calculating the economic benefit which resulted from violations of the CWA and the economic impact of a penalty . . ").

## b.   Improper Attorney Work-Product and Attorney-Client Privilege Objections

Defendant objected to every request in RFPD 4 (except for Requests 23-25 and 33) on the grounds that the requests sought documents that fall within the attorney-client privilege and attorney work-product doctrine. These objections lack any credibility, and do not help Defendant avoid production of the requested documents. Defendant provided no privilege log to support its claims of privilege, and no explanation for how the privilege or doctrine apply to these Requests. Boilerplate objections are insufficient to assert a privilege. *Burlington N. & Santa Fe Ry. Co., v. U.S. Dist. Court for the Dist. of Montana*, 408 F.3d 1142, 1149 (9th Cir. 2005) (citing Fed. R. Civ. P. 35(b)(2)(B)-(C)). The burden rests on the party claiming an evidentiary privilege to prove that the privilege actually applies to the documents or communications that the party seeks to withhold. *Burch v. Regents of Univ. of Cal.,* 2005 WL 6377313, at* 1 (E.D. Cal. August 20, 2005). To meet this burden, the party must produce more than its own objections. *Id.* Where a responding party claims that documents are subject to a privilege, they must provide sufficient information within  thirty days to demonstrate what privilege applies and how. *Burlington*, 408 F.3d 1142 at 1149.

To receive the protection of attorney-client privilege, a communication must be made for the purpose of securing primarily either (i) an opinion on law, (ii) legal services, or (iii) assistance in some legal proceeding. *In re Sealed Case,* 737 F.2d 94, 98-99 (D.C. Cir. 1984). The privilege does not protect communications or documents from disclosure simply because a lawyer may be involved. If an attorney engages in communications that primarily relate to non-legal purposes, such as business or corporate issues, no privilege exists. *See, e.g.*, *Fine v. Facet Aerospace Prods. Co.*, 133 F.R.D. 439,444 (S.D.N.Y. 1990) (describing that a report not

privileged where communications by in-house counsel were likely made for general business purposes and the report contained no legal advice).

The work product doctrine applies to "documents and tangible things that are prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3)(A). To qualify for protection against discovery under FRCP 26(b)(3), documents must have two characteristics: "(1) they must be 'prepared in anticipation of litigation or for trial,' and (2) they must be prepared 'by or for another party or by or for that other party's representative.'" *In re California Pub. Utils. Comm'n*, 892 F.2d 778, 780-81 (9th Cir.1989). Documents prepared in the ordinary course of business do not qualify for protection under the work product doctrine because such documents would fail to satisfy the first characteristic.

Defendant has failed to comply with FRCP 26(b)(5)(A), which requires the party invoking the attorney-client and/or work product protections to "describe the nature of the documents, communications, or tangible things not produced or disclosed" in a manner that "will enable other patties to assess the claim." *See Miller v. Pancucci*, 141 F.R.D. 292, 302 (C.D. Cal. 1992) (citing Fed. R. Civ. P. 26(b)(5)). Thus, a privilege log should have been provided to Plaintiffs, which must include the identity and position of the item's author, the same information regarding its recipient, the date it was prepared or written, the title and description of the document, the subject matter addressed, the purposes for which it was prepared or communicated, the document's present location, and the specific privilege or reason it is being withheld. *Id.*

Plaintiffs' RFPD 4 requests documents prepared in the ordinary course of business. For example, Requests 16 and 34 in RFPD 4 sought information about the ownership of Corona Clay Company. This information is directly relevant to any claim that Defendant may assert that its assets or income cannot support a high penalty for its violations. Defendant refused to identify any documents or offer to produce them, claiming a variety of privileges, including attorney-client privilege

and attorney work-product doctrine. However, basic corporate documents such as those establishing the ownership of a corporation do not fall within an attorney-client relationship and were not performed for purposes of litigation.

