William Frentzen
wfrentzen@mofo.com
MORRISON & FOERSTER, LLP
425 Market Street
San Francisco, CA 94105
Telephone:  (415) 268-6413

Sarah Spinuzzi, SBN 305658
Lauren Chase, SBN 324162
sarah@coastkeeper.org
lauren@coastkeeper.org
ORANGE COUNTY COASTKEEPER
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626
Telephone:  (714) 850-1965
Facsimile:   (714) 850-1592
*Attorneys for Plaintiffs*
*Additional Counsel Listed on Next Page*

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INLAND EMPIRE WATERKEEPER, a project of Orange County Coastkeeper, and ORANGE COUNTY COASTKEEPER, a California non-profit corporation;<br><br>        Plaintiffs,<br><br>  v.<br><br>CORONA CLAY CO., a California Corporation;<br><br>        Defendant. | Case No.: 8:18-cv-00333 DOC (DFM)<br><br>Hon. David O. Carter<br><br>**PLAINTIFFS' TRIAL BRIEF**<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq.)<br><br>Pre-Trial Conference: November 7, 2022<br>Trial Date: November 15, 2022<br>Time: 8:30 a.m.<br>Location:  Courtroom 10A<br>Action Filed: April 20, 2018 |

*Additional Counsel for Plaintiffs*

Jennifer F. Novak (SBN 183882)
novak@jfnovaklaw.com
LAW OFFICE OF JENNIFER F. NOVAK
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
Telephone:   (310) 693-0775
Facsimile:    (310) 627-0172

Christopher Sproul (SBN 126398)
csproul@enviroadvocates.com
Environmental Advocates
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   THE COURT IS BOUND BY THE RULE OF MANDATE AND LAW OF THE CASE DOCTRINE AND MUST LIMIT THE TRIAL TO THE NINTH CIRCUIT'S REMAND INSTRUCTION ........................... 2

    A.   The Court's 2019 Summary Judgment Ruling for Waterkeeper Is Sufficient to Establish Defendant's Liability Under Claims 1 and 5 .................................................................................................. 2

    B.   The Court's Post-Trial Rule 59 Motion Order is Sufficient to Establish Waterkeeper's Claims 6 and 7 ............................................ 4

    C.   Waterkeeper Has Established the Jurisdictional Elements of Article III Standing, Compliance with Citizen Suit Notice Requirements and Proof of Ongoing CWA Violation .......................... 9

III.  THE COURT, NOT THE JURY, MUST DECIDE JURISDICTIONAL ISSUES .......................................................................... 9

    A.   The Jurisdictional Question Presented by Maui Is Separate and Distinct from the Substantive Issues on the Merits ........................... 10

    B.   The Jurisdictional Issue Presented by Maui Is the Only Remaining Issue ................................................................................. 11

IV.   IF THE COURT DOES NOT UPHOLD ITS PRIOR RULINGS THAT WERE NOT APPEALED, THE COURT SHOULD ENTER PLAINTIFFS' [ALTERNATIVE PROPOSED] PRETRIAL ORDER ........ 11

V.    CONCLUSION ................................................................................................ 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berardinelli v. Castle & Cooke Inc.*,
   587 F.2d 37 (9th Cir. 1978)........................................................................2, 9, 10

*Cnty. of Maui v. Hawaii Wildlife Fund*,
   140 S. Ct. 1462 (2020)...................................................................................*passim*

*Gough v. Rossmoor Corp.*,
   487 F.2d 373 (9th Cir. 1973)................................................................................2, 9

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation*,
   484 U.S. 49 (1987) ...............................................................................................9

*Ingle v. Circuit City*,
   408 F.3d 592 (9th Cir. 2005)..................................................................................4

*Inland Empire Waterkeeper v. Corona Clay*,
   17 F.4th 825 (9th Cir. 2021) ........................................................................ 1, 10

*Kingman Reef Atoll Invs., L.L.C. v. United States*,
   541 F.3d 1189 (9th Cir. 2008).................................................................................9

*Morrison v. Amway Corp.*,
   323 F.3d 920 (11th Cir. 2003)................................................................................9

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*,
   422 F.3d 949 (9th Cir. 2005).................................................................................3

*Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*,
   594 F.2d 730 (9th Cir. 1979).................................................................................9

*United States v. Pimentel*,
   34 F.3d 799 (9th Cir. 1994)...................................................................................3

