Rod Pacheco (SBN 112432)
Brian Neach (SBN 242801)
Pacheco & Neach, P.C.
2 Park Plaza, Suite 1000
Irvine, CA 92614
Tel.: 714-462-1700
Fax: 714-462-1785
rpacheco@pncounsel.com
bneach@pncounsel.com

Attorneys for Corona Clay Co.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INLAND EMPIRE WATERKEEPER, et al.<br>Plaintiff(s),<br>v.<br>CORONA CLAY CO.,<br>Defendant, | Case No. 8:18-cv-00333-DOC (DFMx)<br><br>Hon. David O. Carter<br>Courtroom 10A<br><br>**CORONA CLAY COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DIMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**<br><br>**Hearing Date:** October 16, 2023<br>**Hearing Time:** 8:30 a.m.<br><br>Complaint Filed: February 27, 2018<br>Trial Date: Completed |

## TABLE OF CONTENTS

I. Introduction ........................................ 1
II. Background........................................ 2
A. Plaintiffs' claims concerning Temescal Creek ........................................ 2
B. Jury instruction regarding Temescal Creek ........................................ 3
III. Standards for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)........................................ 3
IV. *Rapanos* and *Sackett*........................................ 4
A. The *Rapanos* decision ........................................ 5
B. The *Sackett* decision........................................ 6
V. Temescal Creek is an ephemeral waterway that is not a WOTUS under *Sackett*........................................ 8
A. Course of Temescal Creek ........................................ 8
B. Previous authorities recognizing Temescal Creek as "ephemeral" ............... 9
C. Dr. Parra's analysis of water flows and site visit confirm that Temescal Creek is ephemeral at most points, including between Corona Clay and the Santa Ana River ........................................ 10
D. Dr. Parra's site visit and photographs ........................................ 11
E. Plaintiffs' own expert confirmed the dry nature of Temescal Creek........... 13
VI. Conclusion........................................ 14

## TABLE OF AUTHORITIES

**Cases**

*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) .................................................3, 4
*Community Assn. for Restoration of Environment v. Henry Bosma Dairy*, 305 F.3d 943, 954–955 (9th Cir. 2002) .................................................7
*Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1194 n. 2 (9th Cir. 1988) ....................4
*Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988) .......................................4
*Headwaters, Inc. v. Talent Irrigation Dist*., 243 F.3d 526, 534 (9th Cir. 2001)...........7
*Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 836 (9th Cir. 2021).................................................2, 4
*Nelson Bros. Pro. Real Est. LLC v. Jaussi*, No. SACV170158DOCJCGX, 2017 WL 8220428, at *4 (C.D. Cal. June 27, 2017........3
*Rapanos v. United States*, 547 US 715 (2006) .................................................passim
*Romero v. United States Postal Serv.*, No. CV206685PSGMRWX, 2020 WL 8028105, at *1 (C.D. Cal. Nov. 23, 2020) .................................................4
*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).....................................3
*Sackett v. EPA*, 598 US __, 143 S. Ct. 1322 (2023)..........................................passim
*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) .........................4
*Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003) .........4
*Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1118 (9th 2005) ..........................7
*Treacy v. Newdunn Assoc.*, 344 F.3d 407, 410 (4th Cir. 2003)...................................7
*United States v. Cotton*, 535 U.S. 625, 630 (2002) .....................................................3
*United States v. Deaton*, 332 F.3d 698, 702 (4th Cir. 2003) ........................................7
*White v. Lee*, 227 F.3d at 1242 (2000)........................................................................4

**Statutes**

33 U.S.C. § 1365(a)(1), § 1342(a) ..........................................................................2, 5

**Rules**

Fed. R. Civ. P. 12(h)(3) .......... 2, 3
Federal Rule of Civil Procedure 12(b)(1) .......... 1

**Other Authorities**

Webster's New International Dictionary 2882 (2d Ed. 1954) .......... 1, 6

**Treatises**

2 Moore § 12.30[3], pp. 12–37 to 12–38 .......... 4
5B C. Wright & A. Miller, *Federal Practice and Procedure* § 1350, pp. 243–249 (3d ed. 2004) .......... 4

## I. Introduction

The decision of the United States Supreme Court in *Sackett v. EPA*, 598 US __, 143 S. Ct. 1322 (2023), makes clear that Temescal Creek is not a water of the United States. Temescal Creek is the only waterway into which Plaintiffs allege Corona Clay discharged stormwater runoff. Accordingly, this Court lacks subject matter jurisdiction and this case should be dismissed under Federal Rule of Civil Procedure 12(b)(1).

