UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INLAND EMPIRE WATERKEEPER, a project of Orange County Coastkeeper, and ORANGE COUNTY COASTKEEPER, a California non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>CORONA CLAY CO., a California corporation,<br><br>Defendant. | Case No.: 8:18-cv-00333 DOC (DFM)<br><br>Hon. David O. Carter<br><br>**ORDER ON REMEDIES** |

In their First Amended Complaint, Plaintiffs Inland Empire Waterkeeper and Orange County Coastkeeper ("Plaintiffs") brought seven causes of action against Defendant Corona Clay Company ("Defendant"), for violations of the General Industrial Storm Water Permit ("Permit").

By stipulation of the parties, Plaintiffs' Second, Third, and Fourth Causes of Action were dismissed with prejudice.

On remand, the issue of Clean Water Act jurisdiction and Plaintiffs' First, Fifth, Sixth, and Seventh Causes of Action were tried before a jury from November 8, 2022 through November 21, 2022. The jury rendered a verdict in Plaintiffs' favor on jurisdiction and each Cause of Action.

Having prevailed on jurisdiction and liability, civil penalties under the Clean Water Act are mandatory and injunctive relief is appropriate.

**A. FACTUAL FINDINGS**

The Court finds that, based on the jury's verdict:

(1) Corona Clay failed to implement best management practices by failing to use the best available technology/best conventional technology from July 1, 2015 to June 30, 2022, resulting in 2,556 daily violations as alleged through Plaintiffs' First Cause of Action;

(2) Corona Clay failed to develop or implement a Storm Water Pollution Prevention Plan that complied with the Permit's requirements from July 1, 2015 to June 30, 2022, resulting in 2,556 daily violations as alleged through Plaintiffs' Fifth Cause of Action;

(3) Corona Clay failed to analyze its storm water samples for iron on nine occasions, resulting in nine daily violations as alleged through Plaintiffs' Sixth Cause of Action;

(4) Corona Clay failed to analyze its storm water samples for oil and grease on 10 occasions, resulting in 10 daily violations as alleged through Plaintiffs' Sixth Cause of

Action;

(5) Corona Clay failed to sample its storm water when it was required to on eight occasions, resulting in eight daily violations as alleged through Plaintiffs' Sixth Cause of Action;

(6) Corona Clay failed to submit its laboratory results to SMARTS within 30 days of receipt for a total of 1,958 days, resulting in the same number of daily violations as alleged through Plaintiffs' Seventh Cause of Action;

(7) Corona Clay was required to submit a Level 1 ERA Action Plan for total suspended solids by January 1, 2018, but failed to do so until June 24, 2022, resulting in 1,635 daily violations as alleged through Plaintiffs' Seventh Cause of Action;

(8) Corona Clay was required to submit a Level 2 ERA Action Plan for total suspended solids by January 1, 2019, but failed to do so until June 24, 2022, resulting in 1,270 daily violations as alleged through Plaintiffs' Seventh Cause of Action;

(9) Corona Clay was required to submit a level 1 ERA Action Plan for iron by January 1, 2020, but failed to do so until June 24, 2022, resulting in 905 daily violations as alleged through Plaintiffs' Seventh Cause of Action;

(10) Corona Clay was required to submit a Level 2 ERA Action Plan for iron by January 1, 2021, but failed to do so until June 24, 2022, resulting in 539 daily violations as alleged through Plaintiffs' Seventh Cause of Action; and,

(11) Corona Clay failed to comply with the Annual Reporting requirements of the permit for 1,095 days, resulting in the same number of violations as alleged through Plaintiffs' Seventh Cause of Action.

(12) In total, Corona Clay is liable for 12,541 violations of the Clean Water Act.

**B. CIVIL PENALTIES**

Plaintiffs urge the Court to tentatively impose a civil penalty of no less than $8,215,000 in this matter, which reflects the Court's original $3,700,000 civil penalty plus an additional $4,515,000. (Dkt. 342 at 15).

On December 11, 2023, the parties submitted a joint stipulation regarding remedies

(Dkt. 395). Per this stipulation, Corona Clay has voluntarily committed to contribute funds to certain environmentally beneficial projects, namely to Orange County Conservation Corps and Temescal Valley Water District. The parties have agreed it would be appropriate to reduce Corona Clay's civil penalty liability that would otherwise be imposed to reflect this voluntary contribution and ask the Court to consider this agreement in its discretionary civil penalty factor analysis pursuant to 33 § 1319(d). *See* Dkt. 395. The Court now considers the 1319(d) factors to assess an appropriate civil penalty.

