JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INLAND EMPIRE WATERKEEPER, a project of Orange County Coastkeeper, and ORANGE COUNTY COASTKEEPER, a California non-profit corporation,<br><br>        Plaintiffs,<br><br>   v.<br><br>CORONA CLAY CO., a California corporation,<br><br>        Defendant. | Case No.: 8:18-cv-00333 DOC (DFM)<br><br>Hon. David O. Carter<br><br>**FINAL JUDGMENT** |

In their First Amended Complaint, Plaintiffs Inland Empire Waterkeeper and Orange County Coastkeeper ("Plaintiffs") brought seven causes of action against Defendant Corona Clay Company ("Defendant"), for violations of the General Industrial Storm Water Permit ("Permit").

By stipulation of the parties, Plaintiffs' Second, Third, and Fourth Causes of Action were dismissed with prejudice.

On remand, the issue of Clean Water Act jurisdiction and Plaintiffs' First, Fifth, Sixth, and Seventh Causes of Action were tried before a jury from November 8, 2022 through November 21, 2022. The jury rendered a verdict in Plaintiffs' favor on jurisdiction and each Cause of Action.

Having prevailed on jurisdiction and liability, civil penalties under the Clean Water Act are mandatory and injunctive relief is appropriate.

## A. FACTUAL FINDINGS

**IT IS THEREFORE ORDERED** that judgment is entered in Plaintiffs' favor on the First, Fifth, Sixth, and Seventh Causes of Action. Accordingly, the Court finds that, based on the jury's verdict:

(1) Corona Clay failed to implement best management practices by failing to use the best available technology/best conventional technology from July 1, 2015 to June 30, 2022, resulting in 2,556 daily violations as alleged through Plaintiffs' First Cause of Action;

(2) Corona Clay failed to develop or implement a Storm Water Pollution Prevention Plan that complied with the Permit's requirements from July 1, 2015 to June 30, 2022, resulting in 2,556 daily violations as alleged through Plaintiffs' Fifth Cause of Action;

(3) Corona Clay failed to analyze its storm water samples for iron on nine occasions, resulting in nine daily violations as alleged through Plaintiffs' Sixth

Cause of Action;

(4) Corona Clay failed to analyze its storm water samples for oil and grease on 10 occasions, resulting in 10 daily violations as alleged through Plaintiffs' Sixth Cause of Action;

(5) Corona Clay failed to sample its storm water when it was required to on eight occasions, resulting in eight daily violations as alleged through Plaintiffs' Sixth Cause of Action;

(6) Corona Clay failed to submit its laboratory results to SMARTS within 30 days of receipt for a total of 1,958 days, resulting in the same number of daily violations as alleged through Plaintiffs' Seventh Cause of Action;

(7) Corona Clay was required to submit a Level 1 ERA Action Plan for total suspended solids by January 1, 2018, but failed to do so until June 24, 2022, resulting in 1,635 daily violations as alleged through Plaintiffs' Seventh Cause of Action;

(8) Corona Clay was required to submit a Level 2 ERA Action Plan for total suspended solids by January 1, 2019, but failed to do so until June 24, 2022, resulting in 1,270 daily violations as alleged through Plaintiffs' Seventh Cause of Action;

(9) Corona Clay was required to submit a level 1 ERA Action Plan for iron by January 1, 2020, but failed to do so until June 24, 2022, resulting in 905 daily violations as alleged through Plaintiffs' Seventh Cause of Action;

(10)  Corona Clay was required to submit a Level 2 ERA Action Plan for iron by January 1, 2021, but failed to do so until June 24, 2022, resulting in 539 daily violations as alleged through Plaintiffs' Seventh Cause of Action; and,

(11) Corona Clay failed to comply with the Annual Reporting requirements of the permit for 1,095 days, resulting in the same number of violations as alleged through Plaintiffs' Seventh Cause of Action.

(12) In total, Corona Clay is liable for 12,541 violations of the Clean Water

Act.

## B. CIVIL PENALTIES

Based on currently available information and the briefs submitted by the parties, the Court is tentatively inclined to impose a civil penalty in the amount of $1,881,150. The Court would, however, like to provide Corona Clay the opportunity to implement an environmentally beneficial project in an amount equal to $1,787,093. Per the parties stipulation regarding civil penalties (Dkt. 395), the parties have agreed that Corona Clay will donate 20% of that amount to Orange County Conservation Corps and 80% to Temescal Valley Water District. If Corona Clay were to implement such project, the Court would be inclined to impose a civil penalty in the amount of $94,057. The Court thus orders as follows:

**IT IS FURTHER ORDERED** that:

Corona Clay will provide documentation of its donations as outlined above to the Court, including invoices confirming payment, within sixty (60) days of this Order. The Court will then impose its final civil penalty. If Corona Clay does not make these voluntary donations as represented for the benefit of local environmental projects, the Court may reconsider its calculated civil penalty at that time. The Court will retain jurisdiction to ensure that Corona Clay completes all project commitments and completes all payments.

## C. ORDERED INJUNCTIVE RELIEF

**IT IS FURTHER ORDERED** that Corona Clay is enjoined to:

- Within thirty (30) days of entry of this Order, retain and work with a Qualified Industrial Storm Water Practitioner ("QISP") throughout the term of the order;
- Within thirty (30) days of entry of this Order, revise and implement a Storm Water Pollution Prevention Plan that complies with the Permit's Section X SWPPP requirement. The SWPPP should be prepared by a QISP, certified by Corona Clay's legally responsible person, and

uploaded to SMARTS within 30 days of this Order;

- Collect storm water samples from at least four Qualifying Storm Events per reporting year;
- Analyze all storm water samples for: iron, oil and grease, pH, and total suspended solids;
- Upload and report its storm water sample results to SMARTS within 30 days of receipt from the laboratory;
- Timely upload any Level 1 or Level 2 Exceedance Response Action Plans or technical reports as required by the Permit;
- Prepare and submit to the Court by October 1 of each year, an annual report documenting compliance with this Court's order that includes, at a minimum, the following:
    - A letter from a QISP indicating that they are retained by, and assisting Corona Clay with Permit compliance and this Court's order;
    - Date-stamped photographs showing that materials stockpiles are covered or trenched as applicable;
    - Sweeping logs indicating regenerative sweeping is occurring as ordered by this Court;
    - All rain gauge data as recorded by the onsite rain gauge for the year;
    - A report from a licensed professional engineer that the facility is operating and maintaining storm water basins so that all industrial storm water and commingled non-industrial storm water is captured and retained on site from at least an 85th percentile, 24-hour storm with a factor of safety. The report shall be based, in part, on a site inspection by the licensed professional engineer conducted no earlier than 2 months prior to issuance of

the report.

**IT IS FURTHER ORDERED** that Corona Clay is enjoined to:

Allow Waterkeeper up to two inspections of the Facility per year, including at least one wet weather inspection with 24 hours advance notice of an impending storm event, and to view, photograph and videotape the Facility as appropriate to determine and monitor compliance with the Court's order.

The term of this order shall be valid until October 30, 2026.

**IT IS SO ORDERED.**

Dated: January 2, 2024           _____
                                 Honorable David O. Carter