**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **INLAND EMPIRE WATERKEEPER, a project of Orange County Coastkeeper, and ORANGE COUNTY COASTKEEPER, a California non-profit corporation,** | **Case No.: 8:18-cv-00333-DOC (DFM)** |
| Plaintiffs, | **ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS [366]** |
| vs. | |
| **CORONA CLAY CO., a California corporation,** | |
| Defendant. | |

Before the Court is Plaintiffs Inland Empire Waterkeeper and Orange County Coastkeeper ("Plaintiffs") Motion for Attorneys' Fees and Costs against Corona Clay Company ("Corona Clay" or "Defendant"), pursuant to the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 et seq.

On November 21, 2022, a jury trial found in favor of Plaintiffs on jurisdiction and on all causes of action tried before the jury. Plaintiffs now seek attorneys' fees and costs associated with this verdict.

## 1.   PROCEDURAL HISTORY

On February 27, 2018, Plaintiffs filed a Complaint with the Court (Dkt. 1). Plaintiffs filed their First Amended Complaint on April 20, 2018. Defendants answered on May 4, 2018 (Dkt. 13). The Court granted in part Plaintiff's original Motion for Partial Summary Judgment on June 10, 2019 (Dkt. 55). A jury trial found in favor of Defendant on October 24, 2019 (Dkt. 137). The Ninth Circuit vacated that judgment and remanded on November 5, 2021, for proceedings consistent with an intervening Supreme Court ruling, *Cnty. of Maui v. Hawaii Wildlife Fund*, 140 S. Ct. 1462 (2020). *See Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825 (9th Cir. 2021). The Court denied Plaintiffs' second Motion for Summary Judgment on August 4, 2022 (Dkt. 245).

On remand, the issue of Clean Water Act jurisdiction and Plaintiffs' First, Fifth, Sixth, and Seventh Causes of Action were tried before a jury from November 8, 2022 through November 21, 2022. The second jury then rendered an opposite verdict from the first trial, finding in Plaintiffs' favor on jurisdiction and each Cause of Action. The second jury trial found in favor of Plaintiffs on November 21, 2022.

Following the trial, two remedies hearings, one on June 12, 2023, and one on August 28, 2023, were held to explore environmentally beneficial remedies. (Dkt. 334); (Dkt. 351).   On August 25, 2023, Defendant filed a Motion to Dismiss for Lack of Jurisdiction (Dkt. 349). The Court denied this Motion on October 26, 2023 (Dkt. 364).

On November 16, 2023, the Court ordered the parties to submit simultaneous briefing on attorney's fees (Dkt. 365) by December 6, 2023. On that date, Plaintiffs filed the instant Motion

for Attorneys' Fees and Costs ("Motion") (Dkt. 366), along with declarations in support (and associated exhibits) by: Daniel Cooper, Demetria Mantalis, Suzanne Willoughby, Yolande Venter, Tracie Groh, William Baker, Drevet Hunt, Nichole Fandino, Marla Fox, Michael Felmar, Matthew Robinson, William Funderburk, Colin Kelly, Brian Orion, Megan Meadows, Jason Flanders, Stuart Wilcox, William Frentzen, Sarah Spinuzzi, Lauren Chase, Jennifer Novak, Barry Lee, and Christopher Sproul (Dkts. 367-387, 389-390). Defendant Corona Clay filed an opposition that same day ("Opp'n") (Dkt. 391). On December 11, 2023, after speaking with the parties, the Court continued oral arguments on attorneys' fees to December 18, 2023 (Dkt. 394).

On December 14, 2023, Defendant filed a supplemental Opposition ("Def.'s Supp. Brief") (Dkt. 396) and a declaration and associated exhibits by Brian Neach (Dkt. 397). On December 17, 2023, Plaintiffs filed a supplemental Reply ("Pl.'s Supp. Brief") (Dkt. 400) along with declarations in support (and associated exhibits) by: Christopher Sproul, Megan Meadows, Lauren Chase, Jennifer Novak, Sarah Spinuzzi, Colin Kelly, and Stuart Wilcox et al. (Dkts. 401-407). The Court heard oral arguments on attorneys' fees on December 18, 2023.

## 2.   LEGAL STANDARD

### A. Attorney Fees under the CWA

Under the CWA, a court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d). Fee awards are "appropriate" where plaintiffs are prevailing or substantially prevailing parties, i.e., have achieved "some degree of success on the merits" and there are no "special circumstances" rendering a fee award unjust. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983); *S. Yuba River Citizens League & Friends of River v. Nat'l Marine Fisheries Serv.*, No. CIV. S-06-2845 LKK, 2012 WL 1038131, at *3 (E.D. Cal. Mar. 27, 2012), *aff'd sub nom. S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 581 F. App'x 693 (9th Cir. 2014).

