William Frentzen (SBN 343918)
wfrentzen@mofo.com
Matthew Robinson (SBN 333652)
MRobinson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-6413
Facsimile: (415) 268-7522

Barry Lee (SBN 349773)
barry@coastkeeper.org
Erin Barlow (SBN 342212)
erin@coastkeeper.org
ORANGE COUNTY COASTKEEPER
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626
Telephone: (714) 850-1965
*Attorneys for Plaintiffs*
*Additional Counsel Listed on Next Page*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INLAND EMPIRE WATERKEEPER, a project of Orange County Coastkeeper, and ORANGE COUNTY COASTKEEPER, a California non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>CORONA CLAY CO., a California corporation,<br><br>Defendant. | Case No.: 8:18-cv-00333 DOC (DFM)<br><br>Hon. David O. Carter<br><br>**PLAINTIFFS' OPPOSITION TO CORONA CLAY COMPANY'S MOTION FOR NEW TRIAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 59(a)**<br><br>Hearing date: May 6, 2024<br>Time: 8:30 AM<br>Location: Courtroom 10A, 10th Floor<br>Action Filed: February 27, 2018<br>Trial Date: November 15, 2022 |

*Additional Counsel for Plaintiffs*

Jennifer F. Novak (SBN 183882)
novak@jfnovaklaw.com
LAW OFFICE OF JENNIFER F. NOVAK
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
Telephone: (310) 693-0775
Facsimile: (310) 627-0172

Christopher Sproul (SBN 126398)
csproul@enviroadvocates.com
Environmental Advocates
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695

# TABLE OF CONTENTS


I. Introduction……………………………………………………………………1

II. Standard for New Trial under Rule 59(a) ……………………………………2

III. Argument……………………………………………………………………...3

A. Corona Clay's FRCP 59(a) Motion Is Procedurally Improper……………3

1. FRCP 59(a) Does Not Authorize Ordering the New Trial Based on a Change in Law……………………………………………………3

2. Corona Clay Ignores that the Relief It Seeks Would Require the Court To Set Aside Its Earlier Summary Judgment Ruling—which Corona Clay Is Barred from Now Seeking……………………...4

B. Even if Defendant Could Seek a New Trial Based on a Change in Controlling Law for this Case, Sackett Does Not Constitute Such a Change…………………………………………………………………..6

C. Corona Clay Has Waived Any Further Argument as to Whether Temescal Creek Is a Water of the United States…………………………10

D. Corona Clay May Not Offer Evidence That It Failed to Introduce at Trial as the Basis for Its FRCP 59 Motion for New Trial……………..12

E. Temescal Creek is a Water of the United States under Rapanos and Sackett…………………………………………………………………14

1. Coastkeeper's Original Summary Judgment Evidence Established That Temescal Creek Is a WOTUS……………….........16

2. Coastkeeper's Supplemental Rebuttal Evidence Would Further Establish that Temescal Creek Is a WOTUS………………………...17

F. Coastkeeper's Closing Argument Was Proper and Does Not Warrant a New Trial…………………………………………………………21

1. Coastkeeper's Closing Argument Was Proper…………………..........21

2. Coastkeeper's Closing Argument Did Not Unfairly Prejudice Corona Clay………………………………………….........................23

IV. Conclusion ........................................................................ 25

# TABLE OF AUTHORITIES

*Anheuser-Busch, Inc. v. Nat. Bev. Distributors*,
69 F.3d 337 (9th Cir. 1995) ....................25

*Boston Scientific Corp. v. Johnson & Johnson*,
550 F. Supp. 2d 1102 (N.D. Cal. 2008) ....................3

*British Airways Bd. v. Boeing Co.*,
585 F.2d 946 (9th Cir. 1978) ....................11

*CFE Racing Products, Inc. v. BMF Wheels, Inc.*,
793 F.3d 571 (6th Cir. 2015) ....................24

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988) ....................5

*City of Pomona v. SQM N. Am. Corp.*,
No. 11-00167, 2022 U.S. Dist. LEXIS 104637 (C.D. Cal. May 6, 2022) .......12

*Cunning v. Skye Bioscience, Inc.*,
No. 21-00710, 2023 U.S. Dist. LEXIS 178156 (C.D. Cal. Aug. 21, 2023)........3

*De Adams v. Hedgpeth*,
No. 11-04330, 2015 U.S. LEXIS 2161 (C.D. Cal. Jan. 7, 2015) ....................13

*Exxon Shipping Co. v. Baker*,
554 U.S. 471 (2008) ....................11, 13

*Far Out Prods., Inc. v. Oskar*,
247 F.3d 986 (9th Cir. 2001) ....................13

*Foster v. EPA*,
No. 14-16744, 2019 U.S. Dist. LEXIS 147416 (S.D. W.Va. Aug. 29, 2019) .15

*Headwaters, Inc. v. Talent Irrigation District*,
243 F.3d 526 (9th Cir. 2001) ....................20

*Hemmings v. Tidyman's Inc.*,

285 F.3d 1174 (9th Cir. 2002) ....................24

*Inland Empire Waterkeeper v. Corona Clay Co.*,
No. 18-0333, 2019 WL 4233584 (C.D. Cal, June 10, 2019) ....................4, 7, 16, 21

*Interior Glass Sys. v. United States*,
No. 13-05563, 2017 U.S. Dist. LEXIS 46007 (N.D. Cal. March 28, 2017) ....14

*Janich Bros., Inc. v. Am. Distilling Co.*,
570 F.2d 848 (9th Cir. 1977) ....................25

*Jenkins v. Riverside Cty.*,
398 F.3d 1093 (9th Cir. 2005) ....................11

*Kehr v. Smith Barney, Harris Upham & Co., Inc.*,
736 F.2d 1283 (9th Cir. 1984) ....................24, 25

*Kona Enters., Inc. v. Est. of Bishop*,
229 F.3d 877 (9th Cir. 2000) ....................12, 13

*Kwon v. Safeco Ins. Co. of Am.*,
No. 22-02040, 2023 U.S. Dist. LEXIS 234205
(C.D. Cal. Dec. 22, 2023)....................5, 12, 14

*Maricopa Cnty. of State of Ariz. v. Maberry*,
555 F.2d 207 (9th Cir. 1977) ....................25

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ....................11

*Merrill v. County of Madera*,
389 Fed. App'x. 613 (9th Cir. 2010) ....................5

*Molski v. M.J. Cable, Inc.*,
481 F.3d 724 (9th Cir. 2007) ....................3

*N. Cal. Riverwatch v. City of Healdsburg*,
457 F.3d 1023 (9th Cir. 2006) ....................7

*ONRC Action v. United States Bureau of Reclamation*,
No. 97-3090, 2012 U.S. Dist. LEXIS 118153 (D. Or. Jan. 17, 2012) ....................20

*Rapanos v. United States*,
547 U.S. 715 (2006) ....................................................................passim
*Sackett v. EPA*,
598 U.S. 651 (2023) ....................................................................passim
*S.F. Baykeeper v. City of Sunnyvale*,
627 F. Supp. 3d 1102 (N.D. Cal. Sept. 12, 2022) ....................................15, 20
*Standard Oil Co. of Calif. V. Perkins*,
347 F.2d 379 (9th Cir. 1965) ..........................................................24
*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp*.,
802 F. Supp. 2d 1125 (C.D. Cal. 2011) ..............................................11
*Turner v. Burlington Northern Santa Fe R. Co.*,
338 F.3d 1058 (9th Cir. 2003)..........................................................4
*United States v. Alexander*,
106 F.3d 874 (9th Cir. 1997) ..........................................................5
*United States v. Appalachian Elec. Power Co*.,
311 U.S. 377 (1940) ....................................................................21
*United States v. Brink*,
795 F. Supp. 2d 565 (S.D. Tex. 2011) ..............................................16, 20
*United States v. Lucero*,
989 F.3d 1088 (9th Cir. 2021) ........................................................7, 15
*United States v. Mlaskoch*,
No. 10-2669, 2014 U.S. Dist. LEXIS 43314 (D. Minn. Mar. 31, 2014) ...15, 20
*United States v. Moses*,
496 F.3d 984 (9th Cir. 2007) ........................................................7, 15, 21
*U.S. v. Rodrigues*,
159 F.3d 439 (9th Cir. 1998) ..........................................................25
*U.S. v. Vierstra*,
2011 U.S. Dist. LEXIS 28517, 2011 WL 1064526

(D. Idaho March 18, 2011) ....................15, 20

*United States v. Walton*,
909 F.2d 915 (6th Cir. 1990) ....................11

*Vander Salm v. Bailin & Associates, Inc.*,
No. 11-40180, 2014 U.S. Dist. LEXIS 35177 (D. Mass. Mar. 18, 2014) ..20, 21

*Zhang v. Am. Gem. Seafoods, Inc.*,
339 F.3d 1020 (9th Cir. 2003) ....................11, 12

OTHER AUTHORITIES

Fed. R. Civ. P. 59(a)....................1, 3, 4, 5, 11, 13

Fed. R. Civ. P. 59(e)....................1, 3, 4, 5, 11, 13

C.D. Cal. L.R. No. 7-18 ....................6

C.D. Cal. L.R. No. 59-1.3 ....................13

## I. Introduction

Corona Clay Co. seeks to set aside the jury verdict and Final Judgment against it and burden the Court with a third jury trial, arguing that *Sackett v. EPA*, 598 U.S. 651 (2023) changed the controlling law governing whether Temescal Creek is a water of the United States ("WOTUS") and hence creates the proper basis for a new trial. Def's Mem. P&A's ISO Motion for New Trial under FRCP 59(a) ("Def's Mot'n" or "FRCP 59(a) Motion") (Dkt. 423-1). Corona Clay's motion, however, is meritless for multiple reasons and must be denied. To begin, Federal Rule of Civil Procedure ("FRCP") 59(a) *does not* authorize a new trial based on a change in law. Moreover, while FRCP 59(e) theoretically empowers courts to alter or modify judgments, there are multiple obstacles to Corona Clay invoking FRCP 59(e) as the basis for the relief it seeks. Notably, Corona Clay has not briefed FRCP 59(e) nor argued how it could meet FRCP 59(e)'s standards. But even if Corona Clay had so attempted, it would have failed for several reasons.

One, it would not suffice for Corona Clay merely to win reversal of the Court's January 2, 2024 Final Judgment (Dkt. 412). The Final Judgment, of course, stemmed from the Jury's November 21, 2023 Verdict (Dkt. 308), but it was not this Verdict that established that Temescal Creek is a WOTUS. Instead, it was the Court's August 4, 2022 summary judgment order ("Second MSJ Order") (Dkt. 224 at ECF 3) that established that Temescal Creek is a WOTUS--a finding that the Court made because the parties' summary judgment briefing had established this as an uncontroverted legal conclusion following from the undisputed facts. Accordingly, Corona Clay could only win the relief it seeks by prevailing upon this Court to set aside its Second MSJ Order finding that Temescal Creek is a WOTUS. Corona Clay's FRCP 59(a) Motion, even if the Court were to generously construe it as an FRCP 59(e) Motion, could not be the vehicle for such an outcome. (A), Corona Clay has not asked for such an outcome, much less briefed it. (B), an FRCP 59 motion cannot be the vehicle for a new trial on issues that were not actually tried and beyond doubt whether Temescal Creek is a WOTUS was not an issue tried to the jury. (C), a new Corona Clay FRCP 59(e) Motion would be untimely as it would be

brought more than 28 days past the Court's Second MSJ Order and, at this point, well past 28 days from the January 2, 2024 Final Judgment.

Two, apart from these procedural problems, Corona Clay is wrong that *Sackett* represents a change in controlling law for purposes of this case. *Sackett* clarified that the plurality opinion in *Rapanos v. United States*, 547 U.S. 715 (2006) sets forth the controlling rule as to what is a WOTUS. However, Orange County Coastkeeper and Inland Empire Waterkeeper ("Coastkeeper") argued exclusively in their summary judgment briefing that Temescal Creek is a WOTUS under the *Rapanos* plurality rule--and Corona Clay expressly conceded this argument. Accordingly, rather than change the controlling law applied in this case, *Sackett* merely confirms it.

Three, in addition to the above two problems, Corona Clay is barred from seeking to now establish that Temescal Creek is not a WOTUS because, as noted, Corona Clay forever conceded this point by not only not opposing Coastkeeper's summary judgment showing on this point but expressly conceding that it was correct.

Four, a further problem for Corona Clay is that its argument that Temescal Creek is potentially not a WOTUS is built upon now inadmissible evidence: expert opinion statements that could have been but are not in the pretrial record. Corona Clay presents no argument that this evidence is now admissible and under controlling law it is not.

Even if Corona Clay could overcome these problems, the evidence previously submitted by Coastkeeper and supplemental rebuttal evidence that Coastkeeper has developed in response to Corona Clay's belated attempt to offer new information well demonstrates that the Court's prior summary judgment finding and jury instruction that Temescal Creek is a WOTUS were and remain correct.

Corona Clay's further makeweight argument that a new trial is required due to a brief statement in Coastkeeper's closing argument that the Court ordered stricken is meritless. While in full context the statement was not improper, it plainly was not the sort of extreme prejudicial remark that conceivably could warrant a new trial.

## II. Standard for New Trial under Rule 59(a)

A new trial may be granted in an action where there has been a trial by jury "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A); *see Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). Such historic bases recognized by the Ninth Circuit include: (1) a verdict against the clear weight of the evidence, (2) evidence, discovered after trial, that would not have been uncovered earlier through the exercise of due diligence and that is of such magnitude that its production at trial would likely have changed the outcome of the case, (3) jury misconduct, and (4) error in law that has affected the substantial rights of a party, such as erroneous jury instructions, or erroneous evidentiary rulings. *Cunning v. Skye Bioscience, Inc.*, No. 21-00710, 2023 U.S. Dist. LEXIS 178156, at *5 (C.D. Cal. Aug. 21, 2023) (quotations omitted). "The burden of showing harmful error rests on the party seeking the new trial." *Boston Scientific Corp. v. Johnson & Johnson*, 550 F. Supp. 2d 1102, 1110 (N.D. Cal. 2008) (citation and internal quotations omitted).

## III. Argument

### A. Corona Clay's FRCP 59(a) Motion Is Procedurally Improper.

Corona Clay cites FRCP 59(a) as its only basis for relief. Corona Clay contends that FRCP 59(a) authorizes this Court to set aside its Judgment and order a new trial based upon *Sackett*'s allegedly changing the controlling law governing this case. Def's Mot'n, Dkt. 423-1 at ECF 6-7. This contention is plainly erroneous as FRCP 59(a) *does not* authorize ordering a new trial based on a change in controlling law. Furthermore, while FRCP 59(e) would authorize the Court to amend its Judgment based on a change in controlling law (though not to order a new trial), any Corona Clay Rule 59(e) motion is now barred as untimely and could not, in any case, raise legal arguments or present evidence that Corona Clay could have been presented before the entry of Judgment. As a result, Corona Clay's FRCP 59(a) motion must fail and would still fail even if it were construed as being a motion brought under FRCP 59(e).

#### 1. FRCP 59(a) Does Not Authorize Ordering the New Trial Based on

**a Change in Law.**

Corona Clay wrongly asserts that an FRCP 59(a) motion may be based on an intervening change in controlling law. *None* of the recognized grounds for a new trial listed in section II above includes a change in controlling law. Corona Clay contends its new trial request is supported by *Turner v. Burlington Northern Santa Fe R. Co.*, but that decision only addressed that a change in controlling law is a basis *for an FRCP 59(e) motion* to amend a judgment, and said nothing about a change in law being a basis for an FRCP 59(a) motion. 338 F.3d 1058, 1063 (9th Cir. 2003). Corona Clay makes no attempt to demonstrate that any of the grounds historically recognized in the Ninth Circuit for ordering a new trial exist here. Corona Clay, for example, does not and cannot contend that this Court's instruction to the jury that Temescal Creek is a WOTUS was erroneous or that any other conduct or ruling of the Court prior to the Judgment was erroneous. As discussed further below, Corona Clay did not object to this jury instruction and instead presently maintains that the instruction was proper under the law at the time.

**2. Corona Clay Ignores that the Relief It Seeks Would Require the Court To Set Aside Its Earlier Summary Judgment Ruling—which Corona Clay Is Barred from Now Seeking.**

Corona Clay ignores that prior to the November 2022 jury trial, jury verdict and subsequent Judgment, this Court had already determined that Temescal Creek is a WOTUS via summary judgment. Second MSJ Order, Dkt. 224 at ECF 3 ("Temescal Creek—a tributary of the Santa Ana River and a water of the United States"); *see also Inland Empire Waterkeeper v. Corona Clay Co.*, No. 18-0333, 2019 WL 4233584, at *2 (C.D. Cal, June 10, 2019) (first summary judgment ruling finding that "Temescal Wash [is] a creek that deposits into the Santa Ana River," thus effectively finding the facts that render Temescal Creek a WOTUS as a tributary to a navigable in fact water). Thus, even if this Court were to grant a new trial, the law of the case that would govern the third trial would necessarily be, in accord with the Court's summary judgment rulings, that Temescal Creek is a WOTUS--unless Corona Clay requested and the Court ordered that

its prior summary judgment ruling be set aside.

However, Corona Clay's FRCP 59(a) motion cannot and could not be the vehicle for setting aside this prior summary judgment ruling. One, Corona Clay has not even asked for reversal of this prior ruling, much less provided argument why this law of the case ruling should be set aside. For this reason alone, the Court should not revisit its summary judgment orders. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) ("when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues."); *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("Failure to apply the doctrine of the law of the case absent one of [a few specified exceptions] constitutes an abuse of discretion.").

Two, whether Temescal Creek is a WOTUS was not a subject tried at the November 2022 trial; instead, the jury was instructed that the creek is a WOTUS. This necessarily precludes Corona Clay from securing a new trial to adjudicate this issue given that "a Rule 59(a) motion for new trial is not available on claims or causes of actions for which Plaintiffs never received a trial;" "A . . . new trial will not be granted to try a new issue that was not litigated at the first trial." *Merrill v. County of Madera*, 389 Fed. App'x. 613, 615 (9th Cir. 2010) (*quoting* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedures* § 2814) (citations omitted); *Kwon v. Safeco Ins. Co. of Am.*, No. 22-02040, 2023 U.S. Dist. LEXIS 234205, at *1-2 (C.D. Cal. Dec. 22, 2023).

Three, if Corona Clay's present FRCP 59(a) motion *had* asked the Court to set aside its summary judgment ruling or if Corona Clay were to file a new motion seeking to set aside the Court's summary judgment ruling, Corona Clay's motion request would be untimely in either case. One initial problem for Corona Clay is that FRCP 59(a) does not empower a court to set aside its rulings, only to require a new trial. *See Kwon*, 2023 U.S. Dist. LEXIS 234205, at *1-2. Corona Clay would thus have to rely only on FRCP 59(e), which does empower courts to set aside summary judgments. However, FRCP 59(e) sets

a strict time limit, requiring motions to alter or amend judgments to be filed within 28 days of entry of the judgment. Accordingly, Corona Clay would have had to file any FRCP 59(e) motion to set aside the Court's Second MSJ Order by September 1, 2022--*i.e.*, within 28 days of the Court's August 4, 2022 Second MSJ Order. And under Local Rule 7-18, Corona Clay arguably had only until August 18, 2022 to file any FRCP 59(e) motion, as that Local Rule requires motions for reconsideration of orders to be filed within 14 days of entry of any order. If Corona Clay were to contend that it had 28 days from the January 2, 2024 entry of the Final Judgment (Dkt. 412) to bring an FRCP 59(e) motion asking the Court to modify the Court's prior summary judgment ruling, Corona Clay would still be time-barred. Corona Clay has not yet filed such a motion nor even presently offered any argument that the Court's Second MSJ Order finding Temescal Creek is a WOTUS was erroneously issued, *i.e.*, erroneously sided with Coastkeeper's uncontested argument that Temescal Creek is a WOTUS under the *Rapanos* plurality rule. It is too late for Corona Clay to file such a motion now as it has been 87 days since the Court issued its Final Judgment.

Four, as discussed in section III.C. below, Corona Clay's Rule 59(a) motion is predicated on a contention that evidence that Corona Clay *did not submit at trial* shows that Temescal Creek is not a WOTUS under the *Rapanos* plurality/*Sackett* majority rule. However, Corona Clay is necessarily barred from now introducing this evidence.

### B. Even if Defendant Could Seek a New Trial Based on a Change in Controlling Law for this Case, *Sackett* Does Not Constitute Such a Change.

Even if Corona Clay could via a Rule 59(a) motion seek a new trial based on an intervening change in controlling law, Corona Clay's contention that *Sackett* changed the controlling law governing this Court's determination of whether Temescal Creek is a WOTUS is meritless. As Corona Clay itself asserts (Def's Mot'n at ECF 5, 13), *Sackett* confirmed that the Supreme Court's *Rapanos* plurality opinion is the controlling test for what constitutes a WOTUS--that for streams to be WOTUS, they must be "relatively permanent, standing or flowing bodies of water" that are either navigable in fact or are

connected to traditional navigable waters ("TNWs"). *Compare Sackett*, 598 U.S. at 598, 603 *with Rapanos*, 547 U.S. at 739, 742. This *Rapanos* plurality rule, which is now the *Sackett* majority rule, *is the rule that Coastkeeper argued made Temescal Creek a WOTUS and that this Court relied upon for finding that Temescal Creek is a WOTUS*.

Coastkeeper's May 16, 2019 Motion for Partial Summary Judgment ("First MSJ") (Dkt. 23) argued that "as a natural surface waterbody that flows to the Santa Ana River and eventually empties into the Pacific Ocean, Temescal Creek is a 'water of the United States' protected by the Clean Water Act." Dkt. 23 at ECF 11. Coastkeeper cited *United States v. Moses*, 496 F.3d 984, 990-91 (9th Cir. 2007) (and a District Court decision expressly relying on *Moses*) as providing supporting Ninth Circuit law. *Moses*, in turn, expressly interpreted all the Justices in *Rapanos* as "unanimously agreeing that intermittent streams (at least those that are seasonal) can be waters of the United States" when such streams are tributaries to TWNs. *Id*. Coastkeeper supported its WOTUS argument with evidence that Temescal Creek flows into the Santa Ana River, which is navigable in fact, and the Santa Ana River in turn flows into the Pacific Ocean. First SUF ¶¶ 2, 15 (Dkt. 23-1). In response, Defendant did not dispute that Temescal Creek flows into the Santa Ana River which in turn flows into the Pacific Ocean, and the Santa Ana River is navigable in fact. It also did not contest that Temescal Creek is a WOTUS. Def's Responding Statement of Genuine Disputes of Material Facts, ¶¶ 2, 15 (Dkt. 37-1). Notably, the Court's First MSJ Order expressly found that "Temescal Wash [is] a creek that deposits into the Santa Ana River." *Inland Empire Waterkeeper v. Corona Clay Co*., No. 18-0333, 2019 WL 4233584, at *2 (C.D. Cal., June 10, 2019).

Coastkeeper's July 1, 2022 Second Motion for Summary Judgment ("Second MSJ") (Dkt. 224), once again cited *Moses* and similar Ninth Circuit decisions, including both *N. Cal. Riverwatch v. City of Healdsburg*, 457 F.3d 1023, 1029 (9th Cir. 2006) and *United States v. Lucero*, 989 F.3d 1088, 1102 (9th Cir. 2021). Coastkeeper argued that under *Rapanos*, any tributary stream to TNW or tributary streams to such tributaries "that flows at least intermittently is defined as a water of the United States." *Id*. at ECF 16.

Building its argument that Temescal Creek is a WOTUS under the *Rapanos* plurality test, Coastkeeper expressly argued that the evidence established that Temescal Creek is "relatively permanent" and is a tributary that flows into the Santa Ana River which in turn flows into the Pacific Ocean. Dkt. 224 at ECF 16-17. Coastkeeper was on solid ground in arguing that if Temescal Creek met this *Rapanos* plurality test, it was indeed a WOTUS. Though the *Rapanos* plurality test had not commanded a Supreme Court majority, it was plain, as the Ninth Circuit noted in *Moses*, that the Supreme Court Justices had unanimously agreed in *Rapanos* that *any stream* that at least met the *Rapanos* plurality test was a WOTUS. 496 F.3d at 990-91; *see also Rapanos*, 547 U.S. at 810 (J. Stevens, dissenting) (noting "all four Justices who have joined this opinion would uphold the Corps' jurisdiction . . . in all other cases in which either the plurality's or Justice Kennedy's [significant nexus] test is satisfied").

With respect to the "relatively permanent" prong of the *Rapanos* plurality test, Coastkeeper's Second MSJ presented evidence that Temescal Creek "is a permanent, long-standing water feature spanning Temescal Valley from Lake Elsinore to the Santa Ana River." Dkt. 224 at ECF 16; Second SUF ¶ 22 (Dkt. 224-13). Coastkeeper argued that: (1) Temescal Creek remains a geographic constant, easily discernable in aerial photos, (2) even in dry months streamflow gages record flow in the stream both upstream and downstream from Corona Clay, (3) during a June 2022 site visit, Coastkeeper's expert observed water in the creek both upstream and downstream of Corona Clay, despite a lack of recent rainfall. Dkt. 224 at ECF 17. Coastkeeper backed up these arguments with supporting evidence. Second SUF, ¶¶ 22, 23, 25 (Dkt. 224-13).

With respect to the tributary to the TNW connection prong of the *Rapanos* plurality test, Coastkeeper's Second MSJ pointed out that Corona Clay admitted that Temescal Creek is a tributary to the Santa Ana River in response to Coastkeeper's Request for Admission. Dkt. 224 at ECF 16. Coastkeeper's Second MSJ further asserted that Temescal Creek "is the largest tributary to the Santa Ana River, with a direct surface connection to that waterbody." *Id.* at ECF 16-17. Coastkeeper again presented

corroborating evidence that Temescal Creek is indeed a tributary to the Santa Ana River, the Santa Ana River in turn flows into the Pacific Ocean, and the Santa Ana River is navigable in fact (and for a portion, subject to the ebb and flow of the tide). *Id.*; Second SUF ¶¶ 20, 21 (Dkt. 224-13).

Coastkeeper argued exclusively that this evidence sufficed to establish that Temescal Creek is a WOTUS under the *Rapanos* plurality test:

> *See Rapanos v. United States*, 126 S. Ct. 2208 (2006). In *Rapanos*, Justice Scalia, joined by Justices Roberts, Thomas, and Alito, interpreted "waters of the United States" to include "relatively permanent, standing or continuously flowing bodies of water" that connect to traditional navigable waters. *Id*. at 2225. The "relatively permanent" standard can also apply to "streams, rivers, or lakes that might dry up in extraordinary circumstances such as drought" and "seasonal rivers, which contain continuous flow during some months of the year." *Id*. at 2221 n. 5. Central to this inquiry is whether the water has continuous surface connection to bodies that are waters of the United States. *Id*. at 2226.

Dkt. 224 at ECF 17. Coastkeeper concluded that Temescal Creek met this test and was therefore a WOTUS. *Id.*; Second SUF, ¶ 25 (Dkt. 224-13).[1]

In responding to Coastkeeper's Second MSJ, Corona Clay expressly conceded that it did not dispute that Temescal Creek is a WOTUS. Def's Responding Statement of Genuine Disputes of Material Facts, ¶ 25 (Dkt. 230-1). Accordingly, Corona Clay's Second MSJ opposition brief did not refute that Temescal Creek is a relatively permanent stream that flows to the Santa Ana River and from there to the ocean, thus is a WOTUS.

---

[1] Coastkeeper *did not* present any argument that Temescal Creek qualified as a WOTUS because it met the Justice Kennedy *Rapanos* concurrence "significant nexus" test--under which a wetland not immediately adjacent/physically contiguous with a TNW could be deemed to be a WOTUS upon a showing that "the wetlands, either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of other covered waters more readily understood as 'navigable.'" *Rapanos*, 547 U.S. at 780. Coastkeeper presented no argument that Temescal Creek is a WOTUS because it significantly affects the environment of the Santa Ana River or the Pacific Ocean (an argument which in any case would perhaps have been inapplicable given that Temescal Creek is a stream rather than a wetland).

*See* Def's Opp. To Pls.' Second MSJ. (Dkt. 230).

Given no dispute in the summary judgment briefing, the Court's August 4, 2022, Second MSJ Order found that Temescal Creek is a WOTUS. Dkt. 224 at 3 ("Temescal Creek—a tributary of the Santa Ana River and a water of the United States") (citing Pls.' Second SUF (Dkt. 224-13 at ECF 3-5)).

Struggling to find a relevant change in law, Corona Clay fancifully asserts that at the time of the Court's November 2022 trial--quoting Justice Thomas's *Sackett* concurrence out of context--"the interpretation of WOTUS . . . was so broad as to include 'virtually any parcel of land containing a channel or conduit . . . through which rainwater or drainage may occasionally or intermittently flow,' including 'storm drains, roadside ditches, ripples of sand in the desert that may contain water once a year, and lands that are covered by floodwaters once every 100 years.'" Dkt. 423-1 at ECF 8. But Justice Thomas was not stating what the prevailing CWA law was in November 2022. He was instead merely lamenting what he saw as past, *and always erroneous*, government overreach in defining WOTUS. 598 U.S. at 706. In fact, the *Rapanos* plurality had already sharply constrained what constitutes a WOTUS 16 years earlier—and made plain that Corona Clay's assertions concerning what constituted a WOTUS under controlling law in November 2022 are unfounded. The crucial flaw remains for Corona Clay that the *Sackett* decision did not represent a change in law *for purposes of this case*. As noted above, Coastkeeper has argued all along that Temescal Creek is a WOTUS because it meets the *Rapanos* plurality test, now the *Sackett* majority rule, of being a relatively permanent stream that is a tributary to two TNWs--the Santa Ana River and the Pacific Ocean. *See, e.g.*, Dkt. 224 at ECF 16-17.

**C. Corona Clay Has Waived Any Further Argument as to Whether Temescal Creek Is a Water of the United States.**

At multiple points throughout this litigation, Corona Clay failed to contest Coastkeeper's showing and the Court's findings that Temescal Creek is a WOTUS. Once Coastkeeper came forward with summary judgment motion evidence establishing that

Temescal Creek is a WOTUS, the burden shifted to Corona to present counter evidence. *See, e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986); *British Airways Bd. v. Boeing Co*., 585 F.2d 946, 951-52 (9th Cir. 1978)). As discussed in Section III.B. above, not only did Corona Clay not contest Coastkeeper's summary judgment evidence that Temescal Creek is a relatively permanent stream connected to TWNs, it expressly conceded that Coastkeeper's summary judgment evidence sufficed to establish that Temescal Creek is a WOTUS. Corona Clay's own expert affirmatively conceded Temescal Creek is a WOTUS, which Corona Clay quoted in its opposition to Coastkeeper's Second MSJ. Dkt. 230 at ECF 9 (quoting Dr. Parra, "Temescal Creek, a Water of the United States."). Having failed to contest Coastkeeper's summary judgment showing that Temescal Creek is a WOTUS, *Corona Clay has now waived any further argument on this WOTUS issue*. *See, e.g*., *Jenkins v. Riverside Cty*., 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (party abandoned claims by not raising them in opposition to motion for summary judgment); *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp*., 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011).

FRCP 59(a) provides no alternative route for Corona Clay's way around its waiver of the WOTUS issue. It is well-settled that parties may not seek a new trial under FRCP 59(a) predicated on new evidence and new legal arguments that they could have developed and presented before the trial verdict. *Zhang v. Am. Gem. Seafoods, Inc.*, 339 F.3d 1020, 1028-29, 1034-35 (9th Cir. 2003); *see also United States v. Walton*, 909 F.2d 915, 924 (6th Cir. 1990). Having been alerted that Coastkeeper sought to establish that Temescal Creek is a WOTUS for having met the *Rapanos* plurality standard, Corona Clay cannot now seek to win a new trial under FRCP 59(a) based on its putative evidence concerning how much water flows in Temescal Creek—evidence it could have developed and presented in opposition to Coastkeeper's summary judgment evidence.

Moreover, Corona Clay would fare no better if it were not time-barred and could now bring an FRCP 59(e) motion. An FRCP 59(e) motion to alter or amend "may not be used to relitigate old matters, or to raise arguments or present evidence that could have

been made prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008); *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890-91(9th Cir. 2000); *Kwon*, 2023 U.S. Dist. LEXIS 234205, at *2-3.

A factor further bolstering the waiver conclusion is that this Court instructed the jury that Temescal Creek is a WOTUS. Dkt. 304 at ECF 20 (Instr. #18). This instruction was well-founded for multiple reasons: Coastkeeper's MSJ assertion of this as following from the undisputed facts and the *Rapanos* plurality rule, Corona Clay's express concession in its MSJ SUF response that Temescal Creek is a WOTUS, and the Court's Second MSJ Order finding that Temescal Creek is a WOTUS. Moreover, Corona Clay has expressly twice conceded that it *did not object to that jury instruction*. Def's Mot'n at ECF 8 (Dkt. 423-1); Def's Mem. P&A's ISO Motion To Dismiss under Federal Rule of Civil Procedure 12(b)(1) at ECF 7 (Dkt. 349-1). Under FRCP 51, any objection to jury instructions is waived if not raised in a timely fashion. FED. R. CIV. P. 51(c); *Zhang*, 339 F.3d at 1030, 1037; *see also City of Pomona v. SQM N. Am. Corp.*, No. 11-00167, 2022 U.S. Dist. LEXIS 104637, at *8-9 (C.D. Cal. May 6, 2022) (denying new trial to determine legal issue for which defendant failed to propose jury instructions or evidence).

Corona Clay apparently seeks to excuse its failure to contest that Temescal Creek is a WOTUS with an argument that Temescal Creek was a WOTUS under the law that preceded *Sackett* but is no longer a WOTUS post-*Sackett*. Def's Mot'n at ECF 8-9, 10-13 (Dkt. 423-1). However, this assertion is meritless given that, as discussed in Section III.B. above, *Sackett did not* change the standard for determining what is a WOTUS—the same standard Coastkeeper argued, and the Court applied to find, that Temescal Creek is indeed a WOTUS--the *Rapanos* plurality's "relatively permanent" test.

**D. Corona Clay May Not Offer Evidence That It Failed to Introduce at Trial as the Basis for Its FRCP 59 Motion for New Trial.**

Without presenting any argument why it is entitled to do so, Corona Clay offers lengthy new evidence concerning flow conditions in Temescal Creek in the form of new opinion testimony and exhibits from its expert Dr. Luis A. Parra-Rosales. Dkt. 423-1 at

ECF 1-2, 13-18 (citing to Parra Declaration and accompanying Exhibits A-Q). However, none of this evidence is admissible. As noted in Section III.C., Corona Clay is barred from presenting evidence to support an FRCP 59 motion that could have been presented prior to the entry of judgment. *See, e.g.*, *Exxon Shipping Co.*, 554 U.S. at 485 n.5; *Kona Enters., Inc.*, 229 F.3d at 890.

FRCP 59(a) authorizes a new trial and FRCP 59(e) authorizes amending a judgment only for (1) evidence newly discovered after trial, (2) that could not have been discovered sooner through the exercise of reasonable diligence, and (3) that is of such magnitude that its production at trial would likely have changed the outcome of the case. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992-93 (9th Cir. 2001). Where an FRCP 59 motion is based on newly discovered evidence, the Central District's Local Rules require a declaration showing: (a) when the evidence was first discovered; (b) why it could not with reasonable diligence have been produced at trial; (c) what attempts were made to discover and present the evidence at trial; (d) the nature of any oral testimony and willingness of the witness to testify, and (e) that any documentary evidence are the documents or duly authenticated copies thereof. C.D. Cal. L.R. 59-1.3. Failure to follow these requirements precludes use of new evidence. *De Adams v. Hedgpeth*, No. 11-04330, 2015 U.S. LEXIS 2161, at *6 (C.D. Cal. Jan. 7, 2015). Corona Clay's new evidence in the form of Parra's Declaration and accompanying exhibits is inadmissible given Corona Clay's failure to meet Local Rule 59-1.3's requirements. This new evidence must further be excluded given that it is facially obvious that evidence concerning how much and how often water flows in Temescal Creek is information that has been widely available to both parties in this case in the many years that this case has been pending. There has been no new sudden change in flow conditions in Temescal Creek that could not have been discovered before the November 2022 jury trial--and Corona Clay does not contend otherwise. Dr. Parra-Rosales cites data from stream gages that have been in place for many years, documents that were published long ago, and photographs of the creek that could have been taken years ago. With reasonable

diligence, Corona Clay and Dr. Parra-Rosales could have developed and presented this evidence at the time Corona Clay's summary judgment opposition was due in the summer of 2022—and Corona Clay has not even attempted to show otherwise. *See*, *e.g*., *Kwon*, 2023 U.S. Dist. LEXIS 234205, at *2-3; *Interior Glass Sys. v. United States*, No. 13-05563, 2017 U.S. Dist. LEXIS 46007, at *8 (N.D. Cal. March 28, 2017).

**E. Temescal Creek is a WOTUS under *Rapanos* and *Sackett*.**

If Corona Clay were not precluded from now relitigating whether Temescal Creek is a WOTUS under the *Rapanos* plurality/*Sackett* majority rule, it would still lose the argument that Temescal Creek is a WOTUS. Corona Clay contends that Temescal Creek is ephemeral, *i.e*., flows only direct response to precipitation, receives little or no water from springs, and at all times is above the water table. Def's Mot'n, Dkt. 423-1 at ECF 13-19. Corona Clay argues that this *per se* means that Temescal Creek is not a WOTUS under *Rapanos* and *Sackett*. *Id*. Coastkeeper's prior summary judgment briefing and evidence and new rebuttal evidence opposing Corona Clay's proffered new expert opinion declaration from Dr. Parra-Rosales shows these contentions are wrong.

The *Rapanos* plurality explained that "transitory puddles or ephemeral flows of water," "typically dry channels" or "channels that periodically provide drainage for rainfall" do not qualify as WOTUS. *Id*. at 733, 735, 739. However, the *Rapanos* plurality further made plain that to be a "relatively permanent" body of water, a stream need not flow all the time. All that is required is that a stream has "relatively continuous flow." *Id*. at 736, n.7. Hence the Court did not exclude from the definition of WOTUS "streams, rivers, or lakes that might dry up in extraordinary circumstances, such as drought…[or] *seasonal* rivers, which contain continuous flow during some months of the year but no flow during dry months." *Id*. at 733, n.12 (emphasis original). *Sackett* affirmed these *Rapanos* plurality points. 598 U.S. at 671.

As the Ninth Circuit has subsequently made plain, seasonal streams or creeks, *i.e*., creeks that flow continuously for a portion of the year, including for as little as two

consecutive months[2] during the relatively arid western United States wet season, qualify as "relatively permanent" waters for the purposes of the *Rapanos* plurality/now *Sackett* majority test. *Moses*, 496 F.3d at 991 (in *Rapanos* "the Supreme Court unanimously agreed that intermittent streams (at least those that are seasonal) can be waters of the United States.")[3]; *see also United States v. Lucero*, 989 F.3d 1088, 1103 (9th Cir. 2021) ("intermittent streams (at least those that are seasonal) can be waters of the United States," *citing Moses*); *Sunnyvale*, 627 F. Supp. at 1120; *Foster v. EPA*, No. 14-16744, 2019 U.S. Dist. LEXIS 147416, at *56 (S.D. W.Va. Aug. 29, 2019); *United States v.*

---

[2] Indeed, perhaps even fewer than 60 consecutive days of flow could suffice to find a stream to be sufficiently "relatively permanent" to constitute a WOTUS. *See S.F. Baykeeper v. City of Sunnyvale*, 627 F. Supp. 3d 1102, 1120 (N.D. Cal. 2022), citing *United States ex rel. Cal. Dept. of Fish & Wildlife v. HVI Cat Canyon, Inc.*, 314 F. Supp. 3d 1049, 1060-61 (C.D. Cal. 2018) (holding three creeks to be WOTUS that flowed 18 to 117 days per year, 34 days per year, and 20 days per year, respectively).

[3] There is some potential confusion in judicial opinions, including from a read of *Rapanos*, in the terms "ephemeral," "intermittent," and "seasonal." *See United States v. Vierstra*, 803 F.Supp.2d 1166, 1170 (the *Rapanos* "plurality decision does not contain precise standards for distinguishing between 'intermittent' and 'seasonal' waterways"). At one point, the *Rapanos* plurality stated that waters "through which water occasionally or intermittently flows" are not WOTUS. 547 U.S. at 733. But in so stating, the Court plurality was *not* stating that streams which are conventionally defined as "intermittent" as that term is used by the United States Geological Survey ("USGS") and expert hydrologists are not WOTUS. The USGS and expert hydrologists routinely label "seasonal" streams as "intermittent" streams and the *Rapanos* plurality made plain, as subsequent cases have further underscored, that "seasonal" streams which only carry continuous flow for a part of the year qualify as WOTUS. Along these lines, the *Rapanos* plurality explicitly acknowledged that more "scientifically precise distinctions between 'perennial' and 'intermittent' flows are no doubt available," but saw "no occasion in this litigation to decide exactly when the drying-up of a streambed is continuous and frequent enough to disqualify the channel as a 'wate[r] of the United States.'" 547 U.S. at 732 n.5 (internal cites, quotes omitted). The *Rapanos* plurality suggested that what it meant by "intermittent" and "ephemeral" means "streams whose flow is coming and going at intervals . . . broken, fitful or ***existing only or no longer than a day***; diurnal . . .short-lived." *Id.* (internal cites, references, and adjustments omitted) (emphasis added). Such fitfully flowing streams are well distinguishable from "seasonal" streams such as Temescal Creek that flow continuously for a portion of the year.

*Mlaskoch*, No. 10-2669, 2014 U.S. Dist. LEXIS 43314, at *56 (D. Minn. Mar. 31, 2014); *United States v. Brink*, 795 F. Supp. 2d 565, 578-79 (S.D. Tex. 2011).

As discussed below, Coastkeeper's original summary judgment evidence and its supplemental rebuttal evidence addressing the Parra Declaration establish that Temescal Creek is a *seasonal* stream that qualifies as a WOTUS under the *Rapanos* plurality/*Sackett* majority test.

**1. Coastkeeper's Original Summary Judgment Evidence Established That Temescal Creek Is a WOTUS**.

At the summary judgment stage, Corona Clay's October 25, 2018 request for admission and SUF responses established that Temescal Creek is tributary to the Santa Ana River, and that the Santa Ana River is a tributary to the Pacific Ocean and itself a navigable in fact water subject in part to the ebb and flow of the tide. Declaration of Christopher Sproul ("Sproul Decl."), ¶ 27 Ex. 22 (RFA response); Dkt. 37-1 and Dkt. 230-1 (SUF responses). These RFA and SUF responses irrebuttably established that Temescal Creek meets the second, tributary-to-a-TNW prong of the *Rapanos* plurality/*Sackett* majority test. *See, e.g*. *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 826, 837 (9th Cir. 2021) (fact admitted under FRCP 36 "is no longer subject to dispute"). Corona Clay has repeatedly conceded that the Santa Ana River is a WOTUS and still acknowledges this conclusion. *See, e.g.*, Parra Decl., ¶ 8, Dkt. 423-2.

Coastkeeper's summary judgment evidence also established that Temescal Creek meets the "relatively permanent" prong of the *Rapanos* plurality/*Sackett* majority test. Coastkeeper's expert Dr. Moreno opined that Temescal Creek is "a significant, important and permanent water course" with continuous seasonal flow. Dkt. 224-11 at ECF 16-18. Dr. Moreno noted that a stream gage downstream of the Corona Clay Facility has measured continuous flow in Temescal Creek for 31 years. *Id*. at ECF 16, 63-64. Dr. Moreno also noted that looked at from an average perspective, which will reflect flows averaged out over dry and wet years, an upstream flow gage has recorded daily flow in the creek every day from January 17 to May 4 over the past 10 years, *i.e.*, months of

persistent seasonal flow. *Id*. Dr. Moreno corroborated that his opinions with supporting visual observations during a June 16, 2022 site visit. *Id*. at ECF 17. He further corroborated his opinions with analysis of significant additions of flow into Temescal Creek in the form of tertiary treated, high quality sewage effluent from treatment plants. *Id*. He also referred to information establishing that fishing regularly occurs at numerous Temescal Creek locations. *Id*.

Notably, at the time of summary judgment, Corona Clay's expert Dr. Parra actually agreed with Coastkeeper's contention that Temescal Creek is a WOTUS, unequivocally stating labeling Temescal Creek as "a Water of the United States. . . ." Dkt. 230-3 at ECF 6. Apparently, Corona Clay's expert considered the question so far beyond dispute that he not only failed to dispute it, he readily conceded it and considered it a foregone conclusion. Thus, the unrebutted and undisputed evidence at summary judgment amply demonstrated that Temescal Creek was a WOTUS under the *Rapanos* plurality test.

**2. Coastkeeper's Supplemental Rebuttal Evidence Would Further Establish that Temescal Creek Is a WOTUS.**

Were the taking of new evidence now appropriate, Coastkeeper's rebuttal evidence to the Parra Declaration would further support that Temescal Creek is a seasonal stream with sufficient flow to be a WOTUS. Corona Clay's expert Dr. Parra's contrary opinion that Temescal Creek is "ephemeral" and has only a "seldom occurring continuous hydrological connection" to the Santa Ana River (Dkt. 423-2, ¶¶ 9, 20) is easily refutable.

Dr. Parra declares that Temescal Creek "seldom discharges" into the Santa Ana River. Dkt. 423-2, ¶ 12. This assertion is refuted by Coastkeeper's rebuttal declarations from Dr. Moreno which points out Temescal Creek is definitively mapped as a combination perennial/intermittent stream by the USGS. Moreno Decl., ¶¶ 5; Moreno Decl. ISO MTD Opp., Dkt. 354-1 at ¶¶ 11-12. Dr. Moreno further pointed out the very large volumes of flow conveyed by Temescal Creek into the Santa Ana River, a flow volume only achievable by consistent seasonal flow. Moreno Decl., ¶¶ 5-6, 8; Moreno Decl. ISO MTD Opp., Dkt. 354-1 at ¶¶ 13-23; *see ONRC Action v. United States Bureau*

*of Reclamation*, No. 97-3090, 2012 U.S. Dist. LEXIS 118153, at *66 (D. Or. Jan. 17, 2012) (data on flow volume conveyed by water is evidence that it regularly flows).

Dr. Parra's attempt to bolster his opinions with references to hearsay statements from a Riverside County Santa Ana Region Watershed Action Plan and a report prepared by private consultants Todd Groundwater and Carrollo Engineers. Corona Clay has presented no argument why these hearsay documents should be admissible as properly within any hearsay exceptions and they should be excluded on this basis alone. Neither Dr. Parra nor Corona Clay presents any foundation for who prepared these studies (the former document indicates it was prepared by multiple stakeholders without defining the contributions of these various stakeholders) and the extent to which the preparers did any hydrological analysis concerning flow conditions in Temescal Creek. However, even if they were admitted into evidence despite this hearsay and lack of foundation problems and the fact that any post-trial evidence offered by Corona Clay is inadmissible at this point as discussed in Section III.C, these documents' offhand observations do not present reliable, robust analysis of the frequency and volume of Temescal Creek flows.

Dr. Parra's further reliance on flow data from USGS stream gage 11071900 is unavailing. One, this stream gage is located just below Lee Lake, well upstream of the Corona Clay Facility and even if this gage did demonstrate that the reach of Temescal Creek immediately downstream of Lee Lake is ephemeral, this would not establish that Temescal Creek is ephemeral from the Corona Clay location downstream and from there to Temescal Creek's confluence with the Santa Ana River. Notably, Dr. Parra has ignored that there is a perennial tributary, Coldwater Canyon Creek, that flows into Temescal Creek immediately upstream of the Corona Clay Facility that is located well downstream of Lee Lake and USGS stream gage 11071900. As the gage on Coldwater Canyon Creek demonstrates, this creek continually adds perennial flow to Temescal Creek that the Lee Lake gage could not and does not measure. Declaration of Kaysha Kenney ("Kenney Decl.") ¶ 5 Ex. 2. Accordingly, Temescal Creek downstream from the Corona Clay Facility would have flow in it at times when no water is being released from Lee Lake

and the reach of the creek just below Lee Lake is dry. Two, Dr. Parra utilizes the USGS stream gage 11071900 data in skewed, misleading fashion. Dr. Parra focuses on this stream gage data demonstrating no flow from Lee Lake into Temescal Creek from 2014 to 2018. Dkt. 423-2, ¶ 23. What Dr. Parra ignores, however, is that these were years of historic drought in California. Sproul Decl., ¶ 29, Ex. 24. A more objective review of the USGS stream gage 11071900 data shows that the agency which owns and operates Lee Lake releases quite regular flows of water from Lee Lake into Temescal Creek in normal years during the wet season. Rather than establishing that Temescal Creek is ordinarily dry nearly always downstream of Lee Lake, the data conversely shows that Temescal Creek in normal wet years has continuous wet season flow downstream of Lee Lake. Sproul Decl., ¶ 5, Ex. 4. Indeed, this data shows that Temescal Creek downstream of Lee Lake flowed for 93 consecutive days in 2023 and has flowed for 72 consecutive days so far in 2024 (and is still presently flowing). *Id*.

Dr. Parra further seeks to bolster his opinion that Temescal Creek is ephemeral with numerous photos he took during the height of the summer dry season on July 25, 2023. However, during his site visit he observed flow in Temescal Creek, even in the middle of the summer dry season, in most locations that he visited. Moreno Decl., ¶ 21; Parra Decl., ¶¶ 31-36. He observed lack of flow in Temescal Creek at only two locations: the creek reach located around the Temescal Canyon Lake Outlet and Auburndale Street bridge overcrossings. Moreno Decl., ¶ 22; Parra Decl., ¶¶ 30, 37. But Dr. Parra disingenuously did not acknowledge that his observations of dry conditions at these two locations were in the middle of the dry season, and he made no attempt to explain or analyze what flow would be at these locations during the wet season. However, Coastkeeper's field investigators returned repeatedly to these locations and several other locations in Temescal Creek between January and the end of this month--and photo documented that these locations and several other spots in Temescal Creek flow continuously during the wet season, *even during multiple days in a row of no rain*--just as Coastkeeper's expert Dr. Moreno predicted would be the case. Moreno Decl., ¶¶ 23;

Collins Decl., ¶¶ 3-4, Exs. 1-27; Lee Decl., ¶¶ 5-8, Exs. 2-4; see also Sproul Decl., ¶¶ 6-25, Ex. 5-20 (additional aerial photography proof of flow in Temescal Creek even on days without rain).

Dr. Parra apparently bases his opinion that Temescal Creek is ephemeral for Clean Water Act purposes on the assumption that only naturally occurring flow counts and that any addition of flow to the creek from treated sewage plant discharges or municipal storm drains should be disregarded. Dkt. 423-2, ¶¶ 20, 25. However, this opinion is contrary to case law, which unequivocally establishes that artificial flow from sewage plant discharges or other sources is to be considered in determining whether a stream has sufficient flow to be a WOTUS. *E.g., Headwaters, Inc. v. Talent Irrigation District*, 243 F.3d 526, 533 (9th Cir. 2001); *S.F. Baykeeper v. City of Sunnyvale*, 627 F. Supp. 3d 1102, 1120 (N.D. Cal. Sept. 12, 2022).

Coastkeeper's supplemental evidence establishes that Temescal Creek has a well-defined riparian corridor with a physically observable change in vegetation between the surrounding uplands and the riparian zone along the stream channel. *See* Kenney Decl., ¶ 8 Ex. 5. As EPA and the U.S. Army Corps recognize, this type of riparian corridor indicates the presence of seasonal moisture supported by intermittent or perennial streams. *Id*. at ¶ 9 Ex. 6 at 14. Coastkeeper's evidence also shows that Temescal Creek has well-defined, physically observable bed and bank and ordinary high watermark features including undercut banks and scour marks. *Id*. at ¶ 8 Ex. 5. Such physically observable bed and bank and ordinary high watermark features may also indicate a stream course has relatively permanent flow, at least seasonally. *Id*. ¶ 9 Ex. 6 at 14. That stream courses have such well-defined bed and bank features is good evidence that they have frequent enough continuous flow to be WOTUS under the *Rapanos* plurality/*Sackett* majority WOTUS definition. *See U.S. v. Vierstra*, 2011 U.S. Dist. LEXIS 28517, 2011 WL 1064526, at *3 (D. Idaho March 18, 2011), *aff'd* 492 Fed. Appx. 738 (9th Cir. 2012); *see also Mlaskoch*, 2014 U.S. Dist. LEXIS 43314, at *53-55; *Vander Salm v. Bailin & Associates, Inc.*, No. 11-40180, 2014 U.S. Dist. LEXIS 35177, at *14-16 n.2 (D. Mass.

Mar. 18, 2014); *ONRC Action*, No. 97-3090, 2012 U.S. Dist. LEXIS 118153, at *66; *United States v. Brink*, 795 F. Supp. 2d 565, 578-79 (S.D. Tex. 2011).

Coastkeeper's supplemental evidence further includes material establishing that Temescal Creek is well known to support aquatic life that could exist if the creek has persistent seasonal flow. Sproul Decl., ¶ 2, Ex. 1. This includes evidence that a remnant population of Steelhead reside in Coldwater Canyon Creek, a tributary to Temescal Creek. Steelhead are oceangoing anadromous fish and could only be present in Coldwater Canyon Creek if Temescal Creek was historically well connected to the ocean was sufficiently flow levels for large adult Steelhead to migrate to Coldwater Canyon Creek. The presence of such aquatic life further supports finding Temescal Creek to be a WOTUS. *See, e.g.*, *Vander Salm*, 2014 U.S. Dist. LEXIS 35177, at *14-16 n.2; Kenney Decl., ¶ 9, Ex. 6 at 16. Furthermore, evidence that waters in their pre-human alteration condition had regular seasonal flow and were connected to TWNs (such as the evidence that Steelhead descendents still reside in Coldwater Canyon Creek) suffices for waters to be WOTUS--even if human alterations have robbed these rivers of flow or connectivity. *See United States v. Appalachian Elec. Power Co.*, 311 U.S. 377, 408, (1940); *Moses*, 496 F.3d at 988-89 ("we do not see how a mere man-made diversion, however long ago undertaken, could change [a waterbody] from a water of the United States into something else"); Plts. Opp. Def's MTD at ECF 19-20 (Dkt. 354) (recounting historic evidence of Temescal Creek having persistent at least seasonal, if not perennial flow). Notably, neither Corona Clay nor Dr. Parra make any attempt to take into account this case law and consider the historic status of Temescal Creek Creek flows.

### F. Coastkeeper's Closing Argument Was Proper and Does Not Warrant a New Trial.

Corona Clay's request for a new trial based on Coastkeeper's closing argument is meritless as the closing argument was proper and could not have prejudiced Corona Clay.

#### 1. Coastkeeper's Closing Argument Was Proper.

Corona Clay is correct: groundwater was not an issue in this case. And

Coastkeeper's closing argument did not make it an issue in this case. The main issue for trial was whether Corona Clay's stormwater runoff reached Temescal Creek in a manner that constituted a "functional equivalent of a direct discharge" into the creek. *See Inland Empire Waterkeeper*, 17 F.4th at 836-37. In addressing this issue, Coastkeeper properly compared the discharges analyzed in *County of Maui* to Corona Clay's stormwater runoff. Corona Clay's selective editing of Coastkeeper's closing arguments on this issue distorts and ignores that the full transcript demonstrates Coastkeeper's argument was proper and not prejudicial. To establish that Corona Clay's stormwater runoff constituted a "functional equivalent of a direct discharge" into Temescal Creek, Coastkeeper planned to compare how the pollutants from Corona Clay's facility reached Temescal Creek (*i.e.*, via stormwater runoff traveling across the surface for about a thousand feet before entering the creek in a matter of minutes) to how the pollutants at issue in *County of Maui* reached the point source (*i.e.*, being absorbed by the surrounding land and traveling over a mile through groundwater over the course of 84 to 400 days). Coastkeeper argued that, if the meandering, delayed discharge through groundwater analyzed in *County of Maui* constitutes a "functional equivalent to a direct discharge," then Corona Clay's much more direct discharge into Temescal Creek clearly meets that same threshold.

The full closing argument transcript makes plain this was Coastkeeper's intent in discussing the *County of Maui* factors. In its closing argument, Coastkeeper had only started to summarize the factors and analysis in *County of Maui*[4] when the Court sustained Corona Clay's objection:

> You've been instructed that there are a variety of factors, and those factors take into account a broad variety of circumstances. Some cases, you have water going into groundwater tables and not emerging for months or years, if ever. In some cases, it's difficult to tell whether the pollutants in a water body are actually coming from

[4] In *County of Maui*, the Supreme Court instructed that a variety of factors should be considered when evaluating whether pollutants constitute a "functional equivalent to a direct discharge" into a WOTUS, including the time and distance it takes pollutants to travel from the point of release into a WOTUS. *Cnty. of Maui, Hawaii v. Hawaii Wildlife Fund*, 140 S.Ct. 1462, 1476–77 (2020).

> a responsible point source. Some cases are difficult. Water goes into the groundwater. The water cycle is all connected. Sometimes it's very difficult to tell. And so these factors have laid out -- have been laid out for you to address the wide variety of factors that might be important in certain cases. Courts have found that, you know, 50 miles and many years is -- that's too far. By the same token, they have found that discharges that go into groundwater stay there for 84 to 400 days before traveling a mile through groundwater is, by law, the functional equivalent of a direct discharge.

Sproul Decl., ¶ 28, Ex. 23. Immediately after making this statement, the Court sustained Corona Clay positive apps objection and informed the jury that the statement was stricken. Coastkeeper's counsel then moved back to the evidence presented during trial and Corona Clay's polluted discharge:

> MS. SPINUZZI: Now, this case is much simpler. This case, you can follow it downhill, surface water. Iron doesn't change. Suspended solids don't drop out. It runs downhill, I don't know, up to 1100 feet. Even if you don't think that the culvert is the creek -- which, by the way, the purpose of the culvert is to pass water under a road --even if you don't think that's the creek, it certainly, according to Dr. Parra, joins up with the creek a few feet later. So ultimately, Corona Clay's discharges discharged into Temescal Wash.

Sproul Decl., ¶28, Ex. 23.

Though Corona Clay omits the portion of the transcript that would make this clear, Coastkeeper's counsel never stated or implied that Corona Clay's polluted runoff traveled through groundwater, instead sticking to the facts that Corona Clay's runoff traveled across the surface: "This case, you can follow it downhill, surface water."[5]

In sum, Coastkeeper's closing argument properly recited the facts and factors discussed in *County of Maui* to compare it to the evidence related to Corona Clay's discharge; Coastkeeper never tried to argue that Corona Clay's runoff traveled through groundwater. Corona Clay's argument that Coastkeeper's closing argument was improper because it presented evidence outside the Court's jurisdiction fails for the same reasons.

---

[5] Throughout closing arguments, Coastkeeper's counsel described Corona Clay's stormwater runoff as reaching Temescal Creek by traveling across the surface of the land—she never described it as traveling through groundwater. *See, e.g.*, Sproul Decl., ¶ 28, Ex. 23 at 49:10-14, 50:3-9, 51:2-6.

**2. Coastkeeper's Closing Argument Did Not Unfairly Prejudice Corona Clay.**

Even if by any stretch Coastkeeper's closing discussion of the *County of Maui* factors was improper, it was not prejudicial to Corona Clay, let alone prejudicial to the "extraordinary" level required to warrant a new trial. *See Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1193 (9th Cir. 2002); *CFE Racing Products, Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 589–90 (6th Cir. 2015). Whether a new trial based on allegedly improper attorney statements is warranted turns on the totality of the circumstances, "including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (*e.g.*, whether it is a close case), and the verdict itself." *CFE*, 793 F.3d at 590; *In re Isbell Records, Inc.*, 774 F.3d 859, 872 (5th Cir. 2014). "Even if the statements are improper, Defendants are not entitled to a new trial unless there is a reasonable probability that the verdict of the jury has been influenced by such conduct." *CFE*, 793 F.3d at 590.

Here, Corona Clay's argument hinges on a few lines from Coastkeeper's closing arguments that the Court struck. In the context of the whole closing argument and trial, it is simply frivolous to contend that these few lines created the "flavor of misconduct" that must "sufficiently permeate an entire proceeding" to warrant a new trial. *Standard Oil Co. of Calif. V. Perkins*, 347 F.2d 379, 388 (9th Cir. 1965); *Kehr v. Smith Barney, Harris Upham & Co., Inc.*, 736 F.2d 1283, 1286 (9th Cir. 1984).

The jury's verdict against Corona Clay here would not have changed absent Coastkeeper's isolated discussion of how the Supreme Court examined groundwater transmission as one example of the problem of assessing how close in time and distance a discharge must be to be regulated. In *Hemmings*, plaintiff's counsel made several closing argument statements that were plain error, but the court nonetheless denied a new trial given the failure to show that a different verdict was likely without these improper statements. 285 F.3d at 1192, 1195. It is inconceivable that Coastkeeper's counsel 15 line

discussion of the *County of Maui*'s analysis of whether the groundwater discharge in that case took too long or required too far of a migration pathway to be a CWA regulated discharge--that this Court directed the jury to ignore--changed the jury's finding that Corona Clay's runoff constitutes a "functional equivalent of a direct discharge."

Corona Clay's cited cases are inapposite and do not support the relief it seeks. *See Janich Bros., Inc. v. Am. Distilling Co.*, 570 F.2d 848, 861 (9th Cir. 1977) (finding error was harmless because statements were not prejudicial); *Anheuser-Busch, Inc. v. Nat. Bev. Distributors*, 69 F.3d 337, 347 (9th Cir. 1995) (granting new trial where counsel used inadmissible evidence in an inflammatory manner, provided false statements, and acted with "the sole purpose of bringing to the jury something it should not have heard."); *Kehr v. Smith Barney, Harris Upham & Co., Inc.*, 736 F.2d 1283, 1286 (9th Cir. 1984) (affirming finding that the comments did not sufficiently prejudice the jury as to warrant a new trial); *Maricopa Cnty. of State of Ariz. v. Maberry*, 555 F.2d 207, 217 (9th Cir. 1977) (granting new trial for "grossly improper, highly devastating to the defense, carefully planned" question to witness with sole purpose of bringing to jury something it should not have heard); *U.S. v. Rodrigues*, 159 F.3d 439, 451 (9th Cir. 1998*), opinion amended on denial of reh'g*, 170 F.3d 881 (9th Cir. 1999) (reversing criminal conviction for comments amounting to misstatement of law and slander of opposing counsel).

Corona Clay attempts to mischaracterize and take Coastkeeper's closing argument out of context fail. Nothing in Coastkeeper's closing arguments comes close to the prejudicial and improper biasing of the jury warranting the drastic remedy of a new trial.

## III. Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Corona Clay's new trial motion.

Dated: March 29, 2024

Respectfully submitted,

*Christopher A. Sproul*

Christopher Sproul, Attorney for Plaintiffs