**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-00333-DOC-DFM Date: September 16, 2024

Title: INLAND EMPIRE WATERKEEPER ET AL V. CORONA CLAY COMPANY

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |
| ATTORNEYS PRESENT FOR PLAINTIFF: None Present | ATTORNEYS PRESENT FOR DEFENDANT: None Present |

**PROCEEDINGS (IN CHAMBERS): ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL [423, 446]**

Before the Court is Defendant Corona Clay's Motion for a New Trial ("Motion") (Dkt. 175). The Court finds this matter suitable for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. Having reviewed the moving papers submitted by the parties, the Court now DENIES Defendant's Motion.

## I. Background

### A. Facts

The Court has previously summarized the facts in this case on multiple occasions, see, e.g., Order Denying Plaintiffs' Second Motion for Summary Judgment ("MSJ Order") (Dkt. 245), so includes only a brief review here. Plaintiff Orange County Coastkeeper, and its subsidiary project Plaintiff Inland Empire Waterkeeper (collectively "Plaintiffs"), are environmental nonprofit organizations. First Amended Complaint ("FAC") (Dkt. 12) ¶¶ 1-2. Plaintiffs have more than 6,000 members who live or recreate in and around the Santa Ana River watershed. *Id.* ¶ 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL



Defendant Corona Clay Company ("Defendant") owns a clay recycling plant (the "Facility") at 10600 Dawson Canyon Road in Temescal Valley, California. Plaintiffs' Statement of Undisputed Facts (Dkt. 224-13) at 2. The activities at the Facility, such as crushing clay tile and brick for use in a variety of products, are classified as industrial activities. *Id.* Defendant obtained coverage from the state Water Resources Control Board for the Santa Ana Region to discharge storm water under the General Permit beginning in 2014. *Id.* Defendant's Facility sits uphill from a road labeled either Temescal Canyon Road or Park Canyon Drive, and Temescal Creek—a tributary of the Santa Ana River and a water of the United States—is visible from Defendant's Facility. *Id.* at 3-5.

**B. Procedural History**

On February 27, 2018, Plaintiffs filed a Complaint with the Court (Dkt. 2). Plaintiffs filed their First Amended Complaint on April 20, 2018. Defendants answered on May 4, 2018 (Dkt. 13). The Court granted in part Plaintiff's original Motion for Partial Summary Judgment on June 10, 2019 (Dkt. 55). A jury trial found in favor of Defendant on October 24, 2019 (Dkt. 137).

The Ninth Circuit vacated that judgment and remanded on November 5, 2021, for proceedings consistent with an intervening Supreme Court ruling, *Cnty. of Maui v. Hawaii Wildlife Fund*, 140 S. Ct. 1462 (2020). *See Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825 (9th Cir. 2021). The Court denied Plaintiffs' second Motion for Summary Judgment on August 4, 2022. *See* MSJ Order. The second jury trial found in favor of Plaintiffs on November 21, 2022. Following the trial, two remedies hearings, one on June 12, 2023, and one on August 28, 2023, were held to explore environmentally beneficial remedies. (Dkt. 334); (Dkt. 351). On August 25, 2023, Defendant filed a Motion to Dismiss for Lack of Jurisdiction, which the Court denied on October 26, 2023. (Dkt. 349); (Dkt. 364).

The Court entered judgment in Plaintiff's favor on January 2, 2024. (Dkt. 412).

Defendant filed the present Motion on January 29, 2024. Plaintiff opposed on March 29, 2024 ("Opp'n") (Dkt. 434). Defendant replied on April 19, 2024 ("Reply") (Dkt. 439).

## II. Legal Standard

### A. Rule 59(a): New Trial

Rule 59(a) permits a court to grant a new trial after a jury trial "on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Granting a new trial is left to the sound discretion of the trial court. *See Browning-Ferris Indus. v. Kelco Disposal*, 492 U.S. 257, 278 (1989).

Historically recognized bases for a new trial include, but are not limited to: (1) a verdict against the clear weight of the evidence, *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987); (2) evidence, discovered after trial, that would not have been uncovered earlier through the exercise of due diligence, and that is of such magnitude that its production at trial would likely have changed the outcome of the case, *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992-93 (9th Cir. 2001) (citing *Defs. of Wildlife v. Bernal*, 204 F.3d 920, 929 (9th Cir. 2000)); (3) jury misconduct; and (4) error in law that has affected the substantial rights of a party, such as erroneous jury instructions, *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990), or erroneous evidentiary rulings, *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005); *see also* Fed. R. Civ. P. 61; Charles A. Wright & Arthur R. Miller, 11 Fed. Prac. & Proc. Civ. § 2805 (3d ed.).

When evaluating whether a verdict is against the clear weight of the evidence, the district court may "weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes*, 833 F.2d at 1371. At the same time, it is generally expected that a judge will grant motions for a new trial only when the judge has given full respect to the jury's findings but is left with the firm conviction that a mistake has been committed. *Id.* at 1371-72.

### B. Rule 59(e): Alteration or Amendment of Judgment

Under Federal Rule of Civil Procedure 59(e), a party may file a "motion to alter or amend a judgment." Fed. R. Civ. P. 59(e). While the district court enjoys "considerable discretion" to grant or deny a motion under Rule 59(e), *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999), amending a judgment is an "extraordinary remedy,"

*Rishor v. Ferguson*, 822 F.3d 482, 492 (9th Cir. 2016). There are four grounds upon which a motion to amend a judgment may generally be granted:

> (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law.

*Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citing *McDowell*, 197 F.3d at 1255 n.1). Put differently, a motion pursuant to Rule 59(e) "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed *clear error*, or if there is an intervening change in the controlling law. *McDowell*, 197 F.3d at 1255 (quoting *Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).

Under Local Rule 7-18, a motion for reconsideration may be made *only* on the following grounds:

> (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.

L.R. 7-18. Furthermore, the Local Rules expressly mandate that "[n]o motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion." *Id.*

## III. Discussion

Defendant advances two reasons for why a new trial is warranted or why the jury's verdict should be remitted. Mot. at 1. First, that the United States Supreme Court's decision in *Sackett v. EPA*, 598 US 651 (2023), effected a significant and intervening

change in the law that warrants a new trial. *Id.* Second, that Plaintiffs' counsel made improper arguments in closing argument at trial in this action. *Id.*

Plaintiffs oppose, arguing: 1) FRCP 59(a) does not authorize a new trial based on a change in law; 2) while FRCP 59(e) empowers courts to alter or modify judgments, Corona Clay cannot invoke FRCP 59(e) as the basis for the relief it seeks; 3) it was the Court's Second MSJ Order, not the Court's Final Judgment that established that Temescal Creek is a Water of the United States (WOTUS), and so whether Temescal Creek was a WOTUS was not an issue at trial; 4) a 59(e) motion as to the Court's Second MSJ Order would be untimely; 5) *Sackett* does not present a change in controlling law for the purposes of this case because Plaintiffs argued exclusively in their summary judgment briefing that Temescal Creek is a WOTUS under the pre-existing rule and Corona Clay expressly conceded this argument; 6) Corona Clay is barred from seeking to now establish that Temescal Creek is not a WOTUS because it conceded this point at summary judgment; 7) Corona Clay's argument that Temescal Creek is potentially not a WOTUS is built upon now inadmissible evidence; 8) the Court's prior summary judgment finding and jury instruction that Temescal Creek is a WOTUS were and remain correct; and 9) Plaintiff's remarks during closing argument do not warrant a new trial. *See generally* Opp'n.

The Court addresses below whether Defendant can seek a new trial under Rule 59(a) on the issue of whether Temescal Creek is a WOTUS, whether *Sackett* effected a change in prevailing law for the purposes of this case, and whether Plaintiffs' counsel's remarks during closing warrant a new trial.

### B. Whether Defendant can seek a new trial under Rule 59(a) on the issue of whether Temescal Creek is a WOTUS after the Supreme Court's decision in *Sackett*

Defendant seeks a new trial under FRCP 59(a) on the grounds that there was a significant change in intervening law. *See generally* Mot. Plaintiff asserts in response that Defendant cannot seek a new trial under FRCP 59(a) because that rule does not authorize a new trial based on an intervening change in law. Opp'n at 4.

Plaintiff's argument on this point is incorrect. Under Ninth Circuit law, a new trial may be granted based on an intervening change in law. In *White v. Ford Motor Co.*, 500 F.3d 963, 972 (9th Cir. 2007), the Ninth Circuit stated, "we are compelled to reverse here

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL



and remand for a new trial in light of the intervening precedent of Williams." 500 F.3d at 972.

Rule 59(a), however, does not authorize a new trial on a subject that was not at issue in the prior trial. "A . . . new trial will not be granted to try a new issue that was not litigated at the first trial." *Merrill v. County of Madera*, 389 Fed. App'x. 613, 615 (9th Cir. 2010) (quoting 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedures § 2814) (citations omitted).

Here, whether Temescal Creek is a WOTUS was not a subject tried at the November 2022 trial. Instead, the jury was instructed by the Court that the creek is a WOTUS. This necessarily precludes Defendant from securing a new trial to adjudicate this issue given that "a Rule 59(a) motion for new trial is not available on claims or causes of actions for which Plaintiffs never received a trial." *Id.*; *Kwon v. Safeco Ins. Co. of Am.*, No. 22-02040, 2023 U.S. Dist. LEXIS 234205, at *1-2 (C.D. Cal. Dec. 22, 2023). Defendant presents no argument in response to this point.

As the issue of whether Temescal Creek is a WOTUS was never presented to the jury at the November 2022 trial, Defendant cannot seek a new trial under Rule 59(a) on that issue, despite any intervening change in law.

In determining how to construe a post-judgment motion, however, the Court may construe Defendant's motion as one filed under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment.

Defendant argues that if Rule 59(e) is the only avenue to have this Court address the intervening change in controlling law announced by *Sackett*, then granting a new trial is still the appropriate relief under this rule. Plaintiffs argue, however, that while *Sackett* was a change in law, it did not present a change in controlling law for the purposes of this case. The Court therefore next addresses this argument.

### C. Whether *Sackett* presented a change in controlling law for the purpose of this case

The controlling law before *Sackett* regarding what constituted a WOTUS was established in 2006 in *Rapanos v. United States*, 547 U.S. 715 (2006). Before *Rapanos* was decided, federal agencies had "interpreted their jurisdiction over 'the waters of the United States' to cover 270-to-300 million acres" of wetlands and "virtually any parcel of

land containing a channel or conduit . . . through which rainwater or drainage may occasionally or intermittently flow." *Rapanos*, 547 U.S. at 722 (plurality). *Rapanos* was the Supreme Court's attempt to arrive at a definition of WOTUS. In the case, the lower court had held that the CWA "covered wetlands near ditches and drains that eventually emptied into navigable waters at least 11 miles away." *Id.* at 720.

Although the Court vacated the decision of the court of appeal, no position commanded a majority of the Court. Justice Scalia, joined by Justices Roberts, Thomas, and Alito, interpreted "waters of the United States" to include "relatively permanent, standing or continuously flowing bodies of water" that connect to traditional navigable waters. *Id.* at 732. The "relatively permanent" standard could also apply to "streams, rivers, or lakes that might dry up in extraordinary circumstances such as drought" and "seasonal rivers, which contain continuous flow during some months of the year." *Id.* n. 5. Central to this inquiry is whether the water has continuous surface connection to bodies that are waters of the United States. *Id.* at 742. Four Justices would have deferred to the Government's determination that the wetlands at issue were covered under the CWA. *Id.* at 788. Finally, Justice Kennedy concluded that jurisdiction under the CWA requires a "significant nexus" between wetlands and navigable waters and that such a nexus exists where "the wetlands, either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity" of those waters. *Id.* at 779-780.

The Supreme Court Justices unanimously agreed in *Rapanos* that any stream that at least met the *Rapanos* plurality test was a WOTUS. 547 U.S. at 810 (J. Stevens, dissenting) (noting "all four Justices who have joined this opinion would uphold the Corps' jurisdiction . . . in all other cases in which either the plurality's or Justice Kennedy's [significant nexus] test is satisfied").

After repeating the same concerns expressed by the *Rapanos* plurality, *see* 598 U.S. at 667-668, the Supreme Court confirmed the analysis of the *Rapanos* plurality in *Sackett*: "[W]e conclude that the *Rapanos* plurality was correct: the [Clean Water Act's] use of 'waters' encompasses 'only those relatively permanent, standing or continuously flowing bodies of water 'forming geographic[al] features' that are described in ordinary parlance as 'streams, oceans, rivers, and lakes.'" 598 U.S. at 671 (quoting *Rapanos*, 547 U.S. at 739) (quoting Webster's New International Dictionary 2882 (2d Ed. 1954)). In other words, *Sackett* confirmed that the Supreme Court's *Rapanos* plurality opinion is the controlling test for what constitutes a WOTUS—that for streams to be WOTUS, they

must be "relatively permanent, standing or flowing bodies of water" that are either navigable in fact or are connected to traditional navigable waters ("TNWs"). *Compare Sackett*, 598 U.S. at 598, 603 with *Rapanos*, 547 U.S. at 739, 742.

A review of the record in this case demonstrates that throughout this case, Plaintiffs argued that Temescal Creek was a WOTUS under the plurality rule established in *Rapanos*, which is consistent with the majority rule set forth in *Sackett*. In Plaintiff's May 16, 2019 Motion for Partial Summary Judgment (Dkt. 23), they argued that "as a natural surface waterbody that flows to the Santa Ana River and eventually empties into the Pacific Ocean, Temescal Creek is a 'water of the United States' protected by the Clean Water Act." Dkt. 23 at 11. Coastkeeper supported its WOTUS argument with evidence that Temescal Creek flows into the Santa Ana River, which is navigable in fact, and the Santa Ana River in turn flows into the Pacific Ocean. Dkt. 23-1 ¶¶ 2, 15. In response, Defendant did not dispute these facts, or dispute that that Temescal Creek is a WOTUS. Dkt. 37-1 ¶¶ 2, 15.

Defendant argues that because Plaintiff at times referred to tributaries that flow at least intermittently as WOTUS, Plaintiff did not argue that Temescal Creek was a relatively permanent body of water under the *Rapanos* plurality test. For example, in Plaintiff's July 1, 2022 Second Motion for Summary Judgment (Dkt. 224), Plaintiff stated that under *Rapanos*, any tributary stream to TNW or tributary streams to such tributaries "that flows at least intermittently is defined as a water of the United States." *Id.* at 16. Defendants' argument is misleading. In that same motion, Plaintiff expressly argued 1) that the evidence established that Temescal Creek is "relatively permanent" and 2) is a tributary that flows into the Santa Ana River which in turn flows into the Pacific Ocean—the two elements of the *Rapanos* plurality's test. Dkt. 224 at 16-17.

With respect to the "relatively permanent" prong of the *Rapanos* plurality test, Plaintiff's Second Motion for Summary Judgment presented evidence that Temescal Creek "is a permanent, long-standing water feature spanning Temescal Valley from Lake Elsinore to the Santa Ana River." Dkt. 224 at 16; Dkt. 224-13 ¶ 22. Plaintiff argued that: (1) Temescal Creek remains a geographic constant, easily discernable in aerial photos, (2) even in dry months streamflow gages record flow in the stream both upstream and downstream from Corona Clay, (3) during a June 2022 site visit, Plaintiff's expert

observed water in the creek both upstream and downstream of Corona Clay, despite a lack of recent rainfall. Dkt. 224 at 17.

With respect to the tributary to the TNW connection prong of the *Rapanos* plurality test, Plaintiff's Second Motion for Summary Judgment pointed out that Defendant admitted that Temescal Creek is a tributary to the Santa Ana River in response to Coastkeeper's Request for Admission. Dkt. 224 at 16. This motion also asserted that Temescal Creek "is the largest tributary to the Santa Ana River, with a direct surface connection to that waterbody." *Id.* at 16-17.

Coastkeeper argued that this evidence sufficed to establish that Temescal Creek is a WOTUS under the *Rapanos* plurality test. Dkt. 224 at 17. Coastkeeper concluded that Temescal Creek met this test and was therefore a WOTUS. *Id.*; Dkt. 224-13 ¶ 25.

In responding to Coastkeeper's Second MSJ, Corona Clay expressly conceded that it did not dispute that Temescal Creek is a WOTUS. Dkt. 230-1 ¶ 25. Given no dispute in the summary judgment briefing, the Court's August 4, 2022, Second MSJ Order found that Temescal Creek is a WOTUS. Dkt. 224 at 3 ("Temescal Creek—a tributary of the Santa Ana River and a water of the United States") (citing Dkt. 224-13 at 3-5)).

Defendant argues that because Plaintiff also stated in its briefing that Temescal Creek has a "substantial nexus" to the Santa Ana River, Plaintiff must have argued that Temescal Creek was a WOTUS under the substantial nexus test, now overturned by the Supreme Court's ruling in *Sackett*. Reply at 9. Defendant further argues it had no reason to address references to "relative permanence" in previous briefing because the Ninth Circuit had clearly adopted the "significant nexus" test. *Id.* at 10. These arguments are unavailing. It was clear from Plaintiff's briefing that they argued that Temescal Creek met the more stringent test established by the *Rapanos* plurality, above and beyond the less demanding significant nexus test. Defendant had a full opportunity throughout multiple rounds of summary judgment briefing to contest whether Temescal Creek met the *Rapanos* plurality test, and yet it did not do so.

In sum, Plaintiff at all stages of this case has argued that Temescal Creek is a WOTUS because it meets the *Rapanos* plurality test, now the *Sackett* majority rule, of being a relatively permanent stream that is a tributary to two TNWs: the Santa Ana River and the Pacific Ocean. *See, e.g.*, Dkt. 224 at 16-17. Defendant did not contest this

argument. Thus, while *Sackett* changed the prevailing law regarding what constitutes a WOTUS in general, it did not change the law for the purposes of this case.

Accordingly, Defendant is not entitled to a new trial due to a change in intervening law under Rule 59(a) or Rule 59(e).

**D. Whether Plaintiff's counsel's comments during closing warrant a new trial**

Defendant next argues that comments made by Plaintiff's counsel during closing arguments are grounds for a new trial. Specifically, although groundwater was not an issue in the case, Plaintiff's closing argument referred to groundwater.

In full, Plaintiff's counsel's comments were:

> "You've been instructed that there are a variety of factors, and those factors take into account a broad variety of circumstances. Some cases, you have water going into groundwater tables and not emerging for months or years, if ever. In some cases, it's difficult to tell whether the pollutants in a water body are actually coming from a responsible point source. Some cases are difficult. Water goes into the groundwater. The water cycle is all connected. Sometimes it's very difficult to tell. And so these factors have laid out -- have been laid out for you to address the wide variety of factors that might be important in certain cases. Courts have found that, you know, 50 miles and many years is -- that's too far. By the same token, they have found that discharges that go into groundwater stay there for 84 to 400 days before traveling a mile through groundwater is, by law, the functional equivalent of a direct discharge."
>
> (Trial Tr. Nov. 18, 2022 at 52:18-53:12).

Following these comments, Defendant objected, which the Court sustained. The Court then struck that portion of Plaintiff's closing argument.

Defendant argues that Plaintiffs' counsel's statements were prejudicial because they left the jury with a final impression that serious information had been kept from it at trial. They further argue the comments regarding groundwater were improper because

they presented unadmitted evidence that was outside this Court's jurisdiction as Plaintiffs never made any claim regarding groundwater. Mot. at 17-19.

The remedy of ordering a new trial to correct potentially prejudicial statements made at trial is available only in "extraordinary cases." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1193 (9th Cir. 2002) (quoting *Bird v. Glacier Electric Coop. Inc.*, 255 F.3d 1136, 1148 (9th Cir. 2001)). In evaluating the likelihood of prejudice from the comments, courts consider "the totality of circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and the verdict itself." *Puerto Rico Aqueduct & Sewer Auth. v. Constructora Lluch, Inc.*, 169 F.3d 68, 82 (1st Cir. 1999); *see also Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1107 (9th Cir. 1991) (declining to find reversible error where "the alleged misconduct occurred only in the argument phase of the trial ... the remarks were isolated rather than persistent, ... most of counsel's comments were not objected to at trial and appellants did not move for a mistrial at the end of the argument").

In the context of the closing argument and the trial as a whole, one remark by Plaintiff's counsel is insufficient to create the "flavor of misconduct" that might "sufficiently permeate an entire proceeding" such that a new trial would be justified. *Standard Oil Co. of Calif. V. Perkins*, 347 F.2d 379, 388 (9th Cir. 1965); *Kehr v. Smith Barney, Harris Upham & Co., Inc.*, 736 F.2d 1283, 1286 (9th Cir. 1984). Plaintiff's comments do not rise to the level that the Ninth Circuit has found would warrant granting a new trial. *See, e.g.*, *Maricopa Cnty. of State of Ariz. v. Maberry*, 555 F.2d 207, 217 (9th Cir. 1977) (granting new trial for "grossly improper, highly devastating to the defense, carefully planned" question to witness with sole purpose of bringing to jury something it should not have heard); *U.S. v. Rodrigues*, 159 F.3d 439, 451 (9th Cir. 1998), *opinion amended on denial of reh'g*, 170 F.3d 881 (9th Cir. 1999) (reversing criminal conviction for comments amounting to misstatement of law and slander of opposing counsel) Further, as in *Cooper*, the remarks were isolated rather than persistent, the alleged

misconduct occurred only in the argument phase of the trial, and Defendant did not move for a mistrial at the end of the argument.

Accordingly, Plaintiff's comments during closing argument do not justify granting a new trial, and Defendant's motion on that basis is denied.

## IV. Disposition

For the reasons set forth above, the Court DENIES Defendant's Motion for a New Trial (Dkt. 423). Dkt. 446 is DENIED AS MOOT.

The Clerk shall serve this minute order on the parties.