UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION - SANTA ANA


INLAND EMPIRE WATERKEEPER, ) Case No. SACV 18-333-DOC (DFMx)
et al.,                     )
                            ) Santa Ana, California
        Plaintiffs,         ) Wednesday, November 16, 2022
                            ) 5:10 P.M. to 5:32 P.M.
            v.              )
                            )
CORONA CLAY COMPANY,        )
                            )
        Defendant.          )
_____)


TRANSCRIPT OF JURY TRIAL - DAY 6
BEFORE THE HONORABLE DAVID O. CARTER
UNITED STATES DISTRICT JUDGE


Appearances:              See Page 2

Deputy Clerk:             Karlen Dubon

Court Reporter:           Recorded; CourtSmart

Transcription Service:    JAMS Certified Transcription
                          16000 Ventura Boulevard #1010
                          Encino, California  91436
                          (661) 609-4528

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

2

APPEARANCES:


For the Plaintiffs:    Orange County Coastkeeper
                       By:  SARAH SPINUZZI
                       3151 Airway Avenue, Suite F110
                       Costa Mesa, California  92626
                       (714) 850-1965
                       sarah@coastkeeper.org

                       Law Office of Jennifer Novak
                       By:  JENNIFER F. NOVAK
                       500 Silver Spur Road, Suite 206
                       Rancho Palos Verdes, California  90275
                       (310) 693-0775
                       novak@jfnovaklaw.com

For the Defendant:     Law Offices of Brian Neach
                       By:  BRIAN NEACH
                       10171 Peregrine Circle
                       Fountain Valley, California  92708
                       (714) 475-4550
                       brianneachlaw@gmail.com

SANTA ANA, CALIFORNIA, WEDNESDAY, NOVEMBER 16, 2022, 5:10 P.M.

(Jury not present.)

THE COURT:  So we're on CourtSmart, counsel, and all counsel are present -- well, counsel are present for the respective sides.  My apologies.  Lead counsel have been excused.  The jury is not present nor are the alternates.

We're going to hand you copies of the Court's instructions that have been sources of concern and argument concerning definition of "point source"; instructions regarding response to plaintiffs' Request for Admission, "RFA," 68; instructions on the Fifth Cause of Action; and those have been docketed.

I propose not to keep you this evening any further, but I want to know if you've now prepared and if you've submitted your special -- you can read that in just a moment. Those are final for this evening now.

Where are your -- have you emailed them to us?

BRIAN NEACH:  I have, and I've got -- I'm sorry.

THE COURT:  All right.  Now, here's what I'd like to do.  I'm going to send the two of you home, and let me stay and work on these special verdict forms and then bring them up with you tomorrow morning so both of you are fresh. Okay?  You don't want to end up like I do after all these years keeping these hours.  Okay?

So show me your special verdict, and does copy --

does counsel have a copy?

MR. NEACH:  They have a copy.  I put ours right by theirs.

THE COURT:  I can take those up tomorrow morning or tomorrow night without keeping you.  Okay?

MR. NEACH:  One point on the jury instructions, Your Honor.  I noticed a small typo, and I put a little --

THE COURT:  Would you -- yeah, just put a --

MR. NEACH:  -- put a Post-it on the one with the -- I didn't want to write on it.

THE COURT:  Okay.

MR. NEACH:  So it's there.

THE COURT:  Okay.  Now, anything else this evening?

SARAH SPINUZZI:  Yeah, Your Honor.

With respect -- I know you want to take up the verdict form tomorrow, and I'm happy to get out of here, but for the Court's --

THE COURT:  Well, I -- no.  Time out.  I can take them up tonight.  You seem to be getting concerned, and so do the other counsel so -- but I've got a great patent case back there right now, and I don't want to keep you, but I've got 402 cases I'm keeping.  So it's -- I'm happy to entertain you tonight.

MS. SPINUZZI:  I just -- I actually think we have some points of agreement to bring to the Court's attention as

you're looking at verdict --

THE COURT:  No, I don't want you to ever -- I'm joking with you.  I don't want you two to ever agree.  This would be novel.  And I'm joking with you.

MS. SPINUZZI:  We're doing a very good job of basically never agreeing.

THE COURT:  (Laughs.)

MS. SPINUZZI:  So, if the Court will just excuse this momentary lapse of judgment on both of our part.

THE COURT:  Well, tell me what you're thoughts are.

MS. SPINUZZI:  Yeah.  So my thoughts generally is that the defendant has essentially accepted all of our special verdict -- all of our proposed special verdict questions essentially word for word.  Of course, the difference is in how we instruct on the discharge issue.

What I would just like to say for the Court's consideration overnight is that we are, I think, generally fine with the wording of defendant's proposed question No. 1, which addresses the discharge, with the exception of the timing requirement.  So the defendant -- and I'll just read this into the record because I'm not sure the Court's seen it so --

THE COURT:  I haven't seen it.

MS. SPINUZZI:  Yeah.

THE COURT:  That's --

MS. SPINUZZI:  So I'll just read it because it's fairly simple.

THE COURT:  Okay.

MS. SPINUZZI:  It says (reading): Did plaintiffs prove by a preponderance of the evidence that at any time from December 13, 2012, to February 27, 2018, Defendant Corona Clay Company discharged pollutants from a point source into streams or waters that qualify as jurisdictional waters of the United States?

I would --

THE COURT:  Do you -- just a moment.

Deala (phonetic), would you go over to those instructions so we can follow this.

Because after you leave, we're going to do some more work.  So hold on for just a moment.

MS. SPINUZZI:  Sure.

THE COURT:  That way I'm not bringing you out later tonight.  Okay?  So just a moment.

Could you pull those, and I'll look at them when they leave.

Counsel, where are those instructions for this?

MR. NEACH:  The verdict form?

THE COURT:  Yeah.  Verdict forms.

MR. NEACH:  It's right on top of --

THE COURT:  Oh.  Right -- so point to them.

Okay.  Now, would you do that again so Deala can follow that and then we can take that up for a moment because there's one copy.

MS. SPINUZZI:  Yeah.  Absolutely.  You would like me to just read it again; correct?

THE COURT:  Yeah.  Please.

MS. SPINUZZI:  Yeah.  So defendant's proposed question is (reading): Did plaintiffs prove by a preponderance of the evidence that at any time from December 13, 2012, to February 27, 2018, Defendant Corona Clay Company discharged pollutants from a point source into streams or waters that qualify as jurisdictional waters of the United States?

The plaintiff is generally fine with that question except for the time period.  I'm not sure why the discharge would have to be somehow limited or otherwise captured in any period of time as the Ninth Circuit on remand --

THE COURT:  And just a moment.  And read that last portion in terms of the time.  The --

MS. SPINUZZI:  December 13, 2012, to February 27, 2018.

THE COURT:  Yeah.  Now, hold on.

Why the time limitation?

MR. NEACH:  The February 27, 2018, goes to the issue of you can't base jurisdiction -- you know,

jurisdiction is what -- the time of the complaint's filing, that it wouldn't matter if there was a discharge that happened a year later, and I can tell you the case that we cite to that.  North --

THE COURT:  Now, just a moment.

Now I'll go back to your argument.  Now I understand.  So what's your argument concerning the time limitation that the defendant is trying to put on this?

MS. SPINUZZI:  Yeah.  I mean, just very simply, the Ninth Circuit has already ruled on the timing of the discharge issue and stated: Nothing in the statute requires the jurisdictional discharge to be current or likely to occur.  And that, to me, is very clear, that Clean Water Act jurisdiction -- this jurisdictional discharge can happen --

THE COURT:  At any --

MS. SPINUZZI:  -- at any time since the passage of the Clean Water Act and so the -- the --

THE COURT:  And just a moment.  And after 2018 and that date that I don't have memorized --

MS. SPINUZZI:  No.  No.  Not after 2018.

THE COURT:  Well, if there was discharge in violation of the Clean Water Act after that date, your point is it would still be --

MS. SPINUZZI:  Well, I mean, yeah, if the facility is covered under --

THE COURT:  Well --

MS. SPINUZZI:  -- the Clean Water Act, yeah.

THE COURT:  It's very simple.  The answer is yes. I mean --

MS. SPINUZZI:  Yes.

THE COURT:  -- if it occurred in 2019 or 2020, it would still be a violation.

MS. SPINUZZI:  That's correct.

THE COURT:  And the defendant is trying to limit that to 2018.

MS. SPINUZZI:  Well, and limit it to 2012.

So the Clean Water Act is prophylactic.  It's supposed to prevent discharges of pollutants.  Of course, there has to be jurisdiction, and so the plaintiff has proposed "at any time in the last 50 years."  And 50 is not arbitrary.  It's since the passage of the Clean Water Act. We just happen to be on the 50th anniversary this year.  So -- Happy Birthday, Clean Water Act.

But the facility has been around and has been operating since the 1950s, and in order for the Clean Water Act -- for jurisdiction to attach under federal law, there has to be -- have been a jurisdictional discharge either since the facility was around or since the passage of the Clean Water Act, and in this case, the passage of the Clean Water Act came later.  So we think that's very

important.

THE COURT:  Counsel, now your response and the case that you're citing.

MR. NEACH:  Sure.  The case I was citing -- this only relates to the February 27 -- the back-end date.  *Northstar* --

THE COURT:  No.  I want to hear the year, also, for the record.  2018 -- February 27, 2018.

MR. NEACH:  2018.

THE COURT:  Okay.

MR. NEACH:  *Northstar Financial Advisors, Inc. v. Schwab Investments*.  That's 779 F.3d 1036 --

THE COURT:  All right.  Now, re-cite that for just a moment, once again.

MR. NEACH:  Sure.

THE COURT:  So I look at it tonight.

(Pause.)

THE COURT:  Okay?

MR. NEACH:  Oh, you want me --

THE COURT:  Yeah.  I want you to say that again.

MR. NEACH:  Okay.  *Northstar Financial Advisors, Inc. v. Schwab Investments*.  It is 779 F.3d 1036, pages 1044 to 1045.  That's the Ninth Circuit 2015.  That's the point that I'm making on the tail end, the February 27, 2018.

On the 2012, first let me say, I don't think -- I

think the Ninth Circuit left some ambiguity open up about that in what they say in terms of when the actual discharge might have occurred.  They're going back to -- they're going back to 1972 for the Clean Water Act.  The storm water regulations really didn't even apply, I think, until the '80s, maybe the '90s.  Really, I don't know how they build a jurisdictional argument going back that long ago.  I chose the 2012 date based upon the 5-year statute of limitations.  That's in the Clean Water Act.  That's one reason I picked that.  And that is measured from the date of their notice, not the date of their Complaint, because they submitted a 60-day notice in December of 2017.

The other point is a special verdict -- it needs to be supported by evidence.  You can't just put stuff in that special verdict form when there's no evidence to support it.  It's just like a jury instruction.  And they're saying go back to 50.  Here's -- what's the evidence?  What -- there's nothing to support any kind of discharge.  They've got no evidence whatsoever, and I think I'm being generous by giving 2012, frankly, in terms of what's in the record in terms of evidence.  I think, maybe, there's -- I guess they can use the 2016 stuff from Michael Roth to build an inference.  I don't know of anything that goes before 2016.  So that's why I picked 2012.  You know, I guess I could say I'm doing them a favor, but they obviously don't see it that way.

THE COURT:  Counsel, your response?

MS. SPINUZZI:  Yeah.  Again, the Clean Water Act is -- jurisdiction -- federal jurisdiction attaches based on its connectivity to waters of the U.S.  So what we're really talking about here is the breadth and depth of the federal -- of federal jurisdiction.  So that's one point.

The next point is that a facility -- and the Ninth Circuit said that in this case.  A facility might be required to capture all storm water up to a 25-year storm event and under their storm water permit -- and this is the requirement for concentrated animal feeding operations, for example.  Under their permit they might be required to monitor their waste pits, provide reports to the regulatory agency indicating that they're managing those waste pits. They might not discharge within a 25-year period.  Yet a plaintiff would still have standing and ability to enforce the monitoring and reporting provisions of that permit even if that facility was complying with the overall discharge requirements of the permit.

Because the Clean Water Act is prophylactic.  We are trying to prevent these things from happening, right. You don't have to -- in the Clean Water Act, you don't have to wait until environmental damage has occurred.  As long as there is that federal jurisdiction that attaches, a plaintiff or a citizen can enforce any terms of the permit.  And so

limiting, especially to -- we think to any scope of time, but particularly this scope of time, would impair our ability to -- you know, the discharge wouldn't have to occur within any particular period of time for us to still maintain standing to enforce the monitoring and reporting provisions of the permit, for example.  And so this time limitation, I think, very clearly is not allowed by the Ninth Circuit's opinion and doesn't actually make any sense for the reasons I just stated with respect to the purpose and goal of the Clean Water Act.

THE COURT:  Your response?

MR. NEACH:  I don't know anything about livestock rules and things like that; so I'm not quite following that argument.  It sounded to me like grounded in policy.  I think what the Ninth Circuit said -- and this is *Inland Empire Waterkeeper v. Corona Clay Company*, 17 F.4th 825 at page 829. The court said (reading): We hold that if the required jurisdictional discharge into United States waters has occurred, a CWA citizen suit can be premised on ongoing a reasonably expected monitoring or reporting violations.

It doesn't say when that discharge was supposed to happen, when it could have happened.  I think it left things open, but I think it needs, again, to be -- it has to be grounded in evidence.  It has to be grounded in some evidence.  It has to be grounded in whether it's a viable

cause of action, and I think a statute of limitations of 5 years -- and that's 20- -- I think it's 28 U.S.C. 2462.  I might be wrong about that.  No.  I was right.  2462.

So that's where it comes from.  I think that stretching 50 years is -- I don't understand how anybody can do that based upon what we've seen at trial and based on what they've presented in their case.

THE COURT:  Counsel, any response?

MS. SPINUZZI:  Yeah.  I mean, it's the scope of federal jurisdiction.  The federal government doesn't lose jurisdiction simply because somebody is in fact complying with their requirements to retain their pollution.

But with respect to any timing issues, I think that both of the special verdict forms that both plaintiff and defendant have submitted deal with the statute of limitations and deal with any *Gwaltney* mootness issues because for each cause of action, because we need the jury to find a specific number of days of violation, we will address the *Gwaltney* issue and any particular statute of limitations issues because, for example, we both ask: If the defendant -- If the jury finds that the defendant failed to implement best management practices, when did the defendant fail to implement best management practices? and we both have a start and an end date, which I think would deal with any of the defendant's concerns.

But with respect to the discharge issue, very clear: Ninth Circuit says nothing in the statute requires the jurisdictional discharge to be current or likely to occur.

That's all.

THE COURT:  Counsel?

MR. NEACH:  Yeah.  And I think the way I've -- we have phrased it, we're not talking about it being current or likely to occur.  We're saying did it occur at a time where it could create jurisdiction at the time you filed your complaint, or did it occur at some time that's reasonably grounded in the evidence in this case?

I don't have much -- I don't think I have anything else to say.

THE COURT:  Counsel?

MS. SPINUZZI:  Just a separate issue.  Last thing for the Court's consideration tonight --

THE COURT:  Oh, no, no.  We're staying on this issue.  I may have a question.  Anything further --

MS. SPINUZZI:  Oh, I'm sorry.  I'm --

THE COURT:  -- on this issue?

MS. SPINUZZI:  It was just with the verdict form but with the order of the questions.

THE COURT:  No.  I'm staying with this issue now.

I want you to trace through the dates for me that you think a potential violation occurred.

MR. NEACH:  In terms of the evidence in the record?

THE COURT:  Yeah.

MR. NEACH:  As I recall --

THE COURT:  This is not an admission but all -- between the two of you, give me the specific dates that you think the evidence -- from plaintiffs' perspective -- specific dates now --

MS. SPINUZZI:  Yeah.

THE COURT:  -- which support a violation.

MS. SPINUZZI:  I can very easily do that.  We've limited our claims --

THE COURT:  Well, I'm ready now --

MS. SPINUZZI:  Yeah.  July 1st --

THE COURT:  -- because I'm going to take a recess unless you do that.

MS. SPINUZZI:  July 1, 2015.

THE COURT:  Hold on.  July 1, 2016.

MS. SPINUZZI:  '15.

THE COURT:  '15.  I'm sorry.

MS. SPINUZZI:  Yeah.

THE COURT:  Okay.

MS. SPINUZZI:  Up until today.

THE COURT:  Okay.

And without liability, what do you think that the alleged violations --

MR. NEACH:  In terms of --

THE COURT:  Dates.

MR. NEACH:  -- the discharge?

THE COURT:  Yeah.

MR. NEACH:  I mean --

THE COURT:  Yes.

MR. NEACH:  -- the evidence they've presented in terms of discharge, as I recall, Mr. Roth's photos first appear in January of 2016.  That's the first set that they presented as evidence.  January 6, 2016, I believe.

THE COURT:  Okay.

MR. NEACH:  I'm not aware of anything they presented earlier than that date.

THE COURT:  Okay.

MR. NEACH:  And I think they prevented more photos from Mr. Roth in December of 2016.

THE COURT:  Okay.

MR. NEACH:  They --

THE COURT:  Until when?

MR. NEACH:  Until -- I think that's all that's in terms of before the Complaint was filed, and then we see Mr. Hiemstra's materials from March 2020.

THE COURT:  Hold on.  March 2020.  Okay.

MR. NEACH:  And then we see Mr. Hiemstra's videos from December 14, 2021.

THE COURT:  2021.  Okay.

MR. NEACH:  And I guess -- I left out one date.  I -- even though there's really no connection to Corona Clay, I guess they're trying to build an inference that Corona Clay discharged on February 14, 2019.

THE COURT:  Okay.  All right.  Now, you wanted to change subjects?  Are you two satisfied with your arguments on this issue, or do you want to add?  If you want to add, fine.  You've got all the time in the world.

MS. SPINUZZI:  I'm satisfied with my argument.

MR. NEACH:  I have nothing further, Your Honor.

THE COURT:  Okay.  Then you wanted to change to another subject.

MS. SPINUZZI:  Yeah.  With respect to the verdict form, the plaintiff vehemently objects to any special verdict form that allows the jury to answer one question and not answer all of the questions.  I think I've previously made this argument so I'll keep it brief, but there's substantial prejudice to the plaintiff.  We think that, you know, this case is likely going to be appealed again.  If it is, we would like clarity on what the jury has factually found so that we don't find ourselves in a third trial.  Frankly, it's incredibly expensive and resource intensive for my client, and, you know, I think, frankly, it's part of the defendant's tactic, and we would like to have factual findings from the

jury on all of our issues so that we don't find ourselves here again, so that we're not left wondering what the jury did or didn't think.  If we win, we win.  If we lose, well, we lose.

MR. NEACH:  We did talk about this before, and I think what they're proposing would be contrary to *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 1998.  We've briefed it before in the summary judgment opposition, and I think, if you have a jury verdict form and the first question establishes there's no jurisdictional discharge, then we're done.  The Court doesn't have jurisdiction, really, to make the jury do anything.  So that's our position.

THE COURT:  Okay.

Counsel, your response?

MS. SPINUZZI:  I'm good.

THE COURT:  Counsel, your response to not good?

MR. NEACH:  I -- I'm good as well.

THE COURT:  Okay.  Now, anything else you'd like to discuss?

MS. SPINUZZI:  No.

MR. NEACH:  Nothing from me, Your Honor.

THE COURT:  Then why don't you go home and get some rest.  Okay?  We'll see you at 8:00 o'clock tomorrow morning.

MS. SPINUZZI:  Thank you, Your Honor.

MR. NEACH:  Thank you, Your Honor.

THE COURT:  Now, just curiosity.  How is Mr. Pacheco doing?

MR. NEACH:  I don't know.  I've texted him a couple of times, and I've not got responses.  That means he's either at the doctor's or getting rest --

THE COURT:  Yeah.

MR. NEACH:  -- but I'll do my best to make inquiries, and I'll contact the Court and counsel.

THE COURT:  Counsel, you've seen his condition.  He was sweating today, got dizzy in the elevator.  I'm really concerned.  And it's not only concerning his health.  It's also concerning the representation of the client.  So let's just make certain tomorrow that everybody is healthy.  Okay?

MR. NEACH:  I appreciate that, Your Honor.

THE COURT:  And if not, let me know.  Then I'm going to have to deal with that in some way.

MR. NEACH:  Yeah.

THE COURT:  I mean, this is a lawsuit, but for goodness' sakes, let's have some --

MR. NEACH:  Yeah.

THE COURT:  -- human kindness towards everybody in this.  Okay?

MR. NEACH:  Yeah.  I mean, even -- setting this trial aside, it's been a pretty grueling trial schedule for

us because, I mean, after COVID ended, everything just -- you know, all of a sudden we're --

THE COURT:  This has been grueling?

MR. NEACH:  Huh?

THE COURT:  This trial has been grueling?

MR. NEACH:  (Laughs.)

THE COURT:  Oh, you've got to be kidding.

MR. NEACH:  I know you could do a lot worse, Your Honor.

THE COURT:  Good night.  Go get some rest.  All right.

MR. NEACH:  Thank you.

THE COURT:  I'll see you tomorrow.

MS. SPINUZZI:  Thank you, Your Honor.

(Proceedings adjourned at 5:32 p.m.)

///

///

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


/s/ Julie Messa                    November 7, 2024
Julie Messa, CET**D-403            Date
Transcriber