Sarah Spinuzzi (SBN 305658)
sarah@coastkeeper.org
INLAND EMPIRE WATERKEEPER
ORANGE COUNTY COASTKEEPER
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626
Telephone: (714) 850-1965

*Attorney for Plaintiffs Inland Empire Waterkeeper and Orange County Coastkeeper*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

INLAND EMPIRE WATERKEEPER, a project of Orange County Coastkeeper, and ORANGE COUNTY COASTKEEPER, a California non-profit corporation,

Plaintiffs,

v.

CORONA CLAY CO., a California corporation,

Defendant.

Case No.: 8:18-cv-00333 DOC (DFM)

Hon. David O. Carter

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CORONA CLAY'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iv

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 1

III. ARGUMENT ........ 2

A. Corona's Constitutional Challenges to the CWA Citizen Suit Provision Are Barred by the Rule of Mandate, Forfeiture, and Law of the Case. ........ 2

i. *The Rule of Mandate Bars Corona's Constitutional Arguments.* ........ 2

ii. *Corona Has Forfeited Its Constitutional Arguments.* ........ 4

iii. *Many of Corona's Specific Arguments Are Foreclosed by the Law of the Case Doctrine.* ........ 6

B. CWA Citizen Suits Are Brought on Behalf of Private Citizens to Vindicate Personal Harm, Not on Behalf of the Government to Vindicate Public Rights. ........ 7

C. CWA Citizen Suits Do Not Violate Separation of Powers Principles. ........ 12

i. *Laidlaw Forecloses Corona's Separation of Powers Challenge.* ........ 13

ii. *The Executive Branch Does Not Have Exclusive Power to Enforce Federal Law and Recover Civil Penalties* ........ 14

iii. *Citizen Suit Plaintiffs Have Less Authority Than Independent Counsels, Which the Supreme Court Found To Be Constitutional.* ........ 16

iv. *Citizen Suit Plaintiffs Have Less Authority than Qui Tam Plaintiffs, and Courts Have Found Qui Tam Suits To Be Constitutional.* ........ 18

v. *Private Enforcement of Regulatory Laws Has a Basis in History* ..... 19

D. CWA § 1365 Does Not Violate the Private Nondelegation Doctrine. ..... 21

E. CWA § 1365 Does Not Violate the Appointments Clause. ..... 23

IV. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

## CASES

*A.L.A. Schechter Poultry Corp. v. United States*,
295 U.S. 495 (1935) ........ 23

*Alaska Dep't of Fish & Game v. Fed. Subsistence Bd.*,
139 F.4th 773 (9th Cir. 2025) ........ 3, 4, 7

*Alpine Sec. Corp. v. FINFRA*,
121 F.4th 1314 (D.C. 2024) ........ 22

*Armstrong v. Brown*,
768 F.3d 975 (9th Cir. 2014) ........ 5

*Ass'n to Protect Hammersly, Eld, & Totten Inlets v. Taylor Res.*,
299 F.3d 1007 (9th Cir. 2002) ........ 14

*Atl. States Legal Found. v. Buffalo Envelope, Div. of Am. Envelope Co.*,
823 F. Supp. 1065 (W.D.N.Y. 1993) ........ 13

*Atl. States Legal Found. v. Universal Tool & Stamping Co.*,
735 F. Supp. 1404 (N.D. Ind. 1990) ........ 12

*Auffmordt v. Hedden*,
137 U.S. 310 (1890) ........ 24

*Bands of State of Wash. v. United States*,
279 U.S. 655 (1929) ........ 21

*Buckley v. Valeo*,
424 U.S. 1 (1976) ........ 11

*Campaign Legal Ctr. v. Iowa Values*,
573 F. Supp. 3d 243 (D.D.C. 2021) ........ 13

*Carter v. Carter Coal Co.*,
298 U.S. 238 (1936) ........ 23

*Chesapeake Bay Found., Inc. v. Bethlehem Steel*,
652 F. Supp. 620 (D. Md. 1987) ........ 12

*Consumer Fin. Prot. Bureau v. Gordon*,
819 F.3d 1179 (9th Cir. 2016) ........ 5

*Davis v. Passman*,
442 U.S. 228 (1979) ........ 9, 14

*De Fontbrune v. Wofsy*,
838 F.3d 992 (9th Cir. 2016) ........ 8

*Del. Valley Toxics Coal. v. Kurz-Hastings Inc.*,
813 F. Supp. 1132 (E.D. Pa. 1993) ........ 13

*Dep't of Transp. v. Ass'n of Am. Railroads*,
575 U.S. 43 (2015) ........ 23

*Ecological Rts. Found. v. Pacific Lumber Co.*,
230 F.3d 1141 (9th Cir. 2000) ........ 10

*Ellingburg v. United States*,
607 U.S. 163 (2026) ........ 8

*Ellis v. Gallatin Steel Co.*,
390 F.3d 461 (6th Cir. 2004) ........ 8

*Env't Tex. Citizen Lobby v. ExxonMobil*,
123 F.4th 309 (5th Cir. 2024) ........ 12

*EPA v. City of Green Forest*,
921 F.2d 1394 (8th Cir. 1990) ........ 17

*FCC v. Consumers' Rsch.*,
606 U.S. 656 (2025) ........ 21, 23

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ........ 9

*Freytag v. Comm'r of Internal Revenue*,
501 U.S. 868 (1991) ........ 5, 6

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ........ 7, 8, 10, 13, 14, 17

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
484 U.S. 49 (1987) ........ 11

*Hall v. City of Los Angeles*,
697 F.3d 1059 (9th Cir. 2012) ........ 2, 3, 6, 8, 10, 18

*Hamer v. Neighborhood Hous. Servs. of Chicago*, 583 U.S. 17 (2017) .......... 4

*Hawai'i Wildlife Fund v. Cnty. of Maui*, 886 F.3d 737 (9th Cir. 2018) *rev'd on other grounds sub nom. Cnty. of Maui, Hawai'i v. Hawai'i Wildlife Fund*, 590 U.S. 165 (2020).......... 15

*Head v. N.M. Bd. of Exam'rs in Optometry*, 374 U.S. 424 (1963) .......... 4

*Heckler v. Chaney*, 470 U.S. 821 (1985) .......... 18

*Huntington v. Attrill*, 146 U.S. 657 (1892) .......... 8

*In re DBC*, 545 F.3d 1373 (Fed. Cir. 2008) .......... 6

*In re Debs,* 158 U.S. 564 (1895) .......... 10

*In re Sanford Fork & Tool Co.*, 160 U.S. 247 (1895) .......... 2, 6

*Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825 (9th Cir. 2021).......... 4, 6, 7, 10

*Inland Empire Waterkeeper v. Corona Clay Co.*, 189 F.4th 804 (9th Cir. 2026).......... 2, 3, 4, 5, 6, 7, 8, 18

*Kabani & Co., Inc. v. U.S. Sec. & Exch. Comm'n*, 733 F. App'x 918 (9th Cir. 2018).......... 5

*Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995) .......... 23, 24

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) .......... 16

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .......... 8, 9, 25

*Madison v. Marbury*,
5 U.S. 137 (1803) .................................................... 16

*Marvin v. Trout*,
199 U.S. 212 (1905) .................................................... 18

*Medina v. Planned Parenthood S. Atl.*,
606 U.S. 357 (2025) .................................................... 14, 15

*Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*,
453 U.S. 1 (1981) .................................................... 8, 14

*Monroe v. FTS USA, LLC*,
17 F.4th 664 (6th Cir. 2021) .................................................... 3

*Morrison v. Olson*,
487 U.S. 654 (1988) .................................................... 16, 17, 19

*Myers v. United States*,
272 U.S. 52 (1926) .................................................... 22

*N.C. Shellfish Growers Ass'n v. Holly Ridge Assocs., L.L.C.*,
200 F. Supp. 2d 551 (E.D.N.C. 2001) .................................................... 12

*NAACP v. X.AI Corp.*,
No. 3:26-cv-74-DMB-JMV (N.D. Miss. 2026).................................................... 12, 21

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
178 F.4th 224 (5th Cir. 2026) .................................................... 22, 23

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
53 F.4th 869 (5th Cir. 2022) .................................................... 23

*NRDC v. Outboard Marine Corp.*,
692 F. Supp. 801 (N.D. Ill. 1988).................................................... 12, 17

*NRDC v. Shell Oil*,
No. 87-5249 (S.D. Ill. Feb. 16, 1989).................................................... 12

*Oklahoma v. United States*,
163 F.4th 294 (6th Cir. 2025) .................................................... 23

*Patterson v. Barden & Robeson Corp.*,
No. 04-CV-0803E(Sc), 2007 WL 542016 (W.D.N.Y. Feb. 16, 2007).................................................... 12

*Riley v. St. Luke's Episcopal Hosp.*,
252 F.3d 749 (5th Cir. 2001) .......... 20

*Sackett v. EPA*,
598 U.S. 651 (2023) .......... 2

*Seila Law LLC v. CFPB.*
591 U.S. 197 (2020) .......... 16

*Sierra Club v. Chevron U.S.A., Inc.*,
834 F.2d 1517 (9th Cir. 1987) .......... 11, 18, 19

*Sierra Club v. Franklin Cnty. Power*,
No. 05-cv-4095-JPG, 2006 WL 8455938 (S.D. Ill. October 17, 2006) .......... 12

*Sierra Club v. Port Townsend Paper*,
No. 2:87-cv-00316 (W.D. Wash. May 2, 1988) .......... 12

*Smith v. Wade*,
461 U.S. 30 (1983) .......... 12

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 8, 10

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......... 9, 20

*Student Pub. Int. Rsch. Grp. of N.J. v. Monsanto Co.*,
600 F. Supp. 1474 (D.N.J. 1985) .......... 12

*Tigner v. Texas*,
310 U.S. 141 (1940) .......... 14

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 9

*Trent v. Valley Elec. Ass'n, Inc.*,
195 F.3d 534 (9th Cir. 1999) .......... 7

*Trump v. Slaughter*,
609 U.S. 422 (2026) .......... 11, 16

*Trump v. United States*,
603 U.S. 593 (2024) .......... 15

*U.S. House of Rep. v. U.S. Dep't of Com.*,
11 F. Supp. 2d 76 (D.D.C. 1998) .......... 9

*United States ex rel. Kelly v. Boeing Co.*,
9 F.3d 743 (9th Cir. 1993) .......... 18, 19, 24

*United States ex rel. Marcus v. Hess*,
317 U.S. 537 (1943) .......... 18, 20

*United States ex rel. Polansky v. Exec. Health Res., Inc.*,
599 U.S. 419 (2023) .......... 21

*United States ex rel. Zafirov v. Fla. Med. Assocs., LLC*,
No. 24-13581, 2026 WL 2581886 (11th Cir. Sept. 1, 2026) .......... 24, 25

*United States v. Am. Elec. Power Service Corp.*,
137 F. Supp. 2d 1060 (S.D. Ohio 2001) .......... 13

*United States v. Doremus*,
888 F.2d 630 (9th Cir. 1989) .......... 5

*United States v. Germaine*,
99 U.S. 508 (1878) .......... 24

*United States v. Lewis*,
862 F.2d 748 (9th Cir. 1988) .......... 3

*United States v. Montero-Camargo,*
208 F.3d 1122 (9th Cir. 2000) .......... 14

*United States v. Rahimi*,
602 U.S. 680 (2024) .......... 11

*United States v. Texas*,
566 F. Supp. 3d 605 (W.D. Tex. 2021) .......... 9

*Vanderlan v. United States*,
135 F.4th 257 (5th Cir. 2025) .......... 18

*Vizcaino v. U.S. Dist. Ct. for W. Dist. Wash.*,
173 F.3d 713 (9th Cir. 1999) .......... 3

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
529 U.S. 765 (2000) .......... 11, 18, 19, 20

*Wainwright v. Sykes*,
433 U.S. 72 (1977) ........ 6

*Waterkeeper All. v. Smithfield Foods*,
No. 4:01-cv-27-H(3), 2001 WL 1715730 (E.D.N.C. Sept. 20, 2001) ........ 12

*Yakus v. United States*,
321 U.S. 414 (1944) ........ 4

**STATUTES**

15 U.S.C. § 15 ........ 12

15 U.S.C. §§ 1640(a)(1)-(2)(a)(i) ........ 12

15 U.S.C. § 1681n(a)(2) ........ 12

31 U.S.C. §§ 3729–33 ........ 18

33 U.S.C. § 1319(d) ........ 17

33 U.S.C. § 1319(g)(6) ........ 17

33 U.S.C. § 1365 ........ 1

33 U.S.C. § 1365(a) ........ 16, 17

33 U.S.C. § 1365(a)(1)(A) ........ 8, 17

33 U.S.C. § 1365(a)(2) ........ 15

33 U.S.C. § 1365(b)(1)(B) ........ 15, 17, 22

33 U.S.C. § 1365(c)(2) ........ 17, 22

33 U.S.C. § 1365(c)(3) ........ 17, 22

33 U.S.C. § 1365(g) ........ 8

42 U.S.C. § 1983 ........ 12

42 U.S.C. § 2000a-3(a) ........ 12

47 U.S.C. § 277(b)(3) ........ 12

**RULES**

Fed. R. Civ. P. 12 .......... 2

Fed. R. Civ. P. 59 .......... 2

**OTHER AUTHORITIES**

11 Wright & Miller's Fed. Prac. & Proc. § 2814 (3d ed. 2025) .......... 4

Barry Boyer & Errol Meidinger, *Privatizing Regulatory Enforcement: A Preliminary Assessment of Citizen Suits Under Federal Environmental Laws*, 34 Buff. L. Rev. 833 (1985) .......... 20

Nitisha Baronia, Jared Lucky & Diego A. Zambrano, *Private Enforcement at the Founding and Article II*, 114 Cal. L. Rev. 131 (2026) .......... 1, 11, 20

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Corona Clay Company ("Corona") seeks to overturn more than 50 years of environmental law and upend citizen enforcement schemes that were enacted by Congress in hundreds of statutes. After two jury trials and two appeals over the course of eight years of litigation, Corona argues for the first time in its post-judgment Rule 12(c) Motion that the citizen suit provision of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, is unconstitutional. This Court need not entertain the Motion because it is barred by the rule of mandate, ordinary principles of forfeiture, and law-of-the case.

Even if this Court were to allow an exception to these principles that are designed to ensure judicial efficiency and resolution, this Court should deny Corona's Motion because it lacks merit. Corona's Motion rests on a fundamental mischaracterization of the nature of citizen suits that contravenes the plain language of the statute and Supreme Court case law. Citizen suits enforce private—not public—rights, and are brought on behalf of a private citizen instead of on behalf of the U.S. government. Because citizen suits do not authorize plaintiffs to exercise executive power, there are no constitutional questions. Indeed, Corona's constitutional arguments have been overwhelmingly rejected by other courts. *See infra*, n.7 & 8. Adopting Corona's arguments would have far reaching consequences. It would call into question private rights of action in 382 subsections of the United States Code and reach not only environmental suits, but actions to enforce civil rights, anti-trust, and consumer protection. *See* Nitisha Baronia, Jared Lucky & Diego A. Zambrano, *Private Enforcement at the Founding and Article II*, 114 Cal. L. Rev. 131, 143 (2026) (Pl. Ex. A). For this reason and as set forth below, this Court should deny Corona's Motion.

## II. BACKGROUND

In 2018, plaintiffs sued defendant Corona Clay Co. for violating stormwater permit requirements at its clay facility located near Temescal Creek, alleging violations of the CWA pursuant to § 1365. *Inland Empire Waterkeeper v. Corona Clay Co.*, 189

F.4th 804, 811 (9th Cir. 2026) ("*Inland Empire II*"). In 2019, a jury trial found in favor of Corona, but the Ninth Circuit Court of Appeals reversed for a new trial because an intervening decision by the Supreme Court held that indirect discharges are covered by the CWA if they are the "functional equivalent" of a direct discharge. *Id*. at 812.

On remand, a second jury trial found in favor of plaintiffs. *Id.* at 812-813. Following the Supreme Court's decision in *Sackett v. EPA*, 598 U.S. 651 (2023), addressing the scope of what constitutes "water of the United States" under the CWA, Corona moved to dismiss for lack of subject-matter jurisdiction or relief under Federal Rule of Civil Procedure 12 or in the alternative for a new trial under Federal Rule of Civil Procedure 59. *See Inland Empire II,* 189 F.4th at 813.

This Court denied Corona's alternative motions, and Corona appealed. *Id.* On August 5, 2026, the Ninth Circuit Court of Appeals reversed the district court's order denying defendant's motion for a new trial and remanded for further proceedings on the question of whether Corona's discharges are to a water of the United States ("WOTUS") subject to regulation under the CWA. *Id.* at 818-19. On remand, this Court ordered a scheduling conference for Nov. 9, 2026. Dkt. 465.

On October 26, 2026, Corona filed its Motion for Judgment on the Pleadings, raising for the first time the argument that § 1365 is unconstitutional. Dkt. 477-1.

## III. ARGUMENT

### A. Corona's Constitutional Challenges to the CWA Citizen Suit Provision Are Barred by the Rule of Mandate, Forfeiture, and Law of the Case.

#### *i. The Rule of Mandate Bars Corona's Constitutional Arguments.*

This Court should deny Corona's Motion because it is barred by the rule of mandate, which limits a district court on remand to the clear scope of the appellate court's mandate. *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012) (any "district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it"). Courts review the appellate court's opinion rendered at the

time of its decree to ascertain what was intended by the mandate and to determine its scope. *Alaska Dep't of Fish & Game v. Fed. Subsistence Bd.*, 139 F.4th 773, 788 (9th Cir. 2025). "Any issue conclusively decided or decided by necessary implication in the first appeal is not remanded to the district court." *Id.* (citations omitted). A district court may "decide anything not foreclosed by the mandate," but it may not take action that contradicts the mandate. *Hall*, 697 F.3d at 1067. The lower court on remand "must implement both the letter and the spirit of the mandate, taking into account the [higher court's] opinion and the circumstances it embraces." *Vizcaino v. U.S. Dist. Ct. for W. Dist. Wash.*, 173 F.3d 713, 719 (9th Cir. 1999). In the Ninth Circuit, the mandate rule is jurisdictional: "if a claim falls outside the scope of [] remand, then the district court is without jurisdiction to hear the claim." *Alaska*, 139 F.4th at 788.

The scope of the Ninth Cicuit's remand in this matter did not open up the litigation to the constitutional legal theories that Corona now seeks to raise for the first time after completion of two jury trials and two appeals. *Alaska*, 139 F.4th at 788 (holding district court exceeded mandate in reaching improper delegation claim that was outside the scope of remand); *United States v. Lewis*, 862 F.2d 748, 750 (9th Cir. 1988) (holding district court could not, on remand, revisit its previous final determinations that were not part of the mandate); *Monroe v. FTS USA, LLC*, 17 F.4th 664, 670 (6th Cir. 2021) (holding limited remand barred parties from raising new claims outside scope of remand instructions). Corona's most recent appeal focused on just two issues: (1) whether Temescal Creek is a water of the United States, and (2) whether the penalties the district court imposed on Corona were excessive. *See Inland Empire II*, 189 F.4th at 813 n.3. The Ninth Circuit affirmed the district court's denial of Corona's post-judgment motion to dismiss but reversed the district court's denial of Corona's Rule 59 motion for relief and remanded "for further proceedings so Corona may litigate whether the Clean Water Act applies to Temescal Creek." *Id.* at 808. The Ninth Circuit stated that "the Supreme Court's decision justifies allowing Corona to litigate this question before being held liable for significant monetary penalties under the Clean

Water Act." *Id.* at 818. The Ninth Circuit also stated that "[o]n remand, the district court may consider whether it is appropriate to limit the scope of further proceedings to whether Temescal Creek is a water of the United States." *Id.* at 819 (noting that a partial new trial may be appropriate under circumstances analogous to the ones identified in 11 Wright & Miller's Fed. Prac. & Proc. § 2814 (3d ed. 2025), where the issue is separate from the other issues in the case and the error did not affect the determination of the other issues). Notably, unlike in *Inland Empire Waterkeeper v. Corona Clay Co.* ("*Inland Empire I*"), this second remand *did not* vacate the jury's verdict from the second trial. *Compare* 17 F.4th 825, 836 (9th Cir. 2021) *with Inland Empire II*, 189 F.4th 818-819. Under the mandate rule (in combination with ordinary principles of forfeiture and the law-of-the-case doctrine, discussed *infra*), this Court should limit the proceedings on this second remand to the question of whether Corona Clay's polluted stormwater discharges to a regulated WOTUS.

Allowing Corona's Motion would impermissibly transform this limited remand into a new round of constitutional litigation and would give Corona an impermissible "second bite at the apple." *Alaska*, 139 F.4th at 789 (allowing previously forfeited claims on remand would also "waste judicial resources and would not further the interests of consistency and finality in our judgments.").

*ii. Corona Has Forfeited Its Constitutional Arguments.*

Corona has forfeited its constitutional challenges to § 1365 by failing to timely raise these challenges during the superseding eight years of litigation, including two full jury trials and two appeals. *Hamer v. Neighborhood Hous. Servs. of Chicago,* 583 U.S. 17, 20 n.1 (2017). Even a constitutional right may be forfeited "by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Yakus v. United States*, 321 U.S. 414, 444 (1944) (citations omitted); *see also Head v. N.M. Bd. of Exam'rs in Optometry*, 374 U.S. 424, 432 n.12 (1963) (constitutional free-speech claims are forfeitable).

Corona's challenges to the constitutionality of § 1365 (based on nondelegation theory, separation of powers, and the Appointments Clause) are structural constitutional challenges that are "nonjurisdictional" and subject to ordinary principles of forfeiture. *See Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 877 (1991) (classifying separation of powers issues "embedded in the Appointments Clause" as "nonjurisdictional"); *United States v. Doremus*, 888 F.2d 630, 633 n.3 (9th Cir. 1989) (refusing to consider separation of powers issue that was raised for the first time on appeal); *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1189 (9th Cir. 2016) (noting "the Supreme Court has described Appointments Clause questions as 'nonjurisdictional,' even though they implicate core separation of powers principles."); *Kabani & Co., Inc. v. U.S. Sec. & Exch. Comm'n*, 733 F. App'x 918, 919 (9th Cir. 2018) ("petitioners forfeited their Appointments Clause claim by failing to raise it in their briefs or before the agency.").

Corona has no excuse for not raising its constitutional challenges to § 1365 earlier in this eight-year litigation that would warrant granting it an exception to forfeiture of these challenges. *See Armstrong v. Brown*, 768 F.3d 975, 981-82 (9th Cir. 2014) (declining to review waived arguments where State had no excuse for failing to raise the arguments below). In its most recent decision in this matter, the Ninth Circuit permitted Corona to litigate the issue of what constitutes a WOTUS in large part because the Court found that Corona had raised the argument at the first opportunity following a change in law, when the district court still retained jurisdiction. *Inland Empire II*, 189 F.4th at 817, 818. By contrast, Corona had two full trials and two appeals to raise the constitutional challenges in this Motion, but did not do so.

Moreover, there has been no change in the law warranting consideration of Corona's forfeited legal arguments.[1] The Ninth Circuits' two remands were triggered

[1] Corona supports its arguments with writings from 17th and 18th century philosophers (*see* Dkt. 477-2; Dkt. 477-3), but offers no explanation for why it failed to raise these arguments sooner.

by substantial intervening changes in law concerning the functional equivalent of a direct discharge and the definition of WOTUS. *See Inland Empire I*, 17 F.4th at 836; *Inland Empire II*, 189 F.4th at 817-818. These changes in the law have no relation to the constitutional arguments Corona belatedly offers. The arguments in Corona's Motion are thus not made in the context of a change in law justifying new arguments and must be denied as forfeited. *Inland Empire II*, 189 F.4th at 817. Indeed, Corona's constitutional arguments were all available to Corona since the start of this litigation in 2018 and throughout two jury trials. Corona's legal theories are not novel, and nothing prevented Corona from raising the arguments in earlier proceedings. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977) (trial court proceedings are the "main event" and not just a "tryout on the road" to appellate review). Multiple litigants have raised such arguments and numerous court decisions over several decades have ruled on (and rejected) them. *See infra* n.7 & 8.

This Court should not allow Corona to use the current remand on a completely distinct legal issue to resurrect these constitutional arguments that Corona could—and should—have raised sooner. *See In re DBC*, 545 F.3d 1373, 1380 (Fed. Cir. 2008) (warning that allowing litigants to raise structural constitutional issues for the first time on appeal would encourage "sandbagging" if an outcome is unfavorable). Forfeiture is "essential to the orderly administration of justice" and is not a "mere technicality." *Freytag*, 501 U.S. at 894-95 (Scalia, J., concurring in part and in the judgment). This Court should therefore enforce forfeiture and reject Corona's belated attempt to inject a new legal theory into a case that has been litigated to near-completion on entirely different grounds.

*iii. Many of Corona's Specific Arguments Are Foreclosed by the Law of the Case Doctrine.*

The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by the same court or a higher court in the same case. *In re Sanford*, 160 U.S. at 259; *Inland Empire II*, 189 F.4th at 815; *Hall*, 697 F.3d at 1067.

The doctrine applies "where 'the issue in question' was 'decided explicitly or by necessary implication in the previous disposition.'" *Inland Empire II*, 189 F.4th at 815 (citation omitted).

Many of the specific arguments in Corona's Motion are foreclosed by the law of the case doctrine because they seek to revisit issues that have already been decided either by this Court, the second jury trial, or the Ninth Circuit in one of the two appeals. This includes, for example: (1) the Ninth Circuit's finding that plaintiffs established Article III standing based on declarations showing a present or imminent harm to individual members, *Inland Empire I*, 17 F.4th at 832-836; (2) the Ninth Circuit's holding that the CWA "elevated" the public's substantive interest in clean water and the environment "by providing a cause of action to affected citizens" and that plaintiffs' members' individual declarations "plainly demonstrate[d] individual concern" in accurate reporting and monitoring, *id.* at 833-34; and (3) the Ninth Circuit's rejection of Corona's argument that "Congress left violations of [reporting and monitoring] requirements to the Administrator alone," *id.* at 835-36. The decisions on these issues were part of a "decision on the merits" and thus cannot be re-examined on remand now. *Inland Empire II*, 189 F.4th at 816 (citing *Trent v. Valley Elec. Ass'n, Inc.*, 195 F.3d 534, 537 (9th Cir. 1999). No exceptions to the law of the case doctrine apply. *Alaska*, 139 F.4th at 789 n.18 (listing exceptions).

### B. CWA Citizen Suits Are Brought on Behalf of Private Citizens to Vindicate Personal Harm, Not on Behalf of the Government to Vindicate Public Rights.

Corona argues that § 1365 violates separation of powers principles by authorizing citizens to seek penalties payable to the U.S. Treasury, which Corona characterizes as an executive power. Dkt. 477-1 at 10-13. This argument fails because it contradicts the plain language of the CWA, ignores Article III's requirement for citizen plaintiffs to demonstrate a private injury to sue in federal court, and runs contrary to the Supreme Court's decision in *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*

("*Laidlaw*") holding that civil penalties redress a citizen plaintiff's private injury through deterrence. 528 U.S. 167, 174, 185-88 (2000).

The plain language of the CWA limits "any citizen" to bringing "a civil action *on his own behalf* . . . against any person . . . who is alleged to be in violation of [] an effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a)(1)(A) (emphasis added).[2] Citizen plaintiffs sue on their own behalf, not in the name of the United States. The Ninth Circuit confirmed that § 1365 "creates a *private right of action* to enforce the [CWA]." *Inland Empire II*, 189 F.4th at 814 (emphasis added).[3] The CWA further limits citizen plaintiffs to seeking redress for private injuries. 33 U.S.C. § 1365(g) (authorizing suit by any "citizen," defined as "a person or persons having an interest which is or may be adversely affected.").[4] The Supreme Court stated "it is clear that the citizen-suit provisions apply only to persons who can claim some sort of injury[.]" *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 16 (1981).

The statutory requirement for a personal injury reflects the Article III constitutional requirement for citizen plaintiffs to demonstrate an injury in fact that is concrete and particularized. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *Laidlaw*, 528 U.S. at 180-81; *Middlesex*, 453 U.S. at 16-17 ("It is clear . . . that this phrase [in 33 U.S.C. § 1365(g)] was intended by Congress to allow suits by all persons possessing standing"); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016) (emphasizing the injury in fact must be "both 'concrete *and* particularized'") (emphasis in original). Article III's "injury in fact requirement prevents the federal courts from becoming a

---

[2] Corona's reliance on out-of-circuit dicta that conflicts with the plain language of the CWA is not persuasive. Dkt. 477-1 at 12, (citing *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 477 (6th Cir. 2004)).

[3] The law-of-the case bars Corona's argument on this issue. *Hall*, 697 F.3d at 1067.

[4] To the extent Corona relies on *Huntington v. Attrill*, 146 U.S. 657, 668 (1892), *Ellingburg v. United States*, 607 U.S. 163, 179-80 (2026), and *De Fontbrune v. Wofsy*, 838 F.3d 992, 1001 (9th Cir. 2016), to distinguish suits seeking redress for private wrongs from those seeking to redress public wrongs, these cases combined with the CWA's plain language bolster that CWA citizen suits address private wrongs.

'vehicle for the vindication of the value interests of concerned bystanders." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) (citation omitted) (holding medical associations with no "personal stake" in the dispute lacked Article III standing).

The statutory and constitutional requirements for personal injury illustrate that citizen plaintiffs sue to vindicate private rights. The Supreme Court determines a right of action is personal (private), or public, based on the type of injury sustained. *Compare Davis v. Passman*, 442 U.S. 228, 235 n.10 (1979) (right is personal where plaintiff "suffer[s] the effects" of the federal law violation) *with Lujan*, 504 U.S. at 575 (right is public when the injury is a "generalized grievance" such that "the impact on [plaintiff] is plainly undifferentiated and common to all members of the public."). Where a party "is pursuing legal process on its own behalf to prevent a legally cognizable injury to itself," it "is not endeavoring to 'take care that the laws be faithfully executed' or vindicate a general public interest in the proper administration of law." *U.S. House of Rep. v. U.S. Dep't of Com.,* 11 F. Supp. 2d 76, 96 (D.D.C. 1998); *see also Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 129 (1998) (Stevens, J., concurring) (explaining that it "is hard to see . . . how [an environmental statute's] citizen-suit provision impinges on the power of the Executive" where the private litigant has standing to sue and its suit is not based upon "undifferentiated public interest") (internal quotation marks omitted). "A regime where Congress could freely authorize *unharmed* plaintiffs to sue defendants who violate federal law not only would violate Article III but also would infringe on the Executive Branch's Article II authority." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021) (emphasis in original). The statutory and constitutional requirements for harm ensure that every citizen plaintiff demonstrates a concrete and particularized harm caused by a defendant's alleged CWA violation, and prevent suits merely seeking to ensure CWA compliance.[5] Thus, CWA citizen suits are private rights of action.

---

[5] By contrast, the government can sue to "prevent[] harm[] to 'the general welfare' and the 'public at large.'" *United States v. Texas*, 566 F. Supp. 3d 605, 641 (W.D.

Corona cherry picks allegations describing harm to waters of the United States from plaintiffs' pleadings in an effort to recharacterize the private harms at issue as public wrongs. Dkt. 477-1 at 12-13. These efforts are misplaced. The Supreme Court and Ninth Circuit binding case law make clear that "[t]he relevant showing for purposes of Article III standing . . . is not injury to the environment but injury to the plaintiff." *Laidlaw*, 528 U.S. at 181; *see also Ecological Rts. Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1151 (9th Cir. 2000). Corona omits plaintiffs' allegations of private harm to individual members, which the Ninth Circuit already determined are sufficient to demonstrate Article III standing. *See Inland Empire I*, 17 F.4th at 832-35.[6] This citizen suit alleges a private right of action to vindicate personal harm.

Corona asserts that because § 1365 allows for civil penalties payable to the U.S. Treasury, this means citizen suits seek to vindicate public rights. The Supreme Court foreclosed this argument in *Laidlaw*, holding that civil penalties redress personal injuries of a citizen plaintiff by deterring future violations. 528 U.S. at 185-88 ("To the extent that they encourage defendants to discontinue current violations and deter them from committing future ones, [civil penalties] afford redress to citizen plaintiffs who are injured or threatened with injury as a consequence of ongoing unlawful conduct."); *id.* at 202 (Scalia, J., dissenting) (describing the majority as holding "a penalty payable to the public 'remedies' a threatened private harm, and suffices to sustain a private suit."). Civil penalties are a potential remedy to a citizen plaintiff only if the plaintiff demonstrates Article III standing for the specific form of relief—by showing a particularized injury caused by defendant's action. *Id.* at 185 ("plaintiff must demonstrate standing separately for each form of relief sought."). In turn, there is no separation-of-powers concern that a plaintiff without such injuries could seek penalties merely to compel the violator to obey the law. *Spokeo, Inc.*, 578 U.S. at 347 (Thomas,

---

Tex. 2021). The United States' duty "to promote the interest of all and to prevent the wrongdoing of one, resulting in injury to the general welfare, is often of itself sufficient to give it a standing in court." *In re Debs,* 158 U.S. 564, 584 (1895).

[6] Corona is bound by the law of the case on this issue. *Hall*, 697 F.3d at 1067.

J., concurring) ("The separation-of-powers concerns underlying our public-rights decisions are not implicated when private individuals sue to redress violations of their own private rights."). Even if this Court finds that penalties payable to the U.S. Treasury are an unconstitutional vesting of executive power in private citizens, Corona's facial constitutional attack still fails because Corona cannot show § 1365 is unconstitutional in all its applications. *United States v. Rahimi*, 602 U.S. 680, 693 (2024). Corona makes no effort to show the injunctive and declaratory relief authorized under § 1365 that is specific to redress plaintiffs' private injuries is an unconstitutional vesting of executive power; it is not.

The fact that a citizen plaintiff is constrained to filing suit to remedy his own injury indicates he is not suing on behalf of the government. *See, cf.*, *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774 (2000) ("the United States' injury in fact suffices to confer standing on" *qui tam* relators). The cases cited by Corona that address civil suits on behalf of the United States are thus inapposite. *Buckley v. Valeo*, 424 U.S. 1, 140 (1976) (per curiam) (Federal Election Campaign Act provisions vesting in the Federal Election Commission "primary responsibility for conducting civil litigation . . . for vindicating *public rights*," violate Article II) (emphasis added); *Trump v. Slaughter*, 609 U.S. 422, 455 (2026) (Federal Trade Commission (FTC) exercises executive power based on its authority to seek penalties in "civil suits *on behalf of the United States*") (emphasis added). Congress designed § 1365 citizen suits to "supplement rather than to supplant governmental action." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987); *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1522 (9th Cir. 1987) (same).

CWA citizen suits are no different from any other lawsuit brought to protect private rights that are harmed by violations of federal statutes. There are 382 subsections of the U.S. Code associated with a private right of action, including actions to enforce securities, consumer protection, civil rights, and antitrust laws. *See* Baronia et al., *supra*, at 143. Plaintiffs in those 382 private right of actions, including § 1365 suits like this

one, can seek remedies that redress their harm such as injunctive relief, civil penalties and punitive damages. *See, e.g.*, 15 U.S.C. § 15 (Clayton Act; treble damages for antitrust violations); 42 U.S.C. § 2000a-3(a) (Title VII; punitive damages); *Smith v. Wade*, 461 U.S. 30, 51 (1983) (42 U.S.C. § 1983; punitive damages); 15 U.S.C. § 1681n(a)(2) (Fair Credit Reporting Act; punitive damages); 15 U.S.C. §§ 1640(a)(1)-(2)(a)(i) (Truth in Lending Act; actual damages plus a civil penalty not more than $4000 per violation); 47 U.S.C. § 277(b)(3) (Telephone Consumer Protection Act; minimum $500 civil penalty). If this Court accepted Corona's argument, all of those private rights would be called into question.

Instead, this Court should follow the other district courts that have considered the issue, all of which have agreed that citizen suits brought by private plaintiffs on their own behalf seeking penalties to redress harm to themselves are not exercising the federal government's executive power. *See infra*, n.7 & 8.

**C. CWA Citizen Suits Do Not Violate Separation of Powers Principles.**

Corona's arguments that CWA citizen suits violate separation of powers precepts reflected in the Constitution's Vesting and Take Care Clauses (Dkt. 477-1 at 19-22) have been overwhelmingly rejected by the courts. Every court which has considered the issue has agreed that citizen suits under the CWA[7] and similar federal statutes[8] are

---

[7] *See, e.g., N.C. Shellfish Growers Ass'n v. Holly Ridge Assocs., L.L.C.*, 200 F. Supp. 2d 551, 556 (E.D.N.C. 2001); *Waterkeeper All. v. Smithfield Foods*, No. 4:01-cv-27-H(3), 2001 WL 1715730, at *5 (E.D.N.C. Sept. 20, 2001); *Atl. States Legal Found. v. Universal Tool & Stamping Co.*, 735 F. Supp. 1404, 1419–20 (N.D. Ind. 1990); *NRDC v. Shell Oil*, No. 87-5249 (S.D. Ill. Feb. 16, 1989), Pl. Ex. B; *Sierra Club v. Port Townsend Paper*, No. 2:87-cv-00316 (W.D. Wash. May 2, 1988), Pl. Ex. C; *NRDC v. Outboard Marine Corp.*, 692 F. Supp. 801, 815–17 (N.D. Ill. 1988); *Student Pub. Int. Rsch. Grp. of N.J. v. Monsanto Co.*, 600 F. Supp. 1474, 1478–79 (D.N.J. 1985); *Chesapeake Bay Found., Inc. v. Bethlehem Steel*, 652 F. Supp. 620, 623–26 (D. Md. 1987); *Patterson v. Barden & Robeson Corp.*, No. 04-CV-0803E(Sc), 2007 WL 542016 (W.D.N.Y. Feb. 16, 2007).

[8] *Env't Tex. Citizen Lobby v. ExxonMobil*, 123 F.4th 309, 342–43 (5th Cir. 2024) (opinion of Davis, J.) (CAA); *NAACP v. X.AI Corp.*, No. 3:26-cv-74-DMB-JMV, Dkt. 139 at 28 n.19 (N.D. Miss. Oct. 30, 2026) Pl. Ex. D (CAA); *Sierra Club v. Franklin*

constitutional. As set forth *infra*, Corona's argument runs contrary to Supreme Court case law, six courts of appeals that have upheld *qui tam* statutes, the nine district courts that have upheld § 1365, and the seven appellate and district courts that have upheld similar citizen suit provisions in other federal statutes.

*i. Laidlaw Forecloses Corona's Separation of Powers Challenge.*

As explained above, the Supreme Court's decision in *Laidlaw* precludes Corona's argument that civil penalties are purely public remedies. *Supra* pp. 10-11. Instead, § 1365 authorizes suit brought on behalf of a private plaintiff to redress a private harm. Corona's argument that civil penalties allowed under § 1365 violates separation of powers principles is also foreclosed because it runs counter to the Supreme Court majority's well reasoned response to Justice Kennedy's concurrence and Justice Scalia's separation of powers concerns raised in *Laidlaw*:

> . . . the dissent's broader charge that citizen suits for civil penalties under the Act carry "grave implications for democratic governance," *post,* at 202, seems to us overdrawn. Certainly the Federal Executive Branch does not share the dissent's view that such suits dissipate its authority to enforce the law. In fact, the Department of Justice has endorsed this citizen suit from the outset, submitting *amicus* briefs in support of FOE in the District Court, the Court of Appeals, and this Court. See *supra,* at 177, 179. As we have already noted, *supra,* at 175, the Federal Government retains the power to foreclose a citizen suit by undertaking its own action. 33 U. S. C. § 1365(b)(1)(B). And if the Executive Branch opposes a particular citizen suit, the statute allows the Administrator of the EPA to "intervene as a matter of right" and bring the Government's views to the attention of the court. § 1365(c)(2).

---

*Cnty. Power*, No. 05-cv-4095-JPG, 2006 WL 8455938, at *9–10 (S.D. Ill. October 17, 2006) (same); *United States v. Am. Elec. Power Service Corp.*, 137 F. Supp. 2d 1060, 1065 (S.D. Ohio 2001) (same); *Campaign Legal Ctr. v. Iowa Values*, 573 F. Supp. 3d 243, 256 (D.D.C. 2021) (Federal Election Campaign Act); *Del. Valley Toxics Coal. v. Kurz-Hastings Inc.*, 813 F. Supp. 1132, 1138 (E.D. Pa. 1993) (Emergency Planning and Community Right-to-Know Act); *Atl. States Legal Found. v. Buffalo Envelope, Div. of Am. Envelope Co.*, 823 F. Supp. 1065, 1072–76 (W.D.N.Y. 1993) (same).

528 U.S. at 188 n.4. This court should follow the Supreme Court majority's well reasoned counter in *Laidlaw* that CWA citizen suits do not interfere with executive branch prerogatives.[9] The Supreme Court has also implicitly approved of § 1365. *Middlesex,* 453 U.S. at 14-16 (holding there is no implied private right of action under CWA given the "elaborate" citizen suit enforcement provision providing for injunctive relief and civil penalites payable to the government).

*ii. The Executive Branch Does Not Have Exclusive Power to Enforce Federal Law and Recover Civil Penalties.*

Corona is wrong that the Take Care and Vesting Clauses in the Constitution vest exclusive authority in the Executive Branch to enforce federal law and recover civil penalties. Even though "[t]he Constitution charges the Executive Branch with enforcing federal law," "sometimes Congress also allows private parties to enforce the law through civil litigation." *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 367 (2025); *see Davis*, 442 U.S. at 241 ("Statutory rights and obligations are established by Congress, and it is entirely appropriate for Congress, in creating these rights and obligations, to determine in addition, who may enforce them and in what manner."); *Tigner v. Texas*, 310 U.S. 141, 148 (1940) ("Whether proscribed conduct is to be deterred by *qui tam* action or triple damages or injunction, or by criminal prosecution, or merely by defense to actions in contract, or by some, or all, of these remedies in combination, *is a matter within the legislature's range of choice*.") (emphasis added). This Court is bound by Ninth Circuit case law concluding that the Executive Branch does not have exclusive authority to enforce the CWA. *Ass'n to Protect Hammersly, Eld, & Totten Inlets v. Taylor Res.*, 299 F.3d 1007, 1012 (9th Cir. 2002) ("Although the EPA or an authorized state agency may be charged with enforcement of the Clean Water Act, neither the text of the Act nor its legislative history expressly grants to the EPA or

[9] Even if the majority's footnote is considered dicta, in the Ninth Circuit "[w]e do not treat considered dicta from the Supreme Court lightly." *United States v. Montero-Camargo,* 208 F.3d 1122, 1132 n.17 (9th Cir. 2000) (en banc).

such a state agency the *exclusive authority* to decide whether the release of a substance into the waters of the United States violates the Clean Water Act.") (citation omitted); *Hawai'i Wildlife Fund v. Cnty. of Maui*, 886 F.3d 737, 750 (9th Cir. 2018) *rev'd on other grounds sub nom. Cnty. of Maui, Hawai'i v. Hawai'i Wildlife Fund*, 590 U.S. 165 (2020) (same).

Corona argues that § 1365 "vitiates" the Executive Branch's prosecutorial discretion not to litigate by authorizing citizen plaintiffs to bring claims the federal government has chosen not to pursue. Yet citizen suits do not impinge upon or interfere with the government's decision not to enforce the CWA. The fact that § 1365 authorizes citizens to bring suit *only if* neither the Environmental Protection Agency ("EPA") nor the State choose to enforce in the ways that the CWA says preclude a citizen suit, 33 U.S.C. § 1365(b)(1)(B), does not equate to authorization to interfere with EPA's enforcement decision in the first place. Plus, the plain language of § 1365 authorizes citizen suits against the EPA only for alleged failure of a duty that is *not* discretionary. 33 U.S.C. § 1365(a)(2). Corona's concerns about preserving the government's prosecutorial discretion are therefore misplaced.[10] Corona wrongly asserts that any citizen plaintiff who disagrees with the government's decision not to sue can bring suit under § 1365 (Dkt. 477-1 at 21-22). For example, citizen plaintiffs have no authority to investigate or prosecute crimes under § 1365 if EPA decides not to pursue a criminal violation of the CWA.[11] Because Congress may "allow[] private parties to enforce the law through civil litigation," *Medina*, 606 U.S. at 367, the power to enforce the CWA is not an executive power that cannot be delegated to a private party.

---

[10] Likewise, Corona's reliance on various Supreme Court cases emphasizing the government's prosecutorial discretion are not relevant. Dkt. 477-1 at 19-22,.

[11] Corona's reliance on *Trump v. United States* is misplaced because there, the Supreme Court was focused on the "[i]nvestigation and prosecution of *crimes*," which the Court identified as a "quintessentially executive function." 603 U.S. 593, 607, 620 (2024) (emphasis added).

Next, Corona argues § 1365 violates the Take Care Clause by "requiring" district courts to enforce CWA violations the government has chosen not to enforce and thereby improperly transfers executive power to the courts. Dkt. 477-1 at 21-22. Yet the plain language of § 1365 does not "require" the courts to enforce or execute the CWA; it simply states that district courts "shall have jurisdiction" to grant "appropriate" relief. 33 U.S.C. § 1365(a). Nothing in § 1365 requires or enables courts to continuously monitor the Executive Branch, as Corona suggests. "[W]hen the meaning of a statute [i]s at issue, the judicial role [i]s to 'interpret the act of Congress, in order to ascertain the rights of the parties.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) (citations omitted). Thus, § 1365 in no way offends separation of powers between the Executive and Judiciary because "[i]t is emphatically the province of the courts to "say what the law is." *Madison v. Marbury*, 5 U.S. 137, 177 (1803).

*iii. Citizen Suit Plaintiffs Have Less Authority Than Independent Counsels, Which the Supreme Court Found To Be Constitutional.*

In *Morrison v. Olson*, the Court upheld the constitutionality of independent counsels who exercise enforcement power, and in doing so rejected the argument that only the Executive Branch has the power to enforce laws and prosecute violations of those laws. 487 U.S. 654, 695-96 (1988). The Court reaffirmed its reasoning from *Morrison* in *Seila Law LLC v. CFPB*. 591 U.S. 197, 217-18 (2020). The Court also did not overrule *Morrison* in *Slaughter*. Thus, *Morrison* is still good law.[12] Citizen plaintiffs have much less authority than the independent counsel that the Court found constitutional in *Morrison*, who was appointed with the "full power and independent authority to exercise all investigative and prosecutorial functions and powers of the Department of Justice," including the authority to conduct grand jury proceedings, civil and criminal proceedings, and appeals. 487 U.S. at 660-62. Regardless, the Supreme

---

[12] The Court's decisions in *Selia* and *Slaughter* did not turn on the authority to impose civil penalties, but rather the President's limited ability to remove heads of agencies with "vast rulemaking, enforcement, and adjudicatory powers." *Seila*, 591 U.S. at 203; *Slaughter*, 609 U.S. at 431.

Court held these powers are not "functions that the Constitution requires be performed by officials within the Executive Branch" and that independent counsel do not undermine the powers of the Executive Branch. *Id.* at 695-96.

In contrast to the independent counsel's broad authority, numerous features limit any potential interference by § 1365 citizen plaintiffs with Executive Branch enforcement of the CWA. *See*, *e.g.*, 33 U.S.C. § 1365(a) (limiting citizen plaintiffs to enforcing an alleged violation of an effluent standard or limitation (or an order regarding the same), or EPA's failure to perform a non discretionary action required by the CWA); *Laidlaw*, 528 U.S. at 185 (citizen plaintiffs must demonstrate concrete and particularized harm for each form of relief sought); 33 U.S.C. § 1365(b)(1)(B) (no citizen suit if state or EPA is diligently prosecuting the same violations); *id.* § 1319(g)(6) (no civil penalties if state or EPA is diligently prosecuting comparable administrative penalty); *id.* § 1365(a)(1)(A) (citizen plaintiffs must send 60-day pre-suit notice letter identifying the alleged violations); *NRDC v. Outboard Marine Corp*., 692 F. Supp. at 817 (government has "right of first refusal to bring an enforcement action" in response to notice letter); *EPA v. City of Green Forest*, 921 F.2d 1394, 1404 (8th Cir. 1990) (EPA can foreclose citizen suit by bringing its own action after the notice letter is sent); *Laidlaw*, 528 U.S. at 175 (alleged violator may foreclose citizen suit by curing alleged violation during 60-day notice period).

Additional limitations apply even after a citizen suit is filed under § 1365. *See* 33 U.S.C. § 1365(c)(3) (requiring copy of complaint to be served on Attorney General and EPA); *id.* § 1365(c)(2) (allowing EPA to intervene as a matter of right). Citizen plaintiffs' remedies are also limited. *Laidlaw*, 528 U.S. at 188 ("private plaintiffs, unlike the Federal Government, may not sue to assess penalties for wholly past violations."); 33 U.S.C. §§ 1365(a), 1319(d) (district courts, not citizen plaintiffs, assess and determine any civil penalty based on specific factors); *id.* § 1365(c)(3) (requiring citizen suit settlements to undergo 45-day review period by U.S. Department of Justice, which can comment on or intervene to oppose settlement). These multiple constraints

demonstrate that § 1365 citizen plaintiffs have less authority than independent counsels that have been found to be constitutional and therefore do not raise constitutional concerns. The constraints on citizen plaintiffs are also designed to incentivize state and federal governments to address CWA violations in the first instance,[13] and stand in stark contrast to the primary enforcement power that state and federal governments retain under the CWA.[14]

*iv. Citizen Suit Plaintiffs Have Less Authority than Qui Tam Plaintiffs, and Courts Have Found Qui Tam Suits To Be Constitutional.*

Citizen suits "greatly resemble" *qui tam* suits, *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d at 1522, but differ in several respects. While citizen suits are brought on behalf of a citizen plaintiff with a personal injury, "*qui tam* actions exist 'on behalf of and in the name of the government.'" *Vanderlan v. United States*, 135 F.4th 257, 267 (5th Cir. 2025). The False Claims Act (FCA) authorizes private plaintiffs (called relators) to recover up to thirty percent of government payments made to contractors that assert fraudulent claims. 31 U.S.C. §§ 3729–33. FCA relators displace the Executive and enforce purely public rights and injuries, relying entirely on the federal government's injury and financial loss for their standing in federal court.

Courts have consistently upheld the constitutionality of *qui tam* statutes even though *qui tam* relators have no interest in the action other than a share of the funds recovered. *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 541 (1943); *Marvin v. Trout*, 199 U.S. 212, 225 (1905); *Stevens*, 529 U.S. at 778 (holding FCA relators have Article III standing). The Ninth Circuit Court of Appeals rejected an Article II challenge to a *qui tam* statute in *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 745 (9th

---

[13] The CWA's design thereby preserves the prosecutorial discretion of state and federal governments. *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

[14] The Ninth Circuit confirmed in this matter that "[s]tates and the federal government [*not* § 1365 citizen plaintiffs] have primary enforcement authority" under the CWA. *See Inland Empire II*, 189 F.4th at 811. Corona ignores the law of the case on this issue. *Hall*, 697 F.3d at 1067.

Cir. 1993). The Ninth Circuit rejected the argument that the Executive Branch has exclusive power to enforce federal laws and prosecute violations. *Kelly*, 9 F.3d at 751 ("no such absolute rule exists."). The court of appeals read *Morrison* to counsel that "prosecutorial functions need not always be undertaken by Executive Branch officials." *Id*. In turn, Congress can constitutionally assign some enforcement power to private citizens. *Kelly* also held that the FCA did not encroach too far on executive power. *Id.* at 752-53 ("an independent counsel exercises broader investigative authority, prosecutorial discretion, and authority to use the resources of the U.S. government than does a qui tam relator."). The *Kelly* court refused to read Supreme Court precedent as creating "an absolute rule that only executive officers may initiate any type of litigation in the name of the United States" or to view absolute Executive Branch control over lawsuits as a *per se* constitutional requirement. *Id*. at 754 & n.13.

Citizen suit authority under § 1365 is far less than that of *qui tam* actions because citizen plaintiffs must show a "more particularized interest" than relators in FCA *qui tam* suits. *Steel Co.,* 523 U.S. at 129 (Stevens, J., concurring). *Qui tam* relators rely entirely on the federal government's injury for their standing, and bring suit in the government's name, for themselves and for the government. Citizen plaintiffs, in contrast, must demonstrate an individual injury caused by the alleged violator that is redressable by the court, and bring suit on their own behalf. *Qui tam* relators receive a share of the penalties, while citizen suit plaintiffs do not because civil penalties are payable to the Treasury. The Ninth Circuit's reasoning and holding in *Kelly* that *qui tam* actions are constitutional should therefore apply equally to § 1365, further supporting that CWA citizen suits are constitutional.

*v. Private Enforcement of Regulatory Laws Has a Basis in History.*

Corona argues that citizen suits have no basis in history or tradition. Dkt. 477-1 at 25-27. Not so. Citizen suits "greatly resemble" *qui tam* actions, *Sierra Club v. Chevron U.S.A. Inc.*, 834 F.2d at 1522, and there is a "long tradition of *qui tam* actions in England and the American Colonies." *Stevens*, 529 U.S. at 774. *Qui tam* suits are

"deeply rooted in our history." *Steel Co.*, 523 U.S. at 129 (Stevens, J., concurring). "Statutes providing for actions by a common informer, who himself ha[s] no interest whatever in the controversy other than that given by statute, have been in existence for hundreds of years in England, and in this country ever since the foundation of our Government." *Hess,* 317 U.S. at 541 n.4 (internal quotation marks and citation omitted). That tradition of allowing private actions for public wrongs is "particularly relevant" to the constitutionality of the actions. *Stevens*, 529 U.S. at 774.

*Qui tam* suits can be traced back over 600 years in Anglo-American law. In 1388, Richard II and the English Parliament enacted a statute designed to cleanup and prevent water pollution. "It provided for a dual system of enforcement: either public officials or private parties who 'feel themselves grieved' or who 'will complain' could bring enforcement actions." Barry Boyer & Errol Meidinger, *Privatizing Regulatory Enforcement: A Preliminary Assessment of Citizen Suits Under Federal Environmental Laws*, 34 Buff. L. Rev. 833, 946-47 (1985). The First Congress "enacted a considerable number of informer statutes." *Stevens,* 529 U.S. at 776. Some of these provided a bounty and an express cause of action. *Id.* at 776-77. The Framers understood and participated in the legal culture of private enforcement. Baronia et al., *supra*, at 137.

In *Stevens,* Justice Scalia concluded that historical evidence is "well nigh conclusive with respect to the question before us here: whether *qui tam* actions were 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'" 529 U.S. at 777 (citation omitted). Although the *Stevens* Court declined to address whether *qui tam* provisions violated Article II, *id.* at 778 n.8, the long history of those provisions is relevant to the Article II question. The *en banc* Fifth Circuit concluded that it was "logically inescapable that the same history that was conclusive on the Article III question in *Stevens* . . . is similarly conclusive with respect to the Article II question." *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 752 (5th Cir. 2001).

The fact that private exercises of government authority to rectify public wrongs in *qui tam* actions have existed since the Founding Era supports that there is no constitutional violation when private actions serve private purposes. This historical evidence is entitled to "great weight" in discerning the meaning of the Constitution. *Bands of State of Wash. v. United States*, 279 U.S. 655, 689 (1929).

**D. CWA § 1365 Does Not Violate the Private Nondelegation Doctrine.**

Corona asserts that § 1365 violates the private nondelegation doctrine by allowing non-governmental entities to govern. Dkt. 477-1 at 13-19. This argument fails because citizen suits are brought on behalf of the private plaintiff, not the government, and do not allow private parties to exercise executive power. *Compare id.* at 13-19 *with supra* pp. 7-12.

Moreover, because § 1365 citizen plaintiffs' authority to litigate is subject to multiple layers of federal government surveillance, it does not offend the private nondelegation doctrine. *Supra* pp. 17-18. Even though the district court in *NAACP v. X.AI Corp.* (the most recent case involving constiutional challenges to the CAA citizen suit) found the government's ability to intervene as a matter of right does not allow EPA to unilaterally dismiss a citizen suit once it has intervened, No. 3:26-cv-00074-DMB-JMV, 2026 WL 3124447 (N.D. Miss. Oct. 19, 2026), the court still found the CAA citizen suit does not violate Article II or the nondelegation doctrine, No. 3:26-cv-00074-DMB-JMV, Dkt. 139 (N.D. Miss. Oct. 30, 2026) (Pl. Ex. D at 22-28). Precisely because of the distinction Corona makes—that citizen suits are not brought on behalf of the government, and thus cannot be unilaterally dismissed by the government—Corona's reliance on *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419 (2023), is misplaced.

Corona's attacks on the other layers of government oversight provided by § 1365 are equally unavailing. *Contra* Dkt. 477-1 at 14-15. Corona asserts the government should have final "say-so" over a citizen consent judgment. But unlike the rulemaking and legislation at issue in *FCC v. Consumers' Rsch.*, 606 U.S. 656 (2025), that would

apply to all regulated actors,[15] a citizen suit consent judgment binds only the specific parties and is designed to resolve the specific injuries alleged. The plain language of the CWA contradicts Corona's assertion that the diligent prosecution bar, 33 U.S.C. § 1365(b)(1)(B), is somehow illusory, apparently because it is time-limited. Corona is also wrong to assert there is no supervisory role once a citizen suit has been filed because even after sixty days, the government retains its ability to intervene as a matter of right, 33 U.S.C. § 1365(c)(2), and any consent judgment remains subject to 45-day review by the government, *id.* § 1365(c)(3). As private actors with no federal governing authority, the fact that citizens self-fund (Dkt. 477-1 at 19 n.7) in no way offends the private nondelegation doctrine.

The government's oversight of citizen suits and primary authority to separately enforce the CWA, *supra* n.14, are a far cry from the type of governing authorities other courts have found to violate the private nondelegation doctrine. *See Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 178 F.4th 224, 239-47 (5th Cir. 2026) ("*Black III*") (holding Horseracing Integrity and Safety Act (HISA) violates the private nondelegation doctrine by giving private entity "*sole* power" to enforce without any FTC discretion to approve or modify enforcement except to review sanctions after the fact) (emphasis added); *Alpine Sec. Corp. v. FINFRA*, 121 F.4th 1314, 1324-1325 (D.C. 2024), *cert denied*, (2025) (granting preliminary injunction where member demonstrated it is likely to prevail on challenge that FINFRA authority to unilaterally expel a member from the securities industry without any prior review by the Securities and Exchange Commission violates the private nondelegation doctrine). By contrast, here the plaintiffs advised the government before it filed suit, provided sixty days for the government to file and preclude the citizen suit litigation, and advised the government when the complaint was filed. *See* Dkt. 12-1 (Exhibit A to Plaintiffs' First Amended Complaint) (December 13, 2017, Notice of Violation and Intent to File Suit

---

[15] *See Myers v. United States,* 272 U.S. 52, 186 (1926) (McReynolds, J., dissenting) ("essence" of legislative authority is to prescribe rules for the regulation of the society).

Under the Clean Water Act). Consistent with the plain language in § 1365, this ensured plaintiffs' citizen suit was subject to the government's authority. *FCC*, 606 U.S. at 692 (citation omitted).

Many of the cases that Corona relies on involving the delegation of *legislative* power to private parties outside the Executive Branch are inapposite because § 1365 citizen plaintiffs do not exercise any legislative or rulemaking authority. *FCC*, 606 U.S. at 663 (delegating rulemaking authority to raise revenue for communications services in underserved areas); *Dep't of Transp. v. Ass'n of Am. Railroads*, 575 U.S. 43, 47-48 (2015) (delegating authority to issue "metrics and standards" used to assess the performance of passenger railroad services); *Oklahoma v. United States*, 163 F.4th 294, 303 (6th Cir. 2025) (addressing delegation of rulemaking authority over horseracing); *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F.4th 869, 872 (5th Cir. 2022) ("*Black I*") (delegation of rulemaking authority without Federal Trade Commission oversight); *Carter v. Carter Coal Co.*, 298 U.S. 238, 311 (1936) (delegating legislative authority to fix hours of labor and wages for miners); *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 538 (1935) (delegating legislative authority to set code of fair competition in the live poultry market).

**E. CWA § 1365 Does Not Violate the Appointments Clause.**

Finally, Corona alleges that § 1365 citizen plaintiffs are unappointed government officers,[16] requiring appointment under the Appointments Clause. Dkt. 477-1 at 23-25. Because citizen plaintiffs are not appointed, Corona argues, this violates the Appointments Clause. Corona's argument fails on at least three grounds.

One, the Appointments Clause generally does not apply to persons or entities who are not part of the federal government for constitutional purposes. *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 399 (1995) (private corporation is "subject to the

---

[16] Corona's nondelegation and Appointments Clause arguments are mutually exclusive because for constitutional purposes, an entity is either a government officer or not. *Black III*, 178 F.4th at 249. Corona partially acknowledges this, noting its Appointments Clause argument is in the alternative. Dkt. 477-1 at 23 n.9.

constraints of the Constitution" if "[1] the Government creates a corporation by special law, [2] for the furtherance of governmental objectives, and [3] retains for itself permanent authority to appoint a majority of the directors of that corporation"). Corona notes there is debate over whether the Appointments Clause applies to non-government entities (Dkt. 477-1 at 23 n.9), but ignores the Supreme Court's *Lebron* test. Whether focusing on citizen plaintiffs generally or the particular organizations who are party to this suit, neither meets the *Lebron* test and thus the Appointments Clause does not apply.

Two, even if it did apply (for purposes of argument), a citizen plaintiff is not an officer. The CWA does not vest a citizen plaintiff with executive authority. *See supra* pp. 7-12. A citizen plaintiff exercises limited authority in light of the constitutional, statutory, and regulatory limitations and multiple layers of federal oversight. *See supra* pp. 17-18. Because citizen plaintiffs do not exercise "significant authority" and the CWA vests primary enforcement responsibility in the government, *supra* n.14, citizen plaintiffs do not qualify as officers and thus are not subject to the Appointments Clause. *Kelly*, 9 F.3d at 758 (upholding False Claims Act's *qui tam* provision against Appointment Clause challenge).

Finally, citizen plaintiffs do not meet any of the factors for holding a "continuing position" with the federal government and thus are not officers subject to the Appointments Clause. *United States ex rel. Zafirov v. Fla. Med. Assocs., LLC*, No. 24-13581, 2026 WL 2581886, at *1 (11th Cir. Sept. 1, 2026) (holding relators bringing *qui tam* suits under the FCA do not hold a continuing position). Even if citizen plaintiffs did occupy a federal "position," it would be temporary because the position only lasts the length of one case, it would be occasional because each plaintiff organization may bring multiple cases in a year or none, and it would lack the duties often required for a continuing position because citizen plaintiffs are not required to keep a place of business. *United States v. Germaine*, 99 U.S. 508, 511-12 (1878); *Auffmordt v. Hedden*, 137 U.S. 310, 327 (1890). Plus citizen plaintiffs do not receive a continuing emolument. *Germaine*, 99 U.S. at 512; *Auffmordt*, 137 U.S. at 327. Corona incorrectly suggests that

the plaintiff organizations and members are interchangeable. However, if one plaintiff organization drops out of a given case, another cannot necessarily replace that organization due to the requirement for a concrete and particularized personal injury at all stages of litigation. *Lujan*, 504 U.S. at 561 (standing is indespensible). Corona points to plaintiffs' 97 CWA citizen suits since 2006, but each case was a unique action that required identifying at least one individual member with particularized injury sufficient to meet Article III. The Eleventh Circuit Court of Appeals reasoned that simply because a *qui tam* relator "may bring multiple cases in a year" does not mean that relators occupy a "continuing" position. *Zafirov*, 2026 WL 2581886, at *4. Likewise, because each of plaintiffs' distinct lawsuits are premised on a unique set of facts and have a temporary tenure during the length of that case, combining those cases in a total number does not mean that plaintiffs occupy a continuing position. In sum, § 1365 does not violate the Appointments Clause.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Corona Clay's motion for judgment on the pleadings should be denied.

Dated: November 16, 2026

Respectfully submitted,

INLAND EMPIRE WATERKEEPER
ORANGE COUNTY COASTKEEPER

Sarah J. Spinuzzi
Attorney for Plaintiffs Orange County Coastkeeper and Inland Empire Waterkeeper