Request 11 in RFPD 4 sought information about other sources of income that might have offset Defendant's claimed losses during the COVID-19 pandemic, namely whether Defendant received government relief. This information is directly relevant to any claim that Defendant may assert that its assets or income cannot support a high penalty for its Clean Water Act violations. Defendant refused to identify any documents or offer to produce them, claiming a variety of privileges, including attorney-client privilege and attorney work-product doctrine; however, applications for government relief, and payments from the government to Defendant, do not fall within an attorney-client relationship and were not performed for purposes of litigation. On the contrary, government relief programs are public information. *See* PPP Loans Given to Corona Clay, PROPUBLICA (last visited June 6, 2022), https://projects.propublica.org/coronavirus/bailouts/search?q="corona+clay"; *see also* EIDL Grants Given to Corona Clay, SKIP (last visited June 6, 2022), https://helloskip.com/eidl-data?ref=SkipBlog520 (scroll down to "EIDL Loan and EIDL Advance Recipient Search"; then search "corona clay"). Defendant's objections fail because no information is provided to justify the privilege claims.

Request 29 in RFPD 4 seeks "documents evidencing the extent of operations occurring at the PROPERTY during days when precipitation occurred, including […] payment to staff." Despite its objection based on the work product doctrine, Defendant cannot make a colorable claim that its payroll accounting was prepared in anticipation of litigation. Defendant's approach to objections suggest a fundamental lack of understanding of the attorney-client privilege and the attorney work- product doctrine and reliance upon the fact that these exist as potential objections. Moreover, Defendant has produced one document, an income tax return, that

---

JOINT STIP TO COMPEL DISCOVERY        26        Case No. 8:18-cv-00333 DOC (DFM)

includes a summary of payroll costs.  Therefore, it has waived a claim that documents supporting that summary are privileged.

Improper assertions of attorney client privilege and work product protection may result in a waiver of privilege and protection: "[T]he requirement when objecting to discovery based on privilege that the documents/conversations allegedly privileged be specifically identified, and finally, the waiver of the attorney-client or other privilege that may result from improper assertions of the privilege." *Eureka Fin. Corp. v. Hartford Acc. & Indem. Co.*, 136 F.R.D. 179, 181 (E.D. Cal. 1991). If Defendant insists on unreasonable invocation of the attorney-client privilege and the work product doctrine, a court may deem the protection waived. The Court should do so here, and require disclosure of the categories of documents Plaintiffs requested.

Plaintiffis urge the Court to compel production of all documents sought through RFPD 4, since Defendant has failed entirely to produce any documents, despite an agreement to do so.

### 3. *Request For Production of Documents, Set Three*

On February 18, 2022, pursuant to FRCP Rule 34, Plaintiffs served Requests for Production of Documents, Set Three, on Defendant. Novak Decl. ¶ 3; Exhibit B. On March 23, 2022, Defendant served responses to Plaintiffs' Requests for Production of Documents, Set Three.  Novak Decl. ¶ 6; Exhibit E. On April 8, 2022, and April 14, 2022, Defendant provided Plaintiffs with hundreds of documents in response to Plaintiffs' RFPD 3 and FRCP 26 Request for Supplemental Disclosures by providing one large file that contains photos, lab reports, draft documents, and other materials with Bates labels, but without any indication as to how the documents correspond  with Plaintiffs' Requests. *See* Novak Decl. ¶ 6.  No amended response to Plaintiffs' RFPD 3 was attached that would identify which documents were being produced to which request or that verified that these were the only

documents within Defendant's possession, custody, and control, following a diligent and good faith search. *Id.*

Under FRCP 34(b)(2)(E)(i), a party is required to produce documents "as they are kept in the usual course of business or must organize and label them to correspond to the categories in the requests." FRCP 34(b)(2)(E)(ii) states that if the requesting party "does not specify a form for producing electronically stored information, [the responding party] must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms[.] This "protect[s] against deliberate or inadvertent production in ways that raise unnecessary obstacles for the requesting party" and discourages "mix[ing of] critical documents with others in the hope of obscuring significance." Fed. R. Civ. P. 34(b) advisory committee's notes to 1980 and 2006 amendments.

In *Lexington Luminance LLC v. Feit Electric*, the Court ruled that the documents produced by Defendant did not comport with the requirements of Rule 34(b)(2)(E)(i) becuase"there appear[ed] to be no organization of [the Defendant's] documents sufficient to indicate how those documents were maintained in the ordinary course of business." Case No. CV 18-10513-PSG (KSx), 2020 WL 10052403, at *8 (C.D. Cal. July 8, 2020). The Court ordered Defendant to label its previous document production and any future productions to correspond with the specific request to which the documents are responsive. *Id.*

On May 4, 2022, Plaintiffs sent Defendant a meet and confer letter regarding Defendant's document production  to Plaintiffs' RFPD 3. Novak Decl. ¶ 8; Exhibit H. On May 27, 2022, Plaintiffs met and conferred with counsel regarding the production of documents. Novak Decl. ¶ 9. Counsel for Defendant stated an understanding of Plaintiffs' position, and offered to pass the information along to the attorneys handling this matter. *Id.* Plaintiffs have not yet received any amended responses or documentation from Defendant. *Id.*

As the court in *City of Colton v. Am. Promotional Events, Inc.* explains, Rule 34(b)(2)(E)(i) is meant to prevent a party from obscuring the significance of documents by giving some structure to the production." 277 F.R.D. 583, 584-85 (C.D. Cal. 2011) (quoting *Consol. Rail Corp. v. Grand Trunk W. R.R. Co.*, No. CIV.A.09CV10179, 2009 WL 5151745, at *3 (E.D. Mich. Dec. 18, 2009)). The manner in which documents were provided to Plaintiffs violates FRCP 34 and needs to be amended. *See Lexington Luminance LLC*, 2020 WL 10052403, at *8; *see also City of Colton v. Am. Promotional Events, Inc.*, 277 F.R.D. 583, 585 (C.D. Cal. 2011) ("[I]t is clear that parties are entitled under the Federal Rules to rationally organized productions so that they may readily identify documents, including ESI, that are responsive to their production requests."); *Skyhawke Techs., LLC v. Deca Int'l Corp.*, No. CV 18-1234-GW (PLAx), 2019 WL 1976473, at *3 (C.D. Cal. Mar. 21, 2019) ("The rule allowing for production in the ordinary course of business presupposes that there be some sort of organization that will be maintained throughout the production.").

Defendants should be compelled to re-issue the previously produced documents to ensure it entails a labeling scheme that correspond to Plaintiffs' Requests.  This is especially important because a key component of Plaintiffs' allegations concern Defendant's omissions and failures to comply with its Permit.  If Defendant produces no documents in response to certain requests, Plaintiffs should be entitled to point to that omission.  More importantly, Plaintiffs should not have to direct the Court to an entire block of Defendant's production and request the Court to examine it to determine what is missing.  Indeed, it is improper for a party to ask a court to sort through voluminous evidence, rather than direct the court to specific evidence.

## B.    Defendant's Statements

*Requests for Admission*

With regard to RFA Nos. 69, 73 and 74, Defendant served supplemental

responses on June 13, 2022 that moot any concerns Plaintiffs may have. (Neach Decl. ¶ 5, Ex. 2.)

Regarding RFAs 71, 72 and 90, Plaintiffs acknowledge that Defendant provided "blanket denials" with respect to RFAs regarding "discharge," but then ask this Court to force some kind of admission. This is improper. Federal Rule of Civil Procedure 37(c)(2) provides: "Failure to Admit. If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. Thus, "[i]the request is completely denied, a motion to determine the sufficiency of the denial is improper. The truth of the matter must be proved at trial, whereafter the discovering party's only remedy is to move for payment of the expenses of such proof. *Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial* Ch. 11(IV)-D Requests for Admission.

Neither Plaintiffs nor this Court can force Defendant to admit a fact, especially the crucial fact in this case: whether stormwater runoff from Corona Clay's "Facility" ever reached Temescal Creek. Yet, Plaintiffs own definition of "discharge" in their First Amended Complaint is stormwater that reaches "waters of the United States," which Plaintiffs allege Temescal Creek is. *See* FAC ¶ 7 ("This complaint seeks relief for the Defendant's unlawful discharges of pollutants into waters of the United States . . . Specifically, Defendant's discharge of pollutants from the Facility to Temescal Creek, the Santa Ana River, and the Pacific Ocean . . ..."); *see id.* 16 ("The 'discharge of a pollutant' means, among other things, 'any addition of any pollutant to navigable waters from any point source.' 33 U.S.C. § 1362(12); see 40 C.F.R. § 122.2.").

Thus, Plaintiffs' motion with respect to RFA Nos. 71, 72 and 90 is completely improper.

*Requests for Production No. 3*

Plaintiffs' argument with respect to RFP Set No. 3 is that Corona Clay is required to prepare some kind of log or otherwise "label" the production to correspond to each of Plaintiffs' repetitive requests.  Plaintiffs' arguments, however, are not supported by the Federal Rules of Civil Procedure or their cited case law.  Moreover, Defendant provided responses precisely in the same manner that Plaintiffs did, so Plaintiffs' hypocritical argument lacks merit.

To be clear, Defendant's production of documents was less than 1,000 pages.  Thus, calling the production some kind of "data dump" or "document dump" is disingenuous, at best.  Indeed, the primary case relied upon by Plaintiffs is *Lexington Luminance LLC v. Feit Electric Co., Inc.*, No. 18-10513-PSG (KSx), 2020 WL 10052403, (C.D. Cal. July 8, 2020).  As one court noted in distinguishing *Lexington*, the cases involved evidence that the responding party had "'produced thousands of pages of non-responsive documents, numerous documents that [were] unreadable, and [alleged] that the documents [had] not been produced as kept in the ordinary course of business because the documents [were] shuffled into no discernible order.'"  *D.M. v. County of Merced*, No. 1:20-cv-00409, 2021 WL 4206766, at *11 (E.D. Cal. Sep. 16, 2021) (quoting *Lexington*).

Here, in contrast, the responsive documents were produced "as they are kept in the usual course of business" that would be expected from a small company like Corona Clay Company.  The documents were organized so that related documents retained their same organization as kept by the company and bates-stamped accordingly.  (C. Deleo Decl. ¶ 3; Neach Decl. ¶ 6.)  Thus, financial documents were produced together, storm permit documents were produced together, and so on.  This is all that Federal Rule of Civil Procedure 34(b)(2)(E)(i) requires.  Fed. R. Civ. P. 34(b)(2)(E)(i) (allowing a party to "produce documents as theyr are kept in the usual course of business . . . ."

*Requests for Production No. 4*

At the outset, Plaintiffs claims regarding privilege assertions with respect to these requests is entirely off the mark. Taking just one example, Plaintiffs assert a privilege objection was improper with respect to their Request Nos. 3 through 6, which generally seek "All DOCUMENTS EVIDENCING" statements made in ***legal briefs*** filed on behalf of Defendant. Taking these requests at face value, they clearly implicate privileged communications between Defendant and its counsel. Another example is the request seeking "All DOCUMENTS EVIDENCING any government financial relief received by YOU, such as the Payroll Protection Plan or Employee Retention Tax Credits, since 2019." The request clearly implicates privileged communications between Corona Clay Company and its counsel regarding any "government financial relief."

Recognizing the sweeping nature of their requests, Plaintiffs resort to the assertion that a log must be provided. But as explained in meet and confer discussions, Corona Clay is not withholding any ***pre-complaint*** documents based on privilege or work-product grounds, as none exists. (Neach Decl. ¶ 7.) Thus, Plaintiffs are demanding that the Court require Corona Clay Company to prepare a log of ***post-complaint*** privileged documents, which is simply not reasonable.

In fact, "'[c]ourts in this circuit routinely deny a motion to compel a privilege log of attorney-client communications or work product dated after commencement of litigation.'" *Colibri Heart Valve LLC v. Medtronic CoreValve LLC*, No. 820CV00847DOCJDEX, 2021 WL 6882375, at *3 (C.D. Cal., Dec. 6, 2021) (quoting *In re Snap Inc. Sec. Litig.*, 2018 WL 7501294, at *1 (C.D. Cal. Nov. 29, 2018). Accordingly, "'counsel's communications with the client and work product developed once the litigation commences are presumptively privileged and need not be included on any privilege log." *Colibri Heart Valve* LLC, 2021 WL 6882375, at *3 (quoting *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, 2009 WL 5114077, at *3 (N.D. Cal. Dec. 18, 2009)). This is because "a rule requiring creation of an

ongoing log of all post-complaint privileged communications would have a chilling effect on the attorney-client relationship." *In re Snap Inc. Sec. Litig.*, 2018 WL 7501294, at *1.

Plaintiffs' other complaints regarding RFP Set No. 4 appears to be that they seek "financial" documents for the purposes of an expert opining on the "economic" of any purported penalty against Corona Clay, assuming Plaintiffs can actually prove any discharges from Corona Clay's facility ever reached Temescal Creek out in the distance. Here again, Plaintiffs served breathtakingly sweeping requests that would require Corona Clay to produce essentially every accounting document going back to *2012*. Plaintiffs provide no basis for why determing an "economic" impact in 2022 would require documents going so far back.

As examples, Plaintiffs demand "ALL DOCUMENTS EVIDENCING annual or quarterly financial, managerial, or other accounting summaries of YOUR assets, liabilities, and shareholder equity, including but not limited to YOUR BALANCE SHEETS covering the period from December 29, 2012 to the present" and "ALL DOCUMENTS EVIDENCING annual or quarterly financial, managerial, or other accounting summary of YOUR cash flows, including but not limited to YOUR STATEMENTS OF CASH FLOWS, during the period from December 29, 2012, to the present."

In making these sweeping requests, Plaintiffs have ignored the basic principles of Federal Rule of Civil Procedure 26(b)(1), which limits discovery, even relevant discovery, to be "***proportional*** to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Plaintiffs provide this Court with ***no*** basis for requiring the massive amount of accounting documents that their requests demand.

It is also notable that in another case brought by Plaintiffs against a different defendant, Plaintiffs' expert was able to prepare a report on "economic impact" using only the company's financial statements and tax returns.  (Neach Decl. ¶ 8.) Plaintiffs have now received Defendant's tax returns for the years 2016 through 2020, which provide summaries of profits and losses, a balance sheet, and summaries of the ownership of Corona Clay.  (Neach Decl. ¶ 4; Ex. 3.)  While Corona Clay's initial reponses indicated it would produce financial statements, after further inquiries it was determined that Corona Clay does not prepare yearly financial statements, which is hardly a surprise for such a small company. (C. Deleo Decl. ¶ 4.)

To the extent that Plaintiffs complain about a delay in production of the tax returns for the years other than 2019, that was simply an oversight by Defendant's counsel that was rectified on June 13, 2022 with the production of the remaining tax returns.  (Neach Decl. ¶ 4.)

In summary, Plaintiffs have all the documents they need to have their expert prepare an "economic impact" analysis, which is but one factor in determining penalties under Section 1319(d).  There is no basis for granting a motion to compel here.

DATED: June 14, 2022

/s/ Sarah J. Spinuzzi

Sarah J. Spinuzzi
Attorney for Plaintiffs

DATED: June 14, 2022

/s/ Brian Neach
Brian Neach
Attorney for Defendant