**Other Authorities**

Civ. L.R. 16-10 ....................................................................................................1

## I.       INTRODUCTION.

Pursuant to Local Rule 16-10 and the Court's Orders, Plaintiffs Inland Empire Waterkeeper and Orange County Coastkeeper (together, "Plaintiffs" or "Waterkeeper") submit this trial brief in response to Defendant Corona Clay Co.'s ("Defendant's" or "Corona Clay's") Memorandum of Contentions of Law and Fact (Dkt. 257). In its Memorandum, Defendant stated it "anticipates that issues of law may arise concerning the right to a jury trial" and that "all claims should be tried before a jury." Dkt. 257 at 15-16. Defendant's statements suggest it misinterpreted the scope of the Ninth Circuit's remand and failed to take into account this Court's prior rulings, compelling this brief.

The Ninth Circuit remanded this case, in relevant part, for this Court to reconsider its prior jurisdictional discharge finding in light of *Cnty. of Maui v. Hawaii Wildlife Fund*, 140 S. Ct. 1462 (2020), specifically to address "whether the 'indirect' discharge admitted by [Defendant] is the 'functional equivalent' of a direct discharge into the waters of the United States, or whether that required discharge can otherwise be established." *Inland Empire Waterkeeper v. Corona Clay*, 17 F.4th 825, 836 (9th Cir. 2021). Thus, the Ninth Circuit's remand is limited to the narrow jurisdictional question presented by *Maui*, which is separate and distinct from the substantive issues of whether and how Defendant violated the Clean Water Act (the "CWA"). As discussed below, this Court previously found Defendant liable on Plaintiffs' Claims 1 and 5, and stated it had sufficient evidence to enter an order finding Defendant liable on Plaintiffs' Claims 6 and 7. *Maui* and the Ninth Circuit's remand did not reverse this Court's various findings of Defendant's CWA violations; the remand only disallows reliance on the previously admitted indirect jurisdictional discharge. *See id.* (*Maui*'s "change in law affected . . . the partial summary judgment, which [was] premised on the admitted discharge"). On remand, Plaintiffs must and will prove the required jurisdictional discharge under *Maui*, but that is a question of jurisdiction for the Court, not a jury.

PLAINTIFFS' TRIAL BRIEF                           1                  Case No. 8:18-cv-00333 DOC (DFM)

Waterkeeper requests this Court enter Waterkeeper's [Proposed] Pretrial Conference Order lodged concurrently herewith instructing the parties that it will hold an evidentiary hearing or a bench trial on the jurisdictional question presented by *Maui*. If the Court issues that order, Waterkeeper agrees to dismiss its claims related to Defendant's additional CWA violations ongoing and incurred since the first trial in light of judicial economy, obviating the need for a jury trial that the Plaintiff anticipates could take up to eight days. If the Court refuses to limit the trial to the specific mandate of the Ninth Circuit's remand, Waterkeeper requests the Court enter its [Alternative Proposed] Pretrial Conference Order lodged concurrently herewith to grant Waterkeeper an eight-day jury trial to present ongoing violations under Claims 1 and 5 since the prior judgment, complete evidence on Claims 6 and 7, and show continuing violations since the first trial, and prove jurisdiction.

## II. THE COURT IS BOUND BY THE RULE OF MANDATE AND LAW OF THE CASE DOCTRINE AND SHOULD THEREFORE LIMIT THE TRIAL TO THE NINTH CIRCUIT'S REMAND INSTRUCTION.

The Ninth Circuit's narrow remand order – paired with this Court's prior rulings and findings regarding Defendant's liability – limits the scope of remaining issues to a discrete jurisdictional question, which should be determined by the Court, not a jury.[1]

### A. The Court's 2019 Summary Judgment Ruling for Waterkeeper Is Sufficient to Establish Defendant's Liability Under Claims 1 and 5.

This Court's June 10, 2019 Order Granting in Part and Denying in Part Plaintiffs' Motion for Partial Summary Judgment as to Liability ("2019 Summary

---

[1] While the Court, in denying Waterkeeper's Motion for Summary Judgment, stated the parties have yet to present evidence related to the jurisdictional question presented by *Maui*, jurisdictional issues are best resolved by the court, not a jury, when separate from the merits. *See Berardinelli v. Castle & Cooke Inc.*, 587 F.2d 37, 38 (9th Cir. 1978); *Gough v. Rossmoor Corp.*, 487 F.2d 373, 377 (9th Cir. 1973).

Judgment Order") held there was no genuine dispute as to any material fact and Waterkeeper was entitled to judgment as a matter of law on its first and fifth causes of action. As Waterkeeper alleged in Claim 1, the Court held that Defendant "violated the CWA's effluent limitations" for its failure to implement Best Management Practices ("BMPs") required by the National Pollution Discharge Elimination System (NPDES) General Permit for Stormwater Discharges Associated With Industrial Activities, Order NPDES No. CAS000001 (the "General Permit" or the "Permit").[2] Dkt. 55 at 16. Similarly in the 2019 Summary Judgment Order, and as Waterkeeper alleged in Claim 5, the Court found Defendant was "in violation of Section X.C.1, subsections b and c of the General Permit" for its failure to maintain an adequate Storm Water Pollution Prevention Plan (SWPPP).[3] Dkt. 55 at 19.

As Waterkeeper explained in its Memorandum of Contentions of Law and Fact, Defendant waived any challenge to the Court's findings in the 2019 Summary Judgement Order by not challenging the findings on the merits on appeal. *See, e.g., Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 966-67 (9th Cir. 2005) (affirming the district court's decision not to consider seven new issues the defendant raised on remand because, during the first appeal, the Ninth Circuit "finally adjudicated all issues except for, and remanded only for consideration of" a single issue); *United States v. Pimentel*, 34 F.3d 799, 800 (9th Cir. 1994) (appellant's failure to raise an issue during her first appeal "prohibited her from arguing this issue following the remand from this court"). Defendant appealed the Court's Final Judgement Order, but did not appeal the Court's determinations that Defendant failed to comply with the General Permit's requirements. *See* Frentzen

---

[2] In its April 16, 2020 Final Judgement, the Court ordered: "Defendant is liable for 1688 daily violations (March 2, 2015 through October 15, 2019) of the Permit's Section V limitations on technology-based effluents." Dkt. 191 at 2.

[3] In its April 16, 2020 Final Judgement, the Court ordered: "Defendant is liable for 664 daily violations (September 4, 2017 through June 30, 2019) of the Storm Water Pollution Prevention Plan, that is, section X.C.1, subsections b and c, of the Permit." Dkt. 191 at 2.

PLAINTIFFS' TRIAL BRIEF                     3                     Case No. 8:18-cv-00333 DOC (DFM)

Decl., Ex. 1. Rather, Defendant only challenged the Court's findings on standing, unsuccessfully arguing Waterkeeper lacked Article III standing unless Waterkeeper proved Corona Clay discharged stormwater to Temescal Creek. *See id*.

The Court should reinstate its 2019 summary judgment ruling and final order establishing Corona Clay's violations under Claim 1 from March 2, 2015 to October 15, 2019, resulting in 1,688 days of violations of the General Permit. Dkt. 191 at 2. The Court should further reinstate its 2019 summary judgment ruling and final order establishing Corona Clay's violations under Claim 5 from September 4, 2017 to June 30, 2019, resulting in 644 daily violations. Dkt. 191 at 2. Upon such an order, Waterkeeper agrees to dismiss all allegations of ongoing violations after the 2019 trial under Claims 1 and 5.

**B.    The Court's Post-Trial Rule 59 Motion Order is Sufficient to Establish Waterkeeper's Claims 6 and 7.**

In its December 20, 2019 Order Denying Plaintiffs' Motion to Alter or Amend the Judgment or, in the Alternative, for a New Trial ("Rule 59 Motion Order"), this Court stated it had sufficient evidence to find in Waterkeeper's favor on Claims 6 and 7 for, respectively, Defendant's failures related to its Monitoring Implementation Plan (MIP) and reporting requirements. Dkt. 170 at 5. The Court explained that if the Ninth Circuit "were to adopt Plaintiffs' interpretation of 'ongoing violations,' the Court has sufficient evidence on the record to simply enter judgment on the sixth and seventh causes of action in Plaintiffs' favor on remand." *Id*. The Ninth Circuit ultimately adopted Waterkeeper's interpretation of "ongoing violations," so, as previously stated, the Court has sufficient evidence to find in Waterkeeper's favor on Claims 6 and 7.

The Court should treat its prior conclusion in the Rule 59 Motion Order as "law of case" and find that Waterkeeper established Defendant's liability as to Claims 6 and 7. *See Ingle v. Circuit City*, 408 F.3d 592, 595 (9th Cir. 2005) ("Under the law of the case doctrine, a court is generally precluded from reconsidering an issue

previously decided by the same court, or a higher court in the identical case."). Nothing in the Ninth Circuit's remand order nor any other circumstance since the Rule 59 Motion Order serve as grounds to reconsider this Court's prior finding. Further, since the Rule 59 Motion Order, Defendant *conceded* its monitoring and reporting failures. *See* Dkt. 230-1 at ECF pgs. 25-31. In its Responding Statement of Genuine Disputes of Material Fact in Opposition to Plaintiffs' Motion for Summary Judgment, Defendant admitted all facts necessary to establish liability for Waterkeeper's Claims 6 and 7; the Claims are thus undisputed. *Id.* For background and additional detail, Claims 6 and 7 are discussed in turn below.

**i.** **Claim 6:** Corona Clay violated the General Permit by failing to adequately develop, implement, and/or revise an adequate stormwater Monitoring Implementation Plan ("MIP"). This Court previously held a five-day jury trial where Waterkeeper established facts, as a matter of law, sufficient to prevail on its remaining claims. Corona Clay's defense consisted of a single witness, its expert Paul Hacunda, who admitted to many of Waterkeeper's allegations under Claims 6 and 7. Waterkeeper established its sixth cause of action for failure to implement the Permit's monitoring requirements on at least three grounds: (1) failure to sample all Qualified Storm Events ("QSEs"); (2) failure to sample for iron; and, (3) failure to sample for Oil and Grease ("O&G").

First, Waterkeeper established – and Corona Clay did not rebut – that Corona Clay failed to sample at least four QSEs each reporting year. No sampling records exist for the 2015-2016 reporting year. In 2016-2017, Corona Clay sampled zero QSEs in the first half of the reporting year and two QSEs in the second half. *See* Exs[4]. 222, 23A. Similarly, for the 2017-2018 reporting year, Corona Clay only sampled two QSEs in the second half of the reporting year, none in the beginning. *See*, Exs. 24A, 25A. Waterkeeper's expert, Dr. Horner found there were QSEs in each semi-annual period. Dkt. 145-5 at 4-5. Corona Clay's expert, Paul Hacunda, further confirmed

---

[4] Exhibit references refer to exhibits admitted in the first trial.

PLAINTIFFS' TRIAL BRIEF                5                Case No. 8:18-cv-00333 DOC (DFM)

Corona Clay did not sample all required QSEs. Dkt. 145-7 at 6. As such, Waterkeeper established, as a matter of law, that Corona Clay failed to sample four QSEs during the 2015-2016 reporting year; two QSEs in the 2016-2017 reporting year; and two QSEs in the 2017-2018 reporting year; and is therefore liable for 8 violations of the Permit's sampling requirements – one for each missed sampling event.

Second, Waterkeeper established that Corona Clay failed to sample for iron, despite being required to do so. Waterkeeper admitted multiple lab reports identified as Exhibits 222, 23, and 24A-30A. Only once, as evidenced in Exhibit 26A, did Corona Clay meet its iron-sampling obligation. After Waterkeeper filed its Complaint, Corona Clay still failed to sample for iron as recently as February 21, 2019. *See*, Ex. 30A. Similarly, the laboratory reports prove Corona Clay never sampled for O&G, but instead sampled for total organic carbon ("TOC"). As set forth in the Permit's Fact Sheet, TOC cannot be substituted for O&G analysis. Ex. 89, Fact Sheet, Section J.3.b.iii. Waterkeeper established at the first trial, as a matter of law, that Corona Clay violated the Permit nine times by failing to analyze its storm water samples for iron and failed to analyze its samples for oil and grease ten times.

The Court should enter a pre-trial order establishing that Corona Clay is liable for 27 violations of the Permit under Claim 6, pending a finding of jurisdiction in Waterkeeper's favor. Upon such an order and an order that the Court will determine jurisdiction, Waterkeeper will dismiss allegations of ongoing violations after the 2019 trial.

**ii.**     **Claim 7:** Corona Clay violated the General Permit by failing to submit stormwater monitoring and associated technical reports to the State Board's SMARTS reporting system. During the first trial, Waterkeeper introduced uncontroverted evidence to establish its seventh cause of action on multiple grounds, including: (1) failure to submit storm water laboratory reports to SMARTS within 30 days of receipt; (2) triggering Level 1 and Level 2 Exceedance Response Action ("ERA") status yet failing to submit required Level 1 and Level 2 action plans and technical reports.

First, Waterkeeper established – and Corona Clay did not rebut – that Corona Clay did not comply with the Permit by notifying the State of California of its laboratory results within 30 days of receipt. Exhibits 24A, 25A, 26A, 28A, 29A, and 30A were uploaded to SMARTS on May 14, 2019, after the Complaint was filed and even after Plaintiffs' Motion for Partial Summary Judgment. Dkt. 145-4 at 4-7. Corona Clay's consultant confirmed that he uploaded each report to SMARTS on May 14, 2019 at Corona Clay's direction. Dkt. 145-7 at 7-8. Each laboratory report's date of issue is over 60 days prior to the May 14, 2019 upload date, indicating Corona Clay was in receipt of the reports for months prior to uploading them. Each day that Corona Clay failed to upload its storm water monitoring reports to SMARTS after the 30-day reporting requirement is a Permit violation. The Court, should therefore find the following days of violations for failure to upload Sampling results to SMARTS:

| Trial Exhibit No. | Date of Lab Report Issue | Date due to SMARTS (30 days from date of issue) | Date of Upload | Days of Violation |
|---|---|---|---|---|
| 23A | 02.01.2017 | 3/3/2017 | 5/14/2019 | 802 |
| 24A | 01.19.2018 | 2/18/2018 | 5/14/2019 | 450 |
| 25A | 04.04.2018 | 5/4/2018 | 5/14/2019 | 375 |
| 26A | 12.18.2018 | 1/17/2019 | 5/14/2019 | 117 |
| 27A | 01.28.2019 | 2/27/2019 | 5/14/2019 | 76 |
| 28A | 02.13.2019 | 3/15/2019 | 5/14/2019 | 60 |
| 29A | 02.28.2019 | 3/30/2019 | 5/14/2019 | 45 |
| 30A | 03.07.2019 | 4/6/2019 | 5/14/2019 | 38 |
| Total | | | | 1963 |

Next, Plaintiffs conclusively established that Corona Clay triggered Level 1 ERA status during the 2016-2017 reporting year. Exhibit 222, a laboratory report from sampling conducted on January 20, 2017 shows that the Total Suspended Solids

("TSS") level for Corona Clay's Discharge Area 1 was 350 mg/L and Discharge Area 2 was 490 mg/L. Exhibit 23A, a laboratory report from sampling conducted on February 1, 2017, shows a TSS level of 1,200 mg/L. There were no other reports from 2016-2017. Thus, Defendant's 2016-2017 TSS average was 680 mg/L, well over the annual Numeric Action Level ("NAL") of 100 mg/L. *See* Ex. 89, Permit Section XI.B. Table 2. By January 1, 2018, Defendant was required to prepare and submit to SMARTS a Level 1 ERA Report. *See* Ex. 89, Permit Section XII.C.2. Yet, no Level 1 ERA Report was submitted, as confirmed by Mr. Otsuji and Mr. Hacunda at the time of trial on October 24, 2019. Dkt. 145-4 at 3; Dkt. 145-7 at 10-11, respectively. Corona Clay has at least 661 daily violations for failure to submit a Level 1 ERA Report.[5]

In addition, Corona Clay triggered Level 2 ERA status during the 2017-2018 reporting year, as Waterkeeper conclusively established at trial. Exhibit 24A, a laboratory report from sampling conducted on January 19, 2018, shows a TSS level of 260. Exhibit 25A, a laboratory report from sampling conducted on April 4, 2018, shows the TSS level for Area 1 was 390 mg/L; Area 2 was 300 mg/L. Therefore, the annual average for TSS was 316 mg/L – over three times the NAL. Corona Clay was required to submit a Level 2 ERA Action Plan on January 1, 2019. *See* Ex. 89, Permit Section XII.D.1. Mr. Otsuji and Mr. Hacunda both confirmed no Level 2 ERA Action Plans were ever submitted to SMARTS or prepared as of the date of testimony on October 24, 2019. Dkt. 145-4 at 3; Dkt. 145-7 at 10-11, respectively. Therefore, the Court should find that Corona Clay had another 296 daily violations for failure to submit a Level 2 ERA action plan to SMARTS.

The Court should enter a pre-trial order establishing that Corona Clay is liable for 2,259 violations of the Permit under Claim 7, pending a finding of jurisdiction in Waterkeeper's favor. Upon such an order and an order that the Court will determine

---

[5] Corona Clay admitted it did not submit this report until June 24, 2022. Dkt. 230-1 at 31.

jurisdiction, Waterkeeper will dismiss allegations of ongoing violations after the 2019 trial.

## C. Waterkeeper Has Established the Jurisdictional Elements of Article III Standing, Compliance with Citizen Suit Notice Requirements and Proof of Ongoing CWA Violation.

The Court previously resolved several jurisdictional issues and should enter an order reinstating those findings on remand under the rule of mandate doctrine as follows: (1) Waterkeeper established Article III standing; (2) Waterkeeper complied with citizen suit notice requirements; and (3) Corona Clay had ongoing CWA violations or was likely to have future CWA violations at the time the Complaint was filed, as required by *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation*, 484 U.S. 49 (1987), for each of Waterkeeper's claims. Each of these jurisdictional issues is more fully briefed in Plaintiffs' Memorandum of Contentions of Fact and Law. Dkt. 261 at 10-12.

## III. THE COURT, NOT THE JURY, MUST DECIDE JURISDICTIONAL ISSUES.

Jurisdictional issues must be decided by the court, not the jury. *See, e.g.*, *Berardinelli v. Castle & Cooke Inc*., 587 F.2d 37, 38 (9th Cir. 1978) (explaining a jurisdictional issue should be submitted to a jury "only where the jurisdictional issue and the issue on the merits are factually so 'completely intermeshed' that 'the question of jurisdiction is dependent on decision of the merits.'") (internal citations omitted); *Morrison v. Amway Corp*., 323 F.3d 920, 925 (11th Cir. 2003) (explaining decisions regarding jurisdictional issues separate from the merits of the underlying claim "lie within the exclusive province of the trial court"). It is "the court's function to resolve factual disputes relevant to jurisdiction." *Gough v. Rossmoor Corp*., 487 F.2d 373, 377 (9th Cir. 1973); s*ee also Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) ("[T]he judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if

necessary."). "[T]he district court is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).

In *Berardinelli*, the Ninth Circuit upheld the trial court's dismissal for lack of subject matter jurisdiction following the plaintiff's argument that "the trial court had 'improperly decided a factual issue which should have been reserved for a jury.'" *Berardinelli*¸ 587 F.2d at 38. The plaintiff originally brought a claim under the Sherman Act, which only confers jurisdiction under the Commerce Clause if "the commercial activities involved had sufficient nexus with interstate commerce." *Id*. The Ninth Circuit explained that this "jurisdictional issue" of a nexus with interstate commerce was separate from the "substantive issue" of "whether defendants participated in anti-competitive conduct of the kind" prohibited by the Sherman Act. *Id*. Because the two issues depended on "facts that are separate and distinct," the trial court properly decided the jurisdictional issues after considering: arguments at an oral hearing, the "pleadings, supplemental briefs on the jurisdictional issue, affidavits, and other materials submitted by the parties." *Id*. at 38-39. Similarly here, and as discussed below, the "jurisdictional issue" of whether Corona Clay ever discharged pollutants to a water of the United States in accordance with *Maui* is separate from the "substantive issues" of whether Corona Clay implemented sufficient BMPs, prepared a sufficient SWPPP, adequately sampled its storm water, and submitted required reports.

### A. The Jurisdictional Question Presented by *Maui* Is Separate and Distinct from the Substantive Issues on the Merits.

The Ninth Circuit remanded this case, in relevant part, for reconsideration in light of the Supreme Court's interpretation of the "CWA's discharge jurisdictional requirement" in *Maui*. *Inland Empire Waterkeeper*, 17 F.4th at 829. Specifically, the Ninth Circuit instructed the parties to "address whether the 'indirect' discharge admitted by [Defendant] is the 'functional equivalent' of a direct discharge into the

---

waters of the United States, or whether that required discharge can otherwise be established." *Id*. at 836.

The narrow jurisdictional question presented by *Maui* is separate and distinct from the substantive issues in this case. Specifically, the jurisdictional issue here is whether Defendant's polluted stormwater runoff is the "functional equivalent" of a direct discharge to Temescal Creek, a water of the United States, thereby requiring Defendant to maintain a National Pollution Discharge Elimination System (NPDES) permit. The substantive issue is whether Defendant violated the NPDES permit it in fact maintains, thereby violating the CWA. The jurisdictional and substantive issues here rely on separate, distinct facts.

**B.     The Jurisdictional Issue Presented by *Maui* Would Be the Only Remaining Issue If Determined by the Court.**

In the event the Court grants Waterkeeper's request to enter an order instructing the parties that it will hold an evidentiary hearing on the jurisdictional question presented by *Maui*, no issues requiring a jury trial will remain. If the Court enters such an order, Waterkeeper agrees to dismiss its claims related to Defendant's ongoing Permit violations following the first trial. Instead, Waterkeeper will request the Court enter judgment for it based on the Court's prior rulings and orders as outlined above and in Plaintiffs' Memorandum of Contentions of Law and Facts. Dkt. 261 at 15-17.

**IV.     IF THE COURT DOES NOT UPHOLD ITS PRIOR RULINGS THAT WERE NOT APPEALED, THE COURT SHOULD ENTER PLAINTIFFS' [ALTERNATIVE PROPOSED] PRETRIAL ORDER.**

If this Court refuses to enter a pre-trial order reinstating its prior factual findings that were not appealed and were not the subject of the Ninth Circuit's remand instruction, Waterkeeper urges the Court to reinstate, at a minimum, its findings on the merits of Claims 1 and 5 and associated factual findings as a matter of law that were only – unsuccessfully – appealed on the grounds that Waterkeeper lacked Article III standing. Waterkeeper will then present evidence at trial of: (i) ongoing violations

through the present under Claims 1 and 5 and (ii) full argument to the jury on Claims 6 and 7, including ongoing violations through the present.

## V.    CONCLUSION.

This remand does not require a jury trial. For the reasons stated above, Waterkeeper requests this Court enter an order instructing the parties that it will hold an evidentiary hearing or bench trial on the limited jurisdictional question presented by *Maui* and the Ninth Circuit as well as uphold findings of violations which has previously made. Waterkeeper has concurrently lodged a [Proposed] Pretrial Conference Order that reflects Waterkeeper's position. Upon such an order, Waterkeeper will dismiss its claims related to Defendant's ongoing CWA violations since the first trial, obviating the need for a jury trial altogether.

If the Court refuses to uphold its prior substantive rulings that were not appealed and are not the subject of the Ninth Circuit's remand, Waterkeeper requests the Court allow an eight-day jury trial on the issues of liability on remaining claims and jurisdiction as to all claims. If Waterkeeper prevails on the issue of liability, Waterkeeper requests the Court then conduct a two-day bench trial on the issue of civil penalties. Waterkeeper has concurrently lodged a [Alternative Proposed] Pretrial Conference Order that reflects this alternative request.

Dated:        October 27, 2022          Respectfully submitted,
                                        MORRISON & FOERSTER, LLP


                                        */s/ William Frentzen*
                                        William Frentzen
                                        *Attorneys for Plaintiffs Inland Empire Waterkeeper and Orange County Coastkeeper*

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

Brian Neach
bneach@pncounsel.com
Rod Pacheco
rpacheco@pncounsel.com
Pacheco & Neach PC
Three Park Plaza, Suite 120
Irvine, CA 92614

*Attorneys for Defendant*

Sarah Spinuzzi(SBN 305658)
sarah@coastkeeper.org
Lauren D. Chase (SBN 324162)
lauren@coastkeeper.org
ORANGE COUNTY COASTKEEPER
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626
Telephone:(714) 850-1965

Jennifer F. Novak (SBN 183882)
novak@jfnovaklaw.com
LAW OFFICE OF JENNIFER F. NOVAK
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
Telephone:(310) 693-0775
Facsimile:(310) 627-0172

Christopher Sproul (SBN 126398)
csproul@enviroadvocates.com
Environmental Advocates
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695

*Attorneys for Plaintiffs*

Dated:    October 27, 2022        By:*/s/ William Frentzen*
                                     William Frentzen

*Attorneys for Plaintiffs Inland Empire Waterkeeper and Orange County Coastkeeper*