In *Sackett*, the Supreme Court confirmed what was decided by the plurality in *Rapanos v. United States*, 547 US 715 (2006): "[W]e conclude that the *Rapanos* plurality was correct: the [Clean Water Act's] use of 'waters' encompasses 'only those relatively permanent, standing or continuously flowing bodies of water 'forming geographic[al] features' that are described in ordinary parlance as 'streams, oceans, rivers, and lakes.''" 143 S. Ct. at 1336 (quoting *Rapanos*, 547 U.S. at 739) (quoting Webster's New International Dictionary 2882 (2d Ed. 1954)).

While *Sackett* addressed whether wetlands were a water of the United States ("WOTUS"), its exclusion from WOTUS of ephemeral waters such as Temescal Creek could not be more clear. The *Rapanos* plurality opinion—now adopted by *Sackett* as the law of the land—emphasized the "restriction of 'the waters of the United States' to ***exclude channels containing merely intermittent or ephemeral flow*** . . .." *Rapanos*, 547 U.S. at 733-34 (emphasis added).

And there is no doubt that Temescal Creek is "ephemeral." It has repeatedly been described as such by independent local government entities. (Declaration of Dr. Luis A. Parra-Rosales ("Parra Decl."), Ex. F at 011; Ex. D at 080.)[1] As Dr. Parra explains in his declaration, flow data, a site visit to various parts of Temescal Creek, and photographs all demonstrate that Temescal Creek is ephemeral. Further,

[1] References to page numbers of exhibits are to the "Exhibit-xxx" page at the bottom right-hand corner.

Plaintiffs' ***own expert***, Jamie Moreno, confirmed that he has observed Temescal Creek to be entirely dry and that it is a "fair assessment" that "some parts" of Temescal Creek might be dry and "some parts" of it might be wet at any particular time. This is the definition of "ephemeral." It is also entirely contrary to Temescal Creek being "relatively permanent, standing or continuously flowing" and "forming geographic[al] features that are described in ordinary parlance as a stream[ ], ocean[ ], river[ ], or lake[ ]." *Sackett*, 143 S. Ct. at 1336 (internal quotations and citations omitted).

As the Ninth Circuit has held, the issue of whether a discharge was made to a water of the United States is a jurisdictional one. *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 836 (9th Cir. 2021) ("To be sure, the CWA vests district courts with jurisdiction over a citizen suit only upon proof of discharge into the navigable waters of the United States.") (citing 33 U.S.C. § 1365(a)(1), § 1342(a)). A motion under Rule 12(b)(1) can be brought at any time and "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Under *Sackett* and *Rapanos*, it is clear that Temescal Creek is not a WOTUS. Thus, this Court lacks subject matter jurisdiction and the case should be dismissed with prejudice.

## II. Background

### A. Plaintiffs' claims concerning Temescal Creek

This case was tried before a jury and the parties are now in the penalty phase, which has involved extensive briefing. At trial, Plaintiffs asserted that stormwater runoff from Corona Clay's facility discharged into Temescal Creek, also referred to in some instances as "Temescal Wash." (Neach Decl. Ex. 2 (11/9/22 Tr. at 17:11-13 ("The evidence in this case will show that Corona Clay polluted a water of the United States, Temescal Wash, Temescal Creek, for years.").) In briefing, Plaintiffs repeated

the assertion that the waterway into which Corona Clay's stormwater runoff discharged was Temescal Creek. (Doc. 313 at 26:26-28.) In short, Plaintiffs' case is based entirely on the claim that Corona Clay discharges to Temescal Creek.

B. <u>Jury instruction regarding Temescal Creek</u>

At trial, the jury was instructed by this Court as follows: "For purposes of this case, Temescal Creek is water of the United States." (Doc. 304 at 20 (Instr. #18).) The instruction was not disputed, given that the interpretation of WOTUS at the time was so broad as to include "'virtually any parcel of land containing a channel or conduit . . . through which rainwater or drainage may occasionally or intermittently flow,' including 'storm drains, roadside ditches, ripples of sand in the desert that may contain water once a year, and lands that are covered by floodwaters once every 100 years.'" *Sackett*, 143 S. Ct. at 1356-57 (quoting *Rapanos*, 547 U.S. at 722 (plurality opinion)).

As discussed below, *Sackett*'s holding makes clear that Temescal Creek is not a WOTUS. Not even close.

## III. Standards for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)

"'[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)). Moreover, courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh*, (546 U.S. at 514 (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)). Thus, an argument that a court lacks subject matter jurisdiction can be raised at any time. *Nelson Bros. Pro. Real Est. LLC v. Jaussi*, No. SACV170158DOCJCGX, 2017 WL 8220428, at *4 (C.D. Cal. June 27, 2017) (citing Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must

dismiss the action.”)); *see also Romero v. United States Postal Serv.*, No. CV206685PSGMRWX, 2020 WL 8028105, at *1 (C.D. Cal. Nov. 23, 2020) (citing *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1194 n. 2 (9th Cir. 1988)).

Further, “if subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on her own.” *Arbaugh*, 546 U.S. at 514 (citing 5B C. Wright & A. Miller, *Federal Practice and Procedure* § 1350, pp. 243–249 (3d ed. 2004); 2 Moore § 12.30[3], pp. 12–37 to 12–38)). “In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.” *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d at 1242 (2000)). “The court need not presume the truthfulness of the plaintiff's allegations.” *White*, 227 F.3d at 1242. “Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.” *Savage*, 343 F.3d at 1039 n. 2.

Finally, although dismissal for lack of subject-matter jurisdiction is generally without prejudice, if there is no way a jurisdiction defect can be cured, dismissal with prejudice is proper. *See Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988).

## IV. *Rapanos* and *Sackett*

Whether Temescal Creek is a WOTUS is central to this Court’s subject matter jurisdiction. In *Rapanos*, the plurality referred to WOTUS as a “jurisdictional criterion.” *Rapanos*, 547 U.S. at 755. The Ninth Circuit likewise identified a discharge to a WOTUS as jurisdictional. *Inland Empire Waterkeeper*, 17 F.4th at 836 (“To be sure, the CWA vests district courts with jurisdiction over a citizen suit only

upon proof of discharge into the navigable waters of the United States.") (citing 33 U.S.C. § 1365(a)(1), § 1342(a)).

Dismissal with prejudice is proper because *Sackett* makes clear that Temescal Creek is not a WOTUS and this Court therefore lacks subject matter jurisdiction.

A. The *Rapanos* decision

Before *Rapanos* was decided in 2006, federal agencies had "interpreted their jurisdiction over 'the waters of the United States' to cover 270-to-300 million acres" of wetlands and "virtually any parcel of land containing a channel or conduit . . . through which rainwater or drainage may occasionally or intermittently flow." *Rapanos*, 547 U.S. at 722 (plurality). *Rapanos* was the Supreme Court's attempt to arrive at a definition of WOTUS. In the case, the lower court had held that the CWA "covered wetlands near ditches and drains that eventually emptied into navigable waters at least 11 miles away." *Id.* at 720.

Although the Court vacated that decision, no position commanded a majority of the Court. A plurality of four Justices concluded that the CWA's coverage did not extend beyond two categories: first, certain relatively permanent bodies of water connected to traditional interstate navigable waters and, second, wetlands with such a close physical connection to those waters that they were "as a practical matter indistinguishable from waters of the United States." *Id.*, at 742, 755. Four Justices would have deferred to the Government's determination that the wetlands at issue were covered under the CWA. *Id.* at 788. Finally, Justice Kennedy concluded that jurisdiction under the CWA requires a "significant nexus" between wetlands and navigable waters and that such a nexus exists where "the wetlands, either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity" of those waters. *Id.* at 779–780.

B. The *Sackett* decision

In *Sackett*, the Supreme Court addressed whether certain wetlands in Idaho constituted WOTUS. After repeating the same concerns expressed by the plurality in *Rapanos*, *see* 143 S. Ct. at 1335-36, the Supreme Court confirmed the analysis of the plurality in *Rapanos*: "[W]e conclude that the *Rapanos* plurality was correct: the [Clean Water Act's] use of 'waters' encompasses 'only those relatively permanent, standing or continuously flowing bodies of water 'forming geographic[al] features' that are described in ordinary parlance as 'streams, oceans, rivers, and lakes.'" 143 S. Ct. at 1336 (quoting *Rapanos*, 547 U.S. at 739) (quoting Webster's New International Dictionary 2882 (2d Ed. 1954)).

Notably, the *Sackett* Court expressed concerns about how broadly WOTUS had been interpreted, identifying them as "boundless standards." 143 S. Ct. at 1357. In addition, as noted above, the *Sackett* Court commented on how "'virtually any parcel of land containing a channel or conduit . . . through which rainwater or drainage may occasionally or intermittently flow'" had been determined to be a WOTUS. *Sackett*, 143 S. Ct. at 1334 (quoting *Rapanos*, 547 U.S. at 722.

While *Sackett* addressed wetlands, there is no room for doubt that the decision applies here, where the waterway at issue is a creek or "wash." *Sackett* explicitly adopted the plurality opinion in *Rapanos*. The issue in *Rapanos* was also wetlands, but the plurality's discussion regarding "ephemeral" and "intermittent" waters squarely applies to the facts in this case.

In *Rapanos*, the plurality stated: "[W]e have no occasion in this litigation to decide exactly when the drying-up of a streambed is continuous and frequent enough to disqualify the channel as a 'wate[r] of the United States.' It suffices for present purposes that channels containing permanent flow are plainly within the definition, and that the dissent's '***intermittent***' and '***ephemeral***' streams [ ]—that is, streams whose flow is '[c]oming and going at intervals ... [b]roken, fitful,' Webster's Second

1296, or 'existing only, or no longer than, a day; diurnal ... short-lived,' *id.* [ ] ***are not***." 547 U.S. at 733 n.5 (emphasis added). The plurality added further that it does not "necessarily exclude seasonal rivers, which contain continuous flow during some months of the year but no flow during dry months—such as the 290–day, continuously flowing stream postulated by Justice STEVENS' dissent." *Id.* But, the plurality added, "[c]ommon sense and common usage distinguish between a ***wash*** and seasonal river." *Id.* (emphasis added).

Finally, the *Rapanos* plurality discussed the "sweeping assertions of jurisdiction over ephemeral channels and drains as 'tributaries.'" *Rapanos*, 547 U.S. at 726-27. As examples, *Rapanos* pointed to where courts had held that "jurisdictional 'tributaries' include" the "intermittent flow of surface water through approximately 2.4 miles of natural streams and manmade ditches (paralleling and crossing under I–64)," a "'roadside ditch' whose water took "'a winding, thirty-two-mile path to the Chesapeake Bay, [ ]irrigation ditches and drains that intermittently connect to covered waters, [ ] and (most implausibly of all) the 'washes and arroyos' of an 'arid development site,' located in the middle of the desert, through which "'water courses . . during periods of heavy rain.'" *Id.* at 727 (citing and quoting *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1118 (9th 2005); *Treacy v. Newdunn Assoc.*, 344 F.3d 407, 410 (4th Cir. 2003); *United States v. Deaton*, 332 F.3d 698, 702 (4th Cir. 2003); *Community Assn. for Restoration of Environment v. Henry Bosma Dairy*, 305 F.3d 943, 954–955 (9th Cir. 2002); *Headwaters, Inc. v. Talent Irrigation Dist.*, 243 F.3d 526, 534 (9th Cir. 2001)).

In confirming the plurality opinion in *Rapanos*, the *Sackett* Court essentially adopted its statement that WOTUS "exclude[s] channels containing merely intermittent or ephemeral flow . . . ." 547 U.S. at 734-35.

## V. Temescal Creek is an ephemeral waterway that is not a WOTUS under *Sackett*

As discussed below, Temescal Creek clearly does not qualify under *Sackett*'s definition of WOTUS which includes only those "relatively permanent, standing or continuously flowing bodies of water 'forming geographic[al] features' that are described in ordinary parlance as 'streams, oceans, rivers, and lakes.'" 143 S. Ct. at 1336 (quoting *Rapanos*, 547 U.S. at 739) (quoting Webster's New International Dictionary 2882 (2d Ed. 1954)). Nor does it meet the standard of having a "continuous surface connection" with a WOTUS. *Sackett*, 143 S. Ct. at 1340-41.

### A. <u>Course of Temescal Creek</u>

The bed of Temescal Creek is approximately 29 miles long and stretches from Lake Elsinore to the Santa Ana River. (Parra Decl. ¶ 11; *id.* Ex. B.) As the map prepared by Dr. Parra shows, Temescal Creek stretches from Lake Elsinore and then in a Northwesterly direction ends at the Santa Ana River, into which it seldom discharges. (*Id.* ¶ 12.) Before Temescal Creek's path comes near Corona Clay's facility (shown as an orange circle on the map), the creek first drains—to the extent there are flows—into Lee Lake, which is a non-drinking water reservoir. (*Id.* ¶ 12.)

A few miles downstream from Corona Clay's facility is Temescal Canyon Lake, shown on the map with a green oval. (*Id.* ¶ 13; *id.* Ex. B.) To the extent there are flows, Temescal Canyon Lake discharges into Temescal Creek which then runs further Northwest toward the city of Corona. (*Id.*) Between Lee Lake and Temescal Canyon Lake, there are several other water impoundments and ponds, most of them man-made. (*Id.*)

B. <u>Previous authorities recognizing Temescal Creek as "ephemeral"</u>

An ephemeral stream[2] is "[a] stream or part of a stream that flows only in direct response to precipitation; it receives little or no water from springs, melting snow, or other sources; its channel is at all times above the water table". (Parra Decl. Ex. C at 007.) An intermittent stream is: "A stream that flows only when it receives water from rainfall runoff or springs, or from some surface source such as melting snow." (*Id.* at 10.) A perennial stream is: "A stream that normally has water in its channel at all times." (*Id.* at 13.)

Temescal Creek has consistently been recognized as "ephemeral." In a January 18, 2017 "Watershed Action Plan – Santa Ana Region – Riverside County," the following is stated: "Temescal Wash flows through an arid rain shadow zone of the Santa Ana Mountains and ***is ephemeral for most of its length***." (Parra Decl. ¶ 15; Ex. F at 11 (emphasis added).) Likewise, in a Groundwater Sustainability Plan for Temescal Basin ("Sustainability Plan") —a study prepared in January 2022 by Todd Groundwater and Carollo Engineers—Section 3.2 states:

> Temescal Wash originates at Lake Elsinore, 17 miles upstream of the Basin and passes from south to north through the Bedford-Coldwater Subbasin and then through the Basin before discharging into the Prado Basin wetlands. ***This waterway is ephemeral and dry much of the year, flowing mainly during the winter.*** Tributary streams in the Santa Ana Mountains adjacent to the west side of the Basin flow primarily in response to rainstorm events, with limited base flow that enters groundwater where streams enter the Basin.

(Parra Decl. Ex. D at 80 (emphasis added).)[3]

---

[2] As the *Rapanos* plurality pointed out, the term "'stream' likewise includes reference to such permanent, geographically fixed bodies of water: . . .." 547 U.S. at 733 n.6. The plurality opinion thus referred to the term "ephemeral stream as "useful oxymora." *Id.*

[3] In this section, "Temescal Basin" refers to the Temescal Groundwater Basin and Groundwater Sustainability Agency area. (Parra Decl. ¶ 16.)

C. Dr. Parra's analysis of water flows and site visit confirm that Temescal Creek is ephemeral at most points, including between Corona Clay and the Santa Ana River

Dr. Parra's expertise in the area of hydrology and water flows cannot be disputed. It is set forth in detail in his declaration and his attached resume. (Parra Decl. ¶¶ 3-5; *id.* Ex. A.) Through in-person site visits, review of maps, review of documents generated by various local government entities, and review of water flow records, he is thoroughly familiar with Temescal Creek and the level of water flow in it over the years. (*Id.* ¶ 10.) He is also thoroughly familiar with the course of Temescal Creek and various points along its length. (*Id.*)

As Dr. Parra explains, the Sustainability Plan not only describes Temescal Creek as ephemeral, but also contains a "Temescal Basin Surface Water Budget" in a separate and related Appendix K. One of the pages shows that the Temescal Creek flow entering the Temescal Basin (which corresponds with the runoff volume of Temescal Creek entering into Temescal Canyon Lake[4]) is highly variable. (Parra Decl. ¶ 17; Ex. E at 3.) The inflow from 1990 to 2018 shows ***16 out of 29*** years with ***no*** runoff in Temescal Creek, 1 year with practically no runoff (less than 3 acre-feet per year), 3 years with very little runoff (less than 3,000 acre-feet per year), 7 normally wet years, and only 2 very wet years. As Dr. Parra indicates, those 2 very wet years (1993 and 2005) account for over 50% of the runoff generated over the 29 year period.

In summary, the data provided by Dr. Parra establishes that for the area by Temescal Canyon Lake—which lies downstream from Corona Clay and upstream of the Santa Ana River—it is apparent that Temescal Creek is "ephemeral." (Parra Decl. ¶ 18.) With respect to Lee Lake, which is upstream of the Corona Clay facility,

[4] As Dr. Parra notes, this area is downstream from the Corona Clay facility. (Parra Decl. ¶ 13; *id.* Ex. B.)

the inflow data likewise demonstrates the ephemeral nature of Temescal Creek. As Dr. Parra points out, in five out of eleven years there were ***no*** outflows from Lee Lake into Temescal Creek. (Parra Decl. ¶¶ 17-18.) But annual data only goes so far, as one wet month might skew things. Looking at the monthly data for Lee Lake, it demonstrates that Temescal Creek was dry in ***110 out of 130*** measured months. (*Id.* ¶¶ 19, 24.) That means that in ***85%*** of the measured months, Temescal Creek was dry at that measuring point.

D. Dr. Parra's site visit and photographs

On July 25, 2023, Dr. Parra visited Corona to observe several points of Temescal Creek and took several photographs. (*Id.* ¶ 27.) Not only do the photographs confirm Dr. Parra's flows and other analysis, they also demonstrate that the *Sackett* Court would have no problem concluding that Temescal Creek is ***not*** a WOTUS.

During his visit, Dr. Parra observed "(1) the highly discontinuous nature of Temescal Creek, (2) the many man-made discharges into the creek, (3) the many opportunities for infiltration, and (4) the small likelihood of having a direct and continuous connection from the length of Temescal Creek all the way to the Santa Ana River." (*Id.* ¶ 28.)

While some photos show that Temescal Creek is not empty at all points at all times, (*see, e.g.*, Ex. H, J, K, L), they decidedly establish that most of the creek is dry. Perhaps the most telling photo is one taken by Dr. Parra near the Temescal Canyon Lake outlet, which again is downstream from the Corona Clay Facility.



As the picture shows, Temescal Creek is bone-dry at this point. (Parra Decl. Ex. I; *id.* ¶ 30.)

As Dr. Parra further notes, downstream from the Temescal Canyon Lake outlet Temescal Creek receives wastewater and other "nuisance" discharges from the City of Corona that provide some level of water flows. (*Id.* ¶¶ 31-33; *id.* Exs. J, K, L, M, N, O, P.) However, those flows disappear near Auburndale Street in Corona, about 2 miles upstream from the Santa Ana River.



(Parra Decl. Ex. Q; *id.* ¶ 37.)

In summary and as shown in his photographs, at the time of Dr. Parra's visit on July 25, 2023 (starting at about 9:50 am and ending at about 11:50 a.m.), there was a small amount of water flowing in Temescal Creek from Dawson Canyon Road all the way to Temescal Canyon Lake. (Parra Decl. ¶ 38.) Then there was no flow out of the lake, but flows from the City of Corona quickly incorporated into Temescal Creek, which in this area is a concrete channel. (*Id.*) Flows continued until the end of the concrete channel portion in Cota Street and eventually the flows ended somewhere between Lincoln St and Auburndale St, where they infiltrated. (*Id.*) Yet, there was still an additional 2 more miles of distance between Auburndale St and the end of Temescal Creek into Santa Ana River, for further infiltration opportunity. (*Id.*)

E. Plaintiffs' own expert confirmed the dry nature of Temescal Creek

As discussed above, independent third parties with no connection to this case have identified that Temescal Creek is "ephemeral." Dr. Parra's analysis and photographs confirm just how dry and ephemeral Temescal Creek is. It doesn't stop there.

At deposition, Plaintiffs' own expert—Jaime Moreno—testified that he had "observed Temescal Creek being dry" and that it is a "classical condition in the southwest United States." (Neach Declaration Ex. 1 (Moreno Depo. at 22:17-20).) Mr. Moreno had identified Temescal Creek as a "permanent watercourse," which apparently was based on his analysis of flows at a City of Corona measuring point. (*Id.* at 23:9-12.) When asked how he could have observed the creek being dry if it was, in fact, permanent, Mr. Moreno responded that "[i]t doesn't have to be wet everywhere." (*Id.* at 23:18-20.) Mr. Moreno then testified that it was a "fair assessment" that "some parts" of Temescal Creek might be dry and "some parts of it might be wet" at any particular time. (*Id.* ¶ 23:21-24.)

Mr. Moreno's deposition was taken before the Supreme Court issued its decision in *Sackett*, so the questioning was not focused on the "relatively permanent" aspect of the Supreme Court's opinion. The testimony is, however, a telling admission from Plaintiffs' own expert that Temescal Creek does not come close to meeting the criteria of a WOTUS set forth in *Sackett*.

## VI. Conclusion

*Sackett* established a new definition of WOTUS and one that cannot conceivably include Temescal Creek. The Court should dismiss this case for lack of subject matter jurisdiction with prejudice.

DATED: August 24, 2023

**PACHECO & NEACH, P.C.**

/s/ Brian Neach
Rod Pacheco
Brian Neach

*Attorneys for Corona Clay Co.*