### 1. 33 U.S.C. § 1319 Analysis

Defendant's violations are subject to an assessment of civil penalties up to $64,618.00 per day per violation for each and every violation of the Clean Water Act. *See* 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4. The Court is required to impose penalties for each violation established. *See Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 1001-02 (9th Cir. 2000) ("If a district court finds a violation, then civil penalties under 33 U.S.C. § 1319(d) are mandatory."). As noted, the violations established here total 12,541. The "civil penalty may not 'exceed [$64,618] per day for each violation.'" *Sackett v. E.P.A.*, 566 U.S. 120 (2012) (quoting 33 U.S.C. § 1319(d)).

When awarding civil penalties under Section 1319(d), "the court considers (1) the seriousness of the violation or violations, (2) the economic benefit (if any) resulting from the violation, (3) any history of such violations, (4) any good-faith efforts to comply with the applicable requirements, (5) the economic impact of the penalty on the violator, and (6) such other matters as justice may require." 33 U.S.C. § 1319(d).

Courts employ a variety of methods for exercising their discretion in calculating a civil penalty under the CWA. *See, e.g.*, *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 573-74 (5th Cir. 1996) (applying a top-down approach wherein the court calculates the maximum penalty allowed by the CWA and then adjusts downward based on the statutory penalty factors); *United States v. Smithfield Foods, Inc.*, 191 F.3d 516, 528-29 (4th Cir. 1999) (applying a bottom-up approach wherein the court begins by calculating the economic benefit of noncompliance and then adjusts upward based on the statutory penalty factors). A

district court is not required, however, to employ any of these methods in determining the amount of a civil penalty. The district court has discretion to determine the appropriate amount of a penalty so long as it considers the six statutory factors listed above and does not exceed the maximum statutory penalty amount per violation. The Court considers each factor in turn.

Looking first at the seriousness of the violations, the relevant violations arise out of Defendant's failure to implement plans, technologies, monitoring, and other preventative procedures and mechanisms required by the CWA, and to comply with related reporting requirements. A violation of the CWA accrues on each day that defendants fail to comply with these requirements. The Court finds that these violations, which *can* result in future unlawful discharges of pollutants, are less serious than *actual* discharges of pollutants, and it has lowered the penalty for each violation accordingly, to $150 per violation, or a total of $1,881,150 for all violations.

This penalty is in line with those imposed by other courts in this circuit. *See, e.g.*, *Californians for Alternatives to Toxics v. Kernen Constr. Co.*, No. 4:20-CV-01348 YGR, 2021 WL 1734897, at *6 (N.D. Cal. May 2, 2021) (lowering penalty to between $50 and $500 for various violations of reporting and implementation requirements under the CWA and General Permit). The Court finds that the total penalty amount for all violations appropriately reflects the seriousness of defendants' failure to comply with the CWA and General Permit's planning, technological, monitoring, and reporting requirements for a significant period of time.

Turning to the next factor, Waterkeeper's expert has calculated Corona Clay's economic benefit from noncompliance to be $47,720. Dkt. 313-1 ¶ 12. Corona Clay has conceded a largely similar economic benefit of $40,988.75. Dkt. 317 at 10-11; Dkt. 320 at 10. A civil penalty of more than $1.8 million is nearly 40 times the economic benefit Defendant received under Plaintiffs' assessment. It therefore appropriately includes consideration of retribution and deterrence. *See Kelly v. U.S. E.P.A.*, 203 F.3d 519, 523 (7th

Cir. 2000) (penalties are intended to punish culpable individuals and deter future violations, not just extract compensation or restore status quo).

Next, while Plaintiffs point to several previous notices of violation issued by the State Water Board to Corona Clay as basis for imposing a greater penalty (Dkt. 313 at 10-15), Defendant argues that it adjusted its practices in light of these past notices, separate from Plaintiffs' intervention, and that no violation notices were issued on the last visit from the Board (Dkt 316 at 15). On balance, the Court finds the history of previous violations significant, but does not find it warrants increasing the civil penalty over $150 per violation.

Regarding Defendant's good-faith efforts to comply with the applicable requirements, Plaintiffs correctly note that Defendant has a history of failing to self-monitor and report to regulatory agencies (Dkt. 313 at 15). Corona Clay, however, has engaged in compliance efforts, including expending around $200,000 on water consultants to help with CWA compliance (Dkt. 316 at 11-12). The Court considers the cost of these efforts in assessing the overall civil penalty and finds the total penalty of $1.88 million appropriately reflects Defendant's ongoing compliance efforts.

Turning to the economic impact of the penalty on Corona Clay, Defendant requests that the Court impose a minimal civil penalty because the economic impact of the total penalty that Plaintiffs request would impair their ability to run their business, a family-centric operation with many employees who have worked there for decades (Dkt. 316 at 13). The Court finds that the civil penalties it imposes herein are appropriate in light of the record now before it, which shows that higher civil penalties would result in a significant negative impact on defendants and could prevent them from continuing to operate.

Finally, the Court accords significant weight to the commitment by Corona Clay to make a voluntary donation to environmentally beneficial projects in the local community. The Court commends the parties for their efforts to direct these funds to benefit the local environment. A lower total civil penalty in comparison with the Court's prior judgment in April 2020 is appropriate in recognition of Defendant's contributions to these efforts.

Therefore, after considering all Section 1319(d) factors, the Court will apply an $150 penalty per violation for a total civil penalty of $1,881,150.

Per the parties' stipulation, within sixty days of entry of a Final Judgment by this Court, Corona Clay will provide documentation of its donation of 95% of the civil penalty determined herein to Orange County Conservation Corps (20% of the 95%) and Temescal Valley Water District for Temescal Creek restoration projects (80% of the 95%). The Court will then impose a final civil penalty of 5% of the total civil penalty determined here. If Corona Clay does not make these voluntary donations as represented for the benefit of local environmental projects, the Court may reconsider its calculated civil penalty at that time. The Court will retain jurisdiction to ensure that Corona Clay completes all project commitments and completes all payments.

### C. INJUNCTIVE RELIEF

The CWA specifically authorizes awarding injunctive relief in citizen suits. 33 U.S.C. § 1365(a). As environmental injury, by its nature, is seldom adequately remedied by money damages, injunctive relief is a crucial tool in the Court's toolbox to ensure environmental protection. *See, e.g.*, *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Plaintiff must demonstrate that 1) absent the requested relief, it will suffer irreparable harm; 2) remedies at law, such as monetary damages, are inadequate to address the injury; 3) the balance of hardships between Waterkeeper and Corona Clay warrants an equitable remedy; and 4) an injunction is in the public's interest. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Courts have broad discretion in fashioning a remedy to address the specific harm alleged. *Melendres v. Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015).

Plaintiff has requested that the Court enjoin Corona Clay to: (1) install, operate, and maintain appropriate Best Management Practices (BMPs) at the Facility, (2) revise and update its Storm Water pollution Prevention Plan (SWPPP) as required by the General Permit and for compliance with Court-ordered BMP requirements, (3) take appropriate and

sufficient samples of its stormwater runoff, (4) perform appropriate site monitoring to ensure proper BMP operation and maintenance, (5) timely submit all reports and other documents to the State Board and the Court required to document compliance with the Permit and Court-ordered BMP, sampling, and site monitoring requirements, and (6) allow Plaintiffs to have annual inspections of the Facility. (Dkts. 313, 320).

Corona Clay opposes, arguing injunctive relief is unnecessary and that Waterkeeper has not made the requisite showing of irreparable harm (Dkt. 316 at 16-17; Dkt. 344 at 7-8). The Court agrees in part and disagrees in part. Regarding the implementations of BMPs, the Court finds Waterkeeper has failed to meet the first element warranting injunctive relief. Although Plaintiffs have shown that discharge from Corona Clay's operations in the past could affect Temescal Creek's aquatic habitat and species, Corona Clay has demonstrated that it has implemented substantial improvements to the site to align with existing BMPs. *See, e.g.*, Dkt 344 at 5. Indeed, the improvements Defendant has already instituted led its water consultant to state that "[a]t this time, I know of no outstanding compliance issues that need to be addressed at the facility." *Id.* at 6. Thus, the Court does not find Plaintiffs have demonstrated that the environment will suffer irreparable harm in the absence of the requested injunction. Accordingly, the Court denies Plaintiff's first request for injunctive relief.

As to the requests for injunctive relief regarding monitoring requirements, however, the Court finds Plaintiffs have demonstrated such relief is warranted. Each monitoring violation that the jury found Corona Clay liable for, individually and when considered together, caused significant harm to the regulatory program that Congress, the EPA, the State Board, and the Regional Board have developed to restore and maintain the integrity of our nation's waters. Environmental injury, including injury to legitimate informational needs pertinent to environmental protection, is well recognized to be a form of irreparable harm, and money damages do not compensate for such injuries. *See League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 761 (9th Cir. 2014) (public is at risk of improper decision-making without adequate and relevant

information supporting environmental regulation). Moreover, as Plaintiffs' request for injunctive relief essentially would only ensure Corona Clay complies with monitoring requirements it is already required to comply with, their request does not impose substantial additional hardship on Defendant. Finally, the public's interest in avoiding irreparable environmental injuries, including collection of inaccurate information about environmental risks, is well established. *All. for the Wild Rockies*, 632 F.3d at 1138. In sum, given the jury verdict establishing that Corona Clay committed monitoring and reporting violations over a seven-year period, the Court is well within its discretionary authority to order injunctive relief to ensure compliance going forward. As such, the Court grants Plaintiffs' second through sixth requests for injunctive relief.

Final judgment to issue.

**IT IS SO ORDERED.**

Dated: January 2, 2024

_____

Honorable David O. Carter