### B. Attorney Fees Standard

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A court should exclude from the initial fee calculation "hours that were not 'reasonably expended.'" *Id.* at 434.

A district court "has a great deal of discretion in determining the reasonableness of the fee." *In re Smith*, 586 F.3d 1169, 1173 (9th Cir. 2009) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992)). Where "a voluminous fee application is filed in exercising its billing judgment the district court is not required to set forth an hour-by-hour analysis of the fee request." *Gates*, 987 F.2d at 1399. In those instances, "the district court has the authority to make across-the-board percentage cuts. . . in the number of hours claimed. . . as a practical means of trimming the fat from a fee application." *In re Smith*, 586 F.3d at 1174 (quoting *Gates*, 987 F.2d at 1399). However, cutting a large percentage of the fee request "has been criticized when employed in cases where the fee applications at issue involved substantial amounts of money and where district courts failed adequately to articulate their reasons for selecting specific percentage deductions." *Gates*, 987 F.2d at 1399. "[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). "Though a small reduction of fees necessitates only 'cursory explanation,' anything more disparate requires 'a more specific articulation of the court's reasoning.'" *In re Smith*, 586 F.3d at 1174 (quoting *Moreno*, 534 F.3d at 1111).

### 3.    DISCUSSION

Plaintiffs initially requested $4,558,909.70 in attorneys' fees and $306,557.19 in costs for a total of $4,865,466.89 against Corona Clay. Mot. at 25. In their supplemental briefing, Plaintiffs requested $4,802,437.65 and $307,801.52, for a total award of $5,065,385.17. Pl.'s Supp. Brief. at 23.

### B. Plaintiffs' Entitlement to Attorneys' Fees

The Court finds that Plaintiffs are entitled to attorneys' fees under 33 U.S.C. §§ 1365(d). Courts must generally award attorneys' fees to prevailing environmental citizen suit plaintiffs

"to encourage the achievement of statutory goals" as fee shifting is typically required for public interest groups to secure representation. *St. John's Organic Farm v. Gem County Mosquito Abatement Dist.*, 574 F.3d 1054, 1061 (9th Cir. 2009). Corona Clay seems to argue that Plaintiffs' fees should be reduced or eliminated because the Clean Water Act violations that Defendant was found liable for at the trial were monitoring violations and did not establish Temescal Creek had suffered environmental harm. Opp'n at 1. The Court disagrees. Having received a favorable jury verdict on their First, Fifth, Sixth, and Seventh Causes of Action under the Clean Water Act, Plaintiffs are substantially prevailing parties as they have achieved "some degree of success on the merits." *Ruckelshaus*, 463 U.S. at 694. That these claims concern monitoring violations rather than another type of environmental harm is of no import to the question of attorney's fees. Further, there are no "special circumstances" here that would render a fee award unjust. *S. Yuba River Citizens League*, 581 F. App'x at 693.

### C. The Fee Amount

Plaintiffs seek a total fee amount based on their calculated lodestar. *See generally* Mot. Corona Clay disputes the fee amount, but does not present an alternative suggested number, instead arguing the Court should generally reduce or deny altogether attorney's fees. *See generally* Opp'n; Def.'s Supp. Brief. The Court has already rejected Defendant's request to award no attorney's fees. The level of generality of Defendant's request for reduction makes it difficult for the Court to assess what might be an appropriate fee amount. The Ninth Circuit has noted that courts should generally defer to the prevailing counsel and that "[i]f opposing counsel cannot come up with specific reasons for reducing the fee request that the district court finds persuasive, it should normally grant the award in full, or with no more than a haircut." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008). Nevertheless, the Court addresses Plaintiffs' fee calculations and the particular disputes Corona Clay has raised in turn.

#### 1. Plaintiffs' Lodestar

Plaintiffs' Motion sought a lodestar of $4,558,909.70. *See generally* Mot. Plaintiffs' lodestar is based on the time spent on the instant litigation by each attorney and paralegal,

multiplied by the hourly rate for each attorney and paralegal, after taking into account billing cuts. *Id.*

A court calculates the lodestar figure by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Davis v. City & Cty. of San Francisco*, 976 F.2d. 1536, 1541 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (1993) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)); *see also Hensley*, 461 U.S. at 433 ("[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."). A court may then "increase or reduce the presumptively reasonable lodestar fee" based on a number of factors. *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1988). A court should exclude from the initial fee calculation "hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434. A court may also credit a party with fewer hours if the time claimed is "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Other factors that may reduce the hours "deemed reasonable" include: "(1) the overstaffing of a case or a demonstration of exceptional skill and efficiency; and (2) the relative novelty and complexity of the issued raised." *Cunningham*, 879 F.2d at 485 (citing *Hensley*, 461 U.S. at 434).

Given the complexity and time-consuming nature of this case, as well as the expertise of Plaintiffs' counsel, the Court finds Plaintiffs' overall lodestar reasonable, subject to deductions as noted below. Plaintiffs filed the Complaint in this case on February 27, 2018 (Dkt. 1), engaging in active, contentious litigation for more than five years. To achieve success on the merits of Plaintiffs' claims, Plaintiffs' counsel engaged in necessary, time-intensive tasks, including: briefing and arguing 30 motions; engaging in extensive discovery and deposition work; appearing in this Court for 18 hearings and conferences; conducting two trials; preparing for and arguing a Ninth Circuit appeal; and drafting a U.S. Supreme Court brief opposing Corona Clay's petition for certiorari. Mot. at 2-3.

Moreover, Plaintiffs have provided a discount of the total hours spent litigating the action. Plaintiffs' counsel spent over 6,000 hours litigating the action,[1] but have reduced their billable hours to reflect billing judgment, and now seek to recover for around 4,500 billable hours of work. Declaration of Christopher Sproul ("Sproul Decl.") (Dkt. 390) at 113; Sproul Decl. Ex. 1. In reducing their hours to reflect billing judgment, Plaintiffs' counsel seek a lodestar representing approximately 75% of their stated hours spent on the case. In light of the complexity of the instant case, the success on the merits of the CWA claims at the second trial, and Plaintiffs' counsel's reduction in their billing hours, the Court finds the lodestar of 4,486.40 hours with a total fee request of $4,558,909.70 reasonable as a starting point for the calculation of fees. None of the tasks or hours detailed by Plaintiffs' counsel's billing record were obviously unreasonable, unnecessary, or inefficient, though it is difficult to "tell by a cursory examination which hours are unnecessarily duplicative," given the multitude of attorneys contributing to the motions. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Thus, this Court will impose a "haircut" of 10% of the requested attorneys' fees. *See id.* (holding that "the district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation"). This across-the-board reduction is also response to Corona Clay's arguments regarding several line items they believe are inflated. *See, e.g.*, Def.'s Supp. Brief at 103. The Court also imposes several additional discounts, factoring in the 10% overall reduction in fees, as detailed below.

---

[1] Plaintiffs' attorney fee calculations include time spent on paralegal tasks. As explained in further detail below, the Court finds the inclusion of reasonable hours spent on paralegal tasks reasonable, as the Supreme Court has held that attorney fee awards may include compensation for work of paralegals at market rates. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274 (1989).

### 2.     Fees for In-House Counsel

Corona Clay asks the Court to limit Plaintiffs' recovery for its staff attorneys' time to recovering fees equivalent to their salary compensation. Opp'n at 8-9. The Court declines to do so. "Legal aid offices and public interest organizations offering pro bono legal services have long been awarded market rate fees to promote the enforcement of the underlying statutes authorizing the fees." Curran v. Department of Treasury, 805 F.2d 1406, 140810 (9th Cir. 1986). In recognition of this policy goal, this Court has awarded attorneys' fees to in-house counsel in prior environmental cases. In *Wishtoyo*, this Court awarded recovery of attorneys' fees to plaintiffs' in-house counsel, recognizing that a party may seek "reasonable fees based on the market rate when a party is represented by both private counsel and in-house counsel who actively participate in the preparation of the case." *Wishtoyo Found. v. United Water Conservation Dist.*, No. CV163869DOCPLAX, 2019 WL 1109684, at *8 (C.D. Cal. Mar. 5, 2019). Here, Plaintiffs' in-house counsel actively participated in the litigation of the case alongside private counsel, justifying an award of market-rate fees.

### 3.     Geographic Location for Plaintiffs' Rates

Corona Clay asks the Court to award rates prevailing in Riverside County, where the case was filed or "originated." Opp'n at 10; Def.'s Supp. Br. At 4. Ninth Circuit precedent, however, dictates that district courts award prevailing rates in the community where the court sits. Accordingly, the Court awards Plaintiffs prevailing rates in Orange County. Plaintiffs have demonstrated that the rates they seek to recover are reasonable in the Orange County/Los Angeles metropolitan area. *See* Sproul Decl.

### 4.     Plaintiffs' Unsuccessful First Trial and Subsequent Ninth Circuit Appeal

Corona Clay asks the Court to decline to award Plaintiffs fees for the first trial, at which Plaintiffs were not the prevailing party. Def.'s Supp. Brief at 7-8. Plaintiffs do not dispute that they were not the prevailing party at the first trial but argue they should still be awarded attorney's fees for that trial as a necessary step to the ultimate victory in this case. Pl.'s Supp. Brief at 8. On appeal, the Ninth Circuit remanded due to an intervening change in law. This

required the Court address the new issue of whether the discharge was the "functional equivalent of a direct discharge" under *Haw. Wildlife Fund*, 140 S. Ct. 1462. *Inland Empire Waterkeeper*, 17 F.4th at 836. Plaintiffs prevailed in the second trial under this new standard. As Plaintiffs were not the prevailing party at the first trial under the law as it existed at the time, however, the Court declines to award fees for the first trial.

Although Defendant asserts that the lodestar for the first trial "appears to be at least $300,000," Opp'n at 10, they do not appear to have closely reviewed these figures. Accordingly, the Court accepts Plaintiffs' representation that they incurred about $168,524 in lodestar on the first trial itself, Pl.'s Supp. Brief at 11.

Additionally, although Corona Clay provided no estimate of appellate fees related to the first trial, the Court's review of Plaintiff's billing records indicates they incurred approximately $380,000 in fees on their first Ninth Circuit appeal. (Dkt. 393-3). The Ninth Circuit found in favor of plaintiffs on appeal and remanded due primarily to an intervening change in law, an event outside the control of and unforeseeable by either party. Accordingly, the Court finds it would be reasonable for the parties to bear their costs on the first appeal.

### 5.    Travel Expenses for Pro Bono Attorneys

Corona Clay argues that Plaintiffs should not receive fees associated with travel time, particularly for the pro bono attorneys on the case who traveled from a greater distance. Def's Supp. Brief at 4-5. Plaintiffs maintain that time spent traveling for necessary court appearances is compensable. Pl's Supp. Brief at 16. The Court finds that the fees incurred for travel time should be reduced by half the attorneys' reasonable hourly rates, in keeping with other courts in this Circuit. *See In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291, 1298 – 99 (9th Cir. 1994); *S. Yuba River Citizens League & Friends of the River*, 2012 WL 1038131, at *5. The Court accepts Plaintiffs' representation that they seek $23,190 for this travel time. Pl.'s Supp. Brief at 16.

### 6.    Block Billing

Next, Defendant argues that Plaintiffs should not recover all of the billed hours because of improper block billing in time entries. Def's Supp. Brief at 5. Defendant seeks a reduction in

fees due to block billing. *Id.* Specifically, Defendant notes Plaintiff submitted billing records also indicate approximately 533.90 hours billed in "block" variety, for a total of $504,967.50, less approximately $6,247.50 in "billing judgment" adjustments. A review of Plaintiffs' billing records confirms that many entries are 'block billed.' Plaintiffs oppose, arguing it is appropriate for a District Court to effectively forgive a limited number of block billed entries in an extensive fee application. Pl's Supp. Brief at 17.

When a time entry is so vaguely written (including lumping together multiple distinct tasks) that a court cannot determine if the overall amount of time spent on a particular activity or claim was reasonable, "block billing" becomes a problem justifying a reduction in hours claimed. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). These entries all involve different tasks, which makes it difficult for the Court to determine how much time was spent on each task. Therefore, the Court applies a 30% reduction on these entries. *See id.* (holding that a district court appropriately reduced block-billed hours by 20% as in the middle range of a California State Bar report concluding that block-billing "may increase time by 10% to 30%").

### 7.    Attorneys' Fees Regarding Preparation of this Motion

Plaintiffs also seek additional fees for additional hours incurred since the filing of their Motion. Pl.'s Supp. Brief at 23. The Court declines to award additional fees spent as a result of the attorneys' fees Motion itself.

### 8.    Total Fees

The Court REDUCES Plaintiffs' lodestar by $455,890.97 as an initial 10% reduction. The Court further discounts the fees as described herein, adjusting for the 10% across-the-board initial reduction:

- $151,671.60 for hours related to the first trial at which they were not the prevailing party;
- $342,000 for appellate fees for the first Ninth Circuit appeal;
- $10,435.50 for hours spent on travel time for pro bono attorneys; and
- $134,654.40 based on a 30% reduction in block billing.

Subtracting these fees from the total lodestar of $4,558,909.70, the Court AWARDS Plaintiffs' counsel $3,464,257.23 in fees.

### C. Plaintiffs' Costs

In the Motion, Plaintiffs' counsel sought $306,557.19 in costs. Mot. at 24-25. Corona Clay did not present any argument challenging the $306,557.19 requested as costs. *See generally* Opp'n; Def.'s Supp. Brief. The Court finds the request for costs reasonable, and GRANTS Plaintiffs' Motion with respect to $306,557.19 in costs.

### D. Dispersal of Attorneys' Fees

The Court ORDERS Corona Clay to tender payment of attorneys' fees within sixty (60) days of entry of this order.

## 9.   DISPOSITION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' Motion for Attorneys' Fees and Costs.

The Court AWARDS Plaintiffs' counsel $3,464,257.23 in fees and $306,557.19 in costs against Defendant.

DATED: January 19, 2024

_David O. Carter